IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POLAROID CORPORATION,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>    v.<br><br>HEWLETT-PACKARD COMPANY,<br><br>    Defendant and Counterclaim-Plaintiff. | C.A. No. 06-738 (SLR) |

**HEWLETT-PACKARD COMPANY'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO BIFURCATE LIABILITY AND DAMAGES
<u>AND STAY DAMAGES DISCOVERY</u>**

Dated: November 6, 2007

William J. Marsden, Jr. (#2247)
919 N. Market Street, Suite 1100
Wilmington, DE 19801
Telephone: (302) 652-5070
Facsimile: (302) 652-0607
Email: marsden@fr.com

John E. Giust
Matthew E. Bernstein
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099
Email: giust@fr.com
Email: bernstein@fr.com

Bradley D. Coburn
111 Congress Avenue, Suite 810
Austin, TX 78701
Telephone: (512) 472-5070
Facsimile: (512) 320-8935
Email: coburn@fr.com

**TABLE CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND .....................................................................................................2

    A. The Patent-in-Suit. ......................................................................................2

    B. The Accused Products. ...............................................................................2

    C. The Unaccused Products. ...........................................................................4

        1. Scanners, Computers, and Printers and Cameras that Do Not Contain LACE. ...........................................................................4

        2. Alleged Convoyed Products. .........................................................5

    D. HP's Good Faith Production to Date. .........................................................6

    E. Polaroid's Damages Theories. ....................................................................7

        1. Polaroid's Attempt to Recover Royalties on Products that Do Not Contain LACE. ..........................................................7

        2. Polaroid's New and Overly Broad Convoyed Sales Requests. ........................................................................................8

III. ARGUMENT ...........................................................................................................8

    A. Applicable Legal Standard for Bifurcation and Stay. .................................8

    B. Bifurcation And A Stay of Damages Discovery Will Mitigate The Prejudice to HP. ..................................................................................10

        1. HP's Requested Relief Is Necessary to Preserve HP's Ability to Prepare the Liability Case Under the Current Scheduling Order. ..........................................................................10

        2. Any Alleged Prejudice to Polaroid is the Result of Its Own Failure to Focus Its Discovery and Abide by the Parties' Agreements. ....................................................................10

    C. Bifurcation And A Stay of Damages Discovery Will Conserve Judicial Resources, and the Resources of the Parties. .............................11

    D. Bifurcation And A Stay of Damages Will Enhance Juror Comprehension. .........................................................................................12

IV. CONCLUSION ......................................................................................................13

# TABLE OF AUTHORITIES

**PAGE**

*ArthroCare Corporation v. Smith & Nephew, Inc.*
   C.A. No. 01-504-SLR (D. Del. Nov. 27, 2002) ............................................................... 12

*Ciena Corp. v. Corvis Corp.*,
   210 F.R.D. 519 (D. Del. 2002) ....................................................................................... 9

*Corning Inc. v. SRU Biosystems, LLC*,
   223 F.R.D. 189 (D. Del. 2004) .................................................................................. 11, 12

*E.I. Dupont De Nemours & Co. v. Phillips Petroleum Co.*,
   656 F. Supp. 1343 (D. Del. 1987) ................................................................................... 9

*Ellingson Timber Co. v. Great Northerm Railway Co.*,
   424 F.2d 497 (9th Cir. 1970) ................................................................................... 10

*Gardco Manufacturing, Inc. v. Herst Lighting Co.*,
   820 F.2d 1209 (Fed. Cir. 1987) ....................................................................................... 8

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970) ............................................................................... 1

*Novopharm Ltd. V. Torpharm, Inc.*
   181 F.R.D. 308 (E.D.N.C. 1998) .................................................................................... 9

*Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce,
   Fenner & Smith, Inc.*,
   587 F. Supp. 1112 (D. Del. 1984) ............................................................................. 10, 12

*Siam v. Potter*,
   2006 WL 1530155 (N.D. Cal. June 5, 2006) ................................................................ 9

*Smith v. Alyeska Pipeline Serv. Co.*,
   538 F. Supp. 977 (D. Del. 1982) ............................................................................... 10, 12

## FEDERAL STATUTES

Fed. R. Civ. P. 42 ............................................................................................................... 9

**I.     INTRODUCTION**

HP seeks to stay damages discovery and bifurcate the liability and damages issues for trial to avoid prejudice, enhance juror comprehension, and further judicial economy. While bifurcation of liability and damages for trial is commonplace in patent cases, HP appreciates that the Court generally disfavors stays of damages discovery. HP seeks this combination of relief because of the unique, and unnecessary, burden Polaroid is seeking to impose on HP, the Court, and eventually the jury. This motion was precipitated by Polaroid's demand for very broad and detailed damages discovery on products that are not even accused of infringement.

Having already sought and received relevant information relating to the over 250 accused products at issue, Polaroid now seeks sales unit, revenue, manufacturing, and technical discovery on hundreds of additional products it has not accused of infringement—products which do not contain the accused LACE software. Polaroid has also recently insisted that HP produce unit and revenue information on every product that is "potentially used in any way" with the over 250 accused HP products.

Polaroid has thus far declined to articulate a damages theory that entitles it to such broad damages discovery even though HP propounded an interrogatory months ago asking this very question. Polaroid's apparent rationale for seeking such broad damages discovery on products that are not accused of infringement is that HP sometimes ships with these products a free CD that contains the accused LACE software. The only apparent rationale for Polaroid to seek damages discovery of all products "potentially used in any way" with the accused HP products is to suggest that a higher reasonable royalty rate is warranted based on the "convoyed sales" factor set forth in. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Polaroid had previously agreed to more limited discovery on convoyed sales but has now adopted a scorched earth approach.

In a few short weeks, the parties are required to exchange a list of claim terms to be construed by the Court, as well as proposed constructions for those terms. This is not the time to

be launching a new round of discovery. It is the time to focus on claim construction which likely will determine whether or not there can be any liability.

The timing of Polaroid's expanded damages discovery requests argues strongly in favor of stay and bifurcation. In addition to requiring a massive effort by HP at a time when it is working on claim construction, these requests will ultimately generate juror confusion. Polaroid seems bent on forcing the jury to consider hundreds upon hundreds of accused **and unaccused** products to determine both liability (involving highly complex mathematical algorithms) and damages issues. The sheer breadth of these demands based on an unarticulated damages theory is likely to generate time-consuming discovery disputes. To minimize, and perhaps avoid altogether, the prejudice, confusion, and inefficiency posed by Polaroid's ill-timed, unsupported, and overly broad damages discovery demands, HP respectfully requests that the Court stay damages discovery and bifurcate the liability and damages issues for trial.

## II.    BACKGROUND

### A.    The Patent-in-Suit.

Polaroid is asserting infringement of the '381 patent, which will expire in five months. Based on Polaroid's broad discovery requests, one would think Polaroid invented printers, cameras, scanners, computers, and digital photo editing software, not to mention paper and replacement ink cartridges. Nothing could be more wrong. If Polaroid invented anything, it is limited to an algorithm that can be used to alter the contrast of an image. There are dozens of other algorithms in the market that are used to alter the contrast of an image. While Polaroid has asserted only one patent, determining how the algorithms in HP's software and firmware work and whether they are present in the prior art, is complex. Determination of liability in this case will depend on analysis of complicated source code, analysis that will be performed by each side's respective experts.

### B.    The Accused Products.

In its complaint, Polaroid did not identify any specific accused products. *See* Complaint at ¶ 12 (D.I. 1). Instead, Polaroid vaguely referred to products that incorporate "Adaptive

Lighting Technology."[1]  Because Polaroid did not identify any specific products in its complaint, both parties propounded interrogatories designed to identify the accused products.  Polaroid asked HP to identify products containing certain source code files that perform contrast adjustment.  Nearly all of the identified source code files were what HP refers to as LACE,[2] which is an acronym for Local Area Contrast Enhancement.  *See* Polaroid Interrogatory No. 15 (Ex. A to the Declaration of William J. Marsden, Jr. in Support of HP's Motion to Bifurcate and Stay).[3]  HP responded fully to this interrogatory.  *See* HP First Supplemental Response to Interrogatory No. 15 (Marsden Declaration, Ex. B).  Specifically, HP identified over 250 products, the majority of which were drivers for color HP printers, although HP also identified some cameras, software products, and photo kiosk products.  These are the products that contain the source code identified in Polaroid's interrogatory.

HP, in turn, propounded interrogatories seeking Polaroid's infringement contentions, including the products accused of infringement.  *See* HP Interrogatory Nos. 1 and 2 (Marsden Declaration, Ex. C).   In its response to these interrogatories, Polaroid did not identify any products beyond those HP identified in response to Polaroid interrogatory 15.  Polaroid certainly did not identify all of the computers and scanners, and additional printers and cameras for which it now seeks broad discovery.  *See* Polaroid 1st Supp. Resp. to HP Interrog. No. 2 (Marsden Declaration, Ex. D).  As for its stated basis for the allegation of infringement, Polaroid pointed to HP's use of the LACE source code in its products.  *Id.*

HP denies that any version of its LACE source code infringes any claim of the '381 patent.  HP admits, however, that different versions of LACE source code have been used in certain HP products.  Specifically, the printer drivers that can be used with some HP color

---

[1]  As discussed in the following section, however, HP uses "adaptive lighting" broadly as a marketing term to describe a feature that can be implemented by an unaccused, noninfringing software, as well as the accused LACE software.

[2]  Although the source code files referred to in Polaroid's interrogatory also included Retinex source code, Polaroid has never accused Retinex source code of infringement.

[3]  Hereinafter cited as "Marsden Declaration, Ex.____"

3

printers contain versions of LACE. Likewise, certain HP cameras models contain a feature known as "design gallery" that includes, among many other features, a feature that uses LACE. Additionally, several HP stand-alone software products contain the LACE source code, as do several HP photo kiosk products. Finally, some color HP printers contain a partial version of the LACE code known as SOSA. HP identified all HP products that use the LACE source code in its response to Polaroid interrogatory number 15,[4] a total of over 250 products.

As implemented, LACE is an insignificant feature of HP's products. Obviously, HP's hardware products, such as printers, do much more than adjust contrast. In fact, most users of HP's printers are not even aware that LACE does anything to their images, in those circumstances where LACE is actually used. There is no evidence that HP customers purchase printers because of the LACE feature. Likewise, the free HP software that includes LACE also contains several photo editing features other than the LACE contrast feature, including red-eye and photo cropping. More significantly, the software LACE products do many things other than photo editing, including photo organizing and sharing.

    **C.**    **The Unaccused Products.**

        **1.**    **Scanners, Computers, and Printers and Cameras that Do Not Contain LACE.**

In October, for the first time, Polaroid demanded that HP produce unit, revenue, profit, cost, bills of material, and technical documents on **all** of HP's scanner products and computer products, not just those that incorporate the LACE software. Polaroid also requested the same broad discovery on HP printer and camera products regardless of whether those products contain LACE. Polaroid's request for such far reaching damages discovery is disproportionate to its infringement allegations, and as discussed elsewhere in this brief, threatens to divert attention from the core liability issues at a critical juncture in this case.

---

[4] HP even identified products containing SOSA source code, which went beyond what Polaroid requested.

As an initial matter, Polaroid did not identify scanners, computers, printers that do not use LACE, or cameras that do not use LACE as infringing products in its response to HP interrogatory numbers 1 and 2.  Polaroid has accused only products that use LACE.

Taking scanners as an example; HP scanners do include a contrast enhancement feature, and that contrast enhancement feature is even referred to as "adaptive lighting," but that feature is not implemented by LACE in HP scanners.  Instead, the feature is implemented by Retinex, a completely distinct algorithm that Polaroid's attorneys and experts have evaluated but have not accused of infringement.  The adaptive lighting feature in many HP cameras is also implemented by Retinex.  HP produced its Retinex source code months ago.  Polaroid has never alleged that Retinex infringes.  Polaroid's infringement contentions are based on the LACE source code, not Retinex.  Therefore, Polaroid's recent demand for broad discovery on any product with adaptive lighting, regardless of whether that feature is implemented using Retinex or the accused LACE source code, is contrary to the understanding HP believed the parties had reached based on Polaroid's response to infringement contention interrogatories and the parties' meet and confer telephone calls to narrow and focus discovery in this case.

### 2.     Alleged Convoyed Products.

In addition to seeking documents on the hundreds of additional HP products that may have an "adaptive lighting" feature as discussed in the previous section, Polaroid now seeks similarly broad discovery on all HP products that are "potentially used in any way" with any of the accused products.  Polaroid justifies these broad requests on the grounds that they are relevant to convoyed sales, one of the *Georgia Pacific* factors.  Polaroid began taking this overly aggressive stance on October 19, 2007.  *See* Letter from G. Courtney Holohan to Bradley D. Coburn (October 19, 2007) (Marsden Declaration, Ex. E).  Prior to this date, the parties had met and conferred and agreed that convoyed sales discovery would initially be limited to those instances where HP sold an accused product with (and at the same time as) an unaccused product.  *See* Letter from Bradley D. Coburn to G. Courtney Holohan (October 17, 2007) (Marsden Declaration, Ex. F).  Now Polaroid seeks unit and revenue information and possibly

5

even others on products as tangentially related to the technology at issue as HP paper products and HP replacement ink cartridges.

        **D.**        **HP's Good Faith Production to Date.**

Throughout the discovery process to date, HP has acted in good faith to provide Polaroid with discovery, including damages discovery. HP has produced sales unit and revenue information on all specific products HP identified and all specific products Polaroid has accused of infringement. HP has also produced thousands of pages of technical documents related to these products. HP has met and conferred in good faith with Polaroid to avoid burdening the Court with discovery matters. HP even attempted to work with Polaroid in October when Polaroid raised its new, ill-timed requests for greatly expanded damages discovery. While HP preserved its rights to challenge the relevance of all of the new information requested by Polaroid, HP agreed to produce virtually all of the additional discovery. *See* Letter from Bradley D. Coburn to G. Courtney Holohan (October 22, 2007) (Marsden Declaration, Ex. G). Letter from Bradley D. Coburn to G. Courtney Holohan (October 30, 2007) (Marsden Declaration, Ex. H). Given the timing of the requests, however, as well as the amount of information being requested (hundreds of additional hardware products and hundreds of alleged convoyed products), not to mention the need for HP to focus on *Markman* and the liability issues in the case, HP advised Polaroid that the newly requested documents could not be collected, reviewed, and produced for several months. Polaroid's insistence that HP produce everything immediately left HP no choice but to file this motion to preserve the current case schedule on the liability issues, and request that the damages portion of the case be deferred.

HP does not generally sell its LACE software, but instead gives it away with certain products it sells. To the extent HP tracks in the ordinary course of business the units of LACE software it gives away, HP provided this information to Polaroid. To the extent that HP does not track the distribution of the free software products in the ordinary course of business, HP provided Polaroid with a good faith estimate of the number of software LACE units that HP has distributed.

6

Polaroid assumes that HP already possesses or can readily obtain unit and revenue information on all "adaptive lighting offerings." Polaroid is wrong. HP does not track which of its products includes an adaptive lighting feature, or whether the product includes LACE. The only way to accurately determine which hardware products include the free LACE software would be to review the build of materials ("BOMs") or similar type documents for thousands of computer, printer, scanner, and camera SKUs. HP offered to provide Polaroid with all of these BOMs, as well as unit and revenue (and other) information for all of these thousands of SKUs, so that Polaroid itself could accurately calculate software LACE units. However, just identifying the BOMs to pull, reviewing them, and then producing them, would be very burdensome and would likely take months.

### E. Polaroid's Damages Theories.

#### 1. Polaroid's Attempt to Recover Royalties on Products that Do Not Contain LACE.

HP propounded interrogatory number 12 to elicit Polaroid's damages contentions, and Polaroid's support for those contentions. *See* HP Interrog. No. 12 to Polaroid (Marsden Declaration, Ex. I). In response, Polaroid provided only boiler plate damages language, and no explanation as to how it could be entitled to recover damages on products that do not contain LACE. *See* Polaroid's 1st Supp. Resp. to HP Interrog. No. 12 (Marsden Declaration, Ex. J).

In October, Polaroid began demanding for the first time that HP produce actual unit numbers, not estimates, on hardware products (computers, scanners, printers, cameras) that do not themselves contain LACE, but nevertheless ship with a free software LACE product. *See* Letter from G. Courtney Holohan to Bradley D. Coburn (October 18, 2007) (Marsden Declaration, Ex. K). Polaroid has not articulated a damages theory that supports the discovery it is now seeking. It appears that Polaroid hopes to bolster its damages claim based on sales of unaccused products, rather than focusing its damages model on the accused LACE software. There is no other explanation for Polaroid's demand for revenue for computers, scanners, printers, and cameras that do not use LACE.

  **2.  Polaroid's New and Overly Broad Convoyed Sales Requests.**

  Polaroid's novel approach to damages does not stop at its attempt to recover damages on noninfringing products. On October 19, 2007, Polaroid wrote HP and demanded that "HP immediately produce unit, revenue, profit, cost, bill of sale, and related sales data (by SKU, brand, and model number) for any HP offering that includes adaptive lighting and/or digital flash, and for any HP offering that is potentially used in any way with (e.g. paper and replacement ink cartridges), or offered in any way with, an HP product that includes adaptive lighting and/or digital flash." (Marsden Declaration, Ex. E). Prior to sending this letter, Polaroid had never articulated such a broad view of what it wanted HP to produce regarding alleged convoyed sales. To the contrary, Polaroid had previously agreed that it would initially limit its convoyed sales requests to those instances where HP sold an accused product with an unaccused product at the same time.

  The breathtaking scope of Polaroid's demand "…offering[s]…potentially used in any way with…," for example—is limited only by opposing counsel's imagination. (Marsden Declaration, Ex. G). By this request, Polaroid demands damages-related discovery of literally every product HP offers, and does so without providing any legal support for such broad discovery. To sell its aggressive damages theory to the jury, Polaroid apparently intends to call not one, but two damages experts.

**III. ARGUMENT**

  **A. Applicable Legal Standard for Bifurcation and Stay.**

  A court may bifurcate any trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b). The district court has broad discretion to order separate trials under this rule. *Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1212 (Fed. Cir. 1987). In patent cases, bifurcation of liability and damages is not uncommon, particularly when the damages issues are complicated and

8

extensive evidence would be necessary. *See E.I. Dupont De Nemours & Co. v. Phillips Petroleum Co.*, 656 F. Supp. 1343, 1346 (D. Del. 1987). The United States District Court for the District of Delaware has noted that "[i]n the context of patent cases, 'experienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury.'" *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002). This Court has noted that when deciding whether to bifurcate issues for trial, a court "should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case. *Id*. at 520. "Courts have substantial discretion in bifurcating trials in the interest of judicial economy, and bifurcation of damages from liability is commonplace." *Siam v. Potter*, 2006 WL 1530155, at *5 (N.D. Cal. June 5, 2006) (bifurcating damages from liability issues). "Patent cases are often uniquely amenable to bifurcation because of the complex nature of the damages determination and the extensive discovery that is often necessary to prove the nature and extent of those damages." *Novopharm Ltd. v. Torpharm, Inc.*, 181 F.R.D. 308, 310 (E.D.N.C. 1998) (granting motion to bifurcate).

When bifurcation of issues at trial is warranted, a stay of discovery regarding damages issues is also appropriate. *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1117 (D. Del. 1984); *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 984-986 (D. Del. 1982); *see also Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D 189, 191 (D. Del. 2004) (staying discovery on willfulness until after the trial on liability). As stated in *Ellingson Timber Co. v. Great Northern Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970):

> One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues.

**B.     Bifurcation And A Stay of Damages Discovery Will Mitigate The Prejudice to HP.**

**1.     HP's Requested Relief Is Necessary to Preserve HP's Ability to Prepare the Liability Case Under the Current Scheduling Order.**

The recent discovery demands spawned by Polaroid's novel and aggressive damages theories severely prejudice HP's ability to prepare its liability case. On November 30, 2007, the parties are required to exchange claim terms and proposed claim constructions. The parties must file the Joint Claim Construction brief on December 17, 2007. Opening claim construction briefs are due on January 11, 2008, with responsive claim construction briefs due on January 25, 2008. The parties should now be focusing on *Markman* issues, not on Polaroid's belatedly new damages requests.

As demonstrated above, HP has already produced all responsive unit and sales information maintained in the ordinary course of HP's business with respect to all accused (i.e., LACE-based) products. By waiting until this critical juncture of the case to ratchet up and greatly expand its damages discovery demands, Polaroid seeks to distract HP from focusing on claim construction and the core liability issues. The burden imposed on HP by Polaroid's new broadened discovery demands is compounded because they coincide with HP's fiscal year end, which will demand the attention of many of HP's accounting personnel who are most knowledgeable about the documents and information Polaroid is now seeking. Under the circumstances, bifurcating damages and staying damages discovery is a reasonable procedural remedy to keep this case on schedule and focused on the core liability issues.

**2.     Any Alleged Prejudice to Polaroid is the Result of Its Own Failure to Focus Its Discovery and Abide by the Parties' Agreements.**

On several occasions prior to October, the parties met and conferred on discovery issues. At none of these meet and confers did Polaroid demand (or even ask for) the broad discovery it now seeks. HP relied on these meet and confers to narrow and focus its document collection and

production effort. Specifically, HP relied on Polaroid's agreement at the September 14, 2007 meet-and-confer to initially limit convoyed sales discovery to those situations where HP sold an accused product at the same time as an unaccused product. Polaroid's new limitless approach to convoyed sales—which would have HP undertake a new, massive review and production—completely repudiates the understanding that the parties had reached on convoyed sales.

Polaroid defends the scope of its requests by arguing that "the accused products are HP offerings which include or included adaptive lighting and/or digital flash." *See* Letter from G. Courtney Holohan to Bradley D. Coburn (October 22, 2007) (Marsden Declaration, Ex. L). As discussed above, this position is inconsistent with Polaroid's infringement contentions which have focused only on LACE. It is also insupportable in light of Polaroid's responses to HP's interrogatory numbers 1 and 2, which called for Polaroid to identify all HP products Polaroid accuses of infringement. In those responses, Polaroid did not identify a single non-LACE algorithm product. HP relied on Polaroid's prior claim charts, interrogatory responses, and other representations regarding which products are accused. Polaroid should not be able to impede HP's preparation of its liability case by unilaterally broadening the accused products at this late date.[5]

    **C. Bifurcation And A Stay of Damages Discovery Will Conserve Judicial Resources, and the Resources of the Parties.**

Bifurcation and a stay of damages discovery will conserve judicial resources. Polaroid has accused over 250 products of infringement. The logical approach is to try the liability issues first to determine which, if any, versions of LACE infringe. That will likely reduce, if not eliminate, the number of accused products at issue. In appropriate cases, this Court has not only bifurcated issues for trial but stayed discovery on the issues that would not be reached without a finding of liability. *See Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 191 (D. Del.

2004) (staying discovery on willfulness until after the trial on liability). *ArthroCare Corporation v. Smith & Nephew, Inc.*, C.A. No. 01-504-SLR, at 3 (D. Del. Nov. 27, 2002) (attached hereto as Exhibit A).

Bifurcation and stay of damages discovery will allow the parties to focus on the upcoming *Markman* briefing and the liability issues. Resolution of *Markman* and the liability issues through a first trial will eliminate or greatly reduce the number of products that would need to be addressed in any subsequent damages trial. Furthermore, bifurcation and a stay of damages discovery favors judicial economy because it may encourage settlement to avoid a costly damages trial where the discovery and proof involved are substantial. *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 984 (D. Del. 1982).

### D.  Bifurcation And A Stay of Damages Will Enhance Juror Comprehension.

Bifurcation and a stay of damages discovery will also serve to simplify the issues before the jury. The liability portion of this case is already complex. Liability (both noninfringement and invalidity) will be highly dependent on complex source code and mathematical algorithms and technical expert testimony. If the damages case is not bifurcated, the jury will also be faced with determining infringement and damages on over **250** products. *See Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1117 (D. Del. 1984) (bifurcating and staying discovery to avoid juror confusion).

Deferring the damages issue and damages discovery until after the resolution of the liability issues, will reduce juror confusion and enhance juror comprehension.

---

[5] Polaroid has already received ample sales and damages information such that it cannot claim prejudice on the issue of commercial success in response to an obviousness defense.

**IV.   CONCLUSION**

For the foregoing reasons, HP respectfully requests that the Court bifurcate the issues of liability and damages for both discovery and trial.  Doing so would eliminate prejudice to HP, enhance judicial efficiency, and reduce jury confusion.

Dated:  November 6, 2007                  FISH & RICHARDSON P.C.

By:   */s/ William J. Marsden, Jr.*
William J. Marsden, Jr. (#2247)
919 N. Market Street, Suite 1100
Wilmington, DE  19801
Telephone:  (302) 652-5070
Facsimile:   (302) 652-0607
Email:  marsden@fr.com

John E. Giust *(pro hac vice)*
Matthew E. Bernstein *(pro hac vice)*
12390 El Camino Real
San Diego, CA  92130
Telephone:  (858) 678-5070
Facsimile:  (858) 678-5099
Emails:  giust@fr.com; bernstein@fr.com

Bradley D. Coburn *(pro hac vice)*
111 Congress Avenue, Suite 810
Austin, TX  78701
Telephone:  (512) 472-5070
Facsimile:  (512) 320-8935
Email:  coburn@fr.com

Attorneys for Defendant and Counterclaim-Plaintiff
Hewlett-Packard Company

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2007 I electronically filed with the Clerk of Court the foregoing HEWLETT-PACKARD COMPANY'S BRIEF IN SUPPORT OF ITS MOTION TO BIFURCATE LIABILITY AND DAMAGES AND STAY DAMAGES DISCOVERY using CM/ECF which will send electronic notification of such filing(s) to the following counsel:

| | |
|---|---|
| Jack B. Blumenfeld (#1014)<br>Julie Heaney (#3052)<br>Morris, Nichols, Arsht & Tunnell, LLP<br>1201 North Market Street<br>Wilmington, DE 19899-1347<br>Phone:  302-658-9200<br>Fax:  302-658-3989<br>Emails:  jblumenfeld@mnat.com; jheaney@mnat.com | Attorneys for Plaintiff and<br>Counterclaim-Defendant<br>Polaroid Corporation |

In addition, service will be made on the following counsel of record as indicated:

| | |
|---|---|
| *Via Electronic Mail*<br>Russell E. Levine, P.C./C. Graham Gerst<br>Michelle W. Jordan/David W. Higer<br>Maria A. Meginnes/C. Beasley<br>Kirkland & Ellis LLP<br>200 East Randolph Drive<br>Chicago, IL  60601<br>Phone:  312-861-2000<br>Fax:  312-861-2200<br>Emails:  rlevine@kirkland.com;<br>ggerst@kirkland.com; mjordan@kirkland.com;<br>dhiger@kirkland.com; mmeginnes@kirkland.com;<br>cbeasley@kirkland.com | Attorneys for Plaintiff and<br>Counterclaim-Defendant<br>Polaroid Corporation |

*Courtesy Copy Via Overnight Mail*
Michelle W. Jordan
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601
Phone:  312-861-2000
Fax:  312-861-2200

         */s/ William J. Marsden*
         William J. Marsden, Jr. (#2247)

14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARTHROCARE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 01-504-SLR |
| | ) | |
| SMITH & NEPHEW, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 27th day of November, 2002, having reviewed the papers submitted by the parties in connection with various motions filed by defendant;

IT IS ORDERED that defendant's motion to stay pending reexamination (D.I. 187) is denied, for the reasons that follow:

1. The United States Court of Appeals for the Federal Circuit recognizes that "[c]ourts have inherent power to manage their dockets and stay proceedings . . ., including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted). Courts clearly have the authority to order their cases to trial.

2. The Federal Circuit also has recognized that patent litigation in a district court and reexamination proceedings

before the PTO do not implicate a "precise duplication of effort" because "litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes." Id. at 1427.

    3. Given the court's view that its primary purpose is to manage litigation in an expeditious manner in order to create an appropriate record (through motion practice or trial) for review by the Federal Circuit, the court generally will not stay its cases pending reexamination proceedings absent extraordinary circumstances. In this case, where only one of the three patents is undergoing reexamination, where the patents at issue relate to an evolving and highly competitive market, and where the reexamination proceedings to date have not been conducted with what the court would consider "special dispatch", the court declines to find this an exceptional case warranting a stay. The court understands that, prior to trial, the PTO may issue rulings that will need to be considered, thus causing some inefficiencies in the pretrial and trial process. Nevertheless, the court concludes that such inefficiencies are an inherent byproduct of concurrent litigation and reexamination and, therefore, do not constitute exceptional circumstances justifying a stay of the litigation at bar.

IT IS FURTHER ORDERED that defendant's motion to bifurcate willfulness and damages and to stay discovery (D.I. 107) is granted. Discovery on the issues of willfulness and damages will be stayed until after the verdict on infringement and invalidity has been returned; these issues will be tried to a new jury.

IT IS FURTHER ORDERED that defendant's claim of privilege pertaining to redactions in certain documents (D.I. 190) is denied. The court finds that the information redacted is equivalent to the information required to be included in a privilege log, and thus not privileged information.

IT IS FURTHER ORDERED that defendant's second motion for leave to amend answer and counterclaim (D.I. 111) is granted. However, discovery and trial of defendant's newly added counterclaim for antitrust violations are stayed consistent with the above ruling on the issues of damages and willfulness.

IT IS FURTHER ORDERED that defendant's motion for reargument is denied, as is its motion to strike. (D.I. 160, 172)

                                                                  United States District Judge