IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POLAROID CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-738 (SLR) |
| | ) | |
| HEWLETT-PACKARD COMPANY, | ) | **REDACTED -** |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |

## POLAROID'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO PRECLUDE HEWLETT-PACKARD FROM RELYING ON UNTIMELY PRODUCED DISCOVERY

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, Delaware 19801
(302) 658-9200
jheaney@mnat.com
*Attorneys for Plaintiff Polaroid Corporation*

OF COUNSEL:

Russell E. Levine, P.C.
G. Courtney Holohan
Michelle W. Skinner
David W. Higer
Maria A. Meginnes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

Original Filing Date: May 23, 2008

Redacted Filing Date: June 2, 2008

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDING........................................................................1

SUMMARY OF ARGUMENT ...................................................................................................1

STATEMENT OF FACTS ..........................................................................................................2

    I.      DR. RANGAYYAN'S SUPPLEMENTAL EXPERT REPORT AND ERRATA............................................................................................................2

    II.     UNTIMELY DISCLOSURE OF ALLEGED NONINFRINGING ALTERNATIVES......................................................................................................4

    III.   UNTIMELY SALES AND FINANCIAL INFORMATION USED IN HP'S DAMAGES ANALYSIS ..............................................................................6

         A.     Polaroid Persistently Sought Damages Discovery From HP......................6

         B.     HP's Late Identification of Products Incorporating Particular Source Code ................................................................................................7

         C.     Additional Financial Documents ................................................................8

    IV.   UNTIMELY PRODUCTION OF LICENSE AGREEMENTS ...........................9

         A.     The Turchan Settlement Agreement ..........................................................9

         B.     Other Late-Produced License Agreements ...............................................10

    V.    UNTIMELY "LIST OF PATENTS" DOCUMENTS .........................................11

         A.     List of Patents (1998) (HP_97228).............................................................11

         B.     List of Patents (2008) (HP_97229).............................................................12

    VI.   OTHER LATE FACTUAL INFORMATION.....................................................12

         A.     Information in the Wallace Report .............................................................12

         B.     Additional Late Documents ......................................................................13

ARGUMENT ...........................................................................................................................14

    I.      LEGAL STANDARD FOR A MOTION TO PRECLUDE...................................14

    II.     PREJUDICE TO POLAROID ..........................................................................16

    III.   HP SHOULD BE PRECLUDED FROM RELYING ON UNTIMELY MATERIALS....................................................................................................17

CONCLUSION.........................................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amaya v. York Hospital*,
Civil Action No. 1:04-CV-1081, 2005 WL 5988683 (M.D. Pa., Dec. 28, 2005)............. 17

*Aventis Pharm. Inc. v. Barr Laboratories, Inc.*,
C.A. No. 06-286-GMS (D. Del. May 16, 2008) .................................................. 15, 16, 17

*Bridgestone Sports Co., Ltd. v. Acushnet Co.*,
No. Civ. A. 05-132-JJF, 2007 WL 521894 (D. Del. Feb. 15, 2007) .......................... 15, 16

*Finch v. Hercules, Inc.*,
No. Civ. A 92-251 MMS, 1995 WL 785100 (D. Del. Dec. 22, 1995) ............................ 14

*Goodman v. Lukens Steel*,
777 F.2d 113 (3d Cir. 1985), *affirmed* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d
572 (1987)............................................................................................................ 15

*In re Paoli R.R. Yard PCB Litigation*,
35 F.3d 717 (3d Cir. 1994)............................................................................... 16

*In re TMI Litigation*,
193 F.3d 613 (3d Cir. 1999).......................................................................... 2, 17

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
559 F.2d 894 (3d Cir. 1977)............................................................................ 15

*Philips Electronics North America Corp. v. Contec Corp.*,
No. Civ. A. 02-123-KAJ, 2004 WL 769371 (D. Del. April 5, 2004) ........................ 14, 17

*Praxair, Inc. v. ATMI Inc.*,
231 F.R.D. 457 (D. Del. 2005) ................................................................... 14, 15, 17

*Quinn v. Consol. Freightways Corp. of Del.*,
283 F.3d 572 (3d Cir. 2002)............................................................................ 15

*Stambler v. RSA Security, Inc.*,
243 F. Supp.2d 70 (D. Del. 2003) ................................................................... 18

*Stewart v. Walbridge, Aldinger Co.*,
162 F.R.D. 29 (D. Del. 1995) ........................................................................... 15

*U.S. v. 68.94 Acres of Land*,
918 F.2d 389 (3d Cir.1990)............................................................................ 15

**Rules**

Fed. R. Civ. P. 37(c) ................................................................................................................... 17

Fed. R. Civ. P. 37(c)(1).............................................................................................................. 14

## NATURE AND STAGE OF THE PROCEEDING

Pursuant to the Amended Scheduling Order entered September 7, 2007 (D.I. 51), document production was to be completed by August 31, 2007 (*id.* at 3). The parties subsequently agreed to close all fact discovery by February 8, 2008. (Exhibit 1, 1/31/08 email between Blumenfeld and Marsden.) Pursuant to Stipulation, expert discovery was to be completed by May 9, 2008, with initial expert reports due March 14, 2008 and rebuttal reports due April 18, 2008. (D.I. 124). Summary Judgment briefs were due May 16, 2008. Trial is set for December 8, 2008.

## SUMMARY OF ARGUMENT

In its summary judgment motions and expert reports, HP cites to, and relies upon, documents, opinions, and evidence not produced during fact discovery. HP also submitted a supplemental report from one of its experts well after the due date, which raises invalidity arguments not made and relies on prior art not cited in the original report. Polaroid seeks to strike the portions of HP's summary judgment briefs and expert reports that rely on untimely produced materials and to strike the supplemental expert report.[1]

In disregard of the Court's Scheduling Orders, HP has persistently produced documents, supplemental interrogatory responses, and supplements to initial disclosures late, and even disclosed witnesses late. HP then relied on these late materials in its expert reports and summary judgment motion to Polaroid's prejudice. For the most part, HP has not even offered an excuse for its habitual lack of diligence, and the excuses it has provided are inconsistent with the facts and unavailing.

---

[1]    A table of the materials Polaroid seeks to strike as well as where HP has relied on those materials is attached hereto as Appendix A for reference.

HP's unjustified and inexcusable pattern and practice of late production has resulted in serious prejudice to Polaroid not only because Polaroid was denied the opportunity to use such material in discovery, but also because HP has relied on these untimely materials in its expert reports and summary judgment briefs.  These late materials should be stricken.  *In re TMI Litigation*, 193 F.3d 613, 722 (3d Cir. 1999) (excluding untimely reports where there was a "pattern of filings" in violation of scheduling orders and commenting that the "pattern was as persistent as it was unjustified").

A prime example is HP's submission of a lengthy supplemental invalidity expert report by Dr. Rangayyan just hours before Polaroid's rebuttal report to Dr. Rangayyan's initial report was due (with no provision built into the schedule to rebut new opinions).  This supplemental report injected new invalidity arguments and added arguments based on prior art not relied upon in Dr. Rangayyan's initial report.  HP explained that Dr. Rangayyan needed to submit that supplemental report to respond to positions in Polaroid's infringement expert report that were allegedly disclosed for the first time.  Dr. Rangayyan admitted, however, that he had never even looked at Polaroid's infringement positions in its interrogatory answers before submitting his initial report.[2]

## STATEMENT OF FACTS

I.     DR. RANGAYYAN'S SUPPLEMENTAL EXPERT REPORT
       AND ERRATA

On March 14, 2008, HP submitted an invalidity expert report from Dr. Rangayyan and Polaroid submitted an infringement expert report from Dr. Agouris.  On April 18, 2008, just a

---

[2]    There are a significant number of other untimely materials produced by HP that are not addressed herein.  To the extent that HP seeks to rely on them in further motion practice, on its exhibit list, or in any other capacity, Polaroid reserves the right to seek to preclude those additional late materials at that time.

few hours before Dr. Agouris' rebuttal to Dr. Rangayyan's invalidity expert report was due, HP served a 71-page Supplemental Expert Report from Dr. Rangayyan. This report came *five* weeks after the March 14, 2008 deadline for opening expert reports. Significantly, Dr. Rangayyan's extremely tardy supplemental report contained new opinions with respect to each reference cited in his expert report (Exhibit 2, Dr. Rangayyan Supp. Report at ¶¶ 57-139; 156-181; 184-207), opinions about two entirely new pieces of prior art — Okada and Iida (*id*. at ¶¶ 40-56; 140-155; 182-183; 208), as well as a new invalidity defense, lack of enablement (*id.* at ¶¶ 209-222) and new opinions with respect to each reference cited in his expert report including new anticipation defenses for those references. (*Id.* at § 4, *see also* ¶ 36).

Dr. Rangayyan claimed that he drafted that supplemental report to respond to Polaroid's expert report which, "for the first time advances certain specific theories regarding the alleged scope of the asserted claims." (*Id.* at ¶ 19.) Dr. Rangayyan confirmed during his deposition that HP lawyers asked him to put together the supplemental report in response to Dr. Agouris' initial expert report. (Exhibit 3, Dr. Rangayyan Dep. 52:14-54:15.)

There is no basis for HP's "excuse" for Dr. Rangayyan's supplemental report. Dr. Rangayyan never looked at Polaroid's infringement positions, which were set forth in response to interrogatories, in preparing his initial report. (*See id.*, Dr. Rangayyan Dep. Tr. at 74:10-15-77:4; *see also* Exhibit 4, Dr. Rangayyan Report at Appendix B.) No alleged change in Polaroid's infringement positions can justify his supplemental report when he, by his own admission, was not aware of and did not look at, much less rely on, Polaroid's infringement contentions when preparing his initial report. ████████████████████

████████████████████████████████████████

████████████████████████████████████████

3

████████████████████████████████

███████████████████████████████████████████████

████████████████

HP also submitted an "Errata to Expert Report of Dr. Rangaraj Rangayyan" the morning of his deposition expounding further on his opinions.    (Exhibit 6, Dr. Rangayyan Errata)

███████████████████████████████████████████████

██████████████████████████████

II.    UNTIMELY DISCLOSURE OF ALLEGED NONINFRINGING
        ALTERNATIVES

Polaroid served an interrogatory and document requests seeking information and documents about potential noninfringing alternatives.    (*See, e.g.*, Exhibit 7, Polaroid's Third Set of Interrogs. at No. 22; Exhibit 8, Polaroid's Second Request for Production of Documents and Things at Nos. 150-151; Exhibit 9, Polaroid's Fourth Request for Production of Documents and Things at Nos. 424-430.)  Although it was unnecessary, given HP's obligations under the Federal Rules, Polaroid again asked for documents regarding noninfringing alternatives in correspondence following its interrogatory.  (Exhibit 10, 12/3/07 Ltr. from Skinner to Coburn.)

███████████████████████████████████████████████

████████

████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

4

████████████████████████████████████



███████████████████████████████████████████

Also, in HP's second supplement to its initial disclosures provided after the close of fact discovery and after the submission of initial expert reports, HP disclosed for the first time that certain witnesses previously identified (*i.e.*, Rhanjit Bhaskar, Paul Fredrickson, Choon Hee Lee, and Julie Lee) as well as previously-undisclosed witness David Berfanger, had knowledge about alleged noninfringing alternatives. (Exhibit 16, HP's Second Supp. Initial Disclosures at 2-3.) Polaroid objected and advised HP that it would seek to preclude this late supplement and its untimely information. (Exhibit 17, 3/21/08 Ltr. from Skinner to Bernstein.) HP provided no explanation for its delay.

██████████████████████████████████

████████████████████████     ████████

███████████████████████████ Polaroid was not given an opportunity to explore the knowledge of these witnesses in their individual capacities concerning noninfringing alternatives during discovery.[4]

III.   **UNTIMELY SALES AND FINANCIAL INFORMATION USED IN HP'S DAMAGES ANALYSIS**

A.   **Polaroid Persistently Sought Damages Discovery From HP**

Polaroid issued numerous discovery requests for financial information (including unit, revenue, and price data) for HP products practicing the accused technology. (*See, e.g.*, Exhibit 19, Polaroid's First Request for Production of Documents and Things at Nos. 4, 6, 8;

---

[4]   Notably, Mr. Fredrickson also provided an expert report of his own on behalf of HP.

████████████████████████████

Exhibit 8, Polaroid's Second Request for Production of Documents and Things at No. 202; Exhibit 9, Polaroid's Fourth Request for Production of Documents and Things at Nos. 285-286, 358, 360, 362-363; Exhibit 20, Polaroid's Fifth Request for Production of Documents and Things at Nos. 501-501, 524-525.)   Polaroid complained about missing unit, revenue, and price information beginning in September of 2007 and appeared twice before this Court to address deficiencies in HP's production.   Indeed, on November 6, 2007, HP told the Court that it had provided all of the information Polaroid was seeking.   (Exhibit 21, 11/6/07 hearing transcript.) Yet, in the months following this hearing, Polaroid wrote numerous letters to HP regarding continued deficiencies, enclosing detailed lists of missing information.   (*See, e.g.*, Exhibit 22, 11/15/07 Ltr. from Holohan to Coburn (No. 1); Exhibit 23, 11/15/07 Ltr. from Holohan to Coburn (No. 2); Exhibit 24, 12/19/07 Email from Holohan to Bernstein.)[5]   HP still had not remedied the deficiencies repeatedly highlighted by Polaroid by the close of fact discovery. (Exhibit 25, 1/29/08 Ltr. from Meginnes to Bernstein; Exhibit 26, 2/11/08 Letter from Meginnes to Bernstein.)

> **B.**    **HP's Late Identification of Products Incorporating Particular Source Code**

On March 20, 2008, after the close of all fact discovery and the submission of initial expert reports, HP served its Third Supplemental Response to Polaroid's First Set of Interrogatories (No. 15).   (Exhibit 13, March 20, 2008 Interrogs. at No. 15.) ██████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[5]    The correspondence between the parties on these issues is extremely voluminous.  Polaroid cites here only a representative sampling of its communications with HP.

████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████    Polaroid objected to this late

supplementation and advised HP that it would move to preclude HP from using the untimely

interrogatory responses.  (Exhibit 27, 3/25/08 Ltr. from Meginnes to Bernstein.)  ████████

██████████████████████████████████████████████████

████████████████████████████████████████    Ex. 10 (which relies on Ex.

2).)  HP also relied on HP's late response to Interrogatory No. 15 in its Memorandum In Support

of Its Motion for Summary Judgment on Grounds of Estoppel, And, In the Alternative Or In

Addition, Laches ("HP's Estoppel/Laches Memorandum").    (HP's Estoppel/Laches

Memorandum (D.I. 140), at 8-9, 20, filed 5/16/08 citing Ex. 49 (March 20, 2008 Interrogs. at 15-

19.)  Polaroid never had an opportunity to conduct discovery related to these additional and/or

different HP products, because HP did not provide the information until after the close of

discovery.  Yet, Mr. Wallace's unit sales calculations rely on this new undisclosed information.

HP provided no excuse for its delay.

C.    Additional Financial Documents

HP also produced POL APR1 (HP_97225), Polaroid Apr8 (HP_97226), and Fame 04-05

(IPAQ Financial Information) (HP_97227) on April 15, 2008, more than two months after the

close of fact discovery, and a month after initial expert reports.  (Exhibit 28, 4/15/08 Ltr. from

Kruizinga to Meginnes.)  Polaroid objected to the late production of these documents and others

and advised HP that Polaroid would seek to preclude HP's or its expert's reliance on these

documents.  (Exhibit 29, 4/16/08 Ltr. from Meginnes to Giust.)   HP has never provided any

justification for its delay.  ████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████

IV.    UNTIMELY PRODUCTION OF LICENSE AGREEMENTS

A.    The Turchan Settlement Agreement

HP also withheld from Polaroid the Turchan Settlement Agreement (the "Turchan Agreement") and then produced it too late.  On October 3, 2007, third party Manual C. Turchan objected to the production of the Turchan Agreement to Polaroid, and as a result, HP requested that Polaroid destroy its copies.  (*See* Exhibit 30, 10/3/07 Ltr. from Bustamante to Jordan.) Polaroid complied, but also contacted Mr. Turchan to see if he would change his mind.  (*See* Exhibit 31, 10/3/07 E-mail from Holohan to Turchan.)  Mr. Turchan decided he would allow production of the Turchan Agreement if counsel for HP would agree to cover his legal costs. (*See* Exhibit 32, 10/5/07 E-mail from Turchan to Laney.)  Counsel for HP declined the offer, and instead suggested that Polaroid could cover Mr. Turchan's legal costs.  (*See* Exhibit 33, 10/8/07 Ltr. from Bustamente to Holohan.)  Polaroid did not agree to pay Mr. Turchan's legal costs. Therefore, HP did not produce the Turchan Agreement to Polaroid.  (*See id.*)

████████████████████████████████████████

████████████████████████████████████████

██  Polaroid asked for a copy of the Turchan Agreement on April 28, 2008 (Exhibit 34, 4/28/08 Ltr. from Meginnes to Bernstein), and HP responded that the Turchan Agreement (HP_66695-66707) had already been produced in October of 2007, but nonetheless provided a copy of the Turchan Agreement.  (Exhibit 35, 4/28/08 Email from Bernstein to Meginnes.)

Polaroid did *not* have a copy of the Turchan Agreement during discovery, based on HP's demand that the earlier produced copy be destroyed and not used for any purpose in the

████████████████████████████

litigation, and it was not available to Polaroid's expert. But HP continued to use this document and share it with its damages expert, who relied on it in his Report.

B.     Other Late-Produced License Agreements

By May 22, 2007, Polaroid requested HP's license agreements. (*See, e.g.*, Exhibit 19, Polaroid's First Request for Production of Documents and Things at No. 18; Exhibit 8, Polaroid's Second Request for Production of Documents and Things at Nos. 177-78, 197-200; Exhibit 20, Polaroid's Fifth Request for Production of Documents and Things at Nos. 510-513.) The parties subsequently agreed upon the scope of license agreements to be produced by both parties, and Polaroid followed up with HP to attempt to ensure that HP's license production was complete. (*See, e.g.*, Exhibit 36, 10/03/07 Email from Holohan to Coburn; Exhibit 37, 10/07/07 Ltr. from Holohan to Coburn; Exhibit 38, 10/19/07 Ltr. from Holohan to Coburn.)

As noted above, the discovery cutoff was February 8, 2008. After that cutoff, HP produced an amendment to the license agreement with Jack Holm (HP_95331-95333) on March 10, 2008, (Exhibit 40, 3/10/08 Ltr. from Kruizinga to Meginnes), the RCT Settlement Agreement (HP_95334-95344) on March 11, 2008 (Exhibit 39, 3/11/08 email from Pierce to Gerst), an attachment to a 2004 Flashpoint License Agreement (HP_95345-95363) on March 12, 2008 (Exhibit 41, 3/12/08 Email from Pierce to Meginnes and Higer), and a Motorola License Agreement (HP_97162-97221) on April 2, 2008 (Exhibit 42, 4/2/08 Letter from Kruizinga to Meginnes). Each of these agreements was in HP's possession, custody and control during the discovery period but not produced until after the close of fact discovery, and the Motorola License Agreement was produced after the submission of initial expert reports. Each time, Polaroid objected to HP's ongoing late production of documents and advised HP that Polaroid would seek to preclude HP and its experts from relying on the untimely production. (Exhibit 12, 3/18/08 Ltr. from Higer to Giust; Exhibit 43, 4/2/08 Ltr. from Meginnes to Giust.)

In only one instance did HP try to justify its delay. ██████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████ Therefore, HP had no good excuse for delaying to produce any of these agreements.

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████

V.     UNTIMELY "LIST OF PATENTS" DOCUMENTS

A.     List of Patents (1998) (HP_97228)

On April 15, 2008, after the close of fact discovery and after the submission of initial expert reports, HP produced a document called List of Patents (1998) (HP_97228). (Exhibit 28, 4/15/08 Ltr. from Kruizinga to Meginnes.) Polaroid objected to the late production of this document and advised HP that Polaroid would seek to preclude HP's or its expert's reliance on these documents. (Exhibit 29, 4/16/08 Ltr. from Meginnes to Giust.) HP provided no justification for its delay.

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████

11

████████████████████████████████████████

B.     List of Patents (2008) (HP_97229)

Then, on April 18, 2008, the day that rebuttal reports were due, HP produced another document called List of Patents (2008) (HP_97229).  (Exhibit 45, 4/18/08 Ltr. from Kruizinga to Meginnes.)  Polaroid objected to the late production of this document and others and advised HP that Polaroid would seek to preclude HP's or its expert's reliance on these documents.  (Exhibit 46, 4/22/08 Ltr. from Meginnes to Giust.)  Again, HP provided no excuse for its delay.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

VI.    OTHER LATE PRODUCED INFORMATION

       A.     Information in the Wallace Report

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████  Polaroid asked during discovery for information regarding the costs incurred by HP to develop its infringing software  (*see, e.g.*, Exhibit 19, Polaroid's First Request for Production of Documents and Things at Nos. 12), but HP did not provide it.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

12

████████████████████████████████████

██████████████████████████████████████████████████████████████

HP had never provided this factual information during discovery, which was clearly responsive to Polaroid's discovery requests.

██████████████████████████████████████████████████████████████

████████████████████████████     ██████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████     Because HP had not disclosed these witnesses during fact discovery (or even in its untimely supplement to its initial disclosures), Polaroid was not alerted that it should take any discovery of them.  Again, HP provided no excuse for its failure to disclose these witnesses during fact discovery.

### B.     Additional Late Documents

There are a slew of other documents that HP produced after the February 8, 2008 fact discovery cutoff, and after initial expert reports.  For instance, HP produced Polaroid SKU Pricing (HP_95364) on March 13, 2008 (Exhibit 48, 3/13/08 Ltr. from Kruizinga to Meginnes), HP native files (Unit/Revenues) (HP_97160-61) on March 31, 2008 (Exhibit 49, 3/31/08 Ltr. from Kruizinga to Meginnes), and HP Patent List, PSIZuserpermonth, PE Data_Summer06 (HP_97222-97224) on April 11, 2008 (Exhibit 50, 4/11/08 Ltr. from Kruizinga to Meginnes.) Polaroid has repeatedly objected to HP's ongoing late production of documents and advised HP that Polaroid would seek to preclude HP and its experts from relying on the untimely production. (Exhibit 12, 3/18/08 Ltr. from Higer to Giust; Exhibit 51, 4/14/08 Ltr. from Meginnes to Giust.) HP has not provided any explanation for its late production of these documents.  These documents were clearly called for pursuant to Polaroid's document requests and would have been useful in preparing Polaroid's damages analysis.  Should HP rely on these documents or

██████████████████████████████████████

any other untimely-produced materials, Polaroid will seek to preclude those late materials at that time.

## ARGUMENT

### I.    LEGAL STANDARD FOR A MOTION TO PRECLUDE

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by [the rules of discovery], the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "That provision 'was added to the Rules to serve as an 'automatic sanction' intended to provide 'a strong inducement for disclosure of material that the disclosing party would expect to use as evidence[.]'" *Philips Electronics North America Corp. v. Contec Corp.*, No. Civ. A. 02-123-KAJ, 2004 WL 769371, at *1 (D. Del. April 5, 2004) (citing Advisory Committee Note to 1993 Amendments to Fed. R. Civ. P. 37). Therefore, the burden is on the disclosing party to provide justification for its delay. *Id.* at *1 (where the court disagreed that the wronged party should have moved to compel an extension of discovery in light of the untimely material because the onus should be on the disclosing party to justify its delay). The party submitting the late material is not simply excused for using its "best efforts" to provide the material on time. *Id.* ("An 'A' for effort does not excuse CMT's failure to abide by its disclosure obligations").

Because fidelity to the constraints of scheduling orders and deadlines is critical to the court's management responsibilities, exclusion of otherwise admissible evidence is sometimes necessary. *Praxair, Inc. v. ATMI Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005). (quoting *Finch v. Hercules, Inc.*, No. Civ. A 92-251 MMS, 1995 WL 785100 at *9 (D. Del. Dec. 22, 1995) (The "flouting of discovery deadlines causes substantial harm to the judicial system")). Although Polaroid recognizes that the Third Circuit considers this to be an "extreme sanction," as

14

explained in more detail below, this is a case where exclusion of HP's delinquent production of information is appropriate because HP has, at the very least, shown a flagrant disregard of the scheduling order entered in this case and has provided no justification for its repeated delay. *Bridgestone Sports Co., Ltd. v. Acushnet Co.*, No. Civ. A. 05-132-JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007) (holding that the exclusion of critical evidence should not normally occur "absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence"); *Quinn v. Consol. Freightways Corp. of Del.*, 283 F.3d 572, 577 (3d Cir. 2002) (same).  Courts are specifically authorized to exclude evidence proffered by the disobedient party as a sanction for failure to comply with the scheduling order.  *Praxair, Inc.*, 231 F.R.D. at 463 (citing *U.S. v. 68.94 Acres of Land*, 918 F.2d 389, 396 (3d Cir. 1990)).

Factors to consider in deciding whether to exclude documents or testimony include the ability of the party to have discovered the materials earlier, validity of the excuse offered by the disclosing party, willfulness of the party's failure to comply with the court's order, the party's intent to mislead or confuse his adversary, and the importance of the excluded materials. *Praxair Inc.* 231 F.R.D. at 463, citing *Stewart v. Walbridge, Aldinger Co.*, 162 F.R.D. 29, 31 (D. Del. 1995, citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904 (3d Cir. 1977), overruled on other grounds, *Goodman v. Lukens Steel*, 777 F.2d 113 (3d Cir. 1985), *aff'd* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987))).  The court must then weigh: (1) the prejudice or surprise to the non-disclosing party against whom the excluded witnesses would testify; (2) the ability to cure the prejudice; (3) the extent to which allowing the unlisted witness would disrupt trial; and (4) bad faith or willfulness in failing to comply with the court's order.  *Praxair Inc.*, 231 F.R.D. at 463 citing *Meyers*, 559 F.2d at 904-05); *Aventis Pharm. Inc. v. Barr Laboratories, Inc.*, C.A. No. 06-286-GMS (D. Del. May 16, 2008).  Although this analysis

15

is geared towards whether to allow undisclosed witnesses at trial, courts have recognized the applicability of the *Pennypack* factors more broadly to cover a Rule 37 exclusion analysis. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 791 (3d Cir. 1994). Moreover, as is the case here, "[c]ourts applying the *Pennypack* factors in the case of sophisticated, complex litigation involving the parties represented by competent counsel have been less indulgent in their application and more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co.*, 2007 WL 521894, at *4; *Aventis*, C.A. No. 06-286-GMS (D. Del. May 16, 2008). (granting motion to plaintiff from asserting an invention date different from the date it had previously asserted in discovery).

## II.    PREJUDICE TO POLAROID

HP's pattern of failing to abide by the Scheduling Order in this case cannot be ignored. The significant amounts of late material produced by HP have severely prejudiced Polaroid, and HP has no explanation for its inability to abide by the court-ordered deadlines. *Bridgestone Sports Co.*, 2007 WL 521894, at *5 (where the court agreed that if the defendant were permitted to rely on the untimely materials, the plaintiff would be required to conduct additional fact and expert discovery in order to formulate a proper response, and because these were consequences that could have been avoided, the court declined to modify the scheduling order and allow the defendant to rely on the untimely materials). Moreover, the pervasive effect of HP's tardiness would require the reopening of fact discovery, a re-do of expert reports, expert rebuttal reports and associated expert discovery, and rewriting and resubmission of summary judgment motions. This would be an unreasonable accommodation for HP. The untimely materials should be stricken and any prejudice HP suffers is a result of its own actions. *Id.* (where the Court concluded that any prejudice suffered by the defendant from its reliance on the stricken materials

16

in the report of its expert witness was caused by the defendant's own actions); *Aventis*, C.A. No. 06-286-GMS (D. Del. May 16, 2008).

### III.     HP SHOULD BE PRECLUDED FROM RELYING ON UNTIMELY MATERIALS

HP should not be permitted to rely on documents it never produced in discovery, witnesses it never identified in discovery, or any expert opinion or summary judgment motion that relies upon such untimely materials.  Dr. Rangayyan's supplemental expert report should be stricken and HP should be precluded from making the arguments raised for the first time in that report, because that report was submitted over a month after the due date for expert reports and, as shown above, HP's "excuse" for submitting a supplemental report is inconsistent with the facts because Polaroid provided its contentions long before Dr. Rangayyan's initial expert report was due.  *Praxair Inc.*, 231 F.R.D. at 463 (excluding an expert's supplemental report because it was filed a month after the close of discovery); *In re TMI Litigation*, 193 F.3d at 721-722 (applying the *Pennypack* factors to conclude that defendants would be prejudiced by the admission of some untimely reports and therefore the reports were excluded); *Amaya v. York Hospital*, Civil Action No. 1:04-CV-1081, 2005 WL 5988683, at *1-2 (M.D. Pa., Dec. 28, 2005) (where the court, applying the *Pennypack* factors, refused to allow an expert to testify for failure to comply with the expert disclosure requirements); *see also* Fed. R. Civ. P. 37(c).  Similarly, Dr. Rangayyan's errata, produced moments before his deposition and two months after the deadline for initial expert reports, was untimely and should be stricken.

As to the identification of alleged noninfringing alternatives, other damages documents and financial information, license agreements and other documents, there simply can be no justification for HP's systematic tardiness.  Therefore, the documents referenced above should be stricken.  *See Philips* 2004 WL 769371, at *1 (excluding documents produced after the close of

discovery as untimely).  HP likewise should not be permitted to introduce testimony of late

disclosed witnesses, or rely on the interviews of witnesses never disclosed during fact discovery.

*See Stambler v. RSA Security, Inc*., 243 F. Supp.2d 70, 73 (D. Del. 2003) (excluding the

testimony of one of defendants' witnesses because defendants failed to identify the witness as a

potential trial witness in a timely manner).

## **CONCLUSION**

For the foregoing reasons, this Court should grant Polaroid's motion and preclude HP

from relying on untimely produced documents, opinions and evidence, and strike the portions of

HP's expert reports and summary judgment briefs that rely on them.


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

_____

OF COUNSEL:

Russell E. Levine, P.C.
G. Courtney Holohan
Michelle W. Skinner
David W. Higer
Maria A. Meginnes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

May 23, 2008
2341561

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, Delaware  19801
(302) 658-9200
jheaney@mnat.com
   *Attorneys for Plaintiff Polaroid Corporation*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 2, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

William J. Marsden, Jr.
FISH & RICHARDSON P.C.

I also certify that copies were caused to be served on June 2, 2008 upon the following in the manner indicated:

## BY E-MAIL

William J. Marsden, Jr.
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19801

Matthew Bernstein
John E. Giust
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
5355 Mira Sorrento Place
Suite 600
San Diego, CA 92121-3039

Bradley Coburn
FISH & RICHARDSON P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701

Daniel Winston
CHOATE HALL & STEWART, LLP
Two International Place
Boston, MA 02110

/s/ Julia Heaney

Julia Heaney (#3052)

# TAB A

| MATERIAL POLAROID SEEKS TO STRIKE | WHERE HP RELIED ON THESE MATERIALS |
|---|---|
| Dr. Rangayyan's Supplemental Report and Errata | |
| Turchan Agreement (HP_66695-66707) | Wallace Report at Ex. 6 at 11 |
| Amendment to the license agreement with Jack Holm (HP_95331-95333) | Wallace Report at Ex. 6 at 5 |
| Attachment to the 2004 Flashpoint License Agreement on March 12, 2008 (HP_95345-95363) | Wallace Report at 36, Ex. 6 at 3, Ex. 7 at 1; and HP's Estoppel/Laches Memo., at 9, 21, 29, Ex. 2 at 32-37. |
| RCT Settlement Agreement (HP_95334-95344) | Wallace Report at 32, 38, Ex. 6 at 11 |
| Motorola License Agreement (HP_97162-97221) | Wallace Report at 40-41, Ex. 8 at 4 |
| (undisclosed witness) Chris Hayes | Wallace Report at 2, 80, Ex. 2 n. k |
| (undisclosed witness) Bloor Redding | Wallace Report at 3, 33, 35-37, 56 |
| (undisclosed witness) Ariel Reich | Wallace Report at 3, 40-41 |
| (undisclosed witness) Paul Ruiz | Wallace Report at 3, 81 |
| (undisclosed witness) Carol Zampell | Wallace Report at 4, 62 |
| Rhanjit Bhaskar | 2nd Supp. Initial Disclosures (knowledge of noninfringing alternatives); and Wallace Report at 2, 63-64 |
| Paul Fredrickson | 2nd Supp. Initial Disclosures (knowledge of noninfringing alternatives), and Wallace Report at 2, 63-64 |
| Choon Hee Lee | 2nd Supp. Initial Disclosures (knowledge of noninfringing alternatives) |
| Julie Lee | 2nd Supp. Initial Disclosures (knowledge of noninfringing alternatives) |

| MATERIAL POLAROID SEEKS TO STRIKE | WHERE HP RELIED ON THESE MATERIALS |
|---|---|
| (late-disclosed witness) David Berfanger | 2nd Supp. Initial Disclosures (knowledge of noninfringing alternatives); Supp. Response to Polaroid's 3rd Set of Interrogatories (No. 22). |
| HP's Third Supplemental Response to Polaroid's First Set of Interrogatories (No. 15) | Wallace Report at 10, Exs. 2A-2G (upon which Exhibit 2 is based) and Ex. 10 (which relies on Ex. 2); and HP's Estoppel/Laches Memorandum, at 8-9, 20, Ex. 49. |
| HP's Supplemental Responses to Polaroid's Third Set of Interrogatories (No. 22) | Wallace Report at 51, 61, 64-65 |
| POL APR1 (HP_97225)) | Wallace Report at Exs. 2A-2G (and indirectly at Ex. 2 which relies on Exs. 2A-2G) |
| Polaroid Apr8 (HP_97226) | Wallace Report at Exs. 2A-2G (and indirectly at Ex. 2 which relies on Exs. 2A-2G) |
| Fame 04-05 (IPAQ Financial Information) (HP_97227) | Wallace Report Ex. 2 |
| List of Patents (1998) (HP_97228) | Wallace Report at 58 |
| List of Patents (2008) (HP_97229) | Wallace Report at 58 |
| ██████████████████████ | HP's Supplemental Responses to Polaroid's Third Set of Interrogatories (No. 22) |
| Factual information clearly requested during discovery concerning HP's financials (and not provided) | Wallace Report at 58, 81 |