IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POLAROID CORPORATION,

    Plaintiff and Counterclaim Defendant,

    v.

HEWLETT-PACKARD COMPANY,

    Defendant and Counterclaim Plaintiff.

C.A. No. 06-738-SLR

**REDACTED**

## DEFENDANT HEWLETT-PACKARD COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF POLAROID CORPORATION'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT

**FISH & RICHARDSON P.C.**
William J. Marsden, Jr. (#2247)
Raymond N. Scott, Jr. (#4949)
919 N. Market Street, Suite 1100
Wilmington, DE 19801
Tel.: (302) 652-5070
Fax: (302) 652-0607
Email: *rscott@fr.com*

Robert S. Frank, Jr. *(pro hac vice)*
Daniel C. Winston *(pro hac vice)*
Carlos Perez-Albuerne *(pro hac vice)*
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02109
Tel.: (617) 248-5000
Fax: (617) 248-4000

John E. Giust *(pro hac vice)*
Matthew E. Bernstein *(pro hac vice)*
MINTZ, LEVIN, COHN, FERRIS,
    GLOVSKY AND POPEO PC
5355 Mira Sorrento Place, Suite 600
San Diego, CA 92121-3039
Tel.: (858) 320-3000
Fax: (858) 320-3001

*Attorneys for Defendant and Counterclaim-Plaintiff
Hewlett-Packard Company*

Dated: June 5, 2008

4336846v1

# REDACTED

## TABLE OF CONTENTS

Page(s)

NATURE AND STAGE OF THE PROCEEDINGS ....................................................1

SUMMARY OF ARGUMENT ...............................................................................1

STATEMENT OF THE FACTS ..............................................................................1

    A.    The '381 Patent - Written Description. ....................................................2

    B.    '381 Patent - Claims 1-3. .....................................................................6

    C.    The Accused System. ...........................................................................8

ARGUMENT ....................................................................................................11

    I.    THE SUMMARY JUDGMENT STANDARD. ....................................................11

    II.    ON EITHER PARTY'S CLAIM CONSTRUCTION, POLAROID'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT SHOULD BE DENIED AND HP'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT SHOULD BE GRANTED. ..............11

        A.    ...................................................11

            1.    There Is No Literal Infringement. ......................................13

            2.    The Doctrine Of Equivalents Is Not Available To Polaroid. ...............................................................................14

            3.    Polaroid's Arguments Are Without Merit. ........................15

        B.    ...........................20

    III.    ON HP'S CLAIM CONSTRUCTION, SUMMARY JUDGMENT OF NON-INFRINGEMENT SHOULD BE GRANTED; ON POLAROID'S PROPOSED CLAIM CONSTRUCTION, ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT. ...............................................22

        A.    HP's Claim Construction Should Be Adopted, And Summary Judgment Of Non-Infringement Granted. ..................................22

        B.    On Polaroid's Claim Construction, Summary Judgment Should Be Denied Because Fact Issues Remain. .....................................24

REDACTED

**TABLE OF CONTENTS**
**(Continued)**

Page(s)

1. ......................25

2. ...........26

IV.   POLAROID'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT SHOULD BE DENIED BECAUSE, UNDER ANY CLAIM CONSTRUCTION, THERE ARE DISPUTES OF FACT.......................27

CONCLUSION.........................................................................................................30

4336846v1

## <u>TABLE OF AUTHORITIES</u>

**CASES**

CAE Screenplates, Inc. v. Heinrich Fielder GMBH & Co., KG,
    224 F.3d 1308 (Fed. Cir. 2000)................................................................................21

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)................................................................................................11

Eastman Kodak Co. v. Image Technical Servs.,
    504 U.S. 451 (1992)................................................................................................11

Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,
    344 F.3d 1359 (Fed. Cir. 2003)..........................................................................14-15

Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.
    535 U.S. 722 ..........................................................................................................14

Harris Corp. v. Ericsson, Inc.,
    417 F.3d 1241 (Fed. Cir. 2005)...............................................................................23

IMS Technology, Inc. v. Haas Automation, Inc.,
    206 F.3d 1422 (Fed. Cir. 2000)...............................................................................30

Kemco Sales, Inc. v. Control Papers Co., Inc.,
    208 F.3d 1252 (Fed. Cir. 2000)...............................................................................23

Mas-Hamilton Group v. LaGard, Inc.,
    156 F.3d 1206 (Fed. Cir. 1998)...............................................................................13

NMT Medical Inc. v. Cardia, Inc.,
    239 Fed. Appx. 593 (Fed. Cir. 2007).......................................................................30

Tandon Corp. v. U.S. Int'l Trade Comm'n,
    831 F.2d 1017 (Fed. Cir. 1987)...............................................................................21

Vanmoor v. Wal-Mart Stores,
    201 F.3d 1363 (Fed. Cir. 2000)...............................................................................11

Wahpeton Canvas Co. v. Frontier, Inc.,
    870 F.2d 1546 (Fed. Cir. 1989).................................................................................7


**STATUTES**

35 U.S.C. § 112, ¶ 6................................................................................................22

4336846v1

## NATURE AND STAGE OF THE PROCEEDINGS

Polaroid Corporation ("Polaroid") alleges that certain software algorithms developed by Hewlett-Packard Company ("HP") infringe U.S. Patent No. 4,829,381 (the "'381 patent"). Fact and expert discovery have been conducted. Claim construction has been briefed. HP has filed a Motion For Summary Judgment Of *Non*-Infringement of *all* asserted claims of the '381 patent. Polaroid has filed a Motion For Summary Judgment Of Infringement of claims 1-3 only. This memorandum is filed in opposition to Polaroid's Motion For Summary Judgment Of Infringement.

## SUMMARY OF ARGUMENT

Polaroid's Motion For Summary Judgment should be denied. It assumes that the Court will rule in Polaroid's favor on every disputed claim construction issue and it relies on facts which are (and which Polaroid knows to be) disputed.

HP will demonstrate below that, with respect to certain issues, HP is should be granted summary judgment on *either* party's claim construction because, when viewed with clarity, the facts are undisputed. As to these issues, HP's LACE algorithm does not literally infringe the asserted claims. And, as a matter of law, Polaroid is precluded from relying on the doctrine of equivalents. There is a second group of issues as to which HP would be entitled to summary judgment if its claim construction position is adopted by the Court, but as to which disputed fact issues exist if Polaroid's claim construction position is accepted. Finally, there is a third category of issues as to which disputed issues of fact preclude summary judgment regardless of which party's claim construction position applies.

## STATEMENT OF THE FACTS

HP has described the '381 patent and certain aspects of its accused products in Defendant Hewlett-Packard Company's Memorandum In Support Of Its Motion For Summary Judgment Of

Non-Infringement, Or, In the Alternative, Patent Invalidity, filed May 16, 2008 ("HP S.J. Mem. (Non-Infringement)"), pp. 2-21. Those facts are summarized below, with citations to the more complete treatment of the same facts in HP's summary judgment papers. Additional facts, that are relevant to Polaroid's summary judgment motion, are provided in the description that follows.

A.    **The '381 Patent - Written Description**.

1.    The '381 patent describes a system whose purpose is to increase contrast in the bright and dark areas of a digital image. '381 patent, filed herewith as Exhibit A to the Declaration of Raymond N. Scott, Jr. ("Scott Decl."), 2:54-57.[1]

2.    A scene in the real world may be captured by an electronic device that includes a large number (500,000 or more) of photosensitive elements. *Id.*, 3:20-24. These elements are arranged in columns and rows. *Id.*, 3:13-15. Each photosensitive element takes in scene light at a particular location and converts it to an analog value. *Id.*, 3:13-18. Each location is called a "picture element," or "pixel." *Id.*, 3:13-15.

3.    The patent teaches that these analog signals are then converted to luminance and chrominance values. *Id.*, 3:35-58. The patent describes the modification of luminance values. Luminance is a measure of brightness of an image at a particular location. The patent does not discuss the modification or other treatment of chrominance values.

4.    The patent explains that the analog values generated by the image sensing device are converted to digital values. In an 8-bit system (like that of the '381 patent and the accused products) a total of 256 values are available to represent the brightness/luminance of the image at the location of each pixel. The system is thus said to have a "dynamic range" of 256. *Id.*, 4:34-

---

[1] The problem to which the '381 patent is addressed is described at HP S.J. Mem. (Non-Infringement), pp. 2-3.

4336846v1

36. The degrees of luminance are expressed by use of the integers 0 through 255. *Id.*, 3:43-49. Zero (0) is the darkest value (pure black) and 255 is the brightest value (pure white). *Id.*, 5:26-27, 49-50. *See* HP S.J. Mem. (Non-Infringement), p. 3.

5.    In the system of the '381 patent, luminance values for each pixel are processed one-by-one in series. *Id.*, 2:63-69. Luminance is represented by the symbol "Y." '381 patent, 3:37. The disclosed system "transforms" "the image defining luminance electronic signal" for each pixel from an input value ("$Y_{in}$") to an output value ("$Y_{out}$").[2] *Id.*, 4:68 - 5:3; Affidavit of Dr. Robert L. Stevenson, submitted herewith, ("Stevenson Aff."), ¶ 20.

6.    The system disclosed in the '381 patent has two parts: (a) an apparatus (described at col. 6, *l.* 43 - col. 7, *l.* 27 and depicted in Fig. 4 of the patent), and (b) an algorithm (described at col. 3, *l.* 59 - col. 5, *l.* 15). The apparatus implements the algorithm. *Id.*, 6:43-47. The apparatus described in the patent has three principal components, each of which implements one step of the disclosed algorithm:

(a)    An **averager 12** averages "the image defining luminance electronic information signals" of a neighborhood of pixels -- "a plurality of pixels" -- that includes the pixel whose luminance value is to be transformed. "The average value for the image defining luminance electronic information signal (Av) is thereafter provided to" the second component of the system, a "gamma determining circuit 14." *Id.*, 4:26-28.

(b)    The **gamma determining circuit 14** is made up of a series of circuits, 18, 20, 22, 24, 26 and 28, shown in Fig. 4 of the patent, and described at col. 6, *l.* 58 - col. 7, *l.* 10. *See also*, *id.*, 7:27-33. Gamma is represented by the symbol "γ ." As explained below, the

---

[2] Throughout this Statement of Facts, HP quotes directly from the '381 patent, so as to minimize advocacy in the characterization of the facts (in contrast to Polaroid's brief).

calculation of gamma ultimately determines both the direction in which a particular pixel's input luminance value will be altered (it will be made lighter or darker) and the amount by which that luminance value will be changed. Gamma is calculated by use of the equation:

$$\gamma = (1 + C)^{\left(\frac{Av}{M}\right) - 1}$$

In this equation,

(i.) "C is a control parameter." *Id.*, 4:51. It is a kind of throttle mechanism that may be selected by the user. An increase in C increases the amount of contrast enhancement afforded by the system of the patent. A decrease in C reduces the amount of contrast enhancement provided by the disclosed system. *Id.*, 4:51-55, 6:30-42; Stevenson Aff., ¶ 21; *see* HP S.J. Mem. (Non-Infringement), pp. 12-13.

(ii.) Av (found in the exponent of the equation) is the average luminance value of the neighborhood of pixels around the pixel whose luminance value is being modified. '381 patent, 4:26-28; Stevenson Aff., ¶ 21.

(iii.) M (also in the exponent) is usually a "value within the dynamic range of the electronic information signals." '381 patent, 4:40-43. As noted above, in an eight-bit system, the dynamic range is 256 values. Values within the dynamic range are the integers 0 to 255. *Id.*, 3:46-48; 4:39. As explained more fully in the memorandum in support of HP's summary judgment motion, M provides a way of adjusting the amount of contrast enhancement at one end of the dynamic range or the other. If a value for M is selected that is in the middle of the dynamic range (*e.g.,* 128), the same amount of contrast enhancement will occur in both the light and dark parts of an image (and the least contrast enhancement will occur in the middle of this brightness range). If a value for M toward the higher end of the range is selected (*e.g.*, 225), contrast enhancement at that end (the bright end) of the dynamic range will be reduced. If a

-4-

value nearer the lower end of the dynamic range is chosen, contrast enhancement will be reduced

at that end of the range. '381 patent, 4:43-50; *see* HP S.J. Mem. (Non-Infringement), pp. 13-14.

(iv.)　　In this equation, an important determinant of gamma ($\gamma$) is the

ratio of Av (the average neighborhood pixel value) to M. If, for a particular pixel, Av exceeds M

(as will tend to occur in bright areas of a scene), the luminance value of the relevant pixel will

ultimately be lowered, and the image thus made darker at the location of that pixel. If, for a

particular pixel, Av is less than M (as will tend to occur in the dark area of the image), the

luminance value of the relevant pixel will be increased, and the image at the location of that pixel

will thus be made brighter. The way that the gamma determining algorithm works is explained

in significantly more detail in HP's Memorandum In Support Of Its Motion For Summary

Judgment Of Non-Infringement (pp. 4-5 and 7-10) where specific values are used to illustrate

how this formula works.

(c)　　Once the value of gamma is determined for a particular pixel by the

gamma determining circuit, that value is directed to the third component of the disclosed

apparatus, a **"transfer function imposing circuit 16."** *Id.*, 4:56-57, 7:33-39. This device

includes circuits 30, 32, 34, 36 and 38. It is described in detail at col. 7, *ll.* 11-28, and illustrated

in Fig. 4 of the patent. The transfer function determining circuit uses gamma, calculated as

described above, to change the input luminance value for a pixel into an output luminance value.

In the words of the '381 patent, it "operates to impose [a] transfer function on the image defining

luminance electronic information signals (Y) received at the input terminal." *Id.*, 4:56-60. The

transfer function determining circuit implements the formula:

$$Y_{out} = Y_{MAX} \left( \frac{Y_{in}}{Y_{MAX}} \right)^{\gamma}$$

4336846v1

*Id.*, 4:64. In this equation, $Y_{in}$ is the input luminance value for a pixel. This is the value that is *to be* transformed. *Id.*, 4:56-62. $Y_{out}$ is "the image defining luminance electronic information signal transformed in the manner of this invention." *Id.*, 4:68-5:2. It is the result of the transformation process. In an 8-bit system, $Y_{MAX}$ is 255. *Id.*, 4:66-68. Gamma ( $\gamma$ ) is the value determined by the gamma determining circuit, as previously described.

7.      In the transfer reproduced at the top of this page, changes in the value of gamma change the transfer function. If, for example, $\gamma$ , as calculated for a particular pixel, is 1.5, then the exponent in the equation set forth above is 1.5. On the other hand, if $\gamma$ is determined to be .75, then the exponent in that equation is .75. Because the exponent ( $\gamma$ ) in the transfer function is different in these two examples (one is 1.5 and the other is .75), the transfer functions are different. Thus, the process of calculating gamma for a particular pixel value is said by the '381 patent to "select" the particular transfer function that is to be applied to that pixel value. *Id.*, 5:8-15; Stevenson Aff., ¶ 20 ("... each value of $\gamma$ represents a different transfer function and the processes of setting $\gamma$ effectively selects one of the possible transfer functions defined by this equation").

8.      The physical apparatus that implements the algorithm described above is a group of circuits, arranged in a particular relationship (shown in Fig. 4). There is no disclosure of the use of a general purpose computer or of any other structure that is, or could be, used to implement the algorithm. *See* '381 patent, 2:48-50; 6:43 - 7:42.

**B.      '381 Patent - Claims 1-3.**

9.      Claim 1 of the '381 patent is set forth below. Claim language added during prosecution is italicized. Claim 1 states:

A system for continuously enhancing electronic image data received in a continuous stream of electronic information signals, each signal having a value within a determinate dynamic range of values and corresponding to one of a plurality of succeeding pixels which collectively define an image, said system comprising:

means for averaging electronic information signals corresponding to selected pluralities of pixels and providing an average electronic information signal for each said plurality of pixels so averaged; and

means for selecting one of a plurality of different transfer functions for the electronic information signal for each of the succeeding pixels in a manner whereby each transfer function is selected as a function of the electronic information signal for one pixel and the average electronic information signal for the select plurality of pixels containing said one pixel and for subsequently transforming the electronic information signal corresponding to each pixel by the transfer function selected for that pixel *wherein said selecting and transforming means further operates to select said transfer function as a function of the ratio of the value of the average electronic information signal to the dynamic range of the electronic information signals such that the ratio increases in correspondence with the increase in the value of the average electronic information signal.*

10.    Claims 2 and 3 depend from claim 1. If claim 1 is not infringed, claims 2 and 3 cannot be infringed. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989).

11.    The claim language quoted above has certain characteristics. First, two principal limitations of the claim are stated in means plus function form. Second, the structure disclosed in the patent is a group of circuits arranged in particular relationships. These hardware devices implement the algorithm stated in the patent. Together, the circuits and the algorithm are the means of claim 1 (and, therefore, of claims 2 and 3). Third, the selection of a transfer function -- *i.e.*, the calculation of gamma -- is "a function of [a] ratio." This is the requirement imposed by the claim language that is italicized above. The ratio consists of (a) the average luminance value

-7-

# REDACTED

of the pixel neighborhood around the pixel whose value is to be transformed, and (b) "the dynamic range of the electronic information signals" (*e.g.*, 256), so that (c) "the ratio increases in correspondence with the increase in the value of the average electronic information signal" -- *i.e.*, as the average luminance value of the pixel neighborhood increases, the ratio increases. Fourth, the means disclosed in the patent (*i*) takes the luminance value for a pixel as an input, (*ii*) generates a luminance value as an output, and (*iii*) uses a neighborhood average luminance value to convert the input to the output.

      12.    The prosecution history of this claim is important. As originally filed, claim 1 did not include the "ratio limitation" that is italicized in the claim language quoted above. U.S. Patent App. No. 182,987 (Scott Decl., Ex. B) claim 1. The application claim was rejected as obvious in view of a prior art reference, U.S. Patent No. 4,489,349 (the "Okada patent"). October 17, 1988 Office Action (Scott Decl., Ex. C), p. 3. The Okada patent described a system that improved contrast in light and dark parts of an image by using the formula $Y_{out} = X^\gamma$. Okada Patent (Scott Decl., Ex. D), 2:49-57; 5:21-32; *see* HP S.J. Mem. (Non-Infringement), pp. 14-19. In order to overcome this rejection, Polaroid added the ratio limitation to claim 1. December 8, 1988 Amendment (Scott Decl., Ex. E), pp. 1-2. The claim was then allowed. January 4, 1989 Notice of Allowability (Scott Decl., Ex. F); *see* HP S.J. Mem. (Non-Infringement), pp. 16-19. The prosecution history estoppel effect of this series of events is discussed below.

      C.     **The Accused System**.

4336846v1

REDACTED IN ITS ENTIRETY

4336846v1

REDACTED IN ITS ENTIRETY

4336846v1

# REDACTED

## ARGUMENT

### I.     THE SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Vanmoor v. Wal-Mart Stores*, 201 F.3d 1363, 1365 (Fed. Cir. 2000). The party seeking summary judgment bears the initial burden of establishing the lack of a genuinely disputed material fact by demonstrating that there is an "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party is to be given the benefit of all permissible factual inferences. Disputes of fact are to be resolved in favor of the non-movant. *Eastman Kodak Co. v. Image Technical Servs.*, 504 U.S. 451, 456 (1992).

### II.    ON EITHER PARTY'S CLAIM CONSTRUCTION, POLAROID'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT SHOULD BE DENIED AND HP'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT SHOULD BE GRANTED.

With respect to two issues, the parties' proposed claim constructions do not differ materially, a principle of law limits the scope of Polaroid's infringement claim, and the salient facts are not subject to dispute. Consequently, this case is ripe for summary judgment of *non*-infringement without further claim construction analysis.

### A.     _____

Claim 1 of the '381 patent requires, among other things,

> means for selecting a plurality of different transfer functions ...
> and for subsequently transforming the electronic information
> signal corresponding to each pixel ***wherein said selecting and***

4336846v1

> *transforming means further operates to select said transfer*
> *function as a function of the ratio of the value of the average*
> *electronic information signal to the dynamic range of the*
> *electronic information signals such that the ratio increases in*
> *correspondence with the increase in the value of the average*
> *electronic information signal*.

Claims 2 and 3 depend from claim 1 and, thus, include the same limitation.

As noted above, in the application for the '381 patent, claim 1 did not include the italicized language. Application claim 1 was rejected as obvious in view of the prior art, Okada patent. The Okada patent disclosed a transfer function that included gamma as an exponent. *See* p. 8, *supra*. In Okada, like the '381 patent, the determination of gamma "selected" the particular transfer function that was to be applied in a particular location in an image because changes in the value of gamma changed the transfer function. However, in Okada, gamma was not determined as a function of the ratio of the type stated in the limitation quoted above. Okada Patent (Scott Decl., Ex. D), 5:21-32. Polaroid added the italicized limitation to the claim, by amendment, so as to narrow the claim, avoid the Okada patent, and overcome the PTO's claim rejection. December 8, 1998 Amendment (Scott Decl., Ex. E), pp. 1-2. The amendment achieved its purpose. The claim as narrowed was allowed. January 4, 1989 Notice of Allowability (Scott Decl., Ex. F).

The parties agree that the limitation of claim 1, quoted above, is in means plus function form. They further agree that the italicized claim language describes the *function* that is performed by the claimed means. Their respective proposed constructions of the *functional* language in the claim are set forth below.

-12-

4336846v1

**REDACTED**

| Claim Term |
| --- |
| means for selecting one of a plurality of different transfer functions for the electronic information signal for each of the succeeding pixels in a manner whereby each transfer function is selected as a function of the electronic information signal for one pixel and the average electronic information signal for the select plurality of pixels containing said one pixel and for subsequently transforming the electronic information signal corresponding to each pixel by the transfer function selected for that pixel wherein said selecting and transforming means further operates to select said transfer function as a function of the ratio of the value of the average electronic information signal to the dynamic range of the electronic information signals such that the ratio increases in correspondence with the increase in the value of the average electronic information signal |

Joint Claim Construction Mem., p. 4. In the system of the '381 patent, the calculation of gamma results in the selection of a transfer function. The calculation of gamma, in turn, is a function of a ratio of the average luminance value of the pixels in the neighborhood of the pixel being transformed and, in the words of the claim, "the dynamic range of the electronic information signals," *viz*:

$$\gamma = (1 + C)^{\left(\frac{Av}{M}\right) - 1}$$

### 1.     There Is No Literal Infringement.

An accused system literally infringes a means plus function claim only if it performs a function that is identical to the claimed function. *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211-12 (Fed. Cir. 1998).

-13-

4336846v1

# REDACTED

2.        **The Doctrine Of Equivalents Is Not Available To Polaroid.**

.  *Festo Corporation v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003).

*Festo*, 344 F.3d at 1367.

*Festo Corporation v. Shoketsu Kinzoku Kogyo*

**REDACTED**

*Kabushiki Co., Ltd.* 535 U.S. 722, 734-35 ("when, however, the patentee originally claimed the subject matter alleged to infringe, but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter ...").

*Festo*, 344 F.3d at 1369.

*See Festo*, 344 F.3d at 1370.

Therefore, the doctrine of history estoppel precludes the use of the doctrine of equivalents with respect to the ratio claim limitation.

3.    **Polaroid's Arguments Are Without Merit.**

-15-

REDACTED IN ITS ENTIRETY

4336846v1

REDACTED IN ITS ENTIRETY

4336846v1

REDACTED IN ITS ENTIRETY

4336846v1

REDACTED IN ITS ENTIRETY

4336846v1

REDACTED

The Court need go no further. For these reasons alone, Polaroid's motion for summary judgment of infringement should be denied, and HP's motion for summary judgment of non-infringement should be granted. However, once again, there is much more, as is explained below.

**B.**

_____

The ratio claim limitation is quoted at pp. 11-12, *supra*. It requires the selection of a transfer function based on a ratio "of the value of the average electronic information signal [of the pixel neighborhood] to *the dynamic range of the electronic information signals*" (emphasis supplied). As described in the '381 patent, this ratio is found in the formula used to calculate gamma.

-20-

**REDACTED**

The difference in the language of these claims cannot be ignored. *CAE Screenplates, Inc. v. Heinrich Fielder GMBH & Co., KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000); *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987).

-21-

# REDACTED

Therefore, Polaroid's motion for summary judgment should be denied and HP's motion for summary judgment of non-infringement should be granted.

## III.  ON HP'S CLAIM CONSTRUCTION, SUMMARY JUDGMENT OF NON-INFRINGEMENT SHOULD BE GRANTED; ON POLAROID'S PROPOSED CLAIM CONSTRUCTION, ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT.

### A.  HP's Claim Construction Should Be Adopted, And Summary Judgment Of Non-Infringement Granted.

HP states that the structure disclosed in the '381 patent -- *i.e.*, the means claimed by the means plus function language of claims 1-3 -- includes both the apparatus described and depicted in the patent, and the algorithm that is implemented by that apparatus.  Polaroid contends that the means disclosed in the '381 patent is merely the algorithm.  *See* Polaroid S.J. Mem. (Infringement) at 17.

A means plus function claim "shall be construed to cover the corresponding structure described in the specification and equivalents thereof."  35 U.S.C. § 112, ¶ 6.

The steps that make up an

-22-

# REDACTED

algorithm must be implemented by a device.    A disclosed algorithm and a disclosed implementing device may together constitute the required structure.  *E.g.*, *Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 1254 (Fed. Cir. 2005).

Claim 1 covers a "system."  The system described in the specification of the '381 patent includes a physical structure.  It is the group of hardware circuits that are described at col. 6, *l.* 43 - col. 7, *l.* 27, and depicted in Fig. 4.  The structure includes logarithm determining circuits, antilogarithm determining circuits, multiplication circuits, and the like.  '381 patent, 7:11-26. The patent states expressly that Fig. 4 is a block diagram showing in "… more detail a *system* for enhancing electronic image data …."  '381 patent, 2:48-50 (emphasis added).    The device illustrated in Fig. 4 is said to "implement" the algorithm disclosed in the patent.  *Id.*, 6:43-46. The patent states that the disclosed circuits "as shown in Fig. 4" determine gamma, and continuously vary the transfer function in accordance with the selection of gamma "in a simple and convenient manner."  *Id.*, 7:27-42.  Thus, the specification discloses a particular physical means -- a specific "structure" -- that performs the claimed function

4336846v1

REDACTED

**B.**     **On Polaroid's Claim Construction, Summary Judgment Should Be Denied Because Fact Issues Remain.**

REDACTED IN ITS ENTIRETY

4336846v1

REDACTED IN ITS ENTIRETY

4336846v1

**REDACTED**

IV.    **POLAROID'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT SHOULD BE DENIED BECAUSE, UNDER ANY CLAIM CONSTRUCTION, THERE ARE DISPUTES OF FACT.**

Claim 1 requires, *inter alia*, (1) "means for averaging electronic information signals corresponding to selected pluralities [a neighborhood] of pixels," plus (2) "means for selecting one of a plurality of different transfer functions for the electronic information signal for each of the succeeding pixels," (3) "whereby each transfer function is selected as a function of the electronic information signal for one pixel and the average electronic information signal for the select plurality of pixels."

The '381 patent discloses a method in which the luminance value of an individual pixel ($Y_{in}$) is input into the system. A luminance value for the neighborhood of pixels is used to

**REDACTED**

transform this input luminance value.  The result is an output luminance value ($\mathbf{Y}_{out}$) for that pixel.

4336846v1

REDACTED IN ITS ENTIRETY

4336846v1

**REDACTED**

## <u>CONCLUSION</u>

For the reasons stated above, HP's Motion For Summary Judgment Of Non-Infringement should be granted and Polaroid's Motion For Summary Judgment Of Infringement Of Claims 1-3 of the '381 patent should be denied.

4336846v1

Dated:  June 5, 2008                **FISH & RICHARDSON P.C.**

By:    */s/ Raymond N. Scott, Jr.*
      William J. Marsden, Jr. (#2247)
      Raymond N. Scott, Jr. (#4949)
      919 N. Market Street, Suite 1100
      Wilmington, DE 19801
      Tel.:  (302) 652-5070
      Fax:  (302) 652-0607
      Email:  *rscott@fr.com*

      Robert S. Frank, Jr. *(pro hac vice)*
      Daniel C. Winston *(pro hac vice)*
      Carlos Perez-Albuerne *(pro hac vice)*
      CHOATE, HALL & STEWART LLP
      Two International Place
      Boston, MA 02109
      Tel.:  (617) 248-5000
      Fax:  (617) 248-4000
      Emails:  *rfrank@choate.com; dwinston@choate.com;*
             *cperez@choate.com*

      John E. Giust *(pro hac vice)*
      Matthew E. Bernstein *(pro hac vice)*
      MINTZ, LEVIN, COHN, FERRIS,
          GLOVSKY AND POPEO PC
      5355 Mira Sorrento Place, Suite 600
      San Diego, CA 92121-3039
      Tel.:  (858) 320-3000
      Fax:  (858) 320-3001
      Emails:  *jgiust@mintz.com*; *mbernstein@mintz.com*

     *Attorneys for Defendant and Counterclaim-Plaintiff*
     *Hewlett-Packard Company*

-31-

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2008, I electronically filed with the Clerk of Court the foregoing document using CM/ECF which will send electronic notification of such filing(s) to the following counsel:

| | |
|---|---|
| ***Via Email*** | Attorneys for Plaintiff and Counterclaim-Defendant Polaroid Corporation |

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
1201 North Market Street
Wilmington, DE 19899-1347
Phone:  302-658-9200
Fax:  302-658-3989
Emails:  *jblumenfeld@mnat.com; jheaney@mnat.com*

| | |
|---|---|
| ***Via Email*** | Attorneys for Plaintiff and Counterclaim-Defendant Polaroid Corporation |

Russell E. Levine, P.C.
Michelle W. Skinner/David W. Higer
Maria A. Meginnes/Courtney Holohan/C. Beasley
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
Phone:  312-861-2000
Fax:  312-861-2200
Emails:  *rlevine@kirkland.com; ggerst@kirkland.com;
mskinner@kirkland.com; dhiger@kirkland.com;
mmeginnes@kirkland.com; mmeginnes@kirkland.com;
cbeasley@kirkland.com*

### *Courtesy Copy Via Federal Express*

Michelle W. Skinner
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
Phone:  312-861-2000
Fax:  312-861-2200

/s/ *Raymond N. Scott, Jr.*
Raymond N. Scott, Jr.

4336846v1