IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POLAROID CORPORATION,

    Plaintiff and Counterclaim Defendant,

    v.

HEWLETT-PACKARD COMPANY,

    Defendant and Counterclaim Plaintiff.

C.A. No. 06-738-SLR

**REDACTED**

### DEFENDANT HEWLETT-PACKARD COMPANY'S OPPOSITION TO POLAROID CORPORATION'S MOTION FOR SUMMARY JUDGMENT UNDER 35 U.S.C. § 287

**FISH & RICHARDSON P.C.**
William J. Marsden, Jr. (#2247)
Raymond N. Scott, Jr. (#4949)
919 N. Market Street, Suite 1100
Wilmington, DE 19801
Tel.: (302) 652-5070
Fax: (302) 652-0607
Email: *marsden@fr.com; rscott@fr.com*

Robert S. Frank, Jr. *(pro hac vice)*
Daniel C. Winston *(pro hac vice)*
Carlos Perez-Albuerne *(pro hac vice)*
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02109
Tel.: (617) 248-5000
Fax: (617) 248-4000
Emails: *rfrank@choate.com; dwinston@choate.com; cperez@choate.com*

John E. Giust *(pro hac vice)*
Matthew E. Bernstein *(pro hac vice)*
MINTZ, LEVIN, COHN, FERRIS,
    GLOVSKY AND POPEO PC
5355 Mira Sorrento Place, Suite 600
San Diego, CA 92121-3039
Tel.: (858) 320-3000
Emails: *jgiust@mintz.com; mbernstein@mintz.com*

*Attorneys for Defendant and Counterclaim-Plaintiff Hewlett-Packard Company*

Dated: June 5, 2008

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDING ....................................................1

II.   SUMMARY OF ARGUMENT ......................................................................1

III.  STATEMENT OF FACTS ...........................................................................2

      A.    Polaroid's '381 Patent ......................................................................2

      B.    Polaroid's Products And Technologies Embodied the '381 Patent............................3

IV.   ARGUMENT ..........................................................................................9

      A.    The Patentee Bears the Burden of Establishing Compliance with
            Section 287..................................................................................10

      B.    HP Has Adequately Identified Polaroid Products Requiring Marking.....................11

      C.    A Genuine Issue of Disputed Fact Exists as to Whether Polaroid Made,
            Sold and Offered for Sale Products Embodying Claim 7 of the '381
            patent........................................................................................14

            1.    Claim 7.............................................................................15

                  a.    Claim 7; preamble............................................................15

                        (i)     Polaroid's proposed claim construction.................................15

                        (ii)    HP's proposed claim construction. ....................................15

                  b.    Claim 7, Element 1. .........................................................16

                        (i)     Polaroid's proposed claim construction.................................16

                        (ii)    HP's proposed claim construction. ....................................16

                  c.    Claim 7, Element 2. .........................................................17

                        (i)     Polaroid's proposed claim construction.................................17

                        (ii)    HP's proposed claim construction. ....................................17

                  d.    Claim 7, Element 3. .........................................................18

                        (i)     Polaroid's proposed claim construction.................................18

                        (ii)    HP's proposed claim construction. ....................................18

## TABLE OF CONTENTS
### Continued

| | | | Page |
|---|---|---|---|
| | 2. | Dodge and Burn | 19 |
| | 3. | Adaptive Sharpening | 25 |
| | 4. | Local/Adaptive Gamma | 29 |
| V. | CONCLUSION | | 30 |

4334549v1

## TABLE OF AUTHORITIES

Page

CASES

*American Medical Sys. v. Medical Eng'g Corp.,*
    6 F.3d 1523 (Fed. Cir. 1993)..................................................................10

*Baldwin Graphic Sys. v. Siebert, Inc.*
    512 F.3d 1338 (Fed. Cir. 2008).................................................................21

*Broadcom Corp. v. Agere Sys.,*
    2004 WL 2009320 (E.D. Pa. Sept. 8, 2004) ...............................................10

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).................................................................................9

*Eastman Kodak Co. v. Image Technical Servs.,*
    504 U.S. 451 (1992).................................................................................9

*Free Motion Fitness v. Cybex Int'l,*
    423 F.3d 1343 (Fed. Cir. 2005).................................................................21

*Nike, Inc. v. Wal-Mart Stores,*
    138 F.3d 1437 (Fed. Cir. 1998).................................................................10

*Philips Elecs. N. Am. Corp. v. Contec Corp.,*
    312 F. Supp.2d 649 (D. Del. 2004)............................................................10

*Sprint Communications Co. v. Vonage Holdings Corp.,*
    500 F. Supp.2d 1290 (D. Kan. 2007).........................................................10

*Vanmoor v. Wal-Mart Stores,*
    201 F.3d 1363 (Fed. Cir. 2000)..................................................................9


STATUTES

35 U.S.C. § 287.................................................................................1, 10, 14


OTHER AUTHORITIES

Fed. R. Civ. P. 26(e) .............................................................................14

Fed. R. Civ. P. Rule 56 ..........................................................................10

i

## TABLE OF AUTHORITIES
### (cont'd)

Page

Fed. R. Civ. P. 26(e)(2)..............................................................................................................11

Wright & Miller, Federal Practice and Procedure, § 2049.1 at 604 (2d ed. 1994 & Supp. 2008) ....................................................................................................................................12

ii

## I.    NATURE AND STAGE OF PROCEEDING

On December 5, 2006, Polaroid Corporation ("Polaroid") commenced this action against Hewlett-Packard Company ("HP"), alleging infringement of U.S. Patent No. 4,829,381 (the "'381 patent"). The parties have engaged in extensive fact discovery, have exchanged expert reports, and have completed the depositions of all experts. The claim construction and summary judgment hearing is scheduled for August 1, 2008. Trial is set to commence on December 8, 2008. This Opposition is filed by HP in response to Polaroid's Motion for Summary Judgment under 35 U.S.C. § 287.

## II.    SUMMARY OF ARGUMENT

Polaroid's Motion should be denied. Polaroid's Brief in Support of its Motion is essentially a trial brief, rather than a brief in support of a true summary judgment motion. Polaroid presents only the evidence that Polaroid deems favorable, ignores all of the evidence which is contrary to Polaroid's positions, and assumes that all disputed issues of fact will be resolved in Polaroid's favor. As set forth herein, HP provided timely written notice to Polaroid that at least three types of Polaroid software and a number of specific Polaroid products embodied the '381 patent. The factual record establishes that these Polaroid products embodied the '381 patent and were made, offered for sale and sold without marking. Polaroid has the burden of proving that it complied with the marking statute, as well as the burden of establishing that there is no general issue of material fact regarding the marking issue. Polaroid has not and cannot sustain those burdens.

## III.   STATEMENT OF FACTS

HP responds to the "Statement of Facts" in Polaroid's Brief, as follows:[1]

### A.   Polaroid's '381 Patent

The '381 patent issued to Polaroid on May 9, 1989, and describes a system and method for enhancing electronic images by increasing contrast in portions of the image. J.A. Ex. A, '381 patent, p. 1.[2]

Claim 7 is a method claim. It contains a preamble and three elements that recite steps of the claimed method. Claim 7 reads as follows:

> 7. A method for continuously enhancing electronic image data received in a continuous stream of electronic information signals each signal having a value within a determinate dynamic range of values and corresponding to one of a plurality of succeeding pixels which collectively define an image, said method comprising the steps of:
>
> averaging the electronic information signals corresponding to selected pluralities of pixels and providing an average electronic information signal for each said plurality of pixels;
>
> selecting one of a plurality of different transfer functions for the electronic information signal for each of the plurality of succeeding pixels in a manner whereby each transfer function is selected as a function of the electronic information signal for one pixel and the average electronic information signal for the select plurality of pixels containing said one pixel; and
>
> transforming the electronic information signal corresponding to each pixel by the transfer function selected for that pixel wherein said transfer function is selected further as a function of the ratio of the value of the average electronic information signal to a select proportionate value of the dynamic range of the electronic information signals such that the ratio increases in correspondence with the increase in the value of the average electronic information signal.

J.A. Ex. A, '381 Pat., col. 9, line 42–col. 10, line 2.

---

[1]   HP identifies disputed issues of fact only as necessary to address Polaroid's Motion.

[2]   To avoid the filing of duplicate exhibits, HP cites herein to exhibits in Polaroid's Joint Appendix as "J.A. Ex. ___," and to exhibits otherwise filed with Polaroid's motion as "Pol. Ex. ___." All other exhibits cited herein are attached to the Declaration of Raymond N. Scott, Jr. submitted herewith, and are cited as "HP Ex. ___".

2

# REDACTED

**B.    Polaroid's Products And Technologies Embodied the '381 Patent**

The evidence shows that at least three types of Polaroid products embodied the '381 patent:

*1.    Polaroid Products using Dodge and Burn Embodied the '381 Patent*

As Polaroid admits, the following Polaroid products employed an image processing technology called "Dodge and Burn": ███████████████████████████████ ████████████████ Polaroid Brief at 6.  This Polaroid technology was used and sold █ ███████████████████, each of which could have been marked.  HP Ex. 1, Declaration of Dr. Dan Schonfeld and Rebuttal Expert Report ("Schonfeld Report") at 4, 44-47[3]; HP Ex. 2, Bullitt Dep. at 55-57; HP Ex. 3, Thornton Dep. at 39.

HP's expert, Dr. Schonfeld, reviewed the source code for Polaroid's Dodge and Burn (and Adaptive Sharpening) software and analyzed whether, using Polaroid's application of Claim 7 of the '381 patent, Polaroid's products embodied Claim 7.  HP Ex. 1, Schonfeld Report at 2-3, 44, 47-83; HP Ex. 4, Schonfeld Dep. at 23-25.  Dr. Schonfeld first reviewed Polaroid's application of both parties' proposed claim constructions of Claim 7 to HP's software, as stated in the report of Polaroid's expert, Dr. Agouris (J.A. Ex. B).  *Id.*  HP's expert then applied that same Polaroid logic and analysis to perform and element by element comparison of both parties' proposed claim constructions of Claim 7 to Polaroid's software.  *Id.*  Although Dr. Schonfeld disagrees with some of Polaroid's expert's applications of Claim 7, he nevertheless adopted and used those same applications when comparing Claim 7 to the Polaroid software.  *See, e.g.,* HP Ex. 1, Schonfeld Report at 19 n.1, 38 n.2, 71 n.6 (disagreeing with but adopting Polaroid's

---

[3]    Dr. Schonfeld's declaration verifies his Report and corrects some typographical errors on various pages in the Report.  Exhibits D through F of the Schonfeld Report have been omitted, as they are voluminous and are not directly relevant to the issues raised or disputed by Polaroid in its Brief.  HP can submit these exhibits to the Court if the Court wishes to see them.

# REDACTED

application of the "ratio" requirement), 65 nn. 4, 5 (disagreeing with but adopting Polaroid's

positions that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆).  As set forth below, HP's expert concluded that, should Polaroid's

application of Claim 7 be adopted, Polaroid's products also embody Claim 7 under the very same

application.  HP Ex. 1, Schonfeld Report at 44.

Based upon an element by element analysis of Polaroid's Dodge and Burn technology,

under both parties' proposed claim constructions as applied by Polaroid, Polaroid's Dodge and

Burn source code and products embodied Claim 7 of the '381 patent as follows:

Dodge and Burn embodies the preamble of Claim 7 (to the extent the preamble is deemed

limiting) under both parties' constructions as applied by Polaroid: ▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆  HP Ex. 1, Schonfeld Report, at 47-57

(citing Dodge and Burn source code, HP Ex. 5).

Dodge and Burn embodies element 1 of Claim 7 under both parties' constructions as

applied by Polaroid: ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

4

**REDACTED**

██████████████████████████████████████████ HP

Ex. 5, Schonfeld Report, at 57-65 (citing Dodge and Burn source code, HP Ex. 5).[4]

Dodge and Burn embodies element 2 of Claim 7 under both parties' constructions as applied by Polaroid: ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████ HP

Ex. 1, Schonfeld Report, at 65-71 (citing Dodge and Burn source code, HP Ex. 5).

Dodge and Burn embodies element 3 of Claim 7 under both parties' constructions as applied by Polaroid: ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

███████████████████

████████████████████████████████████████

████████████████████████████████████ HP Ex. 1,

Schonfeld Report at 19-20, 71-82 (citing Dodge and Burn source code, HP Ex. 5).  Accordingly,

---

[4] HP agreed, subsequent to the date of Dr. Schonfeld's April 18, 2008 Report, to Polaroid's constructions of "average" and "averaging."  HP Ex. 6, HP Notice of Agreement.
[5] As stated above, although HP's expert does not agree that Polaroid's methodology ████████ ████████████████ appropriately applies the "ratio" requirement of Claim 7, he nevertheless adopted and applied that methodology to Polaroid's software. *See* HP Ex. 1, Schonfeld Report at 19-20 & n.1, 38-39 & n.2, 71 n.6.

4334549v1

# REDACTED

under both proposed claim constructions as applied by Polaroid, Polaroid's Dodge and Burn products embody Claim 7.

2.     *Polaroid Products using Adaptive Sharpening Embodied the '381 Patent*

Polaroid also admits that a number of its products used a Polaroid image processing technology called "Adaptive Sharpening": ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Polaroid Brief at 6.  These products included ▮▮▮▮▮, which could have been marked.  *See id.*; HP Ex. 1, Schonfeld Report at 21, 44-47.  HP's expert reviewed and analyzed the source code for Adaptive Sharpening in the same manner as Dodge and Burn:  HP's expert adopted Polaroid's applications of Claim 7, and applied them to Adaptive Sharpening.

Based upon an element by element analysis of Adaptive Sharpening under both parties' proposed constructions as applied by Polaroid, Adaptive Sharpening embodied Claim 7 of the '381 patent as follows:

Adaptive Sharpening embodies the preamble of Claim 7 (to the extent the preamble is limiting) under both parties' constructions as applied by Polaroid: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ HP Ex. 1, Schonfeld Report at 47-57 (citing Adaptive Sharpening source code, HP Ex. 7).

Adaptive Sharpening embodies element 1 of Claim 7 under both parties' constructions as applied by Polaroid: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6

4334549v1

# REDACTED

███████████████████████████████████████████████████████████

████████████████████████████████████████████ HP Ex. 1,

Schonfeld Report at 57-65 (citing Adaptive Sharpening source code, HP Ex. 7).

Adaptive Sharpening embodies element 2 of Claim 7 under both parties' constructions as

applied by Polaroid: ████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████ HP

Ex. 1, Schonfeld Report at 65-71 (citing Adaptive Sharpening source code, HP Ex. 7).

Adaptive Sharpening embodies element 3 of Claim 7 under both parties' constructions as

applied by Polaroid: ████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████

████████████████████████████

██████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

HP Ex. 1, Schonfeld Report at 37-44, 71-82 (citing Adaptive Sharpening source code, HP Ex. 7).

7

# REDACTED

Accordingly, under both proposed claim constructions as applied by Polaroid, Polaroid's Adaptive Sharpening products embody all elements of Claim 7 of the '381 patent.

### 3.    *Polaroid Products using Local/Adaptive Gamma Embodied the '381 Patent*

Polaroid admits that another of its technologies -- Local/Adaptive Gamma – was Polaroid's actual implementation of the '381 patent.  Polaroid Brief at 5; J.A. Ex. B, Agouris Report at 93-94, 97; HP Ex. 2, Bullitt Dep. at 21-25.  Polaroid therefore does not dispute that its Local/Adaptive Gamma technology embodied the '381 patent.  *Id.*  Polaroid states based upon the representations of one witness that it used Local/Adaptive Gamma only for "internal research and development," and disputes that it ever sold a product that included Local/Adaptive Gamma. *Id.*

These facts are disputed.  Polaroid documents state expressly that ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ HP Ex. 8, Polaroid Project Memo, at CRA 5407.[6] Polaroid witnesses and documents also state that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



HP Ex. 3, Thornton Dep. at 30-34, HP Ex. 2, Bullitt Dep. at 24-25; HP Ex. 9, Thornton 1/02 Status Report,  POL 000702.    For  example,  evidence  indicates  that  Polaroid  ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[6] Polaroid internal documents refer to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  *See, e.g.*, HP Ex. 10, Polaroid 1/06 IP Monetization Project, at CRA 007452; HP Ex. 8, Polaroid Project Memo, at CRA 5407.

# REDACTED

████████    HP Ex. 3, Thornton Dep. at 95-96, 113-14; *see also*  HP Ex. 9, Thornton 1/02 Status Report, POL 000702.

To the extent that Polaroid suggests the evidence produced by HP is insufficient, Polaroid attempts to benefit from ████████████████████████████████  As described in HP's Brief in Support of Its Motion for Summary Judgment on Grounds of Estoppel and/or Laches ("HP Estoppel/Laches Motion"), HP has been prejudiced by ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████    See HP Ex. 11, Polaroid Int. Response No. 22, pp. 10-12; HP Ex. 2, Bullitt Dep. at 52, 92-93, 95-96, 101-07; HP Ex. 3, Thornton Dep. at 35-37.  The fact that HP may have provided sufficient evidence to survive summary judgment -- which it has -- does not mean HP has not been substantially prejudiced from making its case as strongly as it might have ██ ████████████████████████████

## IV.    ARGUMENT

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Vanmoor v. Wal-Mart Stores*, 201 F.3d 1363, 1365 (Fed. Cir. 2000).  The party seeking summary judgment -- here Polaroid -- bears the initial burden of establishing the lack of a genuinely disputed material fact by demonstrating that there is an "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The non-moving party -- here HP -- is to be given the benefit of all justifiable inferences. Disputes of fact are to be resolved in favor of the non-movant. *Eastman Kodak Co. v. Image Technical Servs.*, 504 U.S. 451, 456 (1992).

9

**A.**      **The Patentee Bears the Burden of Establishing Compliance with Section 287**

Polaroid, the patentee, bears the burden of proving compliance with 35 U.S.C. § 287. *Nike, Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). Therefore, as a patentee moving for summary judgment under section 287, Polaroid bears a double summary judgment burden to show, for each of the Polaroid products identified by HP, both that (i) the product did not embody any claim of the '381 patent and (ii) the absence of any material dispute in that regard. Absent such a showing, defendant HP bears no summary judgment burden. *Sprint Communications Co. v. Vonage Holdings Corp.*, 500 F. Supp.2d 1290, 1341 (D. Kan. 2007). Polaroid's Brief misstates the burdens applicable to its Motion by relying entirely upon cases addressing motions by the *defendant* for summary judgment under Section 287. *See* Polaroid Brief at 11 (citing *Laitram Corp. v. Hewlett-Packard Co.*, 806 F. Supp. 1294 (E.D. La. 1992); *Unova Inc. v. Hewlett-Packard*, 2006 WL 5434534 (C.D. Cal. Feb. 16, 2006); and *Church & Dwight Co. v. Abbott Labs.*, 2007 WL 1959272 (D.N.J. July 5, 2007)). Here, *Polaroid* is the moving party, with burdens under both Section 287 and Fed. R. Civ. P. Rule 56. Polaroid's own cases, moreover, defeat its own Motion: They all stand for the proposition that where the summary judgment movant -- here Polaroid -- fails to show the absence of genuine issues of material fact as to whether the patentee's non-marked products embodied the patent at issue -- as here -- summary judgment should be denied. *Id.*

Where, as here, a patent contains both apparatus and method claims and there is a tangible "article" to mark, marking is required. *American Medical Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993); *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 312 F. Supp.2d 649, 651 (D. Del. 2004). As the parties agree, the question whether an article "embodies" a patent requires an inquiry that is analogous to whether an article infringes a patent. *Broadcom Corp. v. Agere Sys.*, 2004 WL 2009320, *3 (E.D. Pa. Sept. 8, 2004); *see* Polaroid

10

Brief at 10. The initial step is to construe the patent claim to determine its scope and meaning. The claim is then compared to the non-marked article in question. *Id.*

Whether a particular product embodies a properly construed claim of a patent is an issue of fact. It may properly be decided on summary judgment only when no reasonable jury could find that all limitations of the claim are found in the accused device, either literally or under the doctrine of equivalents. *Id.* (citations omitted). *See also* Polaroid Brief at 10, 15.

### B.    HP Has Adequately Identified Polaroid Products Requiring Marking

Polaroid first contends that HP failed to supplement its interrogatory answers to identify particular Polaroid products that embodied the '381 patent. Polaroid's contention is baseless.

Polaroid admits that it was given notice in writing of all the Polaroid products HP alleges should have been marked, and that Polaroid's Rule 30(b) witness was questioned and testified about these same Polaroid products (hereinafter the "Polaroid Embodying Products"). *See* Polaroid Brief at 5-6, 13 n.4; Pol. Ex. D., February 15, 2008 letter from HP to Polaroid. In fact, precisely because Polaroid knew exactly which of its non-marked products were alleged to embody a claim of the '381 patent, Polaroid's expert opined on all of these same Polaroid Embodying Products in her expert report. J.A. Ex. B, Agouris Report at 93-96, 97.

HP's disclosure of each of the Polaroid Embodying Products, both by written letter and otherwise during discovery, is sufficient disclosure both legally and practically. As stated in Federal Rule of Civil Procedure 26(e)(1):

> A party ...must supplement or correct its disclosure or response ...in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, *and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.* (emphasis added).

Wright & Miller states:

4334549v1

# REDACTED

there is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery. ... The informal nature of the requirement is reinforced by *the alternative of providing the additional information in writing whether or not in a formal discovery response.*

Wright & Miller, Federal Practice and Procedure, § 2049.1 at 604 (2d ed. 1994 & Supp. 2008) (emphasis added).

Here, as set forth below, HP provided multiple written notices to Polaroid of the Embodying Polaroid Products. Moreover, the timing and form of HP's written notices resulted entirely from Polaroid's refusal to produce and identify the source code for its products until the last minute. In short: HP began requesting that Polaroid produce the source code for its products, and that Polaroid identify its products that used contrast enhancement functionality, starting in May, 2007. These requests continued for months thereafter. *See* HP Ex. 12, HP's First Document Requests, dated May 22, 2007 (*e.g.*, Reqs. 12, 21, 60-61, 124, 129, 134, 139, 147, 149, 151, 154-58); HP Ex. 13, HP's First Set of Interrogatories, dated May 22, 2007 (*e.g.*, Ints. 9, 10); HP Ex. 14, HP's Second Document Requests, dated July 6, 2007 (*e.g.*, Reqs. 213-21). Based on a review of Polaroid's website, HP also specifically requested the source code for and identification of products using Polaroid's Dodge and Burn technology. HP Ex. 15, HP's Third Document Requests, dated July 31, 2007 (*e.g.*, Reqs. 383-427). While Polaroid ultimately produced *some* source code for its products, it refused to identify the particular Polaroid products which used its Dodge and Burn and other source code. *See* HP Ex. 16, Polaroid's Int. Responses, dated June 21, 2007 (Responses 9, 10).[7]

---

[7] As described by Polaroid' expert, ████████████████████████████████████
████████████████████████ *See* J.A. Ex. B, Agouris Report at 93-94, 96-97. Thus, it was not a simple matter for HP to discern which of Polaroid's products that touted contrast enhancement technology necessarily used the technology in the '381 patent. Source code identification and review for each product was needed.

12

4334549v1

HP noticed a Rule 30(b)(6) deposition of Polaroid in August, 2007, concerning Polaroid's products. *See* HP Ex. 17, Rule 30(b)(6) Deposition Notice regarding Polaroid Products, dated August 20, 2007. This Rule 30(b)(6) deposition notice expressly identified "Dodge and Burn," "Adaptive Gamma," and "Sharpening" software, as well as the Polaroid Embodying Products (among other Polaroid products) as specific subjects for the deposition. *See id.* Thus, as of August 20, 2007, HP had already given Polaroid written notice that it suspected all of the Polaroid software now at issue and all of the Polaroid Embodying Products as potentially embodying the '381 patent. *See id.*

On November 19, 2007, having still not received all of Polaroid's source code necessary for the Rule 30(b)(6) deposition, HP requested that the Court order Polaroid to produce and identify the Polaroid source code for its products so that HP could effectively take the Rule 30(b)(6) deposition and determine which Polaroid products embodied the '381 patent. HP Ex. 18, HP letter to Polaroid dated November 19, 2007. The Court then ordered Polaroid to do so, and on December 18, 2007 HP wrote to Polaroid demanding that it comply with the Court's order. In that letter, HP again listed all the Polaroid software at issue and all the Polaroid Embodying Products (among other products HP believed were potentially embodying) and again asked that Polaroid tie the source code to each of the specific products. HP Ex. 19, HP letter to Polaroid dated December 18, 2007; *see also* HP Ex. 20, HP letter to Polaroid dated January 3, 2008. On January 2, 2008, HP also sent interrogatories to Polaroid requesting the same information. HP Ex. 21, HP's Second Set of Interrogatories dated January 2, 2008, Ints. 22-23.

On January 24, 2008, HP deposed Polaroid's Rule 30(b)(6) witness on the Polaroid products. HP asked the Polaroid witness about all the Polaroid Embodying Products, and the Polaroid source code at issue. HP Ex. 2, Bullitt Dep. at 9-29, 38-44, 53-58; *see* Polaroid Brief at

13

# REDACTED

5-6. Based on that deposition, on January 29 and February 7, 2008 HP again identified the Polaroid Embodying Products as potentially embodying the '381 patent, but pointed out deficiencies in the information provided by Polaroid's Rule 30(b)(6) witness and again asked for all remaining source code. HP Ex. 22, HP letter to Polaroid dated January 29, 2008; HP Ex. 23, HP letter to Polaroid dated February 7, 2008. At roughly the same time, Polaroid also responded to HP's interrogatories stating that ████████████████████████████████████ ████████████████████████████████████████ HP Ex. 11, Polaroid Second Interrogatory Responses, Ints. 22 and 23, dated February 2, 2008. On February 15, 2008, HP then wrote to Polaroid listing the Polaroid Embodying Products for roughly the fifth time since August, 2007, pointing out that Polaroid bore the burden under Section 287 to establish why Polaroid asserted that the Polaroid Embodying Products did not embody the '381 patent. Polaroid Brief at 13 n.4; Pol. Ex. D, HP letter to Polaroid dated February 15, 2008. Polaroid's expert then provided an expert report in which she stated that each of the Polaroid Embodying Products did not, in her view, embody claims (1&6) of the '381 patent. J.A. Ex. B, Agouris Report at 93-96, 97.

Accordingly, HP entirely complied with its disclosure obligations under Fed. R. Civ. P. 26(e), both legally and as a practical matter. Polaroid's claim that this information was not disclosed is inaccurate.

## C. A Genuine Issue of Disputed Fact Exists as to Whether Polaroid Made, Sold and Offered for Sale Products Embodying Claim 7 of the '381 patent.

Polaroid's Motion is based entirely on the mistaken premise that by *creating* disputes of fact as to whether its products embodied Claim 7 of the '381 patent, it may somehow obtain summary judgment. The existence of such disputes of fact *precludes* summary judgment.

14

As set forth in HP's Statement of Facts above, Polaroid products which utilize either Dodge and Burn or Adaptive Sharpening embody Claim 7 of the '381 patent under Polaroid's interpretation and application of the proposed claim constructions. Following is a recitation of the elements of Claim 7 and, the parties' proposed claim constructions, and then discussion of the points raised by Polaroid concerning Dodge and Burn, Adaptive Sharpening, and Local/Adaptive Gamma.

### 1.    Claim 7.

Claim 7 is a method claim. It contains a preamble and three elements that recite steps of the claimed method.

### a.    Claim 7; preamble.

The preamble of claim 7 states:

7. A method for continuously enhancing electronic image data received in a continuous stream of electronic information signals each signal having a value within a determinate dynamic range of values and corresponding to one of a plurality of succeeding pixels which collectively define an image, said method comprising the steps of:

J.A. Ex. A, '381 Pat., col. 9, line 42–col. 10, line 2.

### (i)    Polaroid's proposed claim construction.

If the Court determines that the preamble is a limitation, Polaroid has construed the terms of the preamble as follows:

A method for *[successively transforming] [electronic data received in a successive series of signals providing pixel information, such as color, luminance, or chrominance values], [each signal being associated with a value that lies within a range of possible values bounded by definite limits]* and corresponding to one of a plurality of succeeding pixels which collectively define an image, said method comprising:

J.A. Ex. D, Joint Claim Construction Statement—Corrected; Polaroid Brief at 18.

### (ii)    HP's proposed claim construction.

15

HP has construed the terms of the preamble such that the preamble under HP's proposed construction reads as follows:

> A method for *[successively transforming] [an uninterrupted stream of received luminance image data [pixels] defining an original image to be recorded], [each received pixel has an associated luminance value that lies within a predetermined group of luminance values]* and corresponding to one of a plurality of succeeding pixels which collectively define an image, said method comprising the steps of:

J.A. Ex. D, Joint Claim Construction Statement—Corrected.

### b.    Claim 7, Element 1.

The first step of the claimed method is:

> averaging the electronic information signals corresponding to selected pluralities of pixels and providing an average electronic information signal for each said plurality of pixels;

J.A. Ex. A, '381 Pat., col. 9, line 42–col. 10, line 2.

#### (i)    Polaroid's proposed claim construction.

Polaroid has construed the terms of Claim 7, Element 1 such that the element under Polaroid's proposed construction reads as follows:

> *[calculating an intermediate value for]* the *[signals providing pixel information, such as color, luminance, or chrominance values]* corresponding to selected pluralities of pixels and providing a[] *[signal providing pixel information, such as a color, luminance, or chrominance value of calculated intermediate value]* for each said plurality of pixels;

J.A. Ex. D, Joint Claim Construction Statement—Corrected; Polaroid Brief at 18-19.

#### (ii)    HP's proposed claim construction.[8]

---

[8] Polaroid's Brief attempts to interpret and rewrite HP's proposed claim constructions of Claim 7, Elements 1-3 by reading into the constructions (in some places but not others, and thus inaccurately) HP's proposed constructions of the terms "averaging" (*calculating on intermediate value for*), "average" (*of calculated intermediate value*), and "average electronic information signal" (HP construction: no further construction necessary; alternatively: the average of the electronic information signals). *Compare* Polaroid Brief at 18-20 *with* J.A. Ex. D, Joint Claim Construction Statement Corrected *and* HP Ex. 6, HP's Notice of Agreement.  HP includes herein

HP has construed the terms of Claim 7, Element 1 such that the element under HP's proposed construction reads as follows:

> averaging [i.e., *"calculating an intermediate value for"*] the electronic information signals [i.e., *"signals providing luminance pixel information"*] corresponding to selected pluralities of pixels and providing an average electronic information signal for each said plurality of pixels;

J.A. Ex. D, Joint Claim Construction Statement—Corrected; HP Ex. 6, HP's Notice of Agreement.

### c.     Claim 7, Element 2.

The second step of the claimed method is:

> selecting one of a plurality of different transfer functions for the electronic information signal for each of the plurality of succeeding pixels in a manner whereby each transfer function is selected as a function of the electronic information signal for one pixel and the average electronic information signal for the select plurality of pixels containing said one pixel; and

J.A. Ex. A, '381 Pat., col. 9, line 42–col. 10, line 2.

#### (i)     Polaroid's proposed claim construction.

Polaroid has construed the terms of Claim 7, Element 2 such that the element under Polaroid's proposed construction reads as follows:

> [S]electing one of a plurality of different *[functions that transform an image] for the [signal providing pixel information, such as color, luminance, or chrominance values]* for each of the plurality of succeeding pixels in a manner whereby each *[function that transforms an input signal]* is selected as a function of the *[signal providing pixel information, such as color, luminance, or chrominance values]* for one pixel and the *[signal providing pixel information, such as color, luminance, or chrominance values of calculated intermediate value]* for the select plurality of pixels containing said one pixel;

J.A. Ex. D, Joint Claim Construction Statement—Corrected; Polaroid Brief at 19.

#### (ii)     HP's proposed claim construction.

---

a corrected set of its claim constructions as stated in it submissions to the Court. *See* J.A. Ex. D, Joint Claim Construction Statement Corrected; HP Ex. 6, HP's Notice of Agreement.

4334549v1

HP has construed the terms of Claim 7, Element 2 such that the element under HP's proposed construction reads as follows:

*[each input pixel has an associated function that transforms an input signal out of different functions that transform an input signal, and the function that transforms an input signal is selected based on the input pixel value, and the average that was formed using the input pixel value, where each input pixel is part of only one average];*

J.A. Ex. D, Joint Claim Construction Statement—Corrected; HP Ex. 6, HP's Notice of Agreement.

### d.    Claim 7, Element 3.

The third step of the claimed method is:

transforming the electronic information signal corresponding to each pixel by the transfer function selected for that pixel wherein said transfer function is selected further as a function of the ratio of the value of the average electronic information signal to a select proportionate value of the dynamic range of the electronic information signals such that the ratio increases in correspondence with the increase in the value of the average electronic information signal.

J.A. Ex. A, '381 Pat., col. 9, line 42–col. 10, line 2.

### (i)    Polaroid's proposed claim construction.

Polaroid has construed the terms of Claim 7, Element 3 such that the element under Polaroid's proposed construction reads as follows:

[T]ransforming the [signal providing pixel information, such as a color, luminance, or chrominance value] corresponding to each pixel by the *[function that transforms an input signal]* selected for that pixel wherein said *[function that transforms an input signal]* is selected further as a function of the ratio of the value of the *[signal providing pixel information, such as a color, luminance, or chrominance value of calculated intermediate value]* to a *[value within the range of possible values]* such that the ratio increases in correspondence with the increase in the value of the *[signal providing pixel information, such as a color, luminance, or chrominance value of calculated intermediate value.]*

J.A. Ex. D, Joint Claim Construction Statement—Corrected; Polaroid Brief at 20.

### (ii)    HP's proposed claim construction.

18

# REDACTED

HP has construed the terms of Claim 7, Element 3 such that the element under HP's proposed construction reads as follows:

*[each input pixel value that has been part of the averaging step is altered based on the corresponding average electronic information signal to which it is associated and based on the result of dividing a first existing data value representing the average electronic information signal by a second existing data value representing any value within the determinate dynamic range of values, selected depending on where the least image enhancement is desired.]*

J.A. Ex. D, Joint Claim Construction Statement—Corrected.

## 2. *Dodge and Burn*

As set forth in HP's Statement of Facts above, HP has offered evidence establishing that Polaroid's Dodge and Burn products embody all elements of both parties' constructions of Claim 7 of the '381 patent, as applied by Polaroid. *See* Section III.B.1 *supra*. This evidence alone is enough to create a genuine issue of material fact, and thus to preclude summary judgment.

In its Brief, Polaroid argues that the existing Dodge and Burn code[9] does not embody Claim 7 based on opinions which do not appear in Polaroid's expert report. These opinions were expressed by Polaroid's expert for the first time at her deposition. Polaroid now contends that Dodge and Burn does not embody Claim 7 because, allegedly: ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████    *See* Polaroid Brief at 21-22 (citing Agouris deposition

---

[9] As described in HP's Motion for Summary Judgment on Grounds of Estoppel and/or Laches, ███████████████████████████████████████████████    *See* HP Ex. 11, Polaroid Int. Response No. 22, pp. 10-12; HP Ex. 2, Bullitt Dep. at 52, 92-93, 95-96, 101-07; HP Ex. 3, Thornton Dep. at 35-37.   HP therefore is required to assert that Adaptive Sharpening and Dodge and Burn embodied the '381 patent ████████████████████████

# REDACTED

testimony).[10]  Polaroid's expert admitted her new opinions concerning Claim 7 were ████████

████████████████████████████████████████████████████████████ HP

Ex. 24, Agouris Dep. at 236-237.  Polaroid's expert further admitted that ████████████

████████████████████████████████████████████████████████████

████████████████  She further admitted that ████████████████████████

████████  HP Ex. 24, Agouris Dep. at 217-219; 221-22.  For all of these reasons, Polaroid's

expert's new opinions on Claim 7 should be disregarded entirely and HP has filed a motion

seeking to exclude them.[11]

   As set forth below, Polaroid's expert's new opinions – even were the Court were to

consider them – are both incorrect as matter of law, and, in any event, merely create issues of

fact as to whether Dodge and Burn embodies the '381 patent.  Polaroid's burden on summary

judgment is to establish both that (i) none of its products embodied the '381 patent, and (ii) that

there is not a single genuine issue of disputed fact in that regard.  *See* Section IV.A *supra*.

Polaroid does not come close to making these showings.

---

[10] In her report, Polaroid's expert purported to apply Claim 7 to each of Dodge and Burn and
Adaptive Sharpening ███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████  J.A. Ex. B,
Agouris Report at 90, 94-96 (emphasis added).  However, it is undisputed that Claim 7 does not
require either of these elements.  HP Ex. 24, Agouris Dep. at 213; HP Ex. 1, Schonfeld Report at
82.

[11] As set forth in HP's Motion to Preclude Certain Testimony of Polaroid's Expert Dr. Peggy
Agouris (filed on May 23, 2008), Polaroid's expert's opinions should be excluded because
Polaroid's expert ████████████████████████  Thus, she is not competent to render opinions regarding Dodge and Burn
or Adaptive Sharpening.  *See id.*  In addition, Polaroid's expert's opinions on Claim 7 in
particular should be disregarded because, as she admits, ████████████████████████████
████████████████  HP Ex. 24, Agouris Dep. at 236-37.  HP may move at the appropriate
time to exclude these new Claim 7 opinions on that ground as well.

**Claim 7, Element 1:**  Polaroid first argues that Claim 7, Element 1 "requires that the code generate a single intermediate value" for each plurality of pixels, and that Dodge and Burn does not meet this element because it "generates, at minimum, an average low and an average high."  Polaroid Brief at 21.  This argument fails as a matter of law.  Claim 7 recites "a method *comprising* the steps of:  [Element 1] averaging the electronic information signals corresponding to selected pluralities of pixels and providing *an* average electronic information signal for each said plurality of pixels."  J.A. Ex. A, '381 patent (emphasis added).  The parties' proposed constructions of Element 1 reference "calculating *an* intermediate value" and providing either (Polaroid construction) "*a* signal ... of calculated intermediate value" or (HP construction) "*an* average electronic information signal".  *See* proposed claim constructions of Claim 7, Element 1, in Section IV.D.1.b *supra* (emphases added).  This claim language permits the calculation of one or more averages for a given plurality of pixels, as it is well-established that articles such as "a" or "an" in claims containing the word "comprising" mean "one or more." As stated by the Federal Circuit:

> [t]his court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.' ... That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention.  The exceptions to this rule are extremely limited: a patentee must 'evince a clear intent' to limit 'a' or 'an' to 'one.' ... The subsequent use of definite articles 'the' or said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning.  An exception to the general rule that 'a' or 'an' means more than one only arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule.

*Baldwin Graphic Sys. v. Siebert, Inc.* 512 F.3d 1338, 1342-43 (Fed. Cir. 2008) (citations and original quotations omitted); *Free Motion Fitness v. Cybex Int'l*, 423 F.3d 1343, 1350 (Fed. Cir.

# REDACTED

2005). Polaroid cites to no language in Claim 7, the specification or the prosecution history that justifies a departure from this rule.[12]

HP's expert also specifically opined that, to one of ordinary skill in the art, ███████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████ HP Ex. 1, Schonfeld Report at 57-65; HP Ex. 4, Schonfeld Dep. at 85-88 (stating that ██████████████████████████████████████████████████ ); *see also* HP Ex. 4, Schonfeld Dep. at 105-07, 109-11, 114, 217-18 (also stating that ███████████████ ████████████████████████████████ ). The most Polaroid does in response to HP's expert is to offer ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████ HP Ex. 24, Agouris Dep. at 217-18. Dr. Agouris even equivocates on this new opinion in her deposition, ████████████████████████████████████████████████ ███████████████████ HP Ex. 24, Agouris Dep. at 226. Thus, Polaroid's argument concerning Element 1 is both baseless as a matter of law, and *at most* creates a disputed issue of fact as to embodiment of Claim 7, Element 1 by Dodge and Burn.

**Claim 7, Element 2:** Claim 7, Element 2 requires that:

each transfer function be "selected *as a function of* … the average

---

[12] It bears mention that HP's proposed construction of Element 2 requires that a type of average be used wherein each input pixel is part of only one average (thus requiring the use of a block average). *See* HP Ex. 1, Schonfeld Report at 67-68. Polaroid does not dispute that Dodge and Burn embodies HP's construction of Element 2, and itself argues that ████████████████████████████ ██████████████████████████ J.A. Ex. B, Agouris Report at 70-71. HP's expert notes that █████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ HP Ex. 1, Schonfeld Report at 65 n.5, 67-71. Nevertheless, it is worth noting that, █████████████████████████████████████████████ █████████████████████████ *See id.*

electronic information signal for the select plurality of pixels containing said one pixel."

J.A. Ex. A, '381 patent (emphasis added). Polaroid contends that this Element requires "the use of the average luminance of the original image to select the transfer function," and that Dodge and Burn does not meet Element 2 because it "does not average the original luminance value." Polaroid Brief at 21. Polaroid's expert provides no explanation of this pronouncement. *See* HP Ex. 24, Agouris Dep. at 213-14, 218. Polaroid's counsel appear to base this new argument on the assertion that the luminance values of the neighborhood of pixels to be averaged are altered during the high and low averaging process in Dodge and Burn. *See* Polaroid Brief at 21. Polaroid's argument ignores the claim language, the parties' proposed claim constructions, and the evidence provided by HP on the subject.

Polaroid's proposed construction of Element 2 requires that:

each transfer function be "selected as a function of ... and the signal providing pixel information, such as color, luminance, or chrominance values of calculated intermediate value, for the select plurality of pixels containing said one pixel." *See* claim constructions *supra.*

HP's proposed construction requires that:

the transfer function be "selected as a function of ... the average [i.e. calculated intermediate value] that was formed using the input pixel value" *See id* (emphasis added).

Notably absent from all of this Element 2 (or any other Claim 7) language is any requirement that "original luminance values" remain unchanged during the process of "averaging"-- i.e., "calculating an intermediate value" for -- the pixels surrounding the pixel of interest." Element 2 merely requires that a transfer function be selected "as a function of" a "calculated intermediate value" for the surrounding electronic information signals. This language does not require that the electronic information signals to be averaged remain unchanged or not be subject to further calculations during the process. Moreover, Polaroid entirely ignores its own claim construction

23

# REDACTED

of "electronic information signal" -- a signal providing pixel information, such as color, luminance, or chrominance values -- which does not require that luminance values be used *at all*. *See* Element 1 and 2 language and proposed claim constructions, *supra*.

Finally, there is no sufficient evidentiary basis for Polaroid's new Element 2 argument in any event. HP's expert thoroughly analyzed Element 2 of Claim 7 under both parties' proposed claim constructions as applied by Polaroid. He found that the requirements of Element 2 were met by Dodge and Burn under Polaroid's interpretations, because ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ *See* HP Ex. 1, Schonfeld Report at 65-71. Moreover, HP's expert also testified and was questioned on the precise issue of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He testified based on his review of the Dodge and Burn source code that if Polaroid's claim construction positions are accepted, and as one of ordinary skill in the art would understand the code and claim language, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ HP Ex. 1, Schonfeld Report at 5, 6, 57, 62; HP Ex. 4, Schonfeld Dep. at 105-07, 109-11, 114, 206-07.

Polaroid has no evidentiary basis to contest this evidence. Polaroid's expert did not provide her contrary "opinion" in her expert report. At her deposition, she simply stated that ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* HP Ex. 24, Agouris Dep. at 218. She provides no support for this conclusory statement. *See* Polaroid Brief at 21-22 and cited Agouris testimony. She admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ HP Ex. 24, Agouris Dep. at 217-21, 227-28.

In sum, Polaroid's arguments are baseless, or, at most, create a disputed issue of fact as to whether Dodge and Burn embodies Element 2 of Claim 7.

4334549v1

# REDACTED

**Claim 7, Element 3:** Finally, Polaroid states that Dodge and Burn "lacks the specific ratio required by" Element 3. Polaroid Brief at 22. Polaroid supports this assertion with only two conclusory deposition answers by its expert that: ███████████████████ ███████ (HP Ex. 24, Agouris Dep. at 218), and ██████████████████████ (*id.* at 236). *See* Polaroid Brief at 22. Polaroid's expert states that ███████████████ ████████████████████████████████████████ HP Ex. 24, Agouris Dep. at 236. These deposition statements are insufficient even without rebuttal to satisfy Polaroid's burden of proof to establish that there is no embodiment of Element 3 and that there is no genuine issue of material fact in that regard.

HP's expert, moreover, provided a detailed analysis of Element 3 of Claim 7 under both parties' constructions. He found that Dodge and Burn met the requirements of Element 3 of Claim 7, because it applies the claimed ratio under the theory used by Polaroid's expert. HP Ex. 1, Schonfeld Report at 71-82. Polaroid's arguments and contrary "evidence," if credited at all, merely create a disputed issue of fact as to whether Dodge and Burn embodies Element 3 of Claim 7.

In sum, Polaroid has at most managed to create issues of disputed fact as to whether Dodge and Burn embodies Claim 7. That does not satisfy Polaroid's burden as the summary judgment movant to show both that Dodge and Burn does not embody the '381 patent, and that there are no issues of disputed fact in that regard.

### 3. *Adaptive Sharpening*

As set forth in HP's Statement of Facts above, HP has offered evidence establishing that Polaroid's Adaptive Sharpening products embody all elements of both parties' constructions of Claim 7 of the '381 patent, as Polaroid applies those constructions. *See* Section III.B.2 *supra*.

4334549v1

# REDACTED

As with Dodge and Burn, Polaroid argues that the Adaptive Sharpening code does not embody Claim 7 based on the same new opinions that do not appear on Polaroid's expert report, and were expressed by Polaroid's expert for the first time at her deposition: ███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

See Polaroid Brief at 22-23 (citing only Agouris deposition testimony). Polaroid's expert admitted ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████ HP Ex. 24, Agouris Dep. at 217-219; 221-22, 227-28, 236-37. Polaroid's arguments for summary judgment are therefore baseless. At most, they create disputed issues fact as to whether Adaptive Sharpening embodies Claim 7 of the '381 patent.

**Claim 7, Element 2:** Polaroid first argues -- just as it argued with respect to Dodge and Burn -- that Element 2 requires "use [of] the average luminance of the original image to select the transfer function," and that Adaptive Sharpening "does not use the average luminance in its calculation." Polaroid Brief at 22. Polaroid's expert states no basis for this conclusion. *See* HP Ex. 24, Agouris Dep. at 217-18, 228, 237-38. She admits that ████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████ HP Ex. 24, Agouris Dep. at 217-219, 228, 238. Polaroid's attorneys, in contrast, appear to base this Element 2 argument on the assertion that ████████

4334549v1

## REDACTED

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ *See* Polaroid Brief at 22.[13]  In making this argument, Polaroid ignores all of:  the claim language, the parties' proposed claim constructions, and the evidence provided by HP on the subject.

First, as stated above regarding Dodge and Burn, neither the express language of Claim 7 nor the parties' proposed constructions of Claim 7 contain any requirement that "original luminance values" remain unchanged during the process of "averaging" or "calculating an intermediate value" for a group of surrounding pixels.  To the contrary, Element 2 requires only that each transfer function be selected "as a function of … the average electronic information signal" and (as construed by the parties) "as a function of the … calculated intermediate value" for a group of surrounding pixels.  See discussion of Element 2 in Dodge and Burn section, above.  Therefore, Element 2 does not contain the requirement that Polaroid says it does.  Moreover, Polaroid again ignores its own construction of "electronic information signal," which does not require use of luminance at all.  *Id.*

Polaroid's argument also fails to address the testimony of HP's expert that all of the requirements of Element 2 are met by Adaptive Sharpening under Polaroid's claims construction analysis.  HP Ex. 1, Schonfeld Report at 65-71.  Similarly, Polaroid does not address the portions of HP's expert's testimony where he specifically notes the temporary scaling of luminance values, and explains that, as understood in the art by persons of ordinary skill, such averaging

---

[13] Polaroid's Brief euphemistically states that "*[f]or this reason,* Polaroid's technical expert Dr. Agouris stated that adaptive sharpening does not use the average luminance in its calculation." Polaroid Brief at 22 (citing Dr. Agouris' deposition) (emphasis added).  Dr. Agouris, however, provides no substantive basis at all for her "opinion" on this point in her cited testimony.  HP Ex. 24, Agouris Dep. at 217-18, 228, 237-38.

4334549v1

# REDACTED

nevertheless meets the requirements of Element 2.  HP Ex. 4, Schonfeld Dep. at 302-03; HP Ex. 1, Schonfeld Report at 23, 59-60, 64, 65-71.

Finally, HP's expert explains that, in any event, ███████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████  HP Ex. 1, Schonfeld Report at 24-26, 57-82. Polaroid does not even attempt to address this evidence.

**Claim 7, Element 3:**   Finally, again as with Dodge and Burn, Polaroid states that Adaptive Sharpening "lacks the specific ratio required by" Element 3.  Polaroid Brief at 23. Polaroid supports this assertion by citing deposition answers of its expert that: ██████████ ███████████████████████████████ (HP Ex. 24, Agouris Dep. at 218), and ██████████████ ████████████████████ (*id.* at 237-38).  *See* Polaroid Brief at 23.  These conclusory opinions are unsupported by any statement of reasons.  Moreover, Polaroid's expert admits that ████████████████████████████████████████████████████████████████ ██████████████████████████████████ HP Ex. 24, Agouris Dep. at 217-18, 237.  Such unsupported "opinions" are insufficient to sustain Polaroid's burden of proof, much less to establish the absence of any disputed fact issues.  In contrast, HP's expert provided a detailed analysis of Element 3 of Claim 7 under both parties' claim constructions, and found that Adaptive Sharpening meets the requirements of Element 3 under Polaroid's analysis.  HP Ex. 1, Schonfeld Report at 71-82.  Polaroid's arguments and "evidence," if credited at all, merely create disputed issues of fact as to Element 3 of Claim 7.

Thus, as with Dodge and Burn, Polaroid has fallen far short of meeting its burden as the moving party on summary judgment to establish both that its Adaptive Sharpening products do not embody the '381 patent, and that there is no disputed fact issue in that regard.

4334549v1

# REDACTED

### 4.    *Local/Adaptive Gamma*

Polaroid admits that its Local/Adaptive Gamma technologies are implementations of, and embody, claims of the '381 patent. *See* Polaroid Brief at 5. Polaroid nevertheless contends, based on the testimony of one former Polaroid employee (Julian Bullitt), that neither Local nor Adaptive Gamma were ever used or incorporated into a Polaroid product. Polaroid Brief at 5.

As stated in HP's Statement of Facts above, HP has identified more than enough evidence to create a genuine issue of material fact as to whether Polaroid made, offered for sale or sold a product that incorporated these admittedly embodying technologies. See Section III.B.3 *supra*. Polaroid witnesses and documents state that: ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████ *See id.* Polaroid has the burden of proving that no products that embodied claims of the '381 patent were made, offered for sale or sold by Polaroid. There is, at a minimum, a genuine issue of material fact as to whether Local/Adaptive Gamma was used in Polaroid products that Polaroid made, offered for sale or sold. And, as stated above, any suggestion by Polaroid that HP's evidence falls short in this regard relies upon Polaroid's own destruction of evidence and therefore only further supports HP's Motion for Estoppel/Laches. *See id.*

4334549v1

## V.      CONCLUSION

For the reasons stated above, HP respectfully requests that Polaroid's Motion for Summary Judgment be DENIED.


Dated:  June 5, 2008                    **FISH & RICHARDSON P.C.**


                                        By:   _/s/ Raymond N. Scott, Jr._
                                              William J. Marsden, Jr. (#2247)
                                              Raymond N. Scott, Jr. (#4949)
                                              919 N. Market Street, Suite 1100
                                              Wilmington, DE 19801
                                              Tel.:  (302) 652-5070
                                              Fax:  (302) 652-0607
                                              Email:  *rscott@fr.com*

                                              Robert S. Frank, Jr. *(pro hac vice)*
                                              Daniel C. Winston *(pro hac vice)*
                                              Carlos Perez-Albuerne *(pro hac vice)*
                                              CHOATE, HALL & STEWART LLP
                                              Two International Place
                                              Boston, MA 02109
                                              Tel.:  (617) 248-5000
                                              Fax:  (617) 248-4000
                                              Emails:  *rfrank@choate.com; dwinston@choate.com;*
                                                       *cperez@choate.com*

                                              John E. Giust *(pro hac vice)*
                                              Matthew E. Bernstein *(pro hac vice)*
                                              MINTZ, LEVIN, COHN, FERRIS,
                                                   GLOVSKY AND POPEO PC
                                              5355 Mira Sorrento Place, Suite 600
                                              San Diego, CA 92121-3039
                                              Tel.:  (858) 320-3000
                                              Fax:  (858) 320-3001
                                              Emails:  *jgiust@mintz.com; mbernstein@mintz.com*

                                              *Attorneys for Defendant and Counterclaim-Plaintiff*
                                              *Hewlett-Packard Company*


30

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2008, I electronically filed with the Clerk of Court the foregoing document using CM/ECF which will send electronic notification of such filing(s) to the following counsel:

*Via Email*
Jack B. Blumenfeld (#1014)                     Attorneys for Plaintiff and
Julia Heaney (#3052)                           Counterclaim-Defendant
Morris, Nichols, Arsht & Tunnell, LLP          Polaroid Corporation
1201 North Market Street
Wilmington, DE 19899-1347
Phone: 302-658-9200
Fax: 302-658-3989
Emails: jblumenfeld@mnat.com; jheaney@mnat.com

In addition, service will be made on the following counsel of record as indicated:

*Via Email*
Russell E. Levine, P.C.                        Attorneys for Plaintiff and
Michelle W. Skinner/David W. Higer             Counterclaim-Defendant
Maria A. Meginnes/Courtney Holohan/C. Beasley  Polaroid Corporation
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
Phone: 312-861-2000
Fax: 312-861-2200
Emails: rlevine@kirkland.com; ggerst@kirkland.com;
skinnerm@kirkland.com; dhiger@kirkland.com;
mmeginnes@kirkland.com; cholohan@kirkland.com;
cbeasley@kirkland.com

*Courtesy Copy Via Federal Express*
Michelle W. Skinner
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
Phone: 312-861-2000
Fax: 312-861-2200

/s/ *Raymond N. Scott, Jr.*
Raymond N. Scott, Jr.

4334549v1