**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| POLAROID CORPORATION | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 06-738 (SLR) |
| | ) |
| HEWLETT-PACKARD COMPANY, | )   **REDACTED –** |
| | )   **PUBLIC VERSION** |
| | ) |
| Defendant. | ) |
| | ) |

**POLAROID CORPORATION'S ANSWERING BRIEF IN OPPOSITION TO HEWLETT-
PACKARD COMPANY'S MOTION FOR SUMMARY JUDGMENT ON GROUNDS OF
ESTOPPEL AND, IN THE ALTERNATIVE OR IN ADDITION, LACHES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, Delaware  19801
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com

OF COUNSEL:

Russell E. Levine, P.C.                          *Attorneys for Plaintiff*
G. Courtney Holohan                          *Polaroid Corporation*
Michelle W. Skinner
David W. Higer
Maria A. Meginnes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

Original Filing Date:  June 5, 2008
Redacted Filing Date:  June 12, 2008

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ...................................................1

SUMMARY OF THE ARGUMENT .........................................................................1

STATEMENT OF FACTS .......................................................................................3
    A.     Polaroid. ......................................................................................3
          1.    Historic overview of Polaroid. .......................................3
          2.    Pre-Bankruptcy. .............................................................3
          3.    Chapter 11 Bankruptcy. .................................................4
          4.    One Equity Partners, LLC's strategy in the Post-Bankruptcy Polaroid. ...........................................................................4
          5.    Polaroid after the Petters Group Worldwide, LLC merger. ........................6
    B.     HP ..............................................................................................8
    C.     HP's Knowledge Of The '381 Patent In 2000. .........................8
    D.     ████████████████████████ ..............................11
    E.     ████████████████████████████████
          .........................................................................................14
    F.     ████████████████████ . ................................16
    G.     Polaroid's Ability To Test For Infringement Of The '381 Patent. .........................16
    H.     Preserved Evidence In This Case. ............................................18

ARGUMENT .........................................................................................................19

I.    SUMMARY JUDGMENT ON LACHES SHOULD BE DENIED. ...............20
    A.     Polaroid Did Not Unreasonably Delay. ...................................21
          1.    Polaroid's cause of action did not accrue in 2000. ......21
          2.    Polaroid's claim did not accrue in 2002. ......................24
          3.    No matter when the laches time period begins, HP has not established unreasonable delay. ......................................25
    B.     Polaroid's Delay Is Excused. ...................................................26
          1.    Polaroid is excused by the limited nature of HP's infringement. ..............26
          2.    Polaroid is excused by repeated management changes ............................27
          3.    ████████████████████████ . ...............28
          4.    Polaroid is excused by other business considerations, including its bankruptcy. ......................................................29
    C.     HP Has Not Been Prejudiced. ..................................................30
          1.    There is no economic prejudice to HP. .........................30
          2.    There is no evidentiary prejudice to HP. ......................33

II.    SUMMARY JUDGMENT ON ESTOPPEL SHOULD BE DENIED. ............34

████████████████████████

A.    Polaroid Did Not Mislead HP Through Conduct Or Silence.................................34
B.    There Is No Evidence Of Reliance On Polaroid's Statements. ............................35
C.    HP Has Not Been Prejudiced...................................................................................36

III.    SUMMARY JUDGMENT SHOULD BE DENIED BASED ON HP'S WILLFUL
INFRINGEMENT AND DISCOVERY MISCONDUCT.................................................36

CONCLUSION.............................................................................................................................37

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott Diabetes Care, Inc. v. Roche Diagnostics Corp.*,
No. C05-03117, 2007 WL 1241928, at *4 (N.D. Cal. April 27, 2007) ........................... 28

*Acushnet Co. v. Dunlop Maxfli Sports Corp.*,
No. CIV A. 98-717-SLR, 2000 WL 987979 (D. Del. June 29, 2000) ............................. 20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................... 19

*Bio-Tech Gen. Corp. v. Genetech, Inc.*,
80 F.3d 1553 (Fed. Cir. 1996) .................................................................................... 21

*Cornell Research Found. v. Hewlett-Packard Co.*,
(N.D.N.Y. Jan. 31, 2007) ........................................................................................... 23

*Ecolab, Inc. v. Envirochem, Inc.*,
264 F.3d 1358 (Fed. Cir. 2001) .................................................................................. 30

*Freeman v. Gerber Products Co.*,
466 F. Supp. 2d 1242 (D. Kan 2006) .......................................................................... 25

*Gasser Chair Co.* v. Infanti Chair Mfg.,
60 F.3d 770 (Fed. Cir. 1995) ...................................................................................... 25

*Genzyme Corp. v. Atrium Med. Corp.*,
12784, at *9 (D. Del. July 22, 2003) ..................................................... 26, 27, 28, 30, 32

*GFI, Inc. v. Franklin Corp.*,
88 F. Supp. 2d 619 (N.D. Miss. 2000) ........................................................................ 34

*Gossen Corp.* v. Marley Mouldings, Inc., 977 F. Supp. 1346, 1354 (E.D. Wis. 1997 ................ 35

*Hemstreet v. Computer Entry Sys. Corp.*,
972 F.2d 1290 (Fed. Cir. 1992) .............................................................................. 25, 30

*Heraeus Electro-Nite Co. v. Midwest Instrument Co.*,
Civ. A. 06-355, 2007 WL 2071905  (E.D. Pa. July 17, 2007 .......................................... 26

*Illinois Tool Works, Inc. v. Grip-Pak Inc.*,
725 F. Supp. 951 (N.D. Ill. 1989) ............................................................................... 26

*Imagexpo v. Microsoft*,
281 F. Supp. 2d 846 (E.D. Va. 2003) .......................................................................... 33

*Intertech Licensing Corp. v. Brown & Sharpe Mfg.*,
    708 F. Supp 1423 (D. Del. 1989)................................................................. 22

*Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*,
    315 F. Supp. 2d 589 (D. Del. 2004)........................................................... 20

*McKesson Info. Solutions v. TriZetto Group Inc.*,
    426 F. Supp. 2d 203 (D. Del 2006)........................................................... *passim*

*Mead Digital Systems, Inc. v. A.B. Dick Co.*,
    521 F. Supp. 164 (S. D. Ohio 1981) ..................................................... 25, 26

*MLMC Ltd. v. Airtouch Commc'ns., Inc.*,
    No. 990781-SLR, 2001 (D. Del. Nov. 1, 2001)....................................... 20

*Oakwood Labs v. Tap Pharma.*,
    No. 01C7631, 2003 WL 22400759
    (N.D. Ill. Oct. 21, 2003).......................................................................... 34

*Odetics, Inc. v. Storage Tech. Corp.*,
    919 F. Supp. 911 (E.D. Va. 1996) ........................................... 25, 28, 30, 32, 36

*Rosemount, Inc. v. Beckman Instruments*,
    727 F.2d 1540 (Fed. Cir. 1984).............................................................. 25

*Symantec Corp. v. Computer Assoc. Int'l Inc.*,
    522 F.3d 1279 (Fed. Cir. 2008)............................................................... 22

*Symbol Techs., Inc. v. Proxium No. CIV. 01-801-SLR*,
    2004 WL 1770290 (D. Del. Jul 28, 2004) .............................................. 24, 33

*Tenneco Automotive Operating Co. v. Visteon Corp.*,
    375 F. Supp. 2d. 375, 2d. 382 (D. Del. 2005)......................................... 20

*Tenneco Automotive Operating Co. v. Visteon Corp.*,
    375 F. Supp. 375 (D. Del. 2005).............................................................. 24

*Teradyne, Inc. v. Hewlet-Packard Co.*,
    No. C-91-0344MHP, 1994 WL 327213
    (N.D. Cal. June 6, 1991........................................................................... 27

*Thomas v. Echostar Satellite LLC*,
    2006 Wl 3751319 (W.D.N.C. Dec. 19, 2006) ........................................ 22

*Tripp v. U.S.*,
    406 F.2d 1066 (Ct. Cl. 1969) ........................................................................... 26

*Wafer Shave, Inc. v. Gillette Co.*,
    857 F. Supp. 112 (D. Mass. 1993) ................................................... 28, 29, 34, 35

*Wanlass v. Fedders Corp.*,
    148 F.3d 1461 (Fed. Cir. 1998) ...................................................................... 24

*Wanlass v. General Electric Co.*,
    148 F.3d 1334 (Fed Cir. 1998) ....................................................................... 24

**Rules**

Fed. R. Civ. P. 56(d) ..................................................................................... 19

## NATURE AND STAGE OF THE PROCEEDINGS

HP filed a motion for summary judgment on grounds of estoppel and, in the alternative or in addition, laches.  This is Polaroid's answering brief in opposition to that motion.

## SUMMARY OF THE ARGUMENT

### LACHES

1.      HP claims that Polaroid unreasonably delayed from November 2000, when an HP employee presented an article disclosing a predecessor to the accused technology, until December 6, 2006, the filing date of this lawsuit.  As an initial matter, Polaroid's cause of action did not accrue in November 2000 with the presentation of HP's article.  There also is a genuine issue of fact as to whether Polaroid knew or reasonably should have known of HP's infringement in June 2002, when HP says it first began to sell the accused products.  Polaroid contends that it was not until January 2006 that it knew or reasonably should have known of HP's infringement.  Thus, there are fact disputes as to the length of the delay in filing suit, if any, and this fact dispute is sufficient to deny HP's summary judgment motion of laches.

2.      Even if the period of delay were the period alleged by HP, as outlined in the chart below, such delay is excused by events that the Federal Circuit and this Court have specifically recognized justify later-filed suits.  This separate and independent reason warrants denial of HP's Motion.

| November 2000 - October 2001 | <ul><li>No cause of action accrued.</li><li>No accused product was sold.</li><li>Even if a cause of action accrued, the extent of any infringement by HP was *de minimus*.</li><li>Polaroid was in dire financial straits from November 2000–October 2001.</li></ul> |
|---|---|
| October 2001 - December 2003 | <ul><li>Polaroid was in bankruptcy from October 2001–December 2003.</li><li>█████████████████████████████████</li><li>Various business considerations consumed Polaroid's time and resources, affecting its ability to investigate and challenge infringement.</li></ul> |

| July 2002 - April 2005 | • Polaroid was acquired by One Equity Partners, LLC in July 2002, resulting in a change of management.<br>• ██████████████████████████████████<br>• Various business considerations consumed Polaroid's time and resources, affecting its ability to investigate and challenge infringement. |
|---|---|
| April 2005 - December 2006 | • Polaroid merged with a subsidiary of Petters Group Worldwide, LLC in April 2005, resulting in a change in management.<br>• Various business considerations consumed Polaroid's time and resources, affecting its ability to investigate and challenge infringement. |

3.     Even assuming unreasonable delay — which HP has not established and cannot prove — HP cannot show that it was materially prejudiced.  There are questions of fact as to the existence and magnitude of any economic loss on the part of HP.  There is no evidence that HP's alleged economic losses were caused by Polaroid's delay. ████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████  HP also has not shown any evidentiary loss, or that such loss was the result of Polaroid's alleged delay and was prejudicial to HP.

**EQUITABLE ESTOPPEL**

4.     By arguing on summary judgment that Polaroid made an accusation of infringement, HP contradicts the positions it took throughout discovery. ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████  Ex. 1, HP's Resp. to Polaroid's First Set of Interrogs. (Nos. 1-20) at 16, 17; Ex. 2, HP's Fourth Supplemental Resp. to Polaroid's First Set of Interrogs. (Nos. 9, 11-13) at 36.  Prior to the day that suit was filed, Polaroid never accused HP of infringement, and, thus, there was no "misleading conduct."  The absence of "misleading conduct is a sufficient basis for denial of HP's motion regarding estoppel.

5.     ████████████████████████████████████████████ ████████████████████████████████████████████████

2

████████████████████████████████████████

███████████████████████████ Therefore, HP made its business decisions without regard for the '381 patent or any positions taken or not taken by Polaroid. The absence of "reliance" is another independent and sufficient basis for denial of HP's motion regarding estoppel.

6.    Even if there had been misleading conduct and reliance, HP has not shown material prejudice. The existence and magnitude of any economic loss are in question. ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ Evidentiary loss has not been proven, given the volume of Polaroid-HP communications and Polaroid source code produced. And, it has not been shown that any loss resulted from Polaroid's delay or prejudiced HP. The absence of "prejudice" is yet another independent and sufficient basis for denial of HP's motion regarding estoppel.

<strong><u>STATEMENT OF FACTS</u></strong>

**A.    Polaroid.**

**1.    Historic overview of Polaroid.**

Edwin H. Land founded Polaroid in 1937. Ex. 3, Beaudoin Decl. ¶ 8. He was the driving force of the company and instituted a robust research and development program. *Id.* Over time, Polaroid invented and sold a variety of innovative products based on its research in optics, physics, chemistry, and electronics. *Id.*, ¶ 9. The instant camera, Polaroid's most well-known product, was invented by Land and introduced in 1948. *Id.*, ¶ 10. It was enormously popular, and instant photography was Polaroid's main business through the 1980's. *Id.*

**2.    Pre-Bankruptcy.**



████████████████████████████████████████████████████████
█████████████████████████████ *Id.*, ¶¶ 11, 15. ██████████████████████████
██████████████████████████████ *Id.*; Ex. 4, B. Kullberg 12/6/07 Dep. Tr. p. 226, line 24–p. 227, line 8. ████████████████████████████████
█████████████████████████████████████ Ex. 3, Beaudoin Decl. ¶ 21.



*See* Ex. 5, Polaroid Timeline.

*Id.*, ¶¶ 11, 18–19. *Id.*, ¶ 31.

*Id.*, ¶ 19.

*Id.*

### 3.     Chapter 11 Bankruptcy.

Ex. 6, B. Kullberg 12/5/07 Dep. Tr. p. 127, lines 9–17; p. 128, lines 6–13.

Ex. 3, Beaudoin Decl. ¶ 22.[2]

*Id.*, ¶ 22.

### 4.     One Equity Partners, LLC's strategy in the Post-Bankruptcy Polaroid.

---

[1]

*Id.* ¶ 18.

*Id.*

*Id.*

[2]

Ex. 7, J. Lyons 5/14/02 Email; Ex. 8 J. Lyons Dep. Tr. p. 93, line 21–p. 96, line 25.

*Id.*, p. 95, line 21–p. 96, line 25.

██████████████ Ex. 1, Beaudoin Decl. ¶ 24. ████████████████████████

████████████████████████████ *Id.*

**a. Reorganization of Polaroid.**

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████ *Id.*, ¶ 22. ████████████████████████████

████████████████████████████████████████████ *Id.*,

¶ 27.

████████████████████████████████████████████████

██████ *Id.*, ¶ 27. ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████ *Id.*, ¶ 25.

████████████████████████████████████████████████

████████████████████████ Ex. 4, B. Kullberg 12/6/07 Dep. Tr. p. 234, line 16–p. 235,

line 9. ████████████████████████████████████

████████████████████████████████████████████████

███████ *Id.* ██████████████████████████████████

████████████████████████████████████████ Ex. 3, Beaudoin

Decl. ¶ 26.

████████████████████████████████████████████████

██████████████████████████ *Id.*, ¶ 28. ████████████████████

████████████████████████ *Id.* ████████████████████████ *Id.*

**b. Going public.**

████████████████████████████████████████████████

*Id.*, ¶ 29. ███████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ *Id.*

### c.   Commercialization of Opal and Onyx.

████████████████████████████████████████████████

████████████████████████ *Id.*, ¶ 30. ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████ *Id.* ██████████

██████████████████████████████████████████████ *Id.*, ¶ 31. █

██████████████████████████████████████ *Id.*

### d.   Project Victory.

███████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ *Id.*

█████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████ *Id.*, ¶ 33. ██████████████████████████████████

██████████████████████████ *Id.*, ¶ 33_. 

### 5.     Polaroid after the Petters Group Worldwide, LLC merger.

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ *Id.* ██████████████

██████████████████████████████████████ *Id.* █████████

6

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ *Id.*, ¶ 35.

   ██████████████████████████████████████████

███████████████████████████████████████ *Id.*, ¶ 36.

███████████████████████████████████████████ *Id.*

███████████████████████████████████████ *Id.*, ¶ 38.

### a.  Short-term monetization.

   ███████████████████████████████████████████

██████████████████████████ *Id.*,  ¶ 39. ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

### b.  Zink Imaging, LLC.

   ██████████████████████████████████████████

█████████████████████████ *Id.*, ¶ 40. ████████████

█████████████████ *Id.* ██████████████████████████

██████████████████ *Id.* █████████████████████████

██████████████████████████████████ *Id.* ██████████

██████████████████████████████████████ *Id.*

### c.  IP Monetization Program.

   ██████████████████████████████████████████

████████████████████████████████████████ *Id.*,

¶ 41. █████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████     *Id.*

### B.    HP

HP is a leading provider of personal computers, printers and scanners (including consumable media), digital cameras, and other products.  Ex. 9, Wallace Rpt. at 6.  HP manufactures and sells various products that embody the inventions of the '381 patent, including printers, cameras, software, and kiosks.  J.A. Ex. B, Agouris Op. Rpt. at p. 11.[3] ███████████████

███████████████████████████████████████████████████████[4]

### C.    HP's Knowledge Of The '381 Patent In 2000.

On November 9, 2000, Nathan Moroney, an HP employee, presented a paper during the IS&T/SID Eighth Color Imaging Conference.  Ex. 10, D.I. 141, "Local Color Correction Using Non-Linear Masking" (the "Moroney Article"); Ex. 10, Eighth Color Imaging Conference: Color Science and Engineering Final Program and Proceedings at *xii*.  ███████████████████

███████████████████████████████████████████████████████████

J.A. Ex. B, Agouris Op. Rpt. at p. 32.  Moroney gave a presentation at the conference based on his paper. Ex.11, D.I. 141, "Local Color Correction Using Non-Linear Masking" Powerpoint presentation (the "Moroney Presentation").

The Moroney Article and Presentation discussed the CIE 1997 Color Appearance Model ("CIECAM97").  Ex. 10, D.I. 141 at POL 618–19; Ex. 11, D.I. 141 at HPPOL_0052680,

---

[3] To avoid filing multiple copies of the same document relating to Polaroid's summary judgment motions and oppositions, Polaroid submitted a Joint Appendix with its affirmative summary judgment motions filed on May 16, 2008.  *See* Sealed Docket Entry No. 151.  Polaroid cites to that Joint Appendix here as "J.A. Ex. __" to avoid resubmitting exhibits where possible. Polaroid cites to the appendix filed in support of Defendant's motion as "Ex.__, D.I. 141." Documents related only to the instant brief are contained in a separate Appendix and will be cited as "Ex. __."

[4] ███████████████████████████████████████████████████████

█████████████████████████████

████████████████████████████████

HPPOL_0052691, HPPOL_0052696.  ███████████████████████████

█████████████████████████████████████  Ex. 10, D.I. 141 at POL 619; Ex.

11, N. Moroney Dep. Tr. p. 60, lines 5–14.  ████████████████████████

█████████████████████████████████████████  *Id.*, p. 60,

lines 18–20.  In his article, Moroney wrote: (1) "it is interesting to note the relative simplicity of

the proposed algorithm and its close relationship to the lightness scale that is incorporated in the

CIECAM97s color appearance model"; and (2) "[t]his implies that it may be useful to consider

constructing a color appearance model from near to far."  Ex. 10, D.I. 141 at POL 619.

     The Moroney Article and Moroney Presentation did ***not*** discuss any planned use of the

Moroney Algorithm by HP.  Ex. 10, D.I. 141; Ex. 11, D.I. 141.  They did not mention the

development or impending launch of any HP products employing the Moroney Algorithm.  *Id.*

In fact, no HP product is mentioned at all in either document.  *Id.*



███████████████████  Ex. 12, Polaroid's Resp. to HP's First Set of Interrogs. at No. 1, p. 5.  ████

████████████████████  Ex. 13, Stevenson Rpt. at 45–46.  ████

*Id.* at 45.  ████

*Id.*  at 46.  ████

---

[5]   CIE is an acronym for International Commission on Illumination.  CIE "is devoted to worldwide cooperation and the exchange of information on all matters relating to the science and art of light and lighting, colour and vision, and image technology."  Ex. 14, http://www.cie.co.at/.

██████████████████████████████████████████████████████████

████████████████████████████ *Id.*

        Dr. Vlad Cardei, a Polaroid employee, attended the IS&T/SID Eighth Color Imaging

Conference in 2000.  Ex. 15, Formal Meeting Roster.  ██████████████████████████

████████████     Ex. 11, N. Moroney Dep. Tr. p. 171, lines 9–12.  ████████████████████

██████████████████████████████

█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████

*Id.*, p. 171, lines 18–24.  ██████████████████████████████████████

████████████████████     *Id.*, p. 172, lines 3–14  ████████████████████████

█████████████████████████████████████████████████████████████████     *see*

*also* p. 174, line 16–p. 175, line 11; p. 176, lines 8–14.  █████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████     *Id.*, p. 180, lines 2–8; Ex. 9, D.I. 141, 11/00 Task List at

HPPOL_0052837.

██████████████████████████████████████████████

████████████████████     Ex. 16, J. Thornton Dep. Tr. p. 144, lines 16–24.  ██████████

████████████████████     *Id.*, p. 146, lines 2–p. 148, line 20; Ex. 13,

D.I. 141, Polaroid IP Monetization Project at CRA 007452[6] █████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████████████
████████████████████████

---

[6] Throughout its brief, HP attributes this presentation prepared by CRA International to Polaroid.

████████████████████████████████████

██████████████████████████████████████████████████████████████

*Id.*, p. 148, line 21–p. 149, line 5. ████████████████████████████████

████████████████████████████ *Id.*, p. 149, lines 6–20. ███████████████

██████████████████████████████████████████████ Ex. 15,

D.I. 141, Thornton Status Report at POL 702.; *see also* Ex. 16, J. Thornton Dep. Tr. p. 177, lines

14–23.

███████████████████████████████████████████ Ex. 11, N. Moroney

Dep. Tr. p. 175:20–22. █████████████████████████████ *Id.*, p. 176, line

23–p. 177, line 5. █████████████████████████████████████████

█████████████████████ *Id.*, p. 182:14–p.183, line 7; Ex. 17, October 16, 2000 to April

16, 2001 Lab Notebook at HPPOL_0137409. █████████████████████████

████████████████████████████ Ex. 18, "Method for Automating Spatial Tone

Reproduction" at HPPOL_0052717, 0052723; Ex. 11, N. Moroney Dep. Tr. p. 198, line 25–p.

100, line 6.

   **D.**   ███████████████████████████████

██████████████████████████████████████████████ Ex.

3, Beaudoin Decl. ¶ 22. █████████████████████████████████

█████████████████████████████ *See* Ex. 19, 10/29/01 Schuette Email. ██████

████████████████████████████████████████████ Ex. 20,

10/30/01 Schuette Email; Ex. 21_, 11/06/01 Schuette Email.

██████████████████████████████████████████████████████

████████████████████████████████ *See* Ex. 19, 10/29/01 Schuette

Email; Ex. 20, 10/30/01 Schuette Email; Ex. 21, 11/06/01 Schuette Email; Ex. 22, R. Reiling

Dep. Tr. p. 14, line 3–p. 16, line 4; p. 73, lines 1–23; Ex. 6, B. Kullberg 12/5/07 Dep. Tr. p. 18,

line 15–p. 21, line 4. ██████████████████████████████████ *Id.*

████████████████████████████████████



████████████████████████████████████████████████████████

██████████████ Ex. 22, R. Reiling Dep. Tr. p. 77, line 12–p. 78, line 14.

████████████████████████████████████████████

██████████████████████ Ex. 23, Lyons Travel Log at Lyons 015. ███████████

████████████████████████████████ Ex. 24, Greer Dep. Tr. p. 11, line 3–p. 25, line 9; p.

26, line 7–p. 28, line 9. ████████████████████████████████████████

███████████████████████████████[7] Ex. 25, 11/15/01 Meeting Notice.

████████████████████████████████████████████████████

███████████████ Ex. 26, 11/29/01 Meeting Notice. ███████████████████████

████████████████████████████████ Ex. 16, J. Thornton Dep. Tr. p. 132, line 19–p. 133, line

24. ██████████████████████████████████████████

████████████████████████████████████████████████████ *Id.*, p. 134,

line 4–p. 137, line 24; Ex. 27, "ISL Topics for HP." ███████████████████████

████████████████████████████████████ Ex. 27.

There is no question that a copy of the '381 patent was given to HP at this meeting. Ex.

16, J. Thornton Dep. Tr. p. 138, line 13–p. 140, line 10. ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████ Ex. 15, D.I. 141 at POL 702. ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████ Ex. 8, J. Lyons Dep. Tr. p. 49, line 2–p. 65, line 21. ███████████

████████████████████████████████████████████████████████

---

[7] ████████████████████████████████████████████ Ex. 24, S. Greer Dep. Tr. p. 18, lines 14–17.

████████████████████████████████



███████████████ *Id.* ████████████████████████████████████

██████ *Id.*, p. 62, lines 3– 24.

    ████████████████████████████████████████████████████

███████████████████████████████████████████████████ Ex.

24, D.I. 141, L. Kimball 3/3/02 Email. ████████████████████████

█████████████████████ Ex. 31, D.I. 141, 10/11/02 Meeting Notice.

    ████████████████████████████████████████████████████

██████████████████████████████████████████████ Ex. 7, D.I. 141,

Polaroid's First Supplemental Resp. to HP's First Set of Interrogs. at No. 15, p. 90; Ex. 28, HP

12/6/02 Offer; Ex. 22, R. Reiling Dep. Tr. p. 78, line 18–p. 85, line 22. ██████████████

████████████████████████████████████████████████████

██████████████████ *See, e.g.*, Ex. 28, HP 12/6/02 Offer; Ex. 22, R. Reiling Dep. Tr. p. 26,

line 22–p. 28, line 7; p. 36, lines 6–15; Ex. 29, M. Dansky Dep. Tr. p. 189, line 18–p. 190, line

21.

    ████████████████████████████████████████████████████

████████████████████████████████████████████████ Ex. 22, R.

Reiling Dep. Tr. p. 85, line 23–p. 86, line 22; Ex. 6, B. Kullberg 12/5/07 Dep. Tr. p. 56, line 25–

p. 61, line 25.[8] ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ Ex.

A, Beaudoin Decl. ¶¶ 23, 29.

    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████ Ex. 31, R. Reiling 3/11/03 Letter at HP_68882. ████████████

────────────────────────
[8] ████████████████████████████████████████████████████
████████████ Ex. 30, M. Schneider Dep. Tr. p. 106, line 19–p. 109, line 21.



█████████████████████████████ Ex. 32, J. Lyons 4/8/03 Email; Ex. 33 4/15/03 Meeting

Notice. ████████████████████████████████████████

████████████████████████████████████████

Ex. 34, J. Lyons 6/23/03 Email and Offer. ████████████████████

█████████████████████████████ Ex. 35, R. Reiling 6/24/03 Email.   Lyons

responded that same day. *Id.* ████████████████████████ Ex. 36, B.

Kullberg 12/5/07 Dep. Tr. p. 205, line 6–p. 206, line 1.

**E.**   ████████████████████████████████████████

████████████████████████████████████████

Ex. 11, N. Moroney Dep. Tr. p. 104, line 7–p. 104, line 11.

████████████████████████████████████████

███████████████████████ Ex. 10, D.I 141; Ex. 13, Stevenson Rpt. at 45.

████████████████████████████████████████

████████████████ Ex. 9 D.I. 141 at HPPOL-0052837 (emphasis added). █████████

████████████████████████████████████████

██████ *Id.* ████████████████████████████████████

████████████████████████████████████████ *Id.*

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████ Ex. 36, T. Berge Dep. Tr. p. 23, lines 21–p. 25, line

3; p. 26, lines 6–10; p. 27, line 1–p. 28, line 17; p. 29, lines 6–15; p. 30, line 6–p. 33, line 18.

One of the patents reviewed by Tom Berge was the '381 patent. *Id.,* p. 77, lines 10–13.   ██████

████████████████████████████████████████

████████████████████████████████ p. 35, line 11–p. 36, line 15.

[9] ███████████████████████████████████████

████████████ . Ex. 37, R. Bhaskar Dep. Tr. p. 53, lines 16–21.

████████████████████

*Id.,* p. 37, line 4–p. 38, line 11.

*Id.,* p. 39, line 24–p. 40, line 8; p. 40, lines 22–24.

Rule 56(f) Affidavit of Courtney Holohan in Support of Polaroid Corporation's Answering Brief in Opposition to Hewlett-Packard Company's Motion for Summary Judgment on Grounds of Estoppel and, in the Alternative or in Addition, Laches ("56(f) Aff.") at Ex. N.

*Id.*

Ex. 36, T. Berge Dep. Tr. p. 37, line 4–p. 38, line 11.  HP employees Ranjit Bhaskar and Moroney told Berge that there were differences between the '381 patent and LACE.  *Id.*, p. 75, line 22–p. 76, line 8.

Ex. 38 (emphasis added), R. Beeson 1/10/02 Email.

Ex. 37, R. Bhaskar Dep. Tr. p. 131, lines 20–23.

Ex. 17, D.I. 141, Malibu Image Enhancement Investigation/Implementation Timeline.

Ex. 9, Wallace Rpt. at 11.

nonenone

none1none

**F.**

J.A. Ex. B, Agouris Op. Rpt. at 79–90.

*Id.* at 82.[10]

*See* D.I. 140 at 8, n. 8.

D.I. 140 at 8 n. 8; Ex. 39, D.I. 141, Frederickson Dep. Tr. p. 37, line 11–p. 40, line 5 (); p. 44, line 7–p. 45, line 22 (; p. 65, line 17–p. 73, line 22 (; p. 74, line 16–p. 76, line 16

### G. Polaroid's Ability To Test For Infringement Of The '381 Patent.

HP claims that user's guides for the Deskjet 3600 Series, Deskjet 5650 Series, and Deskjet 5850 Series publicized the accused technology in 2002. D.I. 140. at 6. However, during discovery, HP contended that these printer series were not available until 2003. Ex. 9, Exhibit 2B to Wallace Rpt. The guides have copyright dates of 2003. Ex.28, D.I. 141, Deskjet 3600 Series User's Guide at HP_19299; Ex. 29, D.I. 141, Deskjet 5650 User's Guide at HP_20044; Ex. 30, D.I. 141 Deskjet 5850 User's Guide at HP_20311.

Also, at least two of the marketing efforts cited by HP for its contention that Polaroid should have somehow known about HP's development ***do not even relate to the accused***

---

[10] .
*Compare* D.I. 140. at 8 *with* J.A. Ex. B, Agouris Op. Rpt. at 80.

none1none

***technology.***  D.I. 140 at 7; Ex. 35, D.I. 141; Ex. 37, D.I. 141. 

Ex. 9, Ex. 2 to Wallace Rpt.

Ex. 15, D.I. 140 at POL 702.

Ex. 9 to Agouris Op. Rpt. (J.A. Ex. B).

Ex. 9, Ex. 2 to Wallace Rpt.

Ex. 15, D.I. 141 at POL 702.

Ex. 8, Thornton Dep. Tr. p. 173, lines 1–4; *see also id.* p. 171, line 23–p. 172, line 25.[11]

Ex. 13, D.I. 141 at CRA 007452.

*Id.*

Ex. 7, D.I. 141 at No. 15, pp. 87–88.

*Id.*

*Id.*

---

[11]  HP omitted this testimony from its brief.  *See* D.I. 140. at 5.

████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 1, Polaroid's Resp. to

HP's First Set of Interrogs. at 12.

### H.    Preserved Evidence In This Case.

HP argues that there is insufficient evidence to resolve issues in this case, including

marking and willfulness.  D.I. 140 at 10-13. ████████████████████████

████████████████████ Ex. 39, Meginnes Decl. ¶ 3. █████████████████

████████████ *Id.*, ¶ 2. Moreover, a substantial volume of documents and deposition testimony

have been produced relating to the following communications between Polaroid and HP:

- ████████████████████████ *See, e.g.*, Ex. 15, Formal Meeting Roster; Ex.9, D.I.
  141 at HPPOL-0052837; Ex. 13, D.I. 141; Ex. 15, D.I. 141; Ex. 17, October 16, 2000 to
  April 16, 2001 Lab Notebook. ████████████████████████

- November 2001 conference.  Ex. 26, 11/29/01 Meeting Notice; Ex. 27, "ISL Topics for
  HP." ████████████ Ex. 27, "ISL Topics for HP;" Ex. 15, D.I. 141, at POL 000702.
  ████████████████████████████

- ████████████████████████████ *See* Ex. 20, 10/29/01
  Schuette Email; Ex. 21, 10/30/01 Schuette Email; Ex. 23, 11/06/01 Schuette Email; Ex.
  23, Lyons Travel Log ; Ex. 25, 11/15/01 Meeting Notice; Ex. 24, D.I. 141; Ex. 31, D.I.
  141; Ex. 28, HP 12/6/02 Offer; Ex. 31, R. Reiling 3/11/03 Letter; Ex. 32, J. Lyons 4/8/03
  Email; Ex. 33 4/15/03 Meeting Notice; Ex. 34 J. Lyons 6/23/03 Email and Offer; Ex. 35,
  R. Reiling 6/24/03 Email. ████████████████████████████████

Thus, HP has plenty of evidence to make its marking and willfulness arguments and does not

support any argument to the contrary in its brief.  *See* D.I. 140 at 11, 13.

████████████████████████████████████████████████████

████████████████████████████████ Ex.39, Meginnes Decl. ¶ 4. ████████

██████████████████████████████████████████████████████ *Id.*

███████████████████████████████████████████████████████

██████████████████████████████ *Id.*, ¶ 5. ████████████████

████████████████████████████████████



*Id.*, ¶ 6.

Ex. 40, D. Higer 12/7/07 Ltr. to Coburn; Ex. 41, D. Higer 1/14/08 Ltr. to Giust at 2; Ex. 42, D. Higer 1/16/08 Ltr. to Giust.

Ex. B, Agouris Op. Rpt. at 94–95.

Ex. 43, J. Bullitt Decl. ¶¶ 16–17.

*See* Ex. 44, Schonfeld Dep. Tr. p.10, lines 18-24; p38, lines 9-17.

D.I. 140 at 12.

Ex. 45, J. Bullitt Dep. Tr. p. 52, lines 17–24; p. 55, lines 1–7.

D.I. 140. at 13.

## ARGUMENT

Summary judgment must be denied if any material fact is in dispute. FED. R. CIV. P. 56(d); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Summary judgment is appropriate only where the evidence is "so one-sided that one party must prevail as a matter of law." *Id.* at 252.

Laches and estoppel are fact-intensive inquiries, and summary judgment is frequently inappropriate. *See, e.g.*, *McKesson Info. Solutions v. TriZetto Group Inc.*, 426 F. Supp. 2d 203, 208 (D. Del 2006); (denying cross motions for laches summary judgment and defendant's equitable estoppel motion); *Tenneco Automotive Operating Co. v. Visteon Corp.*, 375 F. Supp. 2d. 375, 2d. 382 n. 3, n. 5 (D. Del. 2005) (denying laches summary judgment); *Izumi Prods. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 615 (D. Del. 2004) (same); *MLMC Ltd. v. Airtouch Commc'ns., Inc.*, No. 990781-SLR, 2001 WL 1414269, at *2 (D. Del. Nov. 1, 2001) (same); *Acushnet Co. v. Dunlop Maxfli Sports Corp.*, No. CIV A. 98-717-SLR, 2000 WL 987979, at *13 (D. Del. June 29, 2000) (same). HP bears the burden of persuasion on the affirmative defenses of laches and equitable estoppel. *A. C. Aukerman co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1038 (Fed. Cir. 1992) (en banc).

If a plaintiff delays filing suit for six years or more, a presumption of laches will apply. *McKesson*, 426 F. Supp. 2d at 208. However, the patentee need only raise a genuine issue of fact regarding any laches element to overcome the presumption. *Id.* HP suggests that a patentee must show an issue of fact as to ***both*** delay and prejudice to affect a rebuttal. That is wrong. *See Wanless v. Gen. Electric Corp.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998) ("Whenever the presumption arises, including in the summary judgment context, the patentee's evidence must be sufficient to raise a genuine issue of material fact about either the excuse for *or* reasonableness of the delay, *or* the existence of the prejudice.") (emphasis added). Once the presumption is rebutted, the defendant may prove laches by "establishing the elements for this defense." *McKesson*, 426 F. Supp. 2d at 208. Because there are questions of fact regarding every aspect of HP's laches and equitable estoppel defenses, summary judgment should be denied.

# I.     SUMMARY JUDGMENT ON LACHES SHOULD BE DENIED.

HP has not proven by a preponderance of the evidence that: (1) Polaroid delayed in filing suit for an unreasonable and inexcusable length of time after Polaroid knew or reasonably should

have known of its claim against HP; or (2) HP suffered material prejudice or injury as a result of Polaroid's delay. *McKesson*, 426 F. Supp. 2d at 208 (citing *Aukerman*, 960 F.2d at 1028).

### A.    Polaroid Did Not Unreasonably Delay.

Polaroid did not unreasonably delay.  Regardless of whether Polaroid's claim accrued in 2000 or 2002, Polaroid's alleged "delay" was not unreasonable.

### 1.    Polaroid's cause of action did not accrue in 2000.

HP asserts that the delay period should begin in November 2000 because Polaroid somehow had ***actual knowledge*** of infringement of the '381 patent — even though HP had no infringing product on the market at that time — and therefore that the six-year presumption applies.  HP's reliance on the 2000 Moroney Article and Presentation as the basis for this contention is misplaced for at least two reasons: (1) HP has not established that the Moroney Algorithm actually infringes the '381 patent; and (2) HP has not established that Polaroid had actual knowledge of that infringement.  Therefore, Polaroid's cause of action did not accrue in 2000.

Evidence of infringement must be present for a laches delay period to commence.  *Bio-Tech Gen. Corp. v. Genetech, Inc.*, 80 F.3d 1553, 1564-65 (Fed. Cir. 1996) (affirming district court finding that laches did not start for non-infringing activity).  The delay period for laches begins to run when a patentee has actual knowledge of infringement, including of any "pervasive, open, and notorious activities that a reasonable patentee would suspect were infringing." *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1469 (Fed. Cir. 1998) (citation omitted).

In November of 2000, a Polaroid employee saw the Moroney Article and Presentation, which contained the Moroney Algorithm. Ex. 10, D.I. 141; Ex. 11, D.I. 141.  Those materials repeatedly discussed the CIECAM97 color model being developed by a standards-setting committee of which the author was the technical chair. Ex. 10, D.I. 141 at POL 618–19; Ex. 11, D.I. 141 at HPPOL_0052680, HPPOL_0052691, HPPOL_0052696.  Polaroid did not, however, see any discussion of HP's plans for the Moroney Algorithm. *Id.* No HP product was mentioned

in the article.  *Id.*  In particular, there was no mention of the development or impending launch of any HP product employing the Moroney Algorithm.  *Id.*

There is a question of fact as to whether the Moroney Algorithm infringes the '381 patent. ████████████████████████ Ex. 12, Polaroid's Resp. to HP's First Set of Interrogs. at No. 1, p. 5.[12] ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ Ex. 13, Stevenson Rpt. at 45–46.

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ Ex. 37, R. Bhaskar Dep. Tr. p. 131, lines 20–23; Ex. 17, D.I. 141.

The Federal Circuit recently addressed this issue in *Symantec Corp. v. Computer Assoc. Int'l Inc.*, 522 F.3d 1279, 1295 (Fed. Cir. 2008).  In *Symantec*, defendant asserted that plaintiff had actual or constructive knowledge of an earlier version of the allegedly infringing product. *Id.* at 1294.  The district court found that the defendant failed to show evidence that the earlier product was the "same or similar" as the accused product because it did not demonstrate that "the earlier product embodied the same claimed features as the accused product." *Id.* at 1295 & 1295 n. 9.

Here, the Moroney Article and Presentation do not even reference any product.  ████████

████████████████████████████████████████████████████

████████████ None of the "evidence" HP cites in support of its novel laches theory changes the

---

[12] In contrast to HP's cited cases, Polaroid's position has been consistent through the case. *Intertech Licensing Corp. v. Brown & Sharpe Mfg.*, 708 F. Supp 1423, 1435–37 & n. 27 (D. Del. 1989) (plaintiff's position contradicted numerous letters and *his original complaint*); *Thomas v. Echostar Satellite LLC*, Nos. 3:05CV494, 3:05CV496, 2006 Wl 3751319, at *7 & n. 10 (W.D.N.C. Dec. 19, 2006) (plaintiff accused the products he tried to distinguish for the purposes of laches of infringement).

████████████████████████████████████████

dispositive fact that HP has failed to establish the Moroney Article and Presentation embody a product that infringing the '381 Patent, or that Polaroid had actual knowledge of such infringement.[13]

In *Cornell Research Found. v. Hewlett-Packard Co.*, Civ. Action No. 5:01-CV-1974 (NAM/DEP), 2007 WL 4349135, at *37 (N.D.N.Y. Jan. 31, 2007), HP argued that an article published before the sale of any infringing products triggered the laches period for a later infringing product by announcing that product, which was only in development. *Id.* In a letter to HP's president sent after this article was published — in much stronger language than that used by Polaroid — the ***inventor*** wrote that "there are strong indications that [HP's announced products] *infringe* upon [the patent-in-suit]." *Id.* (emphasis added). Plaintiff also advised that HP's announced product was "reasonably similar to the subject matter of the [patent-in-suit]," and asked whether HP would be interested in obtaining a license. *Id.* (emphasis added). *Id.* The first commercial shipment of HP's product did not occur until months later. *Id.*

In *Cornell*, the Court found that laches was not triggered until the products were commercially available in August of 1996, *despite* the fact that the product was in development, and *despite* the fact that infringing devices were made in November 1995. *Id.* at *37–38. The court relied on the fact that the inventor, who noticed the article, was not a patent attorney, and did not possess the legal knowledge to know whether there was actual infringement in 1994. *Id.* at *37. Without any products on the market, the court held that a reasonable jury could infer that the delay period was not triggered until August of 1996 when the products were commercially available. *Id.* at *38. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

---

[13] HP's reliance on a dicta footnote from the *Wanless* case is inapposite. *Wanless* involve **actual products** that allegedly "use" the patented technology. *Wanless*, 148 F.3d at 1337 n.3.

████████████████████████████████████████

Although the *Cornell* article anticipated the launch of a series of infringing products, the Moroney Article and Presentation does not, and instead simply mentions 4 output images in the context of a standards-setting discussion. *Cornell*, 2007 WL 4349135, at *37. *Second*, the possibility of future infringement was greater in *Cornell* where future plans were disclosed, as opposed to here where the Moroney Article and Presentation did not discuss any planned use of the Moroney Algorithm by HP. *Compare, e.g.*, D.I. 140 at 16 n. 6 *with Cornell*, 2007 WL 4349135, at *37.

### 2.     Polaroid's claim did not accrue in 2002.

███████████████████████████████████████████████████████████

Ex. 12, Polaroid's Resp. to HP's First Set of Interrogs. at No. 14, p. 12. A patentee may be charged with constructive knowledge it might have obtained upon inquiry, provided the facts known to it were enough to inspire a duty of inquiry. This duty is subject to a reasonableness standard. *Symbol Techs., Inc. v. Proxium No. CIV. 01-801-SLR,* 2004 WL 1770290 *3 (D. Del. Jul 28, 2004). "[T]he extent to which a reasonable method of detection of infringement is available to the patentee is relevant." *Id.* (citations omitted). Although the ***earliest*** that Polaroid could have constructive knowledge is June 2002 (when accused products were first sold), HP has not established that this is when the laches period should begin.

There is a question of material fact as to when Polaroid should have known of HP's infringement. ██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████ Ex. 22, R. Reiling Dep. Tr. p. 85, line 23–p. 86, line 22; Ex. 6, B. Kullberg 12/5/07 Dep. Tr. p. 56, line 25–p. 61, line 25. ███████████████

████████████████████████████████████████████

████████ Ex. 15, D.I. 141 at POL 702; Ex. 9, Ex. 2 to Wallace Rpt. ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ HP has cited no evidence as to the actual cost or time required to test its

███████████████████████

printers in 2002, unlike in *Wanlass*, where the court found that testing would cost only $200 per product and would take less than 2 hours. *Wanlass v. General Electric Co.*, 148 F.3d 1334, 1336 (Fed Cir. 1998). HP thus has not met its burden of establishing that Polaroid had constructive knowledge of the accused products in 2002.

There are many genuine issues of material fact here and HP's summary judgment motion should be denied. *See, e.g., McKesson*, 426 F. Supp. 2d at 209–10; *Tenneco*, 375 F. Supp. at 382 n. 3 & n. 5; *Izumi*, 315 F. Supp. 2d at 612; *MLMC Ltd.*, 2001 WL 1414269, at *6.

### 3.     No matter when the laches time period begins, HP has not established unreasonable delay.

Whenever Polaroid's cause of action accrued, Polaroid did not unreasonably delay. At a minimum, there is a genuine issue of material fact. As this Court has recognized, "[t]he length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." *McKesson*, 426 F. Supp. 2d at 209 (quoting *Aukerman*, 960 F.2d at 1032). Courts routinely deny laches defenses where patent owners delayed for well over six years in filing a lawsuit. *See, e.g., Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992) (13 year delay); *Mead Digital Systems, Inc. v. A.B. Dick Co.*, 521 F. Supp. 164, 183 (S. D. Ohio 1981) (6 year, 10 month delay). Courts also routinely deny laches defenses when the delay is less than six years. *See, e.g., Gasser Chair Co. v. Infanti Chair Mfg.*, 60 F.3d 770, 774 (Fed. Cir. 1995), (5 year delay); *Freeman v. Gerber Products Co.*, 466 F. Supp. 2d 1242, 1247 (D. Kan 2006) (5 year delay).[14]

---

[14] The cases cited by HP are inapposite. D.I. 140 at 19; *Rosemount, Inc. v. Beckman Instruments*, 727 F.2d 1540, 1550 (Fed. Cir. 1984) (plaintiff waited three years ***to amend its complaint*** against defendant to include an additional infringing patent); *Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911, 924 (E.D. Va. 1996) (finding three year delay unreasonable proferred excuse — that its products did not compete with defendant's — was unjustifiable and evidentiary prejudice was severe — 600–800 documents were lost); *Wafer Shave v. Gillette Co.*, 857 F. Supp. 112, 128–29 (D. Mass. 1993) (finding three year delay unreasonable where delay was unexcused and evidentiary prejudice was great — key witnesses died or became incapacitated).

### B.     Polaroid's Delay Is Excused.

No matter when the time period begins, HP cannot prove unreasonable delay as a matter of law because any alleged "delay" is legally excused, and at a minimum, there is certainly a genuine issue of material fact.

The Federal Circuit has set out a *non-exhaustive* list of justifications for a delay in filing suit, ██████████████████████████████████ possible poverty, and the extent of infringement. *Aukerman*, 960 F.2d at 1033 (citing cases) (emphasis added). Like *Aukerman*, this Court has recognized that ██████████████████████████████ and the degree of the defendant's infringement are legitimate reasons for delay. *See McKesson*, 426 F. Supp. 2d at 209. Additionally, management changes in the patentee justify a delay in bringing suit. *Id.* Thus, the limited nature of HP's infringement, if any, prior to June 2002, ████████████ ██████████████████████████████ the extensive management changes experienced by Polaroid through 2002–2006, and Polaroid's poverty, along with other business considerations, justify any alleged delay by Polaroid.

### 1.     Polaroid is excused by the limited nature of HP's infringement.

Any alleged delay prior to June 2002 is excused due to the *de minimis* nature of HP's initial infringement. Numerous courts, including the Federal Circuit, have recognized that the extent of the defendant's infringement is a justification for delay. *Aukerman*, 960 F.2d at 1033 (citing *Tripp v. U.S.*, 406 F.2d 1066, 1071 (Ct. Cl. 1969); *Heraeus Electro-Nite Co. v. Midwest Instrument Co.*, Civ. A. 06-355, 2007 WL 2071905, at *8 (E.D. Pa. July 17, 2007) (finding question of material fact as to whether defendant's sales were commercially significant); *Genzyme Corp. v. Atrium Med. Corp.*, No. 00-958-MPT, 2003 U.S. Dist. LEXIS 12784, at *9 (D. Del. July 22, 2003) (noting that patent owners are not expected to incur large costs to silence commercially insignificant infringers); *Illinois Tool Works, Inc. v. Grip-Pak Inc.*, 725 F. Supp. 951, 953 (N.D. Ill. 1989), *aff'd*, 906 F.2d 679 (Fed. Cir. 1990) (delay excused where infringer's actions were not commercially significant); *Mead Digital Systems, Inc.*, 521 F. Supp. at 183 (*three* year delay *after* infringer reached profitability was not unreasonable). This Court has

denied summary judgment to a defendant where plaintiff produced evidence regarding "whether it made clear economic sense" to sue the infringer "during the first several years following the issuance of the patent." *McKesson*, 426 F. Supp. 2d at 209, n. 4.

Even if HP had established that the Moroney Article and Presentation constitute infringement, HP's activities from November 9, 2000 (the date of the Moroney Presentation) until June 2002 (the start of the sales of its accused products) were at best *de minimis*. As HP admits, the Moroney Article on which HP relies for its 2000-2001 infringement — which makes no mention of a commercialized product — references ***a total of 4 images***. D.I. 140 at 3; Ex. 10, D.I. 141 at POL 000618; Ex. 11, D.I. 141 at HPPOL_0052689–90, HPPOL_0052694. ███████

████████████████████████████████████████████████████████████████████ Ex. 9, Ex. 2 to Wallace Rpt. Laches does not arise because Polaroid did not run to the courthouse to litigate over four images presented at a technical conference in conjunction with standards-setting activities. *See, e.g.*, *Genzyme*, 2003 U.S. Dist. LEXIS 12784, at *17 ("Waiting until litigation makes clear economic sense is reasonable."). The time from November 2000 to at least June 2002 (if not later) should thus be excluded from the delay period.

### 2. Polaroid is excused by repeated management changes.

A change in management of the patentee due to merger or acquisition has been recognized as a valid reason for delay. *See, e.g., Genzyme*, 2003 U.S. Dist. LEXIS 12784, at *17 (finding that a patentee's delay in filing suit was justified by the fact that it experienced turnover in management during the laches period and "As a result, litigation remained a low priority until the 'dust settled.'"); *McKesso*n, 426 F. Supp. 2d. at 209, n. 3; s*ee also Teradyne, Inc. v. Hewlet-Packard Co., No. C-91-0344MHP*, 1994 WL 327213, at *9 (N.D. Cal. June 6, 1991) (finding question of material fact where plaintiff offered excuse of corporate acquisition and reorganizations).

During the relevant time period, Polaroid experienced a Chapter 11 bankruptcy, an acquisition, and a merger. *See* pp. 2-8 above. As a result, Polaroid experienced multiple management shifts. ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████



Ex. 3, Beaudoin Decl. ¶ 22.

*Id.*, ¶ 26.  In July of 2005,

Ex. 1, Beaudoin Decl. ¶ 36.

*Id.*, ¶ 37.

*Id.*, ¶ 37.

*Id.*, ¶¶ 21, 28, 38.

*Id.*

*Id.*     *Id.*, ¶ 16.

These changes in management excuse any alleged delay from at least July 2002 (when OEP acquired Polaroid) through April 2005 (when the Petters merger closed), and at a minimum these genuine issues of material fact preclude summary judgment.  *See Genzyme*, 2003 U.S. Dist. LEXIS 12784, at *17; *McKesso*n, 426 F. Supp. 2d. at 209, n. 3; *Teradyne, Inc.*, 1994 WL 327213, at *9.

**3.**



*See, e.g., Aukerman*, 960 F.2d at 1033; *McKesson*, 426 F. Supp. 2d at 209.

*See* pp. 11-14.



*See* 56(f) Affidavit at ¶¶ 2-16.

*Aukerman*, 960 F.2d at 1033.

*See Abbott Diabetes Care, Inc. v. Roche Diagnostics Corp.*, No. C05-03117 MJJ, 2007 WL 1241928, at *4 (N.D. Cal. April 27, 2007) (                                    ); *Odetics, Inc.*, 919 F. Supp. at 919 (

*Wafer Shave*, 857 F. Supp. at 128.

### 4.    Polaroid is excused by other business considerations, including its bankruptcy.

Poverty and other business considerations have been recognized as a valid excuse. *See, e.g. Teradyne, Inc.*, 1994 WL 327213, at *9   (finding delay reasonable where plaintiff experienced "severe financial problems," was acquiring three companies, and was involved in "integrating the corporate acquisitions and in other business affairs").   Polaroid's bankruptcy excuses any alleged delay between 2001 when Polaroid filed and the Court's bankruptcy plan, which became effective on December 17, 2003.  Ex. 3, Beaudoin Decl. ¶¶ 22, 25.

In addition, Polaroid's numerous other business affairs demanded Polaroid's attention from 2003 to the filing of the lawsuit and also excuse any alleged delay.  *See* pp. 3-8, supra. Given these business considerations, and Polaroid's bankruptcy, Polaroid is excused for the period from October 2001 (bankruptcy filing) to the filing of its suit (December 2006).  At a minimum, there are genuine issues of material fact regarding these business issues, and summary judgment is inappropriate.

### C.    HP Has Not Been Prejudiced.

HP cannot prove by a preponderance of the evidence that it suffered either economic or evidentiary prejudice as a result of Polaroid's delay.  *Aukerman*, 960 F.2d at 1033.

### 1.    There is no economic prejudice to HP.

Despite its vague allegations, HP has not established or supported the existence or magnitude of any alleged economic "loss" incurred as a direct result of the timing of Polaroid's lawsuit.[15]



 *Compare, e.g.*, D.I. 140 at 20 *with* Ex. 9, Wallace Rpt. at 9, 62; *see also* 10 

HP has not satisfied — and cannot fulfill — its burden of establishing with support a causal connection between a drastically changed economic position and Polaroid's alleged delay in filing suit.  *See, e.g., Hemstreet*, 972 F.2d at 1294 (finding prejudice not established where there was "no explicitly proven nexus to the patentee's delay in filing suit"); *Genzyme*, 2003 U.S. Dist. LEXIS 12784, at *19.  The Federal Circuit has said:

> We reiterate that a change in the economic position of the infringer during the period of delay must be as a result of the delay; the infringer must prove that the change in economic position *would not have occurred* if the patentee had sued earlier.

*Gasser Chair Co.*, 60 F.3d at 775 (collecting cases) (finding district court's conclusion regarding evidentiary prejudice incorrect because it did not require a causal nexus).

Mere investment and business expansion related to the accused product lines is not enough to establish economic prejudice.  *See Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358,

---

[15] HP has cited no relevant case law for its argument.  In one case, the defendant abandoned a design due to infringement concerns prior to the lawsuit.  *ABB*, 52 F.3d at 1065.  HP does not have such evidence.  The citations to *Odetics* and *Wafer Shave* do not mention non-infringing alternatives.  *Odetics*, 919 F. Supp. at 923 n. 18; *Wafer Shave*, 857 F. Supp. at 124–126, 129.

1371–72 (Fed. Cir. 2001) ("[T]he hiring of new employees, modification of equipment, and engagement in sales and marketing activities related to the [accused product] are damages normally associated with a finding of infringement and do not constitute the type of damages necessary for a finding of economic prejudice."). *Symbol Techs., Inc.* 2004 WL 17790290, at *17 ("Simply that the infringer expended capital in pursuit of its infringing activities does not support a finding of causal connection." ); *see also Genzyme*, 2003 U.S. Dist. LEXIS 12784, at *19 ("[M]ere proof of investment in research and development and increased sales, in and of themselves, are not evidence of economic prejudice."); *Gasser*, 60 F.3d at 775 ("Even a considerable investment during a delay period is not a result of the delay if it was 'a deliberate business decision to ignore [a] warning, and to proceed as if nothing had occurred.'").

██████████████████████████████████████████████

██████████████████████████ Ex. 9, D.I. 141 at HPPOL-0052837. ████████████

████████████████████████████████████████████████████

███████████████████████████████████████████ 56(f) Affidavit at Ex. L; Ex. 9, Wallace Rpt. at 11. ████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████ Ex. 9, Ex. 2 to Wallace Rpt.

Although HP summarily concludes that "it is fair to infer as a matter of law that, had a charge of infringement been made, HP would have licensed the '381 patent," HP has not presented a single fact to support this theory. D.I. 140. at 20. ████████████████

███████████████████████████████████████████████

█████████████████████ 56(f) Affidavit at Ex. L; Ex. 28, HP 12/6/02 Offer; Ex. 22, R. Reiling Dep. Tr. p. 26, line 22–p. 28, line 7; p. 36, lines 6–15; Ex. 29, M. Dansky Dep. Tr. p. 189, line 18–p. 190, line 21.

HP similarly has no legal support for its "fair to infer" position. D.I. 140 at 20. For example, in *ABB*,  the defendant modified "its behavior to avoid infringement" by taking a

license to certain other of the plaintiff's patents.  ABB Robotics, Inc. v. CMFanuc Robotics Corp., 52 F.3d. 1062, 1065 (Fed. Cir. 1995).  Likewise, the *Odetics* defendant presented evidence of a "standard company policy of pursuing licenses when faced with potential problems or liability from patent infringement."  *Odetics*, 919 F. Supp. at 923 n. 18.[16]  In contrast, HP does not argue that it sought to license Polaroid's '381 patent — or any other party's patents — to avoid infringement.

HP's non-infringing substitutes theory of prejudice is no more persuasive.  Although HP contends — again without support — that it could have investigated "possible non-infringing alternatives," the facts reveal that there are no non-infringing alternatives to the '381 patent.  D.I. 140. at 19–20; J.A. Ex. B, Agouris Op. Rpt. at 79-90.  At a minimum, there is a genuine issue of material fact regarding the existence of any non-infringing substitutes.

Even assuming *arguendo* that non-infringing substitutes did exist, HP still has presented no evidence from which a conclusion could be drawn that HP would have actually switched to these alternatives.  ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████  *See* pp. 8-11, 14-15. ████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████  *See Izumi Prods. Co*, 315 F. Supp. 2d at 613) (denying defendant's motion for summary judgment of laches where defendant did not switch to a non-infringing alternative after the lawsuit was filed), *aff'd*, 140 Fed. Appx. 236 (Fed. Cir. 2005).

At a minimum, there are multiple fact issues as to whether there is any non-infringing alternatives, whether HP would have and could have switched, and whether there is any causal connection between the timing of Polaroid's lawsuit and HP's alleged switch.  *See, e.g., Meyers*, 912 F.2d at 1463 (reversing summary judgment of laches where evidence indicated defendant

---

[16] HP also cites *Wafer Shave* , but the cited portions say nothing regarding a defendant's history of licensing patents.  *Wafer Shave*, 857 F. Supp. at 124–126, 129.

would have continued its development and sales activities regardless of plaintiff's timing); *McKesson.*, 426 F. Supp. 2d at 208 (finding question of fact as to whether defendant would have behaved differently if plaintiff had sued earlier); *Genzyme*, 2003 U.S. Dist. LEXIS 12784, at *19 (refusing to find economic prejudice where defendant continued selling accused products after the action was filed and expressed a belief that it was not infringing); *Gasser*, 60 F.3d at 775 (finding causal nexus missing in part because defendant believed patent was invalid and was therefore indifferent to litigation).

### 2.     There is no evidentiary prejudice to HP.

HP has no support for its contention that it is prejudiced by alleged "lost" communications, source code, and memories. Where "a deposed witness has indicated that he does not have a recollection of a particular fact, the lapse in memory is susceptible to more than one reasonable inference, in the absence of other evidence to support defendant's contention, its alleged evidentiary prejudice is no more likely than not." *Symbol Techs.*, 2004 WL 1770290, at *5. "Like the absence of memory by a witness, the absence of a document that was once known to exist, without more, does not give rise to an inference of evidentiary prejudice." *Id.*

As outlined on pp. 18-19 above, there is a wealth of information regarding communications between Polaroid and HP. ███████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████ Ex. 39, Meginnes Decl. ¶¶ 4-5. ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Ex. B, Agouris Op. Rpt. at 90–98; Ex. 43, J. Bullitt Decl. ¶¶ 16–17; Ex. 44, Schonfeld Dep. Tr. p. 10, lines 18–24; p. 38, lines 9–17. HP likely has additional relevant information that it has improperly withheld as privileged, but has now waived in its opening brief. *See* Polaroid's Mot. to Prevent HP From Using Privilege as Both a Sword and a Shield (filed concurrently); 56(f) Affidavit at ¶¶ 4, 11-13, 16.

HP also has made no showing as to when any evidence was lost. Given the questions raised above as to when Polaroid's cause of action accrued, the timing of the loss is relevant.

At the very least, a triable issue of fact exists. *See Imagexpo v. Microsoft*, 281 F. Supp. 2d 846, 850-51 (E.D. Va. 2003) (denying summary judgment on defense of laches due to material issues of fact concerning evidentiary prejudice); *Oakwood Labs v. Tap Pharma.*, No. 01C7631, 2003 WL 22400759 at *29 (N.D. Ill. Oct. 21, 2003) (finding no evidentiary prejudice for purposes of laches because the record contained "an abundance of evidence on the issues in dispute); *GFI, Inc. v. Franklin Corp.*, 88 F. Supp. 2d 619, 637-38 (N.D. Miss. 2000) (finding that lost file did not amount to evidentiary prejudice for purposes of laches, due to "ample amount of evidence produced in this case" and that lost phone records did not amount to evidentiary prejudice due to "plethora of evidence concerning Plaintiff's activities" during the relevant time period).

## II.     SUMMARY JUDGMENT ON ESTOPPEL SHOULD BE DENIED.

HP has not met its burden of proving by a preponderance of the evidence an absence of any genuine issue of material fact that: (1) Polaroid misled HP into believing it would not pursue an infringement claim against HP; (2) HP relied on this misleading communication; and (3) HP would be materially harmed if Polaroid were permitted to continue this suit. *Aukerman*, 960 F. 2d at 1043, 1046.

### A.     Polaroid Did Not Mislead HP Through Conduct Or Silence.

For a patentee's silence to be misleading, the patentee must first "threaten [] prompt and vigorous enforcement of the patent." *Wafer Shave*, 857 F. Supp. at 119. ***Polaroid never accused HP of infringement or threatened "prompt and vigorous enforcement" of the '381 patent prior to the initiation of this lawsuit.*** HP has ***repeatedly*** insisted that at no point did Polaroid make an infringement accusation. *See* p.2, supra. Nor did Polaroid communicate to HP an unwillingness or inability to enforce its intellectual property rights or state that Polaroid

would tolerate HP's infringement of the '381 patent. These facts alone are enough to preclude a finding of equitable estoppel.

HP tries to create the impression that Polaroid has argued that it made an accusation of infringement. This is not correct, as evidenced by the documents and testimony HP cites.:[17] No accusation of infringement was ever made. *See* pp. 10-11, supra.

The cases cited by HP are inapposite. In *Gossen* — unlike here — the parties exchanged correspondence over two months specifically on the issue of whether the defendant's products infringed. *Gossen Corp.* v. Marley Mouldings, Inc., 977 F. Supp. 1346, 1354 (E.D. Wis. 1997). Similarly, the parties in *ABB Robotics* negotiated for two years, with the plaintiff charging the defendant with infringement and the defendant denying liability. *ABB Robotics*, 52 F.3d at 1063. In *Wafer Shave*, a lawyer sent letters on behalf of the plaintiff demanding that defendant "cease and desist" from using certain products and threatening that plaintiff would "initiate appropriate action." 857 F. Supp. at 117. No accusations of this kind exist here.

At a minimum, there is a triable issue of fact as to whether Polaroid ever accused HP of infringing the '381 patent. *See, e.g., McKesson*, 426 F. Supp. 2d at 208 (finding question of material fact as to whether silence is misleading).

## B.    There Is No Evidence Of Reliance On Polaroid's Statements.

HP must show that it "substantially relied on the misleading conduct of the patentee in connection with taking some action." *Aukerman*, 960 F.2d at 1042–43. Because HP ███████ ███████████████████████████████████ and HP went forward anyway, HP has not shown — and cannot establish — that it substantially relied on any communication (let alone any "misleading" communication) from Polaroid.

---

[17] HP cites Brad Kullberg's deposition testimony for this proposition. D.I. 140. at 26. Nowhere in the cited pages does any variation of the word "infringe" appear, and the pages do not discuss the substance of any communications between Polaroid and HP, other than that they refer to the '381 patent.

Even if HP could establish that it somehow relied on the limited communications between itself and Polaroid — which it has not — Polaroid's statements were not misleading, and any reliance would be unreasonable. ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Because HP has not shown reliance, estoppel cannot by law exist. *See, e.g., McKesson*, 426 F. Supp. 2d at 208 (finding question of fact as to whether reliance was present).

### C.    HP Has Not Been Prejudiced.

For the same reasons that economic and evidentiary prejudice were not present for laches, *see* pp. 29-34, HP has not established any prejudice to support equitable estoppel.

### III.    SUMMARY JUDGMENT SHOULD BE DENIED BASED ON HP'S WILLFUL INFRINGEMENT AND DISCOVERY MISCONDUCT.

Even if this Court were to determine that either HP's laches or equitable estoppel defense is valid, HP's misconduct, ranging from willful infringement of the '381 patent to discovery misconduct, is an independent reason to deny summary judgment. Polaroid may defeat a laches defense if HP "has engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor." *Aukerman*, 960 F. 2d at 1033 (citations omitted). "Willful infringement, if shown, constitutes such inequitable conduct." *Odetics*, 919 F. Supp. at 924. Similarly, courts will consider "any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit." *Aukerman*, 960 F. 2d at 1043.

In *Odetics*, the plaintiff had argued that merely because willfulness is tried to a jury, that summary judgment on laches should be denied. *Odetics*, 919 F. Supp. at 925. The court granted summary judgment because it found plaintiff's willfulness evidence wholly unconvincing, given that defendant had obtained two non-infringement opinions. *Id.* There is more than enough to support a finding of willfulness in this case. *See, e.g.*, Ex. 7, D.I. 141.

36

Under *Seagate*, Polaroid must prove by clear and convincing evidence that HP "acted despite an objectively high likelihood that its actions constituted infringement." *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).[18] ███████████████████████████

███████████     *See* pp. 8-11, 14-15, *supra*.     ███████████████████████

███████████████████████     *Id.*.     █████████████████████████

███████████████████████████████████████████████████

███████████████     *Aukerman* does not suggest that willfulness alone is not "particularly egregious conduct." *Aukerman*, 960 F. 2d at  1033.  Nevertheless, HP's willfulness is greater than garden-variety willfulness, given its deliberate nature.  And, there is no suggestion that "egregious conduct" is required for the court to weigh the equities for estoppel.

Even if HP's willfulness is not considered "egregious," HP has misbehaved in other ways that, combined with its willfulness, raises at least a question of fact as to whether HP's equitable defense should be denied based on HP's unclean hands.  HP has engaged in a variety of discovery misconduct.  Just a few examples may be found in Polaroid's Motion to Preclude HP from Relying on Untimely Discovery, D.I. 171, and its Motion to Prevent Abuse of Privilege (filed with this brief).

## **CONCLUSION**

For these reasons, HP's motion for summary judgment on grounds of estoppel and, in the alternative or in addition, laches should be denied.

---

[18] The law under *Seagate* is still being developed, which counsels against a finding that Polaroid cannot establish HP's willfulness here.

████████████████████████

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

OF COUNSEL:

Russell E. Levine, P.C.
G. Courtney Holohan
Michelle W. Skinner
David W. Higer
Maria A. Meginnes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

June 5, 2008

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, Delaware  19801
(302) 658-9200
jblumenfeld@mnat.com
jheaney@mnat.com
  *Attorneys for Plaintiff, Polaroid*
  *Corporation*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 12, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> William J. Marsden, Jr.
> FISH & RICHARDSON P.C.

I also certify that copies were caused to be served on June 12, 2008 upon the following in the manner indicated:

## BY E-MAIL

William J. Marsden, Jr.
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19801

Matthew Bernstein
John E. Giust
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130

Bradley Coburn
FISH & RICHARDSON P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701

Daniel Winston
CHOATE HALL & STEWART, LLP
Two International Place
Boston, MA 02110

*/s/ Julia Heaney*

Julie Heaney (#3052)