IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POLAROID CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-738 (SLR) |
| | ) | |
| HEWLETT-PACKARD COMPANY, | ) | REDACTED VERSION |
| | ) | |
| Defendant. | ) | |

**POLAROID'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT OF INFRINGEMENT
OF CLAIMS 1–3 OF U.S. PATENT NO. 4,829,381**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, Delaware  19801
(302) 658-9200
jheaney@mnat.com
  Attorneys for Plaintiff, Polaroid Corporation

OF COUNSEL:

Russell E. Levine, P.C.
G. Courtney Holohan
Michelle W. Skinner
David W. Higer
Maria A. Meginnes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

Original Filing Date:  June 16, 2008
Redacted Filing Date:  June 20, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

SUMMARY OF THE ARGUMENT ............................................................... 1

ARGUMENT ................................................................................................... 3

I.     HP DOES NOT DISPUTE THAT ITS LACE PRODUCTS EMBODY CLAIM ELEMENTS OF POLAROID'S '381 PATENT AND THOSE ELEMENTS IT DISPUTES DO NOT CREATE ANY GENUINE ISSUE OF FACT. ............................ 3

     A.     The Algorithm In HP's LACE Products Contains The Required Ratio And LACE Products Literally Infringe Claim 1 .............................................. 5

           1.     HP's LACE Products contain a ratio. .......................................... 5

           2.     HP's LACE Products contain a denominator with a value within the dynamic range. ........................................................................ 6

           3.     Polaroid's infringement arguments do not remove the ratio requirement from the claims of Polaroid's '381 patent. ............................. 7

     B.     HP's LACE Products Transform Electronic Information Signals And Literally Infringe Claims 1–3 ................................................................ 10

     C.     HP's Implementation Arguments Are Incorrect And Irrelevant ........................... 12

     D.     The Claim 3 "C" Element Is Literally Present In HP's LACE Products .............. 13

II.     HP'S ADDITIONAL ARGUMENTS DO NOT PRECLUDE ENTRY OF SUMMARY JUDGMENT OF INFRINGEMENT IN POLAROID'S FAVOR .............. 15

     A.     HP's Characterization Of Its Own Claim Construction Positions As "Fact" Does Not Raise A Genuine Issue Of Material Fact. ................................ 15

           1.     HP's characterization of the structure disclosed in the '381 patent is its claim construction position and does not raise a genuine issue of material fact. ........................................................ 15

           2.     HP's characterization of luminance as the required input and output of the '381 patent is its claim construction position and does not raise a genuine issue of material fact. ................................ 17

     B.     HP's Prosecution History Estoppel Argument Is Irrelevant, And In Any Event, Does Not Preclude Entry Of Summary Judgment Of Literal Infringement In Polaroid's Favor ........................................................... 17

CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
  448 F.3d 1324 (Fed. Cir. 2006)..................................................................... 17

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  344 F.3d 1359 (Fed. Cir. 2003)..................................................................... 18

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*,
  45 F.3d 1550 (Fed. Cir. 1995)......................................................................... 7

*Harris Corp. v. Ericsson, Inc.*,
  417 F.3d 1241 (Fed. Cir. 2005)..................................................................... 16

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
  274 F.3d 1371 (Fed. Cir. 2001)..................................................................... 16

*McKesson Info. Solutions v. Trizetto Group, Inc.*,
  No. Civ. 04-1258-SLR, 2006 WL 891048, *1 (D. Del. Apr. 5, 2006) ........... 16

*Overhead Door Corp. v. Chamberlain Group, Inc.*,
  194 F.3d 1261 (Fed. Cir. 1999)..................................................................... 16

*Primos, Inc. v. Hunter's Specialties, Inc.*,
  451 F.3d 841 (Fed. Cir. 2006)....................................................................... 18

*Standard Havens Prods. Inc. v. Gencor Indus., Inc.*,
  953 F.2d 1360 (Fed. Cir. 1991)..................................................................... 13

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
  96 F.3d 1409 (Fed. Cir. 1996)....................................................................... 13

*SunTiger, Inc. v. Scientific Research Funding Group*,
  189 F.3d 1327 (Fed. Cir. 1999)..................................................................... 10

*WMS Gaming, Inc. v. Int'l Game Tech.*,
  184 F.3d 1339 (Fed. Cir. 1999)..................................................................... 16

REDACTED

Polaroid moved for summary judgment that HP's LACE Products infringe claims 1–3 of Polaroid's '381 patent. In opposition, HP argued that Element 2 of Claim 1 is not present in HP's LACE Products. In particular, HP argues that the algorithm used in its LACE Products does not have the required "ratio." Thus, the issue of infringement of Claim 1 boils down to this single issue: does the LACE algorithm have a ratio. For the reasons below, HP's arguments are unavailing and there are no genuine issues of material fact. The LACE algorithm has the required ratio and Element 2 of Claim 1 is therefore literally present. As such, summary judgment of infringement should be granted.

## <u>SUMMARY OF THE ARGUMENT</u>

1.    Polaroid's opening brief demonstrated that HP's LACE Products infringe Claims 1–3 of the '381 patent under Polaroid's claim construction. D.I. 143, Polaroid Corp.'s Opening Br. in Supp. of Its Mot. for Summ. J. of Infringement of Claims 1–3 of U.S. Patent No. 4,829,381 ("Polaroid's Opening Brief") at 13–38. HP does not dispute that its LACE Products contain two of the three claim elements of Claim 1 — the Claim 1 Preamble (if the Court finds it to be an element) and Claim 1, Element 1.

2.    HP's LACE Products literally infringe Claim 1 because they contain Claim 1, Element 2 (the only claim element HP argues is missing). HP admits that its LACE Products include an algorithm to select and transform pixels. Contrary to HP's litigation-inspired arguments, the LACE algorithm does contain the required ratio and it transforms the required type of electronic information signals. And, HP's contention                REDACTED

is a red herring. Claim 1 does not require speed or a specific implementation beyond the disclosed algorithm.

3.      HP's LACE Products also literally infringe Claim 3.          REDACTED

.

4.      HP's arguments based on its own proffered claim constructions do not raise any genuine issues of material fact.  Polaroid's motion for summary judgment is based on literal infringement of Claims 1–3 under Polaroid's proposed claim construction.  HP does not directly address Polaroid's contentions and instead characterizes its own claim construction contentions as "facts" and cuts and pastes its claim construction arguments for why the Court should adopt its claim construction.   HP's arguments advocating its claim construction fail to address Polaroid's summary judgment motion.   In addition, HP's claim construction contentions improperly rely on extrinsic inventor testimony, disregard intrinsic evidence, and improperly limit the asserted claims to a preferred embodiment.[1]

5.      HP's prosecution history estoppel contention — an estoppel which only applies to infringement allegations under the doctrine of equivalents — is no more persuasive as Polaroid's instant motion is based on literal infringement.  Contrary to HP's arguments, prosecution history estoppel as a limitation on the doctrine of equivalents is inapplicable.  Even if Polaroid's motion sought infringement under the doctrine of equivalents, prosecution history estoppel would not limit application of Claim 1, Element 2 to the algorithm in HP's LACE Products.  HP's alleged

---

[1]   As set forth in its claim construction briefs, Polaroid's proffered constructions are consistent with all of the intrinsic evidence.  HP, on the other hand, relies on extrinsic inventor testimony, disregards the intrinsic evidence, and attempts to limit the claims to a preferred embodiment.  *See* D.I. 100, Polaroid Corp.'s Op. Claim Construction Br.; D.I. 117, Polaroid Corp.'s Br, In Response to HP's Opening Claim Construction Br.   Polaroid's summary judgment motion is based on and uses Polaroid's proposed constructions.  Thus, HP's claim construction positions are irrelevant to Polaroid's instant motion and do not preclude the Court from entering summary judgment of infringement in Polaroid's favor.

REDACTED

"equivalent" ratio satisfies that claim element because Polaroid did not surrender the scope by any prosecution amendment.

## ARGUMENT

I.    **HP DOES NOT DISPUTE THAT ITS LACE PRODUCTS EMBODY CLAIM ELEMENTS OF POLAROID'S '381 PATENT AND THOSE ELEMENTS IT DISPUTES DO NOT CREATE ANY GENUINE ISSUE OF FACT.**

Polaroid's Opening Brief applied each of the three elements of independent Claim 1, as well as dependent Claims 2 and 3 to HP's LACE Products.  D.I. 143 at 13–38.  Claim 1 requires:

A system for [*successively transforming*] [*electronic data received in a successive series of signals providing pixel information, such as color, luminance, or chrominance values*], [*each signal being associated with a value that lies within a range of possible values bounded by definite limits*] and corresponding to one of a plurality of succeeding pixels which collectively define an image, said system comprising:

means for [*calculating an intermediate value for*] [*signals providing pixel information, such as color, luminance, or chrominance values*] corresponding to selected pluralities of pixels and providing an [*signal providing pixel information, such as a color, luminance, or chrominance value of calculated intermediate value*] for each said plurality of pixels so averaged; and

means for selecting one of a plurality of different [*functions that transform an input signal*] for the [*signal providing pixel information, such as color, luminance, or chrominance value*] for each of the succeeding pixels in a manner whereby each [*function that transforms an input signal*] is selected as a function of the [*signal providing pixel information, such as color, luminance, or chrominance value*] for one pixel and the [*signal providing pixel information, such as a color, luminance, or chrominance value of calculated intermediate value*] for the select plurality of pixels containing said one pixel and for subsequently transforming the [*signal providing pixel information, such as color, luminance, or chrominance value*] corresponding to each pixel by the [*function that transforms an input signal*] selected for that pixel wherein said selecting and transforming means further operates to select said [*function that transforms an input signal*] as a function of the [*ratio of that calculated intermediate value over a value that lies within the range of possible values*] such that the ratio increases in correspondence with the increase in the value of the [*signal providing pixel information, such as a color, luminance, or chrominance value of calculated intermediate value*].

*See* D.I. 143 at 14–17; *see also* D.I. 151, Ex. D, Joint Claim Construction Statement.  For simplicity, the three elements above will be referenced as the Preamble, the Averaging element (Claim 1, Element 1), and the Selecting and Transforming element (Claim 1, Element 2).  Based on the undisputed evidence, Polaroid demonstrated that each element of Claim 1 (as well as dependent Claims 2 and 3) is literally present in HP's LACE Products.  D.I. 143 at 13–38.

In opposition, HP does not dispute that its LACE Products contain two of the three claim elements of Claim 1, including the Preamble (if the Court finds it to be an element), and Claim 1, Element 1 (the Averaging element).  HP, likewise, does not dispute that if its LACE Products infringe Claim 1, they also infringe Claim 2.

As discussed below, HP's attempt to dispute the presence in HP's LACE Products of the Selecting and Transforming element and Claim 3 does not create any genuine issue of material fact.  D.I. 183, HP's Mem. in Opp'n to Pl. Polaroid Corp.'s Mot. for Summ. J. of Infringement ("HP's Opposition Brief") at 11–22, 24–30.  None of HP's four arguments has merit:

- HP's LACE Products use an algorithm that contains the claimed ratio;

- HP's LACE Products transform the requisite electronic information signals;

- Claim 1 does not require speed or a specific implementation beyond the disclosed algorithm; and

- HP's LACE Products use the constant "C" in the base of its algorithm.

Because there are no genuine issues of material fact, summary judgment of infringement should be granted.

A.    **The Algorithm In HP's LACE Products Contains The Required Ratio And LACE Products Literally Infringe Claim 1.**

1.    **HP's LACE Products contain a ratio.**

HP's unsupported, conclusory assertion that LACE Products do not infringe the Selecting and Transforming element of Claim 1 because the LACE algorithm does not contain "a ratio of any kind" is not enough to overcome summary judgment.  D.I. 183 at 14.  Moreover, as shown below, such an assertion is incorrect: HP's LACE Products contain a ratio.

The parties agree that HP's LACE Products contain an algorithm.  The parties also agree that this algorithm performs a selecting and transforming function.  The parties further agree that this algorithm can be expressed as:

R
E
D
A
C
T
E
D

The dispute between the parties is whether a number expressed in decimal form ("strength" in the LACE algorithm) is a ratio.

As a matter of mathematics and definitionally, a number in decimal form is a ratio.  *See* Ex. A, P. Agouris Dep. Tr. at p. 79, line 22–p. 83, line 23; *see also* "the decimal $0.1 = \dfrac{1}{10}$ . . ."

The American Heritage® Dictionary of the English Language (Houghton Mifflin Company) (4th ed 2004).  Dictionary.com http://dictionary.reference.com/browse/decimal.  A basic math text explains that "$^{1}/_{2}$ is a common fraction.  50% is a percent.  And .50 is a decimal.  They are three

5

different ways to show the same thing.  They are three different kinds of fractions."  D.I. 193,

Polaroid's Br. In Opp'n to Def.'s Mot. for Summ. J. of Non-infringement, or, in the Alternative,

Patent Invalidity ("Polaroid's Opposition Brief"), Ex. 5, Rose Lock and Evelyn Morabe-Murphy,

DECIMALS AND PERCENTS at 71 (Janus Book Publishers, Inc. 1987).  This same text explains that

"a ratio *is* a fraction".  *Id.* at p. 53 (emphasis in original).

HP ignores these basic and indisputable facts and offers a semantic argument that its

LACE algorithm lacks a ratio.  But it is undisputed that HP's algorithm includes numbers

expressed in decimal form.                    REDACTED


Because HP's algorithm (contained in LACE Products) contains a ratio, but merely

expresses that ratio in its decimal form, HP's first argument fails.  The LACE algorithm has a

ratio.  *See also* D.I. 193 at 18–19.

**2.    HP's LACE Products contain a denominator with a value within the dynamic range.**

HP's second argument that its LACE Products do not infringe the Selecting and

Transforming element of Claim 1 because, even if the selecting portion of the algorithm contains

a ratio, the LACE algorithm does not contain a component that is "'the dynamic range of the

electronic information signals,'" is no more persuasive.  D.I. 183 at 20 (quoting p. 13).

HP's argument is factually wrong because the claim element does not "require a ratio,

one of whose components is 'the dynamic range of the electronic information signals.'"  *See* D.I.

151, Ex. D, Joint Claim Construction Statement at 4–5.  Although HP correctly cites to

Polaroid's proffered construction for the function, HP fails to cite to Polaroid's construction of

terms within the claimed function.  *Compare* D.I. 183 at 13 *with* D.I. 151, Ex. D, Joint Claim

Construction Statement at 4–5.  Polaroid offered the following constructions:

> "*ratio of the value of the average electronic information signal to the dynamic range of the electronic information signals*" should be construed as "**ratio of that calculated intermediate value over a value that lies within the range of possible values**."
>
> . . .
>
> "*dynamic range of the electronic information signals*" should be construed to mean "**value that lies within the range of possible values**."

*Id*. at 5 (emphasis in original).  Thus, under Polaroid's construction, the ratio requires a value

"within the range of possible values."

REDACTED

Because

"values within the dynamic range" are "within the range of possible values," HP's second

argument fails.

### 3.    Polaroid's infringement arguments do not remove the ratio requirement from the claims of Polaroid's '381 patent.

HP's contention — supported only by attorney argument rather than evidence — that

Polaroid's infringement argument eliminates the ratio requirement in Claim 1 is not true.

*Compare*, *e.g.,* D.I. 183 at 18–20 *with Glaverbel Societe Anonyme v. Northlake Mktg. & Supply,*

*Inc.*, 45 F.3d 1550, 1562 (Fed. Cir. 1995) ("There must be sufficient substance, other than

7

attorney argument, to show that the issue requires trial."); *see also* D.I. 193 at 14–15 (citing additional cases).[2]

      HP cannot dispute that a decimal is the same as a ratio. Instead, HP argues that the term "ratio" is rendered meaningless because Dr. Agouris' opinion is that "any number" can be represented as a ratio of any two other numbers. *See* D.I. 183 at 18 (explaining that "the number 5 can be restated as 15 over 3"). HP mischaracterizes Dr. Agouris' opinion. She opined that the specific constant REDACTED used in HP's LACE algorithm could be represented as a fraction

REDACTED

Thus, HP's "any number" argument — which would create a ratio for non-decimal numbers, such as 1 (1/1), 5 (15/3), etc. — misconstrues Dr. Agouris' position and is irrelevant because it is undisputed that HP's LACE algorithm contains the ratio REDACTED

      Similarly misplaced is HP's argument that, under Polaroid's infringement theory, there is no difference between Polaroid's originally presented claim 1 and its amended claim 1. Specifically, HP argues:

---

[2]   Also, contrary to HP's implication and the prosecution history of the '381 patent, Okada does not invalidate the asserted '381 patent claims. *See* D.I. 193 at 30–36.

R
E
D
A
C
T
E
D

REDACTED

D.I. 183 at 20.  In other words, HP argues that Dr. Agouris' analysis could be used to read out the ratio requirement in the claim language if the average were changed.  However, HP cannot simply rewrite the "average" term in Element 2 of Claim 1 without any analysis of whether such an approach is consistent with the specification of the patent.  HP provides no such analysis or even attorney argument in support.

Even if this technical argument — based on HP's unsubstantiated attorney argument — were correct and properly supported (which it is not), what one theoretically *could* do is far different from what Dr. Agouris actually did do in this case.  Dr. Agouris analyzed HP's LACE Products by observing what occurs in accordance with well known principles of image science.  *See*, *e.g.*, D.I. 143 at 20–21.  Dr. Agouris expressed the LACE algorithm in a manner showing the true relationship between the variables used in HP's algorithm instead of the use of an arbitrary decimal REDACTED

R
F

*See id.*; *see also* Ex. A, P. Agouris dep., p. 88, lines 8–24.  Despite its objections to this expression of its algorithm (such as its "decimals are not ratios" argument), HP has not relied on any evidence (or even attorney argument) to contradict Dr. Agouris' analysis and opinion that this expression is what occurs in image science.

REDACTED

9

REDACTED

HP admits that it added the

constant REDACTED "to adjust the degree of contrast enhancement."  D.I. 183 at 26.  REDACTED

These unsupported arguments do not raise genuine fact issues.

REDACTED

HP cannot avoid infringement simply

because it added elements.  *SunTiger*, 189 F.3d at 1336  ("It is fundamental that one cannot avoid

infringement merely by adding elements if each element recited in the claims is found in the

accused device.").   All of the requirements of Claim 1 are literally present in HP's LACE

Products and summary judgment is appropriate.

**B.    HP's LACE Products Transform Electronic Information Signals And Literally Infringe Claims 1–3.**

HP's argument that its LACE Products do not infringe        REDACTED

is incorrect and does not raise any fact issue.

D.I. 183 at 27–30.  HP's REDACTED  argument instead raises a legal claim construction issue.

*See* D.I. 151, Ex. D, Joint Claim Construction Statement at 2 (offering a claim construction for

"electronic information signals" of "signal(s) providing luminance pixel information") (emphasis

10

removed).  HP's argument — that this court should employ HP's claim construction position —
is  irrelevant  here  because  Polaroid  moved  for  summary  judgment  of  infringement  under
Polaroid's claim construction.

Under  Polaroid's  claim  construction,  "electronic  information  signals"  are  "signals
providing pixel information, such as color, luminance, or chrominance values."  D.I. 151, Ex. D,
Joint Claim Construction Statement at 2.   Color, luminance and chrominance values are the
intensity values of a pixel.  *See* D.I. 143 at 3–4.  As HP admits:

REDACTED

D.I. 183 at 28 (emphasis removed).

Claim 1 requires the inputting, averaging and transforming of "signals providing pixel
information, such as color, luminance, or chrominance values."  *See* D.I. 143 at 13–33.  REDAC
TED

Consequently, the operation of HP's LACE Products is not in dispute.  As a matter of law, HP's
LACE Products literally infringe Claim 1.  D.I. 151, Ex. B at 20– 37; D.I. 143 at 13–33.

HP's argument that Polaroid's and HP's experts disagreement        REDACTED

precludes summary judgment is a red herring and does not raise a
genuine issue of material fact.  D.I. 183 at 30.                REDACTED

11
REDACTED

REDACTED

Thus, the dispute between the technical experts concerns infringement of Claim 1 under HP's, not Polaroid's, proposed claim construction.  The dispute does not preclude summary judgment of infringement if Polaroid's claim construction is accepted.  Instead, the dispute between the experts precludes summary judgment of non-infringement in HP's favor even if HP's construction is accepted.

**C.      HP's Implementation Arguments Are Incorrect And Irrelevant.**

HP's contention that it avoids infringement of Claim 1        REDACTED

is a red herring.  Claim 1 does not require "on-the-fly" implementation of the '381 algorithm or "speed" as an element, and neither parties' claim construction suggests that it does.  *See* D.I. 151, Ex. A, '381 Pat., Claim 1; D.I. 151, Ex. D, Joint Claim Construction Statement.        REDACTED

What is relevant is HP's use of the infringing LACE algorithm, which HP admits

R
E
D
A

12

REDACTED

HP's citation of Dr. Agouris' opinion — that "speed of operation will cause one algorithm to be substantially different from, and not a reasonable substitute for, another algorithm" — does not create a genuine issue of material fact          REDACTED          *Id.* at 25.    Dr. Agouris' opinion regarding speed of operation concerns her analysis of different algorithms that have been alleged by HP to constitute non-infringing substitutes of the patented algorithm.    By definition, HP agrees that this alleged substitute is different because it is a *non-infringing* substitute.    Dr. Agouris' opinion as to its acceptability has no bearing on the issue of HP's infringement.    *See, e.g., Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1418 (Fed. Cir. 1996) ("'the mere existence of a competing device does not necessarily make the device an acceptable substitute' and that a 'product on the market which lacks the advantages of the patented product can hardly be termed a[n] [acceptable] substitute.'" (alteration in original) (*quoting Standard Havens Prods. Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991))).

**D.    The Claim 3 "C" Element Is Literally Present In HP's LACE Products.**

The parties agree that the algorithm used to transform an image in LACE is the same as that claimed by the '381 patent when used to transform an 8-bit image:

REDACTED

13

REDACTED

HP cannot and does not dispute that          REDACTED          HP's LACE algorithm and the

'381 algorithm are identical RED   D.I. 183 at 27.
                            ACT

     HP's contention that it avoids infringement of Claim 3          REDACTED

improperly relies on

only selected portions of the '381 patent.  D.I. 183 at 26 (citing '381 Pat., col. 4, lines 51–55, col.

6, lines 30–42) (emphasis added).   The '381 patent specification does not describe C in the

narrow manner characterized in HP's opposition brief:

> C is a control parameter selected in the manner of this invention to
> vary the amount of image enhancement that may be provided by
> the system and method of this invention in a manner to be more
> fully described in the following discussion.
>
> . . .
>
> Referring now to FIG. **3**, there is shown a graphical representation
> of the variation in gamma γ as a function of the variation of the
> control parameter C.  Thus, it can be seen for a control parameter
> C value of 1 gamma γ varies from 0.5 to 2.  If the control
> parameter C is selected to be 0, gamma γ remains constant at 1.
> Although for a typical imaging application which requires dynamic
> range compression, it may be satisfactory to select the control
> parameter C to equal 1 thereby achieving an extreme variation in
> gamma from 2 to 0.5, it may be desirable to increase the amount of
> localized contrast thereby selecting values of the control parameter
> C greater than 1.

D.I. 151, Ex. A, '381 Pat., col. 4, lines 51–55, col. 6, lines 30–42.  This quoted language does not

require (or even suggest) that C be set *by a user*.  Consistent with the specification, Claim 3 does

not require C to have been set *by a user* and nothing in the parties' proffered claim constructions suggests otherwise. *See*, *e.g.*, D.I. 151, Ex. A, Claim 3; D.I. 151, Ex. D, Joint Claim Construction Statement. To the contrary, the above quoted language explains that C may remain fixed based on the amount of localized contrast desired to be achieved by the algorithm. *See* D.I. 143 at 37–38. The language also discloses that for a "typical imaging application" a value of C equal to 1 is preferred.                                         REDACTED


Therefore, HP's LACE Products embody Claim 3.

## II.    HP'S ADDITIONAL ARGUMENTS DO NOT PRECLUDE ENTRY OF SUMMARY JUDGMENT OF INFRINGEMENT IN POLAROID'S FAVOR.

Polaroid moves for summary judgment of literal infringement under its claim construction. HP's rearguing of its own claim construction and prosecution history estoppel argument (which applies only to infringement under the doctrine of equivalents, if at all) does not address Polaroid's motion. *See*, *e.g.*, D.I. 183 at 5, 6, 14–15. Polaroid's Motion should be granted.

### A.    HP's Characterization Of Its Own Claim Construction Positions As "Fact" Does Not Raise A Genuine Issue Of Material Fact.

#### 1.    HP's characterization of the structure disclosed in the '381 patent is its claim construction position and does not raise a genuine issue of material fact.

HP's contention that the structure disclosed in the '381 patent is a combination of circuits as depicted in Figure **4** of the patent is not an "undisputed fact". *See*, *e.g.*, D.I. 183 at 6; D.I. 151, Ex. D, Joint Claim Construction Statement at 4–5. HP's claim construction position is incorrect. *See* D.I. 100; D.I. 117.

HP's argument that LACE Products do not contain infringing structure because "an algorithm is not a structure" is contrary to law. D.I. 183 at 22–23; *McKesson Info. Solutions v.*

15

*Trizetto Group, Inc.*, No. Civ. 04-1258-SLR, 2006 WL 891048, at *1, 2 (D. Del. Apr. 5, 2006); *see also* D.I. 193 at 25–27.  Indeed, this Court has explicitly held that an algorithm is a sufficient structure for a means-plus-function claim element.  *See, e.g., McKesson*, 2006 WL 891048, at *1, 2.  Specifically, relying upon *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339 (Fed. Cir. 1999), this Court held that the structure was limited to the algorithms disclosed in the patent and their equivalents.  *McKesson*, 2006 WL 891048, at *1.

HP's reliance on *Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241 (Fed. Cir. 2005), supports the adoption of Polaroid's claim construction.  In *Harris*, the Federal Circuit held in reliance on *WMS Gaming* that "[a] computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and *the corresponding structure is the algorithm*." *Id*. at 1253 (emphasis added).

Even assuming the Court adopted HP's claim construction that the disclosed structure is the circuit diagram shown in Figure **4** of the patent, HP's use of source code to implement the algorithms is structurally equivalent to using the hardwired circuits shown in Figure **4**.  *See* D.I. 151, Ex. B at pp. 45–46.  Implementing a system using software serves substantially the same function as implementing a circuit using hardwired circuits.  *Id.* at p. 45; *see also Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1383 (Fed. Cir. 2001); *Overhead Door Corp. v. Chamberlain Group, Inc.*, 194 F.3d 1261, 1269–70 (Fed. Cir. 1999)).  In both cases, the function is to accomplish specific mathematical operations.  *Id*.  The implementation of algorithms in circuitry is done in substantially the same way and achieves the same result as an implementation in software.  *Id*.; *see also* D.I. 193 at 27–28.  Thus, HP's LACE algorithm is structurally equivalent to the hardwired circuit that HP contends under its construction is the structure required by the Selecting and Transforming element of Claim 1.

      2.      **HP's characterization of luminance as the required input and output of the '381 patent is its claim construction position and does not raise a genuine issue of material fact.**

HP's suggestion that the claims of the '381 patent are limited to an input luminance value that is transformed by luminance and provides an output luminance value is inconsistent with the plain language of the '381 claims, which require "electronic information signal(s)." *See* D.I. 183 at 2-6, 8, 10, 27-28, 29 n.9; D.I. 151, Ex. A, '381 Pat., Claims 1–2, 7–8; D.I. 151, Ex. D, Joint Claim Construction Statement at 1–6, 8. Under Polaroid's claim construction the signals being transformed by the patented invention are "signals providing pixel information, *such as color, luminance, or chrominance values*". *Id*. (emphasis added). It is only under HP's proffered construction that the signals being transformed are limited to luminance. *Id*. Thus, the luminance element is HP's claim construction position — not an "undisputed fact."

HP's assertion of its own claim construction positions as "fact" misses the point that Polaroid's motion for summary judgment of infringement is based on Polaroid's claim construction. Thus, attempting to limit the claims of the patent to luminance in opposition is irrelevant to opposing Polaroid's motion. Under Polaroid's claim construction, HP's LACE Products literally infringe Claim 1.

      B.      **HP's Prosecution History Estoppel Argument Is Irrelevant, And In Any Event, Does Not Preclude Entry Of Summary Judgment Of Literal Infringement In Polaroid's Favor.**

HP's argument regarding prosecution history estoppel is irrelevant because HP's LACE Products literally infringe each element of Claims 1–3. D.I. 143 at 1–2, 14–38; D.I. 151, Ex. B, at 20–37, 46–52. In other words, HP's LACE Products perform the identical function and use identical or equivalent structure. *Id*.; *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006) ("Literal infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in

REDACTED

the claim and be identical or equivalent to the corresponding structure in the specification."). Consequently, Polaroid's motion for summary judgment of these claims is not based on any doctrine of equivalents arguments. Prosecution history estoppel cannot apply as a matter of law. *See, e.g., Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367 (Fed. Cir. 2003).

If Polaroid were relying on the doctrine of equivalents, prosecution history estoppel still does not apply because HP's alleged equivalent ratio falls outside the scope of the purported surrendered claim scope. *Festo*, 344 F.3d at 1367; D.I. 193 at 19–21. Even if the equivalent were within the scope of subject matter surrendered, Polaroid can rebut the application of prosecution history estoppel because the narrowing amendment bore no more than a tangential relation (if any) to the equivalent in question. *See Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 849 (Fed. Cir. 2006); D.I. 193 at 22.

## CONCLUSION

For the foregoing reasons, Polaroid respectfully requests that the Court enter summary judgment that HP's LACE Products literally infringe Claims 1-3 of the '381 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

_____
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, Delaware  19801
(302) 658-9200
jheaney@mnat.com
Attorneys for Plaintiff, Polaroid Corporation

18

OF COUNSEL:

Russell E. Levine, P.C.
G. Courtney Holohan
Michelle W. Skinner
David W. Higer
Maria A. Meginnes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

June 16, 2008
2370279

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 20, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> William J. Marsden, Jr.
> FISH & RICHARDSON P.C.

I also certify that copies were caused to be served on June 20, 2008 upon the following in the manner indicated:

## BY E-MAIL

William J. Marsden, Jr.
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19801

Matthew Bernstein
John E. Giust
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130

Bradley Coburn
FISH & RICHARDSON P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701

Daniel Winston
CHOATE HALL & STEWART, LLP
Two International Place
Boston, MA 02110

*/s/ Julia Heaney*

_____
Julia Heaney (#3052)

# Exhibit A

REDACTED
IN ITS
ENTIRETY

# Exhibit B

REDACTED
IN ITS
ENTIRETY