IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POLAROID CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-738 (SLR) |
| | ) | |
| HEWLETT-PACKARD COMPANY, | ) | **REDACTED -** |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |

**POLAROID'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT UNDER 35 U.S.C. § 287**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, Delaware  19801
(302) 658-9200
jheaney@mnat.com
jblumenfeld@mnat.com

*Attorneys for Plaintiff*
*Polaroid Corporation*

OF COUNSEL:

Russell E. Levine, P.C.
G. Courtney Holohan
Michelle W. Skinner
David W. Higer
Maria A. Meginnes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

Original Filing Date:  June 16, 2008

Redacted Filing Date:  June 20, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

SUMMARY OF ARGUMENT ......................................................................................1

ARGUMENT ...............................................................................................................3

I.       HP DID NOT REBUT POLAROID'S EVIDENCE — AND CANNOT REFUTE
         — THAT DODGE AND BURN AND ADAPTIVE SHARPENING DO NOT
         EMBODY ELEMENTS 1–3 OF CLAIM 7. ....................................................................3

         A.       Dodge And Burn Does Not Embody Elements 1–3 of Claim 7. ............................5

                  1.       Dodge and burn does not embody Element 1 of Claim 7. ..........................5

                  2.       Dodge and burn does not embody Element 2 of Claim 7. ..........................9

                  3.       Dodge and burn does not embody Element 3 of Claim 7. ........................11

         B.       Adaptive Sharpening Does Not Embody Elements 2–3 of Claim 7. .....................13

                  1.       Adaptive sharpening does not embody Element 2 of Claim 7 ..................13

                  2.       Adaptive sharpening does not embody Element 3 of Claim 7 ..................15

II.      HP DID NOT REBUT POLAROID'S EVIDENCE THAT POLAROID
         PRODUCTS CONTAINING LOCAL AND ADAPTIVE GAMMA WERE NOT
         MADE, OFFERED FOR SALE, OR SOLD. ...................................................................16

III.     POLAROID'S EXTENSIVE AND TIMELY SOURCE CODE PRODUCTION
         IS MORE THAN SUFFICIENT TO DETERMINE WHETHER ITS PRODUCTS
         EMBODY THE '381 PATENT. ...................................................................................18

CONCLUSION ...........................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Abtox Inc. v. Exitron Corp.*,
    122 F.3d 1029 (Fed. Cir. 1997)..........................................................................6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..........................................................................3

*Baldwin Graphics Sys., Inc. v. Siebert, Inc.*,
    512 F.3d 1338 (Fed. Cir. 2008)..........................................................................6, 7

*Broadcom Corp. v. Agere Sys., Inc.*,
    No. 04-2416, 2004 WL 2009320 (E.D. Pa. Sept. 8, 2004)..............................................4

*Church & Dwight Co., Inc. v. Abbott Labs.*,
    No. 05-2142 (GEB), 2007 WL 1959272 (D. N.J. July 5, 2007)....................................3

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
    192 F.3d 973 (Fed. Cir. 1999)..........................................................................6

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*,
    423 F.3d 1343 (Fed. Cir. 2005)..........................................................................7, 8

*Insituform Techs., Inc. v. Cat Contracting Inc.*,
    99 F.3d 1098 (Fed. Cir. 1996)..........................................................................6

*Laitram Corp. v. Hewlett-Packard Co., Inc.*,
    806 F. Supp. 1294 (E.D. La. 1992)..........................................................................3

*Norian Corp. v. Stryker Corp.*,
    432 F.3d 1356 (Fed. Cir. 2005)..........................................................................6, 9

*North Am. Vaccine, Inc. v. Am. Cyanamid Co.*,
    7 F.3d 1571 (Fed. Cir. 1993)..........................................................................6

*Philips Elecs. North America Corp. v. Contec Corp.*,
    312 F. Supp. 2d 592 (D. Del. 2004)..........................................................................6

*Unova Inc. v. Hewlett-Packard*,
    No. CV 02-3772 ER, 2006 WL 5434534 (C.D. Cal. Feb. 16, 2006)................................3

## Statutes

35 U.S.C. § 287..........................................................................1, 2, 3, 20

In opposition to Polaroid's motion for summary judgment under 35 U.S.C. § 287, HP identified three primary arguments: (1) there are questions of fact regarding whether Polaroid's dodge and burn and adaptive sharpening technologies embody Claim 7 of U.S. Patent No. 4,829,381 (the "'381 patent"); (2) there are questions of fact regarding whether Polaroid's local and adaptive gamma technologies were made, offered for sale, or sold; and (3) Polaroid has not produced sufficient source code to enable HP to make its case.  D.I. 186, HP's Opposition to Polaroid's Mot. for Summ. J. Under 35 U.S.C. § 287 ("HP's Opposition Brief").  None of these arguments, however, is sufficient to defeat summary judgment.

## SUMMARY OF ARGUMENT

1.     Polaroid has not made, offered for sale, or sold any products that embody any claims of the '381 Patent.  ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

2.     The alleged "evidence" cited by HP on the issue of whether local and adaptive gamma were ever incorporated in a Polaroid product that was made, offered for sale, or sold does not raise a genuine issue of material fact because the evidence (a) either confirms a fact that is not disputed; or (b) is so speculative as to be given little weight.  HP has not demonstrated — and cannot establish — any evidence to refute the unequivocal testimony of Polaroid's former

██████████████████████████████████

employee and Rule 30(b)(6) witness, Dr. Julian Bullitt. HP did not put forward any evidence to rebut Polaroid's arguments, and summary judgment is appropriate.[1]

    3.    HP cannot justify or excuse its failure to come forward with evidence sufficient to defeat summary judgment by alleging a deficiency in Polaroid's production. The fact is that Polaroid produced all of the source code in its possession, custody, or control, as well as source code belonging to third parties, during fact discovery. The code Polaroid produced was sufficient to determine whether dodge and burn and adaptive sharpening are embodiments of the '381 patent. Tellingly, in his expert report regarding Polaroid's alleged use of the '381 patent, submitted before Polaroid sought summary judgment, HP's expert did not state or otherwise contend that the code produced by Polaroid was insufficient or incomplete. D.I. 187, HP Ex. 1,[2] Schonfeld Rpt; *see* Ex. 1, D. Schonfeld Dep. Tr. at p. 33, line 21–p.34, line 13 (explaining that although he reviewed a greater amount of Polaroid source code from Polaroid's production, HP's expert relied only on the source code cited in his report).

---

[1]    HP does not even address certain products and claims in its opposition brief, and, for this reason alone, summary judgment is at a minimum appropriate on these specific issues. For example, Polaroid set out evidence that eIQA, a Polaroid technology, was never used or incorporated in a product. D.I. 146, Polaroid's Opening Br. in Support of its Mot. for Summ. J. Under 35 U.S.C. § 287 ("Polaroid's Opening Brief") at 14. Polaroid also demonstrated that no Polaroid product embodied Claims 1–6 or 8–13 of the '381 patent. *Id.* at 14–17, 23–24. Polaroid's licensee never made, offered for sale, or sold an embodiment of the '381 patent. *Id.* at 24–25. Because HP has not rebutted — and cannot dispute — these facts, summary judgment is warranted.

[2]    Polaroid submitted a Joint Appendix with its affirmative summary judgment motions filed on May 16, 2008, cited herein as "D.I. 99, J.A. Ex._". *See* D.I. 99. Polaroid cites to the appendix filed with its Original Brief as "D.I. 147, Polaroid Ex. __." *See* D.I. 147. Polaroid cites to the appendix with HP's Opposition Brief as "D.I. 187, HP Ex.__." *See* D.I. 187. Polaroid cites to the appendix filed with Polaroid's Answering Brief In Opposition to HP's Motion for Summary Judgment on Grounds of Estoppel, And, In The Alternative Or In Addition, Laches ("Polaroid's Laches Brief") as "D.I. 195, Laches Ex. __." *See* D.I. 195. Documents related only to its reply brief are contained in a separate appendix and cited as "Ex. __."

## ARGUMENT

Summary judgment should be granted because Polaroid has complied with 35 U.S.C. § 287 (a).  Polaroid has not made, offered for sale, or sold products embodying the invention claimed in the '381 patent.  The issuance of the '381 patent is thus sufficient notice under the marking statute, and Polaroid should obtain the full damages period.

Courts have held that the party claiming failure to mark must prove whether an allegedly unmarked product is a patented article, embodying the inventions claimed in the patent-at-issue, that needs marking.  *See, e.g., Laitram Corp. v. Hewlett-Packard Co., Inc.*, 806 F. Supp. 1294, 1296 (E.D. La. 1992);  *Unova Inc. v. Hewlett-Packard*, No. CV 02-3772 ER, 2006 WL 5434534, at *1 (C.D. Cal. Feb. 16, 2006); *Church & Dwight Co., Inc. v. Abbott Labs.*, No. 05-2142 (GEB), 2007 WL 1959272, at *5-6 (D. N.J. July 5, 2007).  HP has not satisfied its burden here and has not identified a genuine issue of material fact that would require denial of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).[3]

## I.    HP DID NOT REBUT POLAROID'S EVIDENCE — AND CANNOT REFUTE — THAT DODGE AND BURN AND ADAPTIVE SHARPENING DO NOT EMBODY ELEMENTS 1–3 OF CLAIM 7.

Although Polaroid need only demonstrate that one element of Claim 7 is missing from its dodge and burn and adaptive sharpening technologies to establish that they do not embody that claim of the '381 patent, Polaroid has demonstrated the absence of all three elements from dodge and burn and the absence of at least 2 elements from adaptive sharpening.  D.I. 146 at 21–23. HP did not establish that there is a genuine issue of material fact as to any one of these elements.

---

[3]    At the very least, Polaroid should be granted summary judgment where HP made no attempt to rebut Polaroid's arguments.  By remaining silent, HP has conceded that eIQA was never used or incorporated in a Polaroid product.  HP also did not argue that any Polaroid product embodied Claims 1–6 or 8–13.  Finally, no evidence was offered to suggest that Polaroid's licensee had ever made, offered for sale, or sold an embodiment of the '381 patent.

D.I. 186 at 14–28. Products containing dodge and burn and adaptive sharpening source code are not "patented articles" and thus do not require marking.

Dr. Dan Schonfeld's rebuttal expert report on behalf of HP does not present any genuine issue of material fact because he failed to engage in the basic infringement analysis of comparing the parties' claim constructions to the non-marked articles. *Compare* D.I. 187, HP Ex. 1, Schonfeld Rpt.[4] *with Broadcom Corp. v. Agere Sys., Inc.*, No. 04-2416, 2004 WL 2009320, at *3 (E.D. Pa. Sept. 8, 2004) and D.I. 186 at 10–11 (stating that the determination of whether a product "embodies" a patent "requires an inquiry that is analogous to whether an article infringes a patent."). As HP repeatedly acknowledged in its Opposition Brief, Schonfeld analyzed Polaroid's dodge and burn and adaptive sharpening technologies under both parties' proposed claim constructions *as applied by Polaroid*. D.I. 186 at 4, 6. In other words, he performed a product to product comparison; he compared the Polaroid technologies with the *analysis of the accused HP technology offered by Polaroid's technical expert*. He did not compare the claims of the '381 patent as construed by the parties to the Polaroid technologies.

In contrast, Polaroid's technical expert, Dr. Peggy Agouris, properly compared the claims of the '381 patent to the various Polaroid technologies. D.I. 99, J.A. Ex. B, Agouris Op. Rpt. at 90-98. She also properly responded to Schonfeld's opinions during her deposition and did not provide "new" opinions, as HP alleges. *See* D.I. 186 at 19–20.[5] The expert discovery schedule

---

4  There are additional deficiencies in Schonfeld's report not addressed here. Polaroid discusses the flaws in Schonfeld's report only as necessary to establish that there are no material issues of fact.

5  HP cites its Motion to Preclude Certain Testimony of Polaroid's Expert Dr. Peggy Agouris, D.I. 168 in its Opposition Brief and arguments therein throughout its brief. D.I. 186 at 20, n. 11, 22, 24, 26, 28. Polaroid incorporates by reference its Answering Brief in Opposition to HP's Motion to Preclude Certain Testimony of Polaroid's Expert Dr. Peggy Agouris ("Polaroid's Agouris Opposition Brief"), D.I. 219, outlining Dr. Agouris' ability to read source code and the propriety of her reliance on a programming specialist.

provided for two, not three, rounds of expert reports: an opening and a rebuttal report. *See* D.I. 51, Amended Scheduling Order at Section 3(c)(1); 2/11/08 Order. Therefore, it was not until her deposition that Dr. Agouris had an opportunity to rebut Schonfeld's report, which focused on Claim 7. In response to specific questions asked of her by HP, she identified several reasons why she disagreed with Schonfeld's report regarding dodge and burn and adaptive sharpening. *See* pp. 5–16 below.

### A.    Dodge And Burn Does Not Embody Elements 1–3 of Claim 7.

For the following reasons, Elements 1–3 of Claim 7 of the '381 patent are not embodied in Polaroid's dodge and burn technology.

### 1.    Dodge and burn does not embody Element 1 of Claim 7.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████ D.I. 186 at 4. Because both Polaroid's and HP's technical experts agree on this point, there is no genuine issue of material fact. *See* D.I. 147, Polaroid Ex. P, P. Agouris Dep. Tr. at p. 222, lines 8–17; D.I. 147, Polaroid Ex. N, D. Schonfeld Dep. Tr. at p. 106, lines 5–9; D.I. 187, HP Ex. 1, Schonfeld Rpt. at 58

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ *See* D.I. 147, Polaroid Ex. P, P. Agouris Dep. Tr. at p. 219, lines 4–10; p. 222, lines 8–p. 223, line 6; p. 223, lines 19–25.

Claim 7 recites "an average electronic information signal." D.I. 99, J.A. Ex. A, '381 Pat., col. 9, line 51. Although the general rule is that "an" means "one or more" in claims containing

████████████████████████████████████████

the word "comprising," this rule can be overcome where the claim language, the specification, or the prosecution history supports a singular interpretation. *Baldwin Graphics Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342–43 (Fed. Cir. 2008). Courts, including the Federal Circuit, have given a singular interpretation to "a" or "an" where the facts support it. *See, e.g.*, *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1359–62 (Fed. Cir. 2005) (holding that "a sodium phosphate" is limited to single sodium phosphate); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999) (concluding that "comprising…an upstanding feed tube" is construed as a single feed tube based on the prosecution history); *Abtox Inc. v. Exitron Corp.*, 122 F.3d 1029, 1023 (Fed. Cir. 1997) ("comprising…a metallic gas-confining chamber" construed as a single chamber based on the specification); *Insituform Techs., Inc. v. Cat Contracting Inc.*, 99 F.3d 1098, 1105–06 (Fed. Cir. 1996) (claim language "a cup" means one cup); *North Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1575–77 (Fed. Cir. 1993) (holding "a terminal portion" has singular meaning based on patent specification); *Philips Elecs. North Am. Corp. v. Contec Corp.*, 312 F. Supp. 2d 592, 601–04 (D. Del. 2004) (holding "an entry key" means "one entry initiate key"), *aff'd*, 177 Fed. App'x. 981, 986–87 (Fed. Cir. 2006).

Analysis of the claim language and the specification of the '381 patent demonstrates that "an average electronic signal" means "one average electronic signal" in Element 1.[6] The claims consistently refer to "an" or "the" average electronic information signal. *See, e.g.*, D.I. 99, J.A. Ex. A, '381 Pat., Abstract; col. 9, lines 5, 7, 51, 58, 65. HP did not — and cannot — identify

---

[6] The proposed constructions reference "[*calculating an intermediate value*]" and providing either "[*a signal…of calculated intermediate value*]" (Polaroid construction) or "an average electronic information signal" (HP construction). D.I. 146 at 18–19; D.I. 186 at 16–17. HP filed its Notice of Agreement the day before summary judgment motions were due, and Polaroid adjusted HP's claim constructions accordingly. D.I. 146 at 15, n. 6. HP's criticism of Polaroid for incorporating the late-filed information of HP is unfounded. D.I. 186 at 16–17, n. 8.

*any* language in the '381 patent that refers to multiple average electronic signals for one pixel. D.I 186 at pp. 21–22. Moreover, the '381 specification calls for only one average electronic information signal when it references "an average value electronic information signal $A_v$" and describes how $A_v$ is used in the '381 algorithm. D.I. 99, J.A. Ex. A, '381 Pat., col. 3, lines 61–67; col. 4, lines 26–33. For the equation found in this passage to operate correctly, there can be only one value for $A_v$. *Id.* In other words, the '381 patent does not disclose any way to use the invention where there are two or more averages for each select plurality of pixels.[7]

The cases cited by HP are inapposite. In *Baldwin Graphics*, the Federal Circuit disagreed with the district court's finding of a singular meaning based on the phrases "said fabric roll" in the claim and "in intimate contact with the fabric roll" in the specification. 512 F.3d at 1342–43. Because the phrase "in intimate contact with the fabric roll" was not limited to one roll, the article "an" did not mean one. *Id.* In contrast, the '381 specification requires that there be a single average. D.I. 99, J.A. Ex. A, '381 Pat., col. 4, lines 26–33.

The facts of *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1350–51 (Fed. Cir. 2005) (en banc) are also distinguishable. That court held that "a cable linking" had a plural meaning in part based on claim differentiation, where dependent claims were limited to devices with only one cable. *Id.* There are no such dependent claims here. The *Free Motion* claims and specification were contradictory regarding singular meaning, whereas both the '381 claims and specification are in agreement that the code must generate one average for each neighborhood.

---

[7]    Although HP's expert concluded without support that "an average" meant "one or more," he provided no explanation for this statement, let alone an explanation grounded in the claims or specification of the '381 patent. D.I. 187, HP Ex. 4, Schonfeld Dep. Tr. at p. 85, line 14–p. 87, line 22. The other citations provided by HP offer similar conclusions without support. D.I. 186 at 22.

HP mischaracterizes Polaroid's arguments and misquotes Dr. Agouris' report. D.I. 186 at 22, n. 12. As is clear from its pleadings, Polaroid disputes that dodge and burn embodies Element 2 of Claim 7. *See* D.I. 146 at 21–22; pp. 9–11 below. In addition, Dr. Agouris never stated that "the calculat[ion] [of] more than one [average] [for purposes of HP's construction of Element 2]…is equivalent to calculating only one average." *Compare* D.I. 186 at p. 22, n. 12 *with* D.I. 99, J.A. Ex. B, Agouris Op. Rpt. at 70–71. ████████████████████

████████████████████████████████████████

████████████████████████

████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████

D.I. 99, J.A. Ex. B, Agouris Op. Rpt. at 70. ██████████████████

████████████████████████████████████████

███ *Id.* ██████████████████████████████ *Id.*

████████████████████████████████████████

███████████████ *Id.* ██████████████████

████████████████████████████████████████

██████████████████████ By comparing apples to oranges and misquoting Dr. Agouris out of context, HP is trying to create an issue of material fact where none exists.[8]

---

[8]  Dr. Agouris did not "equivocate" during her testimony, but rather could not answer an incomplete and thus improper hypothetical question. D.I. 187, HP Ex. 24, P. Agouris Dep. Tr. at p. 226, lines 2–24.

████████████████████

Where the claims and specification show that a singular meaning is intended, as in the
'381 patent, "an," as used in Element 1 of Claim 7, means one, as in "one [*calculated
intermediate value*]" (Polaroid construction) or "one average electronic information signal" (HP
construction). *See, e.g., Norian Corp.*, 432 F.3d at 1359–62; D.I. 146 at 18–19; D.I. 186 at 16–
17. ███████████████████████████████████████████████████████████████████

████████████████████████████ D.I. 147, Polaroid Ex. N, D. Schonfeld Dep. Tr. at p. 106, lines 5–
9; D.I. 187, HP Ex. 1, Schonfeld Rpt. at 58; *see also* D.I. 186 at 4.  Thus, dodge and burn does
not embody the '381 patent as a matter of law.

### 2.    Dodge and burn does not embody Element 2 of Claim 7.



███████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████[9]  *See* D.I. 146 at 21

(citing D.I. 147, Polaroid Ex. N, D. Schonfeld Dep. Tr. at p. 207, lines 10–21) ████ ████

████████████████████████████████████████████████ ████████████

████████████████████████████████████ dodge and burn is not a '381 patent embodiment.

██████████████████████████████████████████████████████████████████

D.I. 147, Polaroid Ex. N, D. Schonfeld Dep. Tr. p. 80, line 22–p. 81, line 6. ██████

███████████████████████████████████████████████ *Id.* at p. 79,

line 22–p. 80, line 21 ██████████████████████████████████████████

█████████ p. 111, lines 19–24. ██████████████████████████████████

██████████████████████████████████████████████████████████████████

---
[9] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████     *Id.* at p. 111, lines 9–12.     ████████████████████████

██████████████████████████████████████     *Id.* at p. 116, lines 15–17.

The language of Element 2, Claim 7 requires that "each transfer function is selected as a function of… the average electronic information signal."  D.I. 99, J.A. Ex. A, '381 Pat., col. 9, lines 56–59.  The parties' proposed claim constructions reference "the [*signals providing pixel information*]" (Polaroid construction) or "[*the average that was formed using the input pixel value*]" (HP construction).  D.I. 146 at 19–20; D.I. 186 at 17-18.  By requiring the use of "pixel information" or "input pixel value," both constructions necessitate the use of the information originally given by the pixel.  *Id.*  ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████  D.I. 147, Polaroid Ex. P, P. Agouris Dep. Tr. at p. 214, lines 10–20; p. 218, lines 3–24;  Ex. 2, P. Agouris Dep. Tr. at p. 220, line 12–p. 221, line 2.

█████████████████████████████████████████████████████

█████████████████████████████████████████  *See* D.I. 187, D.I. 187, HP Ex. 1, Schonfeld Rpt. at 65–71.  ██████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████  *See* D.I. 187, HP Ex. 1, Schonfeld Rpt. at 5–6, 57, 62.  ██████████████████████████████████

███████████████████████████████████████████████████████

*See* D.I. 187, HP Ex. 4, Schonfeld Dep. Tr. at p. 105, line 1–p. 107, line 16.  ███████████

███████████████████████████████████████████████████████

10

██████████████████████████

██████████████████████████████████████████████████████████████████████

*Id.*, p. 107, lines 13–16; *see also*, p. 114, lines 10–21.  ████████████████████████████████████

████████████████████████████████████████████████████████████████  *Id.*, p. 109,

line 21–p. 111, line 24; p. 206, line 19–p. 207, line 21.

Under the claim constructions of both parties, Element 2 of Claim 7 requires that the

original luminance value be averaged, ████████████████████████████████████████████

██████████████████████████████████████████████  D.I. 147, Polaroid Ex. N, D.

Schonfeld Dep. Tr. at p. 79, line 22–p. 80, line 21; p. 111, lines 9–12; p. 111, lines 19–24; p. 116,

lines 15–17; p. 207, lines 10–21.  As a result, dodge and burn does not embody the '381 patent,

and summary judgment is appropriate.

### 3.     Dodge and burn does not embody Element 3 of Claim 7.

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████  Ex. 1, D. Schonfeld Dep. Tr. at p. 205, lines 17–19.  ████████████████████████  dodge

and burn cannot embody Claim 7 of the '381 patent.

Element 3, Claim 7 must have a transfer function that is "selected further as a function of

the ratio of the value of the average electronic information signal to a select proportionate value

of the dynamic range of the electronic information signals."  D.I. 99, J.A. Ex. A, '381 Pat., col. 9,

lines 64–67.  Under Polaroid's proposed claim construction, the selection language is for a

transfer function "selected further as a function of the ratio of the value of the [*signal providing*

*pixel information, such as a color, luminance, or chrominance value of calculated intermediate*

*value*] to a [*value within the range of possible values*]."  D.I. 146 at 20–21; D.I. 186 at p. 18-19.

██████████████████████████████████████

Under HP's proposed claim construction:

[*each input pixel value that has been part of the averaging step is altered based on the corresponding average of the signal providing luminance pixel information to which it is associated and based on the result of dividing a first existing data value representing the average of the signal providing luminance pixel information by a second existing data value representing any value within the determinate dynamic range of values, selected depending on where the lease image enhancement is desired*].

*Id.* In the algorithm referenced by the '381 patent, the numerator is the average pixel intensity value and the denominator is a number within the dynamic range of the image. D.I. 146 at 3; D.I. 99, J.A. Ex. A, '381 Pat., col. 4, lines 26–55. To embody Element 3, a similar ratio is required. Such a ratio is not found in dodge and burn.



D.I. 186 at 5; D.I. 187, HP Ex. 1, Schonfeld Rpt. at 19–20, 73–74.

*Id.*

Ex. 1, D. Schonfeld Dep. Tr. at p. 205, lines 17–19. HP's expert Schonfeld simply selected a term found in Dr. Agouris' analysis of HP's infringing products and inserted it into his equation for dodge and burn,

D.I. 147, Polaroid Ex. P, P. Agouris Dep. Tr. at p. 218, lines 3–13; p. 236, lines 14–18.

Element 3 of Claim 7 requires a ratio of an intensity value over a value in a dynamic range. D.I. 99, J.A. Ex. A, '381 Pat., col. 4, lines 26–55.

███████████████████████████████████████████████████████████

████ Ex. 1, D. Schonfeld Dep. Tr. at p. 205, lines 17–19.  Therefore, dodge and burn does not

embody the '381 patent.

### B.    Adaptive Sharpening Does Not Embody Elements 2–3 of Claim 7.

Elements 2–3 of Claim 7 of the '381 patent are not embodied by Polaroid's adaptive

sharpening technology.

### 1.    Adaptive sharpening does not embody Element 2 of Claim 7.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ *See* D.I. 147, Polaroid Ex. N, D. Schonfeld

Dep. Tr. at p. 310, line 7–p. 311, line 18.  Because Element 2 requires that the original intensity

value be averaged, dodge and burn is not an embodiment of the '381 patent.

As explained on page 10, both claim constructions require the use of the original

information provided by the pixel.  D.I. 146 at 19–20; D.I. 186 at 17-18.  For an 8 bit image, the

dynamic range of intensity values for a pixel range from 0 to 255.  D.I. 147, Polaroid Ex. N, D.

Schonfeld Dep. Tr. at p. 71, lines 5–9; D.I. 186 at 4; D.I. 187, HP Ex. 1, Schonfeld Rpt. at 23.

██████████████████████████████████████████████████████

███████████████████ D.I. 147, Polaroid Ex. N, D. Schonfeld Dep. Tr. at p. 310, line 7–p. 311, line

18. ██████████████████████████████████████████████████

D.I. 187, HP Ex. 1, Schonfeld Rpt. at 23 █████████████████████████████

█████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████ D.I. 147, Polaroid Ex. P, P. Agouris Dep. Tr., at p. 217, lines 6–

███████████████████████████████████████

10. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████     *Id.*, at p. 228, lines 6–14; *see also* p. 218, line 14–p. 219, lines 3; p. 238, lines 6–13.

████████████████████████████████████████████████

█████████████████████████████████████████████████████ D.I. 186

at 27–28. ██████████████████████████████████████████████

████████████████████████████████████████████ *See* D.I. 187, HP Ex. 1,

Schonfeld Rpt. at 23, 59–60, 64, 65–71. ████████████████████████

███████████████████████████████████████████ D.I. 187, HP Ex. 4,

Schonfeld Dep. Tr. at p. 302, line 22–p. 303, line 3 ███████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████ D.I. 186 at

28. ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ D.I. 187, HP Ex. 1,

Schonfeld Rpt. at 23–24.  The citations highlighted by HP do not address this issue.  D.I. 186 at

28. ██████████████████████████████████████████████

████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

D.I. 147, Polaroid Ex. N, D. Schonfeld Dep. Tr. at p. 310, line 7–p. 311, line 18.   Summary judgment is appropriate because this element of Claim 7 is not present in adaptive sharpening.

### 2.      Adaptive sharpening does not embody Element 3 of Claim 7.



. Ex. 1, D. Schonfeld Dep. Tr. at p. 250, lines 7–14.  Adaptive sharpening is not an embodiment of Claim 7

Element 3 requires a specific ratio under the parties' claim constructions, as explained on pages 11–12 above.  D.I. 146 at 20–21; D.I. 186 at 18-19.

D.I. 186 at 7; D.I. 187, HP Ex. 1, Schonfeld Rpt. at 24–27, 37–44, 71–82.[10]

*Id.*

Ex. 1, D. Schonfeld Dep. Tr. at p. 250, line 23–p. 251, line 12.

D.I. 187, HP Ex. 1, Schonfeld Rpt. at 71–81.                                                                    Schonfeld simply picked a term from Dr. Agouris' analysis of HP's infringing products and plugged it into this ratio.

D.I. 147, Polaroid Ex. P, P. Agouris Dep. Tr. at p. 218, lines 3–13; p. 237, lines 7–p. 238, line 20.

---

[10]                                                                                          D.I. 186 at 28.

███████████████████████████████████████████████████████████ and
therefore the specific ratio required by Element 3 of Claim 7 is not present.  D.I. 99, J.A. Ex. A,

'381 Pat., col. 4, lines 26–55; Ex. 1, D. Schonfeld Dep. Tr. at p. 250, line 23–p. 251, line 12. Due

to this missing element, Claim 7, Element 3 is not embodied by adaptive sharpening source code.

## II.    HP DID NOT REBUT POLAROID'S EVIDENCE THAT POLAROID PRODUCTS CONTAINING LOCAL AND ADAPTIVE GAMMA WERE NOT MADE, OFFERED FOR SALE, OR SOLD.

At his Rule 30(b)(6) deposition, Dr. Julian Bullitt, a former Polaroid employee, testified

that neither local nor adaptive gamma were ever used or incorporated in any Polaroid product.

*See e.g.*, Ex. 58 to Agouris Op. Rpt. (D.I. 99, J.A. Ex. B), J. Bullitt Dep. Tr. at p. 22, line 13–p.

23, line 21; p. 40, line 23–p. 41, line 21; p. 61, lines 5–11; p. 61, line 21–p. 63, line 10; p. 130,

line 22–p. 131, line 10.  In a detailed declaration filed in support of this motion, he explained his

familiarity with Polaroid products and stated, on a product-by-product basis, that products using

or incorporating local gamma and adaptive gamma were never made, offered for sale, or sold.

D.I. 147, Polaroid Ex. C, J. Bullitt Decl. ¶¶ 9–11, 13–19.[11]  Dr. Bullitt also explained that local

and adaptive gamma were only used internally at Polaroid for research and development.  *Id.*,

¶¶ 9–10; Ex. 58 to Agouris Op. Rpt. (D.I. 99, J.A. Ex. B), J. Bullitt Dep. Tr. at p. 22, line 13–p.

23, line 21; p. 40, line 23–p. 41, line 21; p. 61, lines 5–11; p. 61, line 21–p. 63, line 10; p. 130,

line 22–p. 131, line 10.

None of the alleged "evidence" on which HP relies rebuts the reality that Polaroid has not

made, offered for sale, or sold a product embodying the invention of the '381 patent:

---

11   Paragraph 2 of Dr. Bullitt's declaration filed in support of this motion states that a curriculum vitae is attached to his declaration.  Polaroid inadvertently omitted this c.v. from Exhibit C.  A copy of Dr. Bullitt's c.v. was filed in conjunction with Polaroid's Laches Brief. D.I. 195, Laches Ex. 43, J. Bullitt C.V.

████████████████████████████████

- <u>Polaroid Project Memo</u>: This memorandum, ***written by a third party***, states only that "Polaroid has practiced [the '381 patent in the past." D.I. 187, HP Ex. 8, Polaroid Project Memo at CRA 5407. This statement is entirely consistent with the fact that local gamma and adaptive gamma were embodiments of the '381 patent used ***for internal use only***. *See, e.g.*, D.I. 147, Polaroid Ex. C, J. Bullitt Decl. ¶¶ 9–10. This document says nothing about the '381 patent being used in any commercial Polaroid product.

- <u>Jay Thornton Deposition Testimony</u>: Jay Thornton testified only that adaptive gamma was part of some internally developed protoypes for IQA. D.I. 187, HP Ex. 3, Thornton Dep. Tr. at p. 30, line 7–p. 32, line 1. Thornton left Polaroid in January of 2002. Ex. 3, J. Thornton Dep. Tr. p. 9, lines 7–9. Dr. Bullitt explains that the version of the IQA image processing platform incorporated in Polaroid products "never used or incorporated adaptive gamma, local gamma, or the '381 patent." D.I. 147, Polaroid Ex. C, J. Bullitt Decl. ¶ 11.

- <u>Dr. Julian Bullitt Deposition Testimony</u>: Dr. Bullitt testified that local gamma was "available as part of the IQA platform from 2000." D.I. 187, HP Ex. 2, Bullitt Dep. Tr. at p. 24, line 16–p. 25, line 1. The fact that local gamma was available for internal use within Polaroid for testing as part of the IQA platform does not mean that it was included in any Polaroid product with IQA. It was not. D.I. 147, Polaroid Ex. C, J. Bullitt Decl. ¶ 11.

- <u>Thornton 1/02 Status Report</u>: This report states that adaptive gamma is "currently in eIQA but turned off." D.I. 187, HP Ex. 9, Thornton 1/02 Status Report at POL 702. According to Dr. Bullitt, "Polaroid has never made, offered for sale, or sold a product that used or incorporated the eIQA image processing platform." D.I. 147, Polaroid Ex. C, J. Bullitt Decl. ¶ 12.

The cited materials merely reconfirm the evidence provided by Polaroid and do not satisfy HP's burden in coming forward with evidence regarding Polaroid's marking obligations.

HP's citation of information regarding OPAL, a Polaroid kiosk that was never commercialized, is no more persuasive:

- <u>Thornton 1/02 Status Report</u>: This report states only that adaptive gamma is "the next algorithm to *test* for value add in OPAL." D.I. 187, HP Ex. 9, Thornton 1/02 Status Report at POL 702 (emphasis added). It does not state that adaptive gamma was actually included in OPAL. It was not. D.I. 147, Polaroid Ex. C, J. Bullitt Decl. ¶¶ 9-10.

- <u>Thornton Deposition Testimony</u>: Thornton testified that OPAL was field-tested. D.I. 187, HP Ex. 3, J. Thornton Dep. Tr. at p. 95, line 15–p. 96, line 5. This field-testing took place after Thornton left Polaroid, and he ***did not know*** whether adaptive gamma was used with OPAL in a final product. *Id.*, at p. 113, line 20–p. 114, line 23.

Dr. Bullitt also testified regarding OPAL as a Rule 30(b)(6) witness. He testified that OPAL was "never sold," but only "demoed" in stores, and that the OPAL kiosk did not contain adaptive

gamma, dodge and burn, or adaptive sharpening.  Ex. 4, J. Bullitt Dep. Tr. p. 84, line 5–p. 85, line 23.  He also has stated that neither adaptive gamma nor local gamma were used or incorporated in **any** Polaroid product, which would include OPAL.  D.I. 147, Polaroid Ex. C, J. Bullitt Decl. ¶¶ 9–10.

Polaroid has produced approximately 23,000 source code documents from its own files and that of third parties, including OPAL source code.  D.I. 195, Laches Ex. 39, Meginnes Decl. ¶¶ 4-5.   For example, Polaroid produced OPAL source code at POL 7333460–7379799; POL 7382422–49; POL 7484204-87; POL 7486846-49; 7487301-02; POL 7277562–77; BB0015683-87.  D.I. 195, Laches Ex. 40, Higer 12/7/07 Ltr. to Coburn; D.I. 195, Laches Ex. 41, Higer 1/14/08 Ltr. to Giust at 2; D.I. 195, Laches Ex. 42, Higer 1/16/08 Ltr. to Giust.  In addition, Polaroid has produced approximately 17,404 documents and 1,310,839 pages containing the search term "OPAL" in its production.  D.I. 195, Laches Ex. 39, Meginnes Decl. ¶ 6.

HP does not — and cannot — identify a single type of OPAL, local gamma, or adaptive gamma source code that is missing and necessary for it to prove its marking claims to support its contention that Polaroid's production was somehow insufficient.  D.I. 186 at 8–9, 29.  HP has not met its burden of establishing a genuine issue of material fact as to whether Polaroid made, offered for sale, or sold a product incorporating local or adaptive gamma.

## III.    POLAROID'S EXTENSIVE AND TIMELY SOURCE CODE PRODUCTION IS MORE THAN SUFFICIENT TO DETERMINE WHETHER ITS PRODUCTS EMBODY THE '381 PATENT.

HP cannot justify its failure to come forward with evidence in opposition to Polaroid's summary judgment motion on any allegedly deficient production of source code by Polaroid.

During the fact discovery period, Polaroid produced all of the code within its possession, custody, or control locatable after a reasonable search, as well as code in the possession, custody

or control of third parties.[12]  *See* p. 17, above.  The dodge and burn and adaptive sharpening source code produced by Polaroid — and analyzed by HP — is representative of the dodge and burn and adaptive sharpening code included in all Polaroid products.  D.I. 195, Laches Ex. 43, J. Bullitt Decl. ¶¶ 16–17.  Thus, HP has the source code necessary to determine whether Polaroid's products embody the '381 patent in Polaroid's dodge and burn, adaptive sharpening, local gamma, adaptive gamma, and OPAL technologies.

In particular, HP had the necessary dodge and burn and adaptive sharpening code by at least October 1, 2007 — more than four and a half months before it sent Polaroid a letter identifying products that HP believed should have been marked.[13]  *See, e.g.*, Ex. 5, Duerr 8/31/07 Ltr. to Bernstein (producing POL 2430492–98, POL 4627913–19, and POL 7240266–07); Ex. 6, Beasley 10/1/07 Ltr. to Bernstein (producing POL 7502315–46, POL 75025593–98 and POL 7603855–86).  HP's technical expert cited and relied on this code in his report.  D.I. 187, HP Ex. 1, Schonfeld Rpt. at 4, 5, 21.  On November 16, 2007, Polaroid specifically identified most of this source code production to HP.  Ex. 7, Skinner 11/16/07 Ltr. to Coburn.

---

[12]  HP suggests that Polaroid lost "much" of its product source code.  D.I. 186 at 9.  Nowhere in its interrogatory answers does Polaroid make such a statement.  *See* D.I. 187, HP Ex. 11, Polaroid's Resp. to HP's Second Set of Interrogs., at No. 22.  Polaroid also incorporates by reference its Laches Brief, which addresses similar issues raised by HP.  *See* D.I. 194 at 18–19.

[13]  Documents cited by HP as allegedly providing notice of its marking contentions are inadequate because (a) they predate HP's last interrogatory answer on marking; (b) they make no mention of marking; and (c) they were late.  *Id.* at 12–13.  HP suspected certain Polaroid technologies and products as potentially embodying the '381 patent as early as August 20, 2007.  D.I. 186 at 13.  Yet, HP did not update its previous interrogatory answer to reflect these suspicions — and did not include the information in an interrogatory answer it issued two months later on October 15, 2007.  Polaroid Ex. M, HP's Fourth Supplemental Resp. to Polaroid's First Set of Interrogs. (Nos. 9, 11–13) at No. 9.  Later HP correspondence referenced certain Polaroid products and technologies but made no mention of marking.  *See, e.g.*, D.I. 187, HP Ex. 19, Giust 12/18/07 Ltr. to Higer; D.I. 187, HP Ex. 22, Giust 1/29/08 Ltr. to Higer; D.I. 187, HP Ex. 23, Giust 2/7/08 Ltr. to Higer.  It was not until February 15, 2008 — after the close of fact discovery — that HP ever alleged that particular Polaroid products required marking.  D.I. 147, Polaroid Ex. D, 2/15/08 Giust Ltr. to Higer.  Even then, the letter did not identify the claims of the '381 patent that were allegedly embodied.  *Id.*

HP's claim that Polaroid's discovery responses relating to Polaroid products were delayed and/or insufficient is incorrect. D.I. 186 at 11–14, 19, n. 9. Polaroid produced extensive, timely responses to HP's requests for documents and information relating to its source code. At the start of fact discovery, Polaroid agreed to produce documents in response to the majority of HP's requests. *See* Ex. 8, Polaroid's Resp. to HP's First Request for Production at Nos. 12, 21, 60–61, 124, 129, 134, 139, 147, 149, 151, 154–58); Ex. 9, Polaroid's Resp. to HP's Second Request for Production at Nos. 213–21; Ex. 10, Polaroid's Resp. to HP's Third Request for Production. Polaroid appropriately responded to HP's interrogatories that it was unaware of any Polaroid products including "Image Enhancement" — in other words, products embodying the '381 patent. Ex. 11, HP's First Set of Interrogs. at Definitions and Instructions, Nos. 9–10; Ex. 12, Polaroid's Resp. to HP's First Set of Interrogs. at General Objections, Nos. 9–10. In addition to producing its code, Polaroid also provided a Rule 30(b)(6) witness regarding its products.[14]

In light of Polaroid's extensive production of source code, as well its provision of a Rule 30(b)(6) witness regarding Polaroid products, HP cannot excuse its failure to establish a genuine issue of material fact on non-existent discovery deficiencies on the part of Polaroid.

## CONCLUSION

For the reasons set forth herein and in its Opening Brief, Polaroid requests that the Court enter summary judgment that Polaroid's damages claims are not limited by 35 U.S.C. § 287 (a).

---

[14] Polaroid appropriately identified Dr. Bullitt as its Rule 30(b)(6) representative on Polaroid products and scheduled the deposition for September 23, 2007. HP canceled the deposition one day before the scheduled date. Ex. 13, Higer 9/24/07 Ltr. to Coburn. HP canceled this deposition at least two more times before it occurred on January 24, 2008. *See, e.g.*, Ex. 14, D. Higer 10/23/07 Ltr. to Coburn; Ex. 15, Higer 11/30/07 Ltr. to Coburn; Ex. 16, Higer 12/08/07 Ltr. to Giust. Any delay related to the timing of this deposition is attributable only to HP.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

_____

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, Delaware  19801
(302) 658-9200
jheaney@mnat.com
   Attorneys for Plaintiff, Polaroid Corporation

OF COUNSEL:

Russell E. Levine, P.C.
G. Courtney Holohan
Michelle W. Skinner
David W. Higer
Maria A. Meginnes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000


June 16, 2008

2370294

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 20, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

William J. Marsden, Jr.
FISH & RICHARDSON P.C.

I also certify that copies were caused to be served on June 20, 2008 upon the following in the manner indicated:

## BY E-MAIL

William J. Marsden, Jr.
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19801

Matthew Bernstein
John E. Giust
MINTZ LEVIN COHN FERRIS GLOVSKY AND
POPEO PC
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130

Bradley Coburn
FISH & RICHARDSON P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701

Daniel Winston
CHOATE HALL & STEWART, LLP
Two International Place
Boston, MA 02110

*/s/ Julia Heaney*

Julia Heaney (#3052)