IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POLAROID CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-738 (SLR) |
| | ) | |
| HEWLETT-PACKARD COMPANY, | ) | **REDACTED -** |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |

**POLAROID'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO PRECLUDE
HEWLETT-PACKARD FROM RELYING ON UNTIMELY PRODUCED DISCOVERY**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, Delaware  19801
(302) 658-9200
jheaney@mnat.com
jblumenfeld@mnat.com
  Attorneys for Plaintiff, Polaroid Corporation

OF COUNSEL:

Russell E. Levine, P.C.
G. Courtney Holohan
Michelle W. Skinner
David W. Higer
Maria A. Meginnes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

Original Filing Date:  June 23, 2008
Redacted Filing Date:  June 26, 2008

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

ARGUMENT...................................................................................................................................1

    I.     DR. RANGAYYANS' SUPPLEMENTAL EXPERT REPORT SHOULD
          BE STRICKEN..............................................................................................................1

    II.    HP'S EVIDENCE AND PROPOSED TESTIMONY ON
          NONINFRINGING ALTERNATIVES SHOULD BE EXCLUDED....................4

          A.     Retinex ..............................................................................................................4

          B.     Disabling LACE...............................................................................................6

    III.   HP'S UNTIMELY SALES AND FINANCIAL INFORMATION
          SHOULD BE EXCLUDED..........................................................................................7

          A.     Late Identification of HP Products Containing LACE ...............................7

          B.     Late Identification of iPAQs That Contain LACE .....................................8

          C.     Late Identification of International Sales of Accused Products..................9

    IV.   HP'S "LISTS OF PATENTS" AND LICENSE AGREEMENT
          EVIDENCE SHOULD BE EXCLUDED..........................................................10

          A.     Lists of Patents..............................................................................................10

          B.     Exhibit A to Flashpoint License Agreement...............................................11

    V.    POLAROID'S MOTION IS APPROPRIATE FOR CONSIDERATION
          NOW ...........................................................................................................................11

CONCLUSION...............................................................................................................................12

## TABLE OF AUTHORITIES

**CASES**

*Bridgestone Sports Co., Ltd. v. Acushnet Co.*,
    2007 WL 521894 (D. Del. Feb. 15, 2007) ...............................................................................12

*Philips Electronics North America Corp. v. Contec Corp.*,
    2004 WL 769371 (D. Del. April 5, 2004)..................................................................................8

*Praxair v. ATMI Inc.*,
    231 F.R.D. 457 (D. Del. 2005) ............................................................................................4, 12

*U.S. v. Sarraga-Solana*,
    No. 04-144-6-JJF, 2005 WL 3701472 (D. Del. Oct. 6, 2005)................................................10

**RULES**

Federal Rule of Civil Procedure 26 ......................................................................................1, 4, 7

Federal Rule of Civil Procedure 37 ...................................................................................... 11-12

F.R.E. 1006 ..................................................................................................................................10

<u>INTRODUCTION</u>

Polaroid filed its Motion to strike the Supplemental Expert Report of Dr. Rangayyan on invalidity, as well as portions of HP's damages expert's report and summary judgment briefs that rely on evidence that HP failed to produce and witnesses it failed to timely disclose.   Polaroid filed that motion because HP has repeatedly disregarded this Court's deadlines under the Scheduling Order and F.R.C.P 26.

In its opposition, HP does not dispute its delay in providing discovery or disclosing witnesses, but instead contends that its failures should be excused.  HP's general excuse — blaming Polaroid — is unavailing, and Polaroid has suffered substantial prejudice because of HP's conduct.

HP's failure to provide timely discovery and to disclose witnesses has no substantial justification and is not harmless.  Polaroid's Motion to Preclude should be granted.

<u>ARGUMENT</u>

I.     DR. RANGAYYANS' SUPPLEMENTAL EXPERT REPORT
       SHOULD BE STRICKEN

HP does not deny that it served Dr. Rangayyan's supplemental expert report on invalidity *five weeks* after the deadline for opening expert reports, or that the supplemental report contained new opinions and new prior art.  HP's excuse that Dr. Rangayyan prepared his supplemental report to respond to "new infringement theories" that supposedly first appeared in Dr. Agouris' opening report is incorrect.  D.I. 212 at 4.

Dr. Rangayyan admitted during his deposition that he did not consider Polaroid's infringement contentions before he delivered his initial report on invalidity.  D.I. 172 at 3.  Dr. Rangayyan does not reference Polaroid's infringement contentions in his initial report and he did not review any other Polaroid documents before he provided his initial report.  D.I. 173, Exh. 3,

Rangayyan Dep. at 74:10-77:4.   In preparing his initial expert report, any decision Dr. Rangayyan made as to what art to rely upon or not rely upon, or what arguments to make or not make, simply was not based upon Polaroid's infringement theories, arguments or evidence – because he did not look at Polaroid's infringement theories, arguments or evidence before submitting that report, there is no way that that report could have been based on Polaroid's infringement contentions.   Because Dr. Rangayyan never considered infringement in the first instance, any allegedly "new infringement theories" could not have been "new" to him, or provided a justification for a supplemental report.

Even if Dr. Rangayyan had reviewed Polaroid's infringement contentions before submitting his original report, Dr. Agouris did not assert any new infringement contentions in her opening report.   None of the five examples that HP claims are "new infringement theories" were in fact new (D.I. 212 at 4-5).

Polaroid disclosed all of the points in paragraphs 19-29 and 34 of Dr. Rangayyan's supplemental report (*id.* at examples 1 and 5) in its responses to interrogatories long before it served Dr. Agouris' expert report.   *E.g., compare* 9/14/07 Response to Interrog. No. 2 (D.I. 173, Exh. 5) at 10, 11 with D.I. 151, Exh. B at 28.   As to paragraph 30 of Dr. Rangayyan's supplemental report (D.I. 212 at 4, example 2), he simply mischaracterizes Dr. Agouris' report -- she did not opine that "*any* differences in the exponents of transfer functions are insubstantial."   Rather, she said that a decimal in the form of a ratio in HP's LACE algorithm is insubstantially different from a fraction in the form of a ratio as described in the '381 patent.   As with HP's other examples, Polaroid also stated this infringement contention before it served Dr. Agouris' expert report.   *Cf.* D.I. 212 at 4 with D.I. 155, Exh. B at 29.

Two of HP's examples (D.I. 173, Exh. 2 at ¶32 and ¶33) were issues that arose only when Dr. Agouris considered HP's claim construction. Polaroid was not required to provide infringement contentions under HP's claim construction during fact discovery, so HP cannot blame Polaroid for a discovery failure here. Dr. Rangayyan in his opening report applied HP's claim construction to prior art issues and could also have applied it to this issue of repeating/non-repeating block averagers, rather than delay until his supplemental report (*id.* at ¶32). Likewise, Dr. Rangayyan's initial report addressed issues that applied HP's claim construction, similar to the range of values of M in the algorithm (*id.* at ¶33). He just as easily could have addressed the issue in ¶33, but instead he did not address it until he offered his late supplemental report.

HP's unsupported assertion that Polaroid has not been prejudiced by HP's untimely supplemental report is incorrect. Dr. Rangayyan's supplemental report was served late on the same day that Dr. Agouris' rebuttal to Dr. Rangayyan's invalidity opinions was due, and Dr. Agouris therefore had no chance to respond to Dr. Rangayyan's supplemental opinions in her rebuttal report. Polaroid also had no opportunity to take discovery on Dr. Rangayyan's new prior art (Okada and Iiida), or on Dr. Rangayyan's new enablement defense (*see* D.I. 172 at 2-4) submitted long after fact discovery had closed. Contrary to HP's assertion, a deposition of Dr. Rangayyan does not cure the prejudice. Such a deposition ignores the need for additional fact discovery, an additional expert report from Dr. Agouris, an additional deposition of Dr. Agouris, and re-writing of already pending summary judgment motions. Allowing HP to offer and rely upon Dr. Rangayyan's supplemental report would necessitate reopening of fact and expert discovery and re-doing summary judgment briefing, all of which would delay the trial in the matter. Because HP has no justification for the late supplemental report and Polaroid has been

incurably prejudiced, this Court should preclude HP from offering opinion testimony on the subjects in the Rangayyan Supplemental Report. *Praxair v. ATMI Inc.,* 231 F.R.D. 457, 463 (D. Del. 2005).

II.     HP'S EVIDENCE AND PROPOSED TESTIMONY ON NONINFRINGING ALTERNATIVES SHOULD BE EXCLUDED

HP also does not dispute that it first provided its contentions on noninfringing alternatives and supplemented its F.R.C.P. 26(a) disclosures to identify witnesses having knowledge on that subject a month after the close of discovery and more than three months after Polaroid served its Interrogatory No. 22, seeking HP's contentions on that subject. Nor does HP provide any justification for its delay – it merely states that "[b]y then the issues in the case were more developed then they had been at the outset." D.I. 212 at 7. HP simply chose to ignore the Court's deadlines in direct violation of this Court's Scheduling Order and F.R.C.P. 26(a).

Polaroid is prejudiced by HP's introduction of the new subject of noninfringing alternatives into summary judgment briefing (that has now been completed) in its Motion for Summary Judgment on Grounds of Estoppel or Laches (D.I. 140). Polaroid has been prejudiced by HP's untimely contentions and identification of witnesses that it did not provide until after Polaroid's experts served their initial reports. This prejudice to Polaroid cannot be cured through depositions, because depositions of those witnesses now would lead to further rounds of expert reports and additional evidence related to the briefing on summary judgment that has already been completed. Therefore, HP should be precluded from offering the evidence on non-infringing alternatives identified below.

A.     Retinex

HP's damages expert, Mr. Wallace, should be precluded from offering an opinion on Retinex as a noninfringing alternative. The information on which Mr. Wallace relies from

- 4 -

the Fredrickson Report was not provided during discovery, and witnesses on whom he relies – Paul Fredrickson and Rhanjit Bhaskar– were not timely identified.

HP's attempt to justify its failure to comply with this Court's Scheduling Order by referencing Dr. Agouris' initial report is unsupportable.  HP asserts that Mr. Fredrickson undertook his investigation in response to the opinion stated in Dr. Agouris' initial report that Retinex was not substitutable for LACE in printer drivers.  In reality, HP was aware that Polaroid would dispute that Retinex was a noninfringing alternative long before Dr. Agouris' report – HP's counsel even told the Court at the November 2007 discovery conference "We are not abandoning an argument that [Retinex] is a noninfringing alternative." D.I. 172 at 20.  Dr. Agouris' report was no surprise to HP.

HP's contention that despite its failure timely to identify Messrs. Fredrickson or Bhaskar or Ms. Lee as witnesses having knowledge of Retinex as a substitute for LACE, Polaroid was not prejudiced because Polaroid's own document requests directed specifically to those individuals' documents concerning Retinex show that Polaroid "evidently knew these witnesses might have knowledge" is equally unpersuasive. D.I. 212 at 7-8.  HP actually refused to produce any documents in response to those requests.  Exh. 52.  HP's discovery stonewalling is not a reasonable justification for HP's failure to timely disclose information.

Polaroid will be prejudiced if Messrs. Fredrickson or Bhaskar or Ms. Lee are permitted to testify on noninfringing alternatives.  HP did not produce the Fredrickson report until more than two months after Mr. Bhaskar's deposition, so there was no way for Polaroid to question Mr. Bhaskar about it.  If Polaroid were to take the depositions now under paragraph 3(f) of the Scheduling Order, it would lead to another round of expert discovery, and would likely also uncover evidence that would impact HP's motion for summary judgment on laches.  The

time for expert discovery has passed and briefing on summary judgment motions is completed. These issues should not be reopened to accommodate HP's failure to comply with the Scheduling Order and provide its contentions on noninfringing alternatives during fact discovery, as it was required to do.

B.    Disabling LACE

As with Retinex, HP does not deny that it did not provide its contention that disabling LACE in its printer drivers (and removing the LACE code going forward) was a noninfringing alternative until it served its supplemental response to Interrogatory No. 22 — a month after the close of discovery and after Polaroid had served its initial expert reports.  HP argues instead that Polaroid did not specifically seek HP's contentions about disabling LACE (D.I. 212 at 9, n. 7).  HP's own (late) response to Interrogatory No. 22, however, acknowledges that its "future plans" concerning whether to include a LACE feature was a noninfringing alternative (D.I. 174, Exh. 13 at 22-23).

Polaroid's discovery requests did encompass HP's contention that disabling LACE was a noninfringing alternative.  In addition to Polaroid's Interrogatory No. 22 — served in November 2007 — Polaroid served numerous document requests seeking information on noninfringing alternatives (*e.g.* D.I. 174, Exh. 9 at nos. 424-30), including a request specifically directed at "HP's decision whether to use any product HP alleges is a non-infringing substitute" (id. at no. 426) as well as broader requests seeking all docs identified in response to any Polaroid interrogatory.  There is no question that Polaroid's discovery requests sought information concerning HP's future plans for LACE.

HP's contention that its abuse of the discovery process should be overlooked because Polaroid has taken the deposition of Mr. Bhaskar, and can take the deposition of Ms. Lee now, pursuant to paragraph 3(f) of the Scheduling Order (D.I. 212 at 9-10) does not cure the

prejudice to Polaroid.  For example, Polaroid did not have the Martinez Declaration (which HP only provided with its opposition, D.I. 214) at the time it took Mr. Bhaskar's deposition. Paragraph 3(f) of the Scheduling Order requires that a party's list of trial witnesses include only witnesses who have "previously been disclosed during discovery,"  and it does not provide a mechanism for late identification of witnesses (such as Mr. Lee), as HP suggests.  HP did not identify Ms. Lee as a witness on its Rule 26(a)(1) disclosure on the subject of disabling LACE until after the close of discovery (D.I. 174, Exh. 16 at 2-3).     HP should not be permitted to profit from its abuse of the discovery process.

### III.   HP'S UNTIMELY SALES AND FINANCIAL INFORMATION SHOULD BE EXCLUDED

#### A.   Late Identification of HP Products Containing LACE

HP does not dispute that it identified products that use LACE more than a month after the close of discovery and after Polaroid served its damages expert's report, or that it produced sales data for those products more than two months after the close of discovery.[1]  *See* D.I. 174, Exh.13, D.I. 172, Exh. A, Items 17, 19-20 (HP_97225-226, produced on April 15, 2008).  Polaroid was not able to take discovery on those products or the sales data because of HP's delay.  HP attempts to justify its delay by offering a new declaration by an HP employee, Teodoro Haasl-Martinez, who had to "spend a lot of time" to identify the HP products.  D.I. 212 at 11.[2]  HP's failure to comply with the discovery schedule was not a result of the amount of

---

[1]  HP notes that Polaroid produced more than 4500 pages of documents after the cutoff date, as a way of arguing that "HP's efforts have been more than reasonable in the circumstances." D.I. 212 at 3-4.  In fact, all of those documents related solely to expert discovery, and were not late fact discovery as HP suggests.

[2]  The Martinez Declaration attached to HP's opposition (D.I. 214) raises more questions about HP's products than it answers, and Polaroid has not been able to take discovery on it.  The Court should also preclude the Martinez Declaration.

work that Mr. Martinez had to do, but rather a product of HP's failure to undertake that work until it was too late, despite Polaroid's repeated requests.

For months during discovery, Polaroid pressed HP to produce sales data for its accused products and to supplement its identification of those products. In response to Polaroid's October and November requests for relief from the Court on this issue, HP represented to the Court at the November 6 discovery conference that it had provided all sales data for its "accused products as we understood them." (D.I. 172 at 6:22-7:1; Exh. 53). Despite Polaroid's repeated requests even after the conference with the Court, HP refused to supplement. (Exh. 54). HP has not justified its delay. The Court should preclude HP from offering item 17, 19 or 20 as identified in Polaroid's motion, any opinion of Mr. Wallace that relies on that evidence, or the Declaration of Mr. Martinez. *Philips Electronics North America Corp. v. Contec Corp.,* 2004 WL 769371 at *1 (D. Del. April 5, 2004).

### B.    Late Identification of iPAQs That Contain LACE

HP argues that Mr. Wallace should not be precluded from relying on a document containing sales data for iPAQ units that contain LACE code (HP_97227, produced April 15, 2008) or the testimony of Chris Hayes on that subject. HP does not deny that HP_97727 was produced two months after the close of fact discovery and a month after initial expert reports, or that Chris Hayes was not identified until Mr. Wallace's expert report. HP instead attempts to justify its conduct by asserting that HP employee, Mr. Martinez, "had not been aware that iPAQs might contain LACE code" and "[a]t the time HP prepared its initial disclosures, HP could not have known that this information would be relevant" until Polaroid's damages expert, Dr. Strickland, served his report (D.I. 212 at 12, 17).

HP's purported ignorance about its own products during discovery is not a reasonable justification for its belated production or the prejudice caused to Polaroid. Contrary

to HP's suggestion, the prejudice to Polaroid would not be cured by reopening discovery so that Polaroid could take Mr. Hayes' deposition. As explained above, paragraph 3(f) of the Scheduling Order was not intended to provide a second chance to a party such as HP that does not cooperate in discovery.  The Court should also strike the Declaration of Chris Hayes attached to HP's opposition (D.I. 215).

        C.     Late Identification of International Sales of Accused Products

As with its late evidence of iPAQ sales, HP also belatedly addressed the issue of its international sales of accused products that were made in the United States, and now argues that it was merely responding to contentions made for the first time in Dr. Strickland's report.  In fact, HP knew that international sales of U.S.-made products were at issue. Polaroid asked for that information repeatedly during discovery.

For example, Polaroid took the deposition of HP's 30(b)(6) witness, Ms. Dogan, in October 2007 and asked her where HP's accused products are manufactured, and followed up in correspondence to try to get the answers that Ms. Dogan could not provide (although obligated to do so as a 30(b)(6) witness). Exh. 54.  In December, HP produced a Declaration of Kathryn Doyel that still did not respond to Polaroid's requests about manufacturing locations. (Exh. 55). Polaroid then sought another 30(b)(6) deposition specifically directed to "the names and locations of each of the HP facilities that manufacture and/or distribute" the accused products. Exh. 56 at ¶ 13.  HP refused to produce a witness for this topic. (Exh.. 57).

Months later, after Dr. Strickland provided his expert report, HP assigned Paul Ruiz to investigate HP's manufacturing locations for the accused products.  Having refused to do that investigation or provide that information during discovery, HP should not be permitted to

offer it now. The Court should exclude the evidence at page 81 of Mr. Wallace's report concerning international sales, and preclude HP from offering Mr. Ruiz's testimony at trial.[3]

IV.    HP'S "LISTS OF PATENTS" AND LICENSE AGREEMENT
       EVIDENCE SHOULD BE EXCLUDED

       A.    Lists of Patents

HP's contention that its belated production of the Lists of Patents — provided after the close of discovery and submission of Polaroid's damages expert's report — should be excused because Polaroid did not seek that information in discovery is incorrect. The Lists of Patents are HP documents that list the HP patent inventions that are incorporated in its printer products. Mr. Wallace relies on those documents for his opinion relating to Georgia-Pacific factor no. 13, the portion of profit that should be credited to the patented technology. Polaroid sought production of all documents "that support, contradict, or otherwise refer or relate to HP's contention as to what constitutes a reasonable royalty…" (Polaroid's 2d Set of Requests for Production, No. 65, D.I. 174, Exh. 8 at 3). HP has no excuse for its late production of these documents and they should be excluded.

Furthermore, HP's argument that the Lists of Patents should be admissible as a summary chart of public records under F.R.E. 1006 is not persuasive. That rule requires that "[t]he originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place." *See* F.R.E. 1006; *U.S. v. Sarraga-Solana*, No. 04-144-6-JJF, 2005 WL 3701472, at *4 (D. Del. Oct. 6, 2005) (finding that the proponent of a summary must prove that the documents have been made available for inspection or copying). HP did not produce the patents underlying the Lists of Patents charts, and the patents that are publicly

---

3    Polaroid is concurrently filing a separate motion to preclude HP from offering testimony of Mr. Ruiz, and other witnesses that HP did not identify in discovery.

available provide no information regarding the "family of HP printers" to which they supposedly relate.  *See* Wallace Rpt. at 58 (D.I. 174, Exh. 18) (linking both lists of patents to one, unidentified "family of HP printers").  Moreover, the underlying HP patents do not by themselves reveal HP's intention to rely on them.  And, the fact that HP marked this document as Outside Counsel Eyes Only is proof on its face that it does not present public information.  (Exh. 58).

### B.    Exhibit A to Flashpoint License Agreement

In its opposition, HP withdrew its reliance on all of the license and settlement agreement evidence in Polaroid's motion, except for one agreement.  HP maintains its reliance only on Exhibit A to the Flashpoint License Agreement and argues that Polaroid was not prejudiced by its late production, a month after the close of fact discovery, because it had the document "well in advance" of Mr. Wallace's deposition. D.I. 212 at 15.  HP offers no justification for its late production, other than inadvertence, and neglects to mention that it did not produce the document until the day before the deposition of HP's 30(b)(6) witness on that subject, and only two days before Polaroid's damages expert's report was due, so that he was not able fully to consider it in his analysis.  Polaroid was prejudiced and HP's neglect is not excusable; therefore, the attachment to the Flashpoint License Agreement should be excluded.

### V.    POLAROID'S MOTION IS APPROPRIATE FOR CONSIDERATION NOW

HP argues that Polaroid's motion is not properly filed at this stage of the proceedings because the Court does not permit Rule 37 or *in limine* motions, absent express approval, and that the issues in Polaroid's motion will not be ripe until after the parties have exchanged exhibit lists and witness lists.  D.I. 212 at 20-21.

HP's late-produced evidence and discovery failures that are the subject of this motion are interlaced with the issues that the parties are briefing on summary judgment, and properly considered in that context. They also affect trial preparation in important ways. It is more efficient for the Court to have Polaroid's preclusion request at the time it is considering summary judgment. Furthermore, as a result of the briefing on this motion, HP has withdrawn some of the late evidence that was the subject of Polaroid's motion, which will promote some efficiency as this case moves toward trial.

Finally, this motion is not a Rule 37 motion to compel discovery. It is a motion to exclude evidence that HP has failed to provide in accordance with this Court's discovery schedule. In view of HP's disregard of its discovery obligations, Polaroid's Motion to Preclude should be granted. It is a motion of the sort that this Court granted in *Praxair, supra*, and *Bridgestone Sports Co., Ltd. v. Acushnet Co.,* 2007 WL 521894 (D. Del. Feb. 15, 2007), based upon similar preclusion motions.

<u>CONCLUSION</u>

For the foregoing reasons, Polaroid's Motion to Preclude HP From Relying on Untimely Produced Discovery should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Julia Heaney*
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, Delaware  19801
(302) 658-9200
jheaney@mnat.com
jblumenfeld@mnat.com
Attorneys for Plaintiff, Polaroid Corporation

OF COUNSEL:

Russell E. Levine, P.C.
G. Courtney Holohan
Michelle W. Skinner
David W. Higer
Maria A. Meginnes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

June 23, 2008
2377405

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on June 26, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> William J. Marsden, Jr.
> FISH & RICHARDSON P.C.

I also certify that copies were caused to be served on June 26, 2008 upon the following in the manner indicated:

### BY E-MAIL

William J. Marsden, Jr.
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
Wilmington, DE 19801

Bradley Coburn
FISH & RICHARDSON P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701

Matthew Bernstein
John E. Giust
MINTZ LEVIN COHN FERRIS GLOVSKY AND
POPEO PC
5355 Mira Sorrento Place
Suite 600
San Diego, CA 92121-3039

Daniel Winston
CHOATE HALL & STEWARD, LLP
Two International Place
Boston, MA 02110

*/s/  Julia Heaney*

Julia Heaney (#3052)

# Exhibit 52

REDACTED

# Exhibit 53

| | | To | Polaroid Investigation |
|---|---|---|---|
| Courtney Holohan/Chicago/Kirkland-Ellis | | cc | |
| | | bcc | |
| 12/21/2007 05:07 PM | | Subject | Fw: POL/HP: 2007-12-21 Ltr to Holohan fr Bernstein |

G. Courtney Holohan
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, IL 60601
Phone: 312-861-3027
Mobile: 773-220-8401
Fax: 312-861-2200
—— Forwarded by Courtney Holohan/Chicago/Kirkland-Ellis on 12/21/2007 05:07 PM ——

| | | To | Bernstein@fr.com |
|---|---|---|---|
| Courtney Holohan/Chicago/Kirkland-Ellis | | cc | |
| 12/21/2007 05:07 PM | | Subject | Re: POL/HP: 2007-12-21 Ltr to Holohan fr Bernstein |

Matthew:

    We disagree with the statements in your attached letter sent this afternoon and mis-dated December 20, 2007. HP has repeatedly violated the Court's specific orders, unnecessarily increased the costs of this litigation, and ignored its discovery obligations in violation of the local and federal rules. We will respond in detail to the substance of your letter after the holidays. In the meantime, please immediately provide dates for the 30(b)(6) deposition notice that we served on August 31, 2007, which is necessitated by HP's delay and conduct.

Best regards,

Courtney

G. Courtney Holohan
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, IL 60601
Phone: 312-861-3027
Mobile: 773-220-8401
Fax: 312-861-2200
"Carol Jo Cameron" <cameron@fr.com>



| "Carol Jo Cameron" <cameron@fr.com> | | To | <gholohan@kirkland.com> |
|---|---|---|---|
| 12/21/2007 04:31 PM | | cc | "Matthew C. Bernstein" <Bernstein@fr.com> |
| | | Subject | POL/HP: 2007-12-21 Ltr to Holohan fr Bernstein |

********************************************************************************

**************************************************

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**************************************************************************
**************************************************

<<< Attachment 'lkw08500.PDF' has been archived by user 'CommonStore/IT/Kirkland-Ellis' on '02/20/2008 20:13:02'. >>>

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Courtney Holohan
To Call Writer Directly:
312 861-3027
cholohan@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: (312) 861-2200

January 8, 2008

<u>VIA EMAIL</u>

Matthew E. Bernstein, Esq.
Fish & Richardson, P.C.
12390 El Camino Real
San Diego, CA  92130

Re:    Polaroid Corporation v. Hewlett Packard Company
USDC-D. Del.-C.A. No. 06-738 (SLR)

Dear Matthew:

I write to follow up on my correspondence of December 21, 2007 in response to your letter of that same date (and misdated December 20).

HP's conduct regarding simple price, revenue, and unit information continues to be inappropriate.  HP's letter suddenly stating that certain products were not sold and/or not sold in the US is contrary to HP's sworn statements in response to Interrogatory No. 15 and to the written history regarding Polaroid's August 31, 2007 30(b)(6) notice.  Although you state in your December 21, 2007 letter that HP is rechecking its information and will complete its investigation by January 4, we have not heard from you.

Even with all of HP's excuses, we still do not have revenue and unit sales information for HP DeskJet 1341; revenue, price, and unit sales information for HP DeskJet 9130; and pricing information for HP PSC 1300 Series. We also have not received the HP Photosmart ps2000 Studio pricing information you stated that you would produce on December 21, 2007.

As I have previously requested, we request a witness for Polaroid's third deposition notice dated August 31, and its fourth deposition notice dated December 3, 2007 (but mislabeled first deposition notice).  These depositions are necessitated by HP's failure to provide appropriate information regarding Interrogatory 15.

January 8, 2008
Page 2

Very truly yours,

/Courtney/

Courtney Holohan

cc:    William M. Boyd, Esq.
       Jack M. Blumenfeld, Esq.

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

David W. Higer
To Call Writer Directly:
312.469-7029
dhiger@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: 312.861-2200

January 14, 2008

**VIA EMAIL**

John E. Giust, Esq.
Fish & Richardson, P.C.
12390 El Camino Real
San Diego, CA 92130

Re:  *Polaroid Corporation v. Hewlett Packard Company*
USDC-D. Del. C.A. No. 06-738 (SLR)

Dear Mr. Giust:

I write in response to your letter of January 3rd and to again raise HP's continued refusals and failures to comply with its discovery obligations in this case.

**I.    Polaroid's Compliance With The District Court's Order.**

As an initial matter, Polaroid disagrees with HP's position that the Court ordered more than that Polaroid identify the source code and algorithm(s), if any, related to the eleven products HP mentioned during the hearing. HP's selective quotation of the hearing transcript does not change the fact that the quoted portion was preceded by the following:

Mr. Marsden: . . .

We would like them to do the same for us with respect to their source code. At a minimum to tell us where the source code for each of the 11 products we have identified can be found in the source code they have produced. And we think it would be very helpful and make a much more meaningful 30(b)(6) deposition of their witness to have them point us to where the relevant algorithm is in their source code.

(November 19, 2007 Hearing Tr. at 4:7-14.) Consequently, Polaroid has complied with the Court's order. And, again, your continued requests that Polaroid identify *all* image enhancement source code and algorithms in the face of HP's improperly restricted view of what image enhancement algorithms are relevant to this case are improper and unduly burdensome.

John E. Giust, Esq.
January 14, 2008
Page 2

Nonetheless, despite the fact that Polaroid believes it has complied with the Court's order, and HP's continued unreasonable discovery behavior, Polaroid identifies the following additional code:

- PolaColor Insight Software v.5.5 – Generally located within the Bates-range POL7277562-9445 is related source code, but no contrast enhancement algorithm;

- One version of OPAL – POL7290824-30;

- One version of IQA – Beginning at POL7240266 is a file containing image enhancement algorithms; and

- One version of an Adobe Plug-in – The source code containing the algorithm begins at POL7283111.

**II.    Polaroid's Appropriate Production Of Recently Discovered Becker Source Code.**

With respect to your allegations regarding the recently discovered and produced Barbara Becker code, Polaroid reiterates that this was code in the possession, custody and control of a third party. Consequently, Polaroid produced all source code within its possession, custody, or control no later than October 2007.[1] Polaroid is not obligated to identify algorithms, if any, in the recently produced Becker code. To the extent Polaroid is able to do so, it will do so.

**III.    HP's Premature Demand.**

Lastly, with respect to HP's demand that Polaroid explain why certain source code is not available, as I stated in the January 3rd letter, HP has propounded discovery requests related to these demands and Polaroid will respond consistent with its obligations under the Federal Rules of Civil Procedure and the local rules of the Court at the appropriate time. And, as HP is aware, HP has a pending 30(b)(6) notice related to this topic as well by which it can, subject to Polaroid's objections, delve into the reasons why certain source code is not available.

**IV.    HP's Improper Discovery Conduct.**

In stark contrast to Polaroid's compliance, HP continues to be deficient in complying with its discovery obligations. Please address and remedy these deficiencies immediately or Polaroid will be forced to seek the Court's assistance.

---

[1]    We also disagree with your contention that the documents Bates-stamped with a BB designation contain 65,000 pages of source code.

John E. Giust, Esq.
January 14, 2008
Page 3

**A.    HP's Failure to Produce Relevant Documents**

**1.    HP's Failure to Produce LACE Source Code.**

HP has failed to produce the LACE code it agreed to produce. And, your January 11th letter, yet again, fails to address HP's wholly deficient production with respect to LACE. As Polaroid has reminded HP on numerous occasions, HP agreed to produce higher level LACE code and has failed to do so. *See, e.g.,* December 13, 2007 Higer Letter to Coburn; January 3, 2008 Higer Letter to Giust. By way of a reminder, during the November 6, 2007 hearing, HP committed to produce all LACE source code, including the higher level code that will allow Polaroid to determine when LACE is called. HP's commitment was again confirmed during the parties November 8, 2007 meet and confer, as summarized in my November 8th letter. On November 12th, HP committed to provide an update within 24-48 hours as to when Polaroid would receive this code. *See* 11-12-2007 Coburn Letter to Gerst. Despite HP's obligation and Polaroid's letters of December 13th, and January 3rd, HP has failed to produce the code or even respond to the December 13th and January 3rd letters regarding this issue.

Please provide all LACE source code, or source code that calls LACE source code, as detailed in Polaroid's prior letters, no later than January 16, 2008.

**2.    HP's Failure to Produce Electronic Registration Documents.**

HP has failed to produce documents related to the electronic registration of HP products listed in HP's supplemental answer to Polaroid's Interrogatory No. 15. Polaroid sent HP a letter on December 21, 2007 requesting that these documents be produced immediately and to date have received no response. December 21, 2007 Higer Letter to Bernstein re Electronic Registration Documents. As you are well aware these documents are responsive to Polaroid's discovery requests and should have been produced no later than August 31, 2007.

Please produce all document related to electronic registration as detailed in my December 21st letter no later than January 16, 2008.

**3.    HP's Failure to Produce Damages Documents.**

Despite HP's assertion before the Court on November 6, 2007 that HP had produced the unit, price, and revenue information for each accused product listed in HP's response to Polaroid's Interrogatory No. 15, this statement was false. And, despite the misrepresentation before the Court, HP has yet to provide all of the damages information. *See, e.g.,* December 19, 2007 Holohan Email to Bernstein, Bustamante and Coburn; December 21, 2007 Holohan Email to Bernstein; January 8, 2008 Holohan Letter to Bernstein.

John E. Giust, Esq.
January 14, 2008
Page 4

Indeed, despite HP's representation that it would complete its investigation by January 4th and get back to us with revised information, we have not heard from you. Consequently, please produce all of the remaining missing unit, price, and revenue information by no later than January 16, 2008.

**B.    HP's Refusal to Provide Deposition Dates and Responses for Individual and 30(b)(6) Witnesses.**

With the close of fact discovery rapidly approaching, Polaroid has diligently sought to schedule the individual and 30(b)(6) depositions which it has noticed. *See, e.g.,* January 3, 2008 Holohan Letter to Bernstein re Deposition Scheduling; January 8, 2008 Holohan Letter to Bernstein re Deposition Scheduling (proposing dates for Polaroid's third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh notices of 30(b)(6) depositions and the individual deposition of Ranjit Bhaskar). HP has failed to work in good faith to accommodate these depositions.

Moreover, HP has failed to respond to at least the following 30(b)(6) Notices:

- Polaroid's Eighth Notice of Rule 30(b)(6) Deposition (served December 21, 2007);

- Polaroid's Ninth Notice of Rule 30(b)(6) Deposition (served December 21, 2007);

- Polaroid's Tenth Notice of Rule 30(b)(6) Deposition (served December 24, 2007); and

- Polaroid's Twelfth Notice of Rule 30(b)(6) Deposition (served January 8, 2008).

And, even when HP has responded to Polaroid's 30(b)(6) notices it has done so late or inappropriately.

With regard to inappropriate responses, in its response to Polaroid's Sixth Notice of 30(b)(6) deposition HP refused to provide a witness for each of Polaroid's topics. However, these topics are relevant to at least the issue of HP's willfulness. As a result, we encourage you to reconsider your improper refusal to provide a witness.

No later than January 16, 2008, please provide responses to each of Polaroid's 30(b)(6) Notices and dates on which HP will make a witness available for each noticed 30(b)(6) deposition (including Polaroid's Sixth Notice) for which HP has not previously provided dates.

John E. Giust, Esq.
January 14, 2008
Page 5

    **C.**       **HP's Failure to Sign Stipulation.**

            Prior to the November 19, 2007 hearing, HP made certain statements related to disputed issues in the case. On December 2, 2007, Polaroid sent HP a stipulation as to HP's statements and asked for a response by December 7th. Polaroid followed up on December 11th and again on the 13th. When HP finally responded via email on December 13th, the response was no response at all. *See* December 13, 2007 Bernstein Email to Holohan ("HP is interested in simplifying the case for trial, to the extent that is possible. To that end, HP is considering and analyzing Polaroid's proposed damages stipulation to determine whether the proposed stipulation or something similar would be acceptable to HP. We will get back to you as soon as possible. If there is some reason why Polaroid needs an immediate answer to whether or not it will stipulate, please state this is the case and state the specific reason why an immediate answer is required."). And, despite continued follow-up and a revised stipulation, HP has failed to respond. *See, e.g.*, January 3, 2008 Holohan Email to Bernstein; December 21, 2007 Holohan Email to Bernstein ("Discovery closes February 1, and we took a 30(b)(6) deposition on this very issue months ago. If you have better estimates, or believe that you could obtain better estimates, we request that you produce them immediately. In the meantime, we have revised the stipulation to reflect your statement below that the delay regarding signing the stipulation is based only on possibly obtaining updated estimates. We request that you sign this stipulation, that merely reflects what HP has already averred, by no later than December 28, 2007."). HP's failure to sign the proposed stipulation is improper as it merely reflects assertions HP's counsel made to resolve disputed issues.

            Please sign the proposed stipulation no later than January 16, 2008.

    **D.**       **HP's Improper Privilege Objections.**

            Ms. Holohan, by letter on January 8th, specifically identified inappropriate privilege objections HP made during the deposition of Charles Moore. *See* January 8, 2008 Holohan Letter to Bernstein re Improper Privilege Objections. Despite Ms. Holohan's letter, HP has failed to provide the information requested. For example, the name of the person who brought the '381 patent to Mr. Moore's attention, the number of conversations that occurred, and the other dates during which conversations regarding the '381 patent occurred.

            Please provide the information requested in Ms. Holohan's January 8th letter no later than January 16, 2008.

            We look forward to HP's compliance with its discovery obligations.

John E. Giust, Esq.
January 14, 2008
Page 6

Very truly yours,

David W. Higer

DWH

cc:     William M. Boyd, Esq.
        Jack B. Blumenfeld, Esq.

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Maria A. Meginnes
To Call Writer Directly:
312.861.3220
mmeginnes@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: 312.846.9196

January 21, 2008

**VIA EMAIL**

Bradley D. Coburn, Esq.
Fish & Richardson P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701

Re:    *Polaroid Corporation v. Hewlett-Packard Company*
USDC-D. Del. - C.A. No. 06-738 (SLR)

Dear Mr. Coburn:

I write in response to Hewlett-Packard Company's Responses and Objections to Polaroid Corporation's Ninth Notice of Rule 30(b)(6) Deposition (the "Response"), as served on Polaroid on January 16, 2008.

In the Response, HP refuses to provide a witness on topics 2 and 4-6 regarding (1) HP's patent licenses where it is the licensee; (2) HP's patent licenses where it is the licensor; (3) HP's licensing of patents related to technologies for enhancing digital images through contrast modification or color correction; and (4) HP's licensing of any patent related to, employed, or intended to be employed in the production of any HP camera, HP scanner, HP all-in-one, HP printer, or HP software. Contrary to HP's objections, these topics clearly relate to Polaroid's damages claims and are therefore relevant under Federal Rule of Civil Procedure 26(b). Moreover, these topics call for factual information that is neither a contention nor the proper subject of expert testimony. HP must produce a witness on these topics immediately.

HP also will not provide a witness on topics 10-13 and 15-18 regarding HP offerings, including offerings listed in HP's First Supplemental Response to Interrogatory No. 15 ("Interrogatory No. 15 Offerings").[1] As an initial matter, these topics do not constitute

---

[1]    HP has indicated that it will consider providing a witness on topic 14 "upon clarification from Polaroid." Additional information will be provided shortly, and Polaroid anticipates that HP will produce a witness on this relevant, appropriate topic.

Bradley Coburn
January 21, 2008
Page 2

contentions. HP itself identified the Interrogatory No. 15 Offerings prior to the date for
responding to contention interrogatories. HP should provide a witness on all of these topics.

Polaroid is entitled to know what offerings contain the accused technology, including
how HP determined the offerings it identified to Polaroid. HP's refusal over many months to
provide this information is inexcusable. HP refuses to provide a witness for topics 10 and 15-17,
yet Polaroid still has many questions based on its review of HP's own production. For instance,
several offerings listed in HP 000217-246, HP 00324-361, and HP 00522-26 state that they
contain LACE source code, but these products are not listed as Interrogatory No. 15 Offerings.
As outlined in topic 17, Polaroid is entitled to explore why these products are missing. Topic 18
is necessary for Polaroid to understand and interpret HP's documents, including financial
documents relating to the Interrogatory No. 15 Offerings.

Topics 11 and 12 relate to representations that HP has made to Polaroid but is now
unwilling to support or explain. Regarding topic 13, products manufactured in the United States
are infringing regardless of where they are sold. The sought-after information is therefore
relevant under Rule 26(b).

Please confirm that HP will provide a witness on the above-referenced topics in the
Response by Wednesday, January 23, 2008.

Very truly yours,

Maria A. Meginnes

Maria A. Meginnes

cc:    William M. Boyd, Esq.
       Jack B. Blumenfeld, Esq.

# KIRKLAND & ELLIS LLP

#### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Maria A. Meginnes
To Call Writer Directly:
312.861.3220
mmeginnes@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: 312.846.9196

January 29, 2008

**VIA EMAIL**

Bradley D. Coburn, Esq.
Fish & Richardson P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701

Re:    *Polaroid Corporation v. Hewlett-Packard Company*
USDC-D. Del. - C.A. No. 06-738 (SLR)

Dear Mr. Coburn:

I write in response to your letter of January 23, 2008 regarding Hewlett-Packard Company's Responses and Objections to Polaroid Corporation's Eighth Notice of Rule 30(b)(6) Deposition (the "Eighth Response") and Hewlett Packard Company's Responses and Objections to Polaroid Corporation's Ninth Notice of Rule 30(b)(6) Deposition (the "Ninth Response").

### I.    HP's Eighth Response

#### Topics 9 and 11

While Polaroid disagrees with HP's statements that Topics 9 and 11 are burdensome, Polaroid will accept HP's offer of written responses in lieu of deposition testimony. Polaroid obviously expects these written responses to include products identified in Hewlett Packard Company's First Supplemental Response to Polaroid's First Set of Interrogatories (No. 15) ("First Supplemental Int. 15 Response"), as well as products identified in Hewlett Packard Company's Second Supplemental Response to Polaroid's First Set of Interrogatories (No. 15) ("Second Supplemental Int. 15 Response"). As Polaroid's deposition notice was served on December 21, 2007, Polaroid expects HP to provide its written responses by this Friday, February 1, 2008, at the latest.

Hong Kong      London      Los Angeles      Munich      New York      San Francisco      Washington, D.C.

Bradley Coburn
January 29, 2008
Page 2


II.     **HP's Ninth Response**

Topics 2, 4, and 6

HP has agreed to produce a witness on these topics, subject to its objections. HP must provide a date and witness for this deposition immediately.

Topic 5

Polaroid disagrees that this is a contention topic as it calls for purely factual information. Polaroid expects HP to produce a witness on this topic.

Topic 11

Topic 11 does not mischaracterize HP's statements. As summarized in Ms. Courtney Holohan's letter dated January 16, 2008, Polaroid has continually asked HP to provide the units sold and given away that use or incorporate any version of LACE source code. This topic is directed to that very issue, as HP has refused to provide the sought-after information via document requests, interrogatories, or previous depositions. HP has also refused to sign the stipulation presented by Polaroid on numerous occasions.

If HP is unwilling to produce a witness on this topic, HP should sign the stipulation put forward by Polaroid, most recently on January 3, 2008. Otherwise, Polaroid will rely as appropriate on HP's November 19, 2007 statements, as explained in Ms. Holohan's January 16, 2008 letter.

Topics 12-13

HP's characterization of its verifications is inaccurate. These verifications were intended to address Polaroid's very real and relevant concerns regarding the location of the distribution, manufacture, and sale of the products accused in this case. Polaroid had immediate concerns upon receiving these verifications. As a result, Polaroid issued two deposition topics regarding these documents and the information underlying them to give HP the opportunity to explain their meaning. This approach does not preclude Polaroid from addressing insufficiencies in these verifications now.

HP's verifications are flawed for at least two reasons. First, the verifications are vague and ambiguous on many points. For example, the verification titled "Software Replication" states that "software distributed in North America is typically, but not always, replicated in the United States." Terms such as "typically" and "not always" provide no concrete information as to the nature and extent of U.S. replications. To the extent that software distributed in Latin America is replicated in the U.S., this software should be included in U.S. units.

Bradley Coburn
January 29, 2008
Page 3

Second, the verifications lack key information required by Polaroid. As an illustration, the "Software Replication" verification is silent as to the location where master copies of HP software are generated. Similarly, on the verification titled "U.S. Sales," the standard Imaging and Printing Group revenue recognition policy does not allow Polaroid to distinguish in which country a product is sold. It does not state the location of HP's distribution centers or identify which distribution centers supply products to which countries. The verification is silent as to how the country of sale can be determined from the revenue and unit data produced by HP.

Given the demonstrated deficiencies in the verifications, Polaroid is entitled to a witness on Topic 12 to understand these verifications and Topic 13 to obtain the information that underlies these verifications.

Topics 10, and 15-17

These topics are appropriate given HP's failure to properly identify products that contain the accused source code in this case. As an initial matter, documents produced by HP, such as HPPOL_0031330, suggest that other HP products may contain LACE source code. HP's Second Supplemental Int. 15 Response demonstrates that Polaroid was correct to seek deposition testimony on these issues. For instance, Topic 16 inquired about the absence of Image Zone Plus from the First Supplemental Int. 15 Response, and Image Zone Plus is now listed in HP's Second Supplemental Int. 15 Response. The deposition of Mr. Anand Srinivasan did not resolve Polaroid's legitimate questions on these issues. Thus, a witness on these topics is necessary.

Topic 18

Polaroid asks that HP provide the meaning of the following abbreviations for HP product names and product sales. HP has already agreed to provide such information if Polaroid will provide such a list. Given HP's delay in responding to Polaroid's deposition notice, Polaroid expects HP to provide a written response in lieu of testimony.

The following general abbreviations or codes require clarification:

SPAR, PIP, IPS, EM, OM, EW2P, DTA, DCS, DCL, SPS, IDP, CRIB, IDC, OS, ULE, and DPP.

The following abbreviations or codes in HP_00217-46, HP_00324-61, and HP_00522-26 require clarification:

Refurb, Retail, Mass, Canada, Club, Tgt Bndle, WM Bund, Sams Bu, Staples, English, Sears Bn, Can Club, CTO, Custom, Base, HalfPalShip, FullPalt, DisplayShell, Shipper, DJ, Can, OJ, Gov't, Can Mass, CC, STILETTO, Can SF, Clubs, BIJ, PS, P, FullPalShp, BLADE 1 PEN NA NET, Cust Pal, NAVAJO NA

Bradley Coburn
January 29, 2008
Page 4


– CUSTOM, QtrPalShip, FP DS, DOLPHIN CLASSIC, Prin, OJP, SherpaHi,
CTO, Shppr w/12, Shppr w/24, PhotoStud, PhotoStudCAN, and CA/US Ret.

Please respond to the issues identified above by the end of the day on Wednesday,
January 30, 2008.

Very truly yours,

*Maria A. Meginnes*

Maria A. Meginnes


cc:    William M. Boyd, Esq.
       Jack B. Blumenfeld, Esq.

 **Maria Meginnes/Chicago/Kirkland-Ellis**
01/30/2008 06:25 PM

To  "Matthew C. Bernstein" <Bernstein@fr.com>

cc  "Bradley Coburn" <coburn@fr.com>

bcc

Subject  RE: Polaroid/HP: Correspondence 

Dear Matthew:

Polaroid asked HP to specifically identify where missing unit, price, and revenue information could be found in its production for both "old" and "new" Interrogatory No. 15 products. Please provide a written response that specifically identifies where this information can be found in HP's production immediately.

In addition, given the late timing of this production, Polaroid expects HP to bring 3 copies of its most recent production to the deposition of Mr. Mike McGee tomorrow.

Finally, can you please provide me with Mr. McGee's full name as I requested?

Best regards,

Maria

"Matthew C. Bernstein" <Bernstein@fr.com>

"Matthew C. Bernstein"
<Bernstein@fr.com>
01/30/2008 12:51 PM

To  "Maria Meginnes" <MMeginnes@kirkland.com>, "Bradley Coburn" <coburn@fr.com>

cc

Subject  RE: Polaroid/HP: Correspondence

Additional unit/revenue info was produced last night.  Pricing information
will be produced today.

-----Original Message-----
From: Maria Meginnes [mailto:MMeginnes@kirkland.com]
Sent: Wednesday, January 30, 2008 10:49 AM
To: Matthew C. Bernstein; Bradley Coburn
Subject: Fw: Polaroid/HP: Correspondence

Dear Matthew:

I am writing to follow up on my January 29, 2008 letter to you.  When will HP
provide the information requested by this letter?  As you are well aware, the
depositions of Messrs. Mike McGee and Ron Jordan are scheduled for Thursday
and Friday of this week.

Best regards,

Maria

Maria A. Meginnes | Attorney | Kirkland & Ellis LLP 200 EAST RANDOLPH DRIVE *

73RD FLOOR | CHICAGO, IL
60601 | TEL: (312) 861-3220  | FAX: (312) 846-9196

----- Original Message -----

From: Maria Meginnes
Sent: 01/29/2008 11:18 AM CST
To: bernstein@fr.com
Subject: Polaroid/HP:  Correspondence

Dear Matthew,

Please see the attached.

Best regards,

Maria

Maria A. Meginnes | Attorney | Kirkland & Ellis LLP 200 EAST RANDOLPH DRIVE *
73RD FLOOR | CHICAGO, IL
60601 | TEL: (312) 861-3220 | FAX: (312) 846-9196

(See attached file: 2008.01.29 Ltr from Meginnes to Bernstein re Missing
Info.pdf)

(See attached file: 2008.01.29 Missing Info
Document.pdf)

**************************************************************
The information contained in this communication is confidential, may be
attorney-client privileged, may constitute inside information, and is intended
only for the use of the addressee.  It is the property of Kirkland & Ellis LLP
or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this communication or any part
thereof is strictly prohibited and may be unlawful.  If you have received this
communication in error, please notify us immediately by return e-mail or by
e-mail to postmaster@kirkland.com, and destroy this communication and all
copies thereof, including all attachments.
**************************************************************
**********************************************************************
*********************************************

This email message is for the sole use of the intended recipient(s) and may
contain confidential and privileged information. Any unauthorized use or
disclosure is prohibited. If you are not the intended recipient, please
contact the sender by reply email and destroy all copies of the original
message.

IRS CIRCULAR 230 DISCLOSURE: Any U.S. tax advice contained in this
communication (including any attachments) is not intended or written to be
used, and cannot be used, for the purpose of (i) avoiding penalties under the
Internal Revenue Code or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed herein.

**********************************************************************
*********************************************

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Maria A. Meginnes
To Call Writer Directly:
312.861.3220
mmeginnes@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: 312.846.9196

February 27, 2008

**VIA EMAIL**

Bradley D. Coburn, Esq.
Fish & Richardson P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701

Re:    *Polaroid Corporation v. Hewlett-Packard Company*
USDC-D. Del. - C.A. No. 06-738 (SLR)

Dear Mr. Coburn:

I write in response to your letter of February 25, 2008 regarding HP's written responses to Polaroid's Eighth Notice of Rule 30(b)(6) Deposition ("Eighth Notice"). I also write regarding other fact discovery issues that remain unresolved.

## I.    HP's Response to Topic 9 of Polaroid's Eighth Notice

As HP is aware, Polaroid served its Eighth Notice on December 21, 2007. Topic 9 of that notice specifically asked HP to provide:

(a)    "The date that LACE source code was first included in each Interrogatory No. 15 Offering, including the 2002 version of LACE, the 2004.01 version of LACE, the 2004.02 version of LACE, the 2006 version of LACE, or the fermat version of LACE;

(b)    The date that HP first launched each Interrogatory No. 15 Offering;

(c)    The date that HP first sold or distributed commercially each Interrogatory No. 15 Offering;

(d)    The date that HP first marketed each Interrogatory No. 15 Offering; and

(e)    The date that the term "Adaptive Lighting" or "Digital Flash" was first used in conjunction with each Interrogatory No. 15 Offering."

*See* Polaroid's Eighth Notice at 8.

Hong Kong    London    Los Angeles    Munich    New York    San Francisco    Washington, D.C.

Bradley Coburn
February 27, 2008
Page 2

On January 23, 2008, HP agreed to provide a written response to this topic. Indeed, in that letter HP specifically described the information sought by Polaroid in Topic 9:

"Topic 9 relates to the launch of each accused product, including: (1) the date that HP included LACE source code in the product; (2) the date that HP launched the product; (3) the date that HP first sold or launched each product; (4) the date HP first marketed the product; and (5) the date adaptive lighting or digital flash terms were first used with respect to each product."

*See* Jan. 23, 2008 Coburn letter to Meginnes. The parties' remaining contacts regarding Topic 9 are summarized in earlier correspondence. *See* Feb. 18, 2008 Meginnes letter to Bernstein.

It took HP over 2 months to respond to Polaroid's Eighth Notice. And, when HP finally submitted its written response on February 25, 2008, it did not directly respond to any part of the topic as noticed by Polaroid. HP has only provided Polaroid with the "dates of introduction" of the Interrogatory No. 15 Offerings. Polaroid did not ask for "dates of introduction," and HP does not even define what this term means.

In effect, HP has now informed Polaroid that it will not answer Topic 9 — long after the close of fact discovery and three weeks before initial expert reports are due. HP's written response lacks the key information sought by Topic 9: namely the date when the accused source code was first included in each of the accused products. These dates are important because the hypothetical negotiation between the parties in a reasonable royalty analysis is intended to take place on the eve of the first infringement. The timing of the hypothetical negotiation is obviously critical to Polaroid's expert reports, which are due on March 14, 2008.

Let us know by February 28, 2008 whether HP will provide this information and when it will be provided. Otherwise, Polaroid will have no choice but to raise this issue with the court.

**II.    HP's Response to Topic 11 of Polaroid's Eighth Notice**

Polaroid has reviewed HP's response to Topic 11 of Polaroid's Eighth Notice. Rather than identify the feature represented by LACE source code in each Interrogatory No. 15 Offering, HP has presumably organized the Interrogatory No. 15 Offerings into groups. However, these groups are undefined, and they do not clearly relate to the interrogatory answer in question. Please clearly identify what products fall within "Cameras," "HIPIE," "Kiosks," "Printers," and "Software" or identify the feature that correlates to each individual Interrogatory No. 15 Offering.

Bradley Coburn
February 27, 2008
Page 3

### III.   Missing Damages Information

HP still has not provided complete unit, price, and revenue information to Polaroid for the accused productions. *See e.g.*, Jan. 29, 2008 Meginnes letter to Bernstein; Feb. 11, 2008 Meginnes letter to Bernstein. This information was addressed in hearings before Judge Robinson in the fall of 2008, and it should have been produced to Polaroid last December, almost three months ago.

Please confirm by February 28, 2008 that HP will provide this information and provide the date when that information will be available. It is obviously central to Polaroid's expert analysis on damages.

### IV.   Interrogatory No. 15

Finally, on February 18, 2008, Polaroid raised several outstanding discovery issues relating to HP's Second Supplemental Response to Interrogatory No. 15 ("Second Supplemental Response"). *See* Feb. 18, 2008 Meginnes Letter to Bernstein. Among other things, Polaroid asked HP to state whether it intended to update its Second Supplemental Response and when it would provide such an update. To date, Polaroid has received no response from HP.

Time is running out for HP to supplement its interrogatory response or for Polaroid to continue the deposition of Mr. Anton Tabar that was suspended on January 18, 2008. Polaroid expects HP to respond to the issues raised in Polaroid's February 18, 2008 correspondence by February 28, 2008.

Very truly yours,

Maria A. Meginnes

Maria A. Meginnes

cc:   William M. Boyd, Esq.
      Jack B. Blumenfeld, Esq.

# Exhibit 54

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

David W. Higer
To Call Writer Directly:
312 469-7029
mjordan@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: 312 861-2200

October 4, 2007

**VIA EMAIL**

Bradley D. Coburn, Esq.
Fish & Richardson, P.C.
111 Congress Avenue, Suite 810
Austin, TX 78701

Re:     *Polaroid Corporation v. Hewlett Packard Company*
        USDC-D. Del.-C.A. No. 06-738 (SLR)

Dear Mr. Coburn:

I write in response to your letter of October 3, 2007.

On May 22, July 6, and July 31, 2007, HP served incredibly broad and voluminous document requests. *See, e.g.*, HP RFP 274 (seeking all "[l]egal, research and development, engineering, company management documents, and user archived electronic mail located on MERLOT and USHQFS01 Servers."); HP RFP 275 (seeking all "[e]ngineering drawings, documents related to Polaroid's intellectual property development, and personal files located on Zeus Server."); HP RFP 276 (seeking all "[e]lectronic (sic) mail located on USHQVS Server").

On July 20, 2007, in connection with the parties' meet and confer discussions regarding electronic discovery, Polaroid suggested search terms for use in retrieving electronically stored documents, pursuant to HP's extremely broad document requests. (*See* July 20, 2007 Higer E-mail to Bernstein and attachment.) Polaroid's suggested search term list was calculated to retrieve documents responsive to HP's extensive discovery requests and potentially relevant to the case, while hopefully avoiding large amounts of responsive, but possibly irrelevant, documents. (*See id.*)

Despite the precision and comprehensiveness of Polaroid's suggested search terms, HP instead demanded that Polaroid use the following, broader terms, to retrieve documents responsive to HP's incredibly broad and unduly burdensome requests:

- 4,829,381
- 381
- contrast enhancement
- local average
- local averaging
- pixel average

Bradley D. Coburn, Esq.
October 4, 2007
Page 2

- luminance average
- average luminance
- image average
- data average
- blur mask
- blur
- mask
- HP
- Hewlett Packard
- dynamic range
- Petters
- One Equity
- Lehman
- Morgan
- Lokey
- Houlihan
- JPMorgan
- Chase
- Bankruptcy
- Bankrupt
- enhancing contrast
- enhance contrast
- modify contrast
- automatic contrast enhancement
- local contrast enhancement
- enhance local contrast
- enhancing local contrast
- adaptive contrast enhancement
- contrast modification
- modify local contrast
- local contrast
- adaptive contrast
- local brightness
- adaptive brightness
- local light intensity
- adaptive light intensity
- modify light intensity
- enhance light intensity
- light intensity enhancement
- local luminance
- adaptive local luminance

Bradley D. Coburn, Esq.
October 4, 2007
Page 3

- modify local luminance
- enhance local luminance
- local luminance enhancement
- adaptive luminance
- feature enhancement
- enhance features
- neighborhood average
- adaptive neighborhood
- dynamic range
- dynamic range normalization
- normalize dynamic range
- Zinc
- Zink
- Levinstone
- Reiling
- Roman
- Song
- Thornton
- Arcsoft
- Foveon
- Binuscan
- Lasersoft
- half-tone
- half tone
- 4,724,395
- 395
- 4,774,565
- 565
- 5,778,106
- 106
- 4,839,721
- 721
- 5,745,660
- 660
- 7,053,908
- 908

(*See* July 20, 2007 Coburn E-mail to Higer and attachment.) Although Polaroid attempted to work with HP to appropriately narrow the scope of these incredibly broad search terms, HP continued to demand broad searching strategies. As a result, during the parties' July 20 meet and confer discussion, Polaroid ultimately agreed to search the following terms, pursuant to HP's demands:

Bradley D. Coburn, Esq.
October 4, 2007
Page 4

- 4,829,381
- " 381 "
- " 381 "
- "(381 "
- ""381."
- ""381)"
- ""381,"
- ""381."
- 381 patent
- 182,987
- " 987 "
- "987)"
- "(987 "
- ""987 "
- ""987)"
- ""987,"
- ""987."
- adaptive contrast enhancement
- ArcSoft PhotoImpressions
- ArcSoft PhotoPrinter
- ArcSoft PhotoStudio
- automatic contrast enhancement
- average luminance
- Binuscan Photoperfect Advanced
- Binuscan Photoperfect Master
- blur mask
- contrast enhancement
- contrast modification
- digital image enhancement
- dodging and burning
- dynamic pixel transformation
- enhance contrast
- enhance light intensity
- enhance local contrast
- enhance local luminance
- enhancing contrast
- enhancing local contrast
- Foveon
- gamma
- Hewlett Packard
- Hewlett-Packard

Bradley D. Coburn, Esq.
October 4, 2007
Page 5

- HP
- LaserSoft SilverFast Ai
- Levinstone
- light intensity enhancement
- local average
- local averaging
- local contrast enhancement
- local luminance enhancement
- luminance average
- modify contrast
- modify light intensity
- modify local contrast
- modify local luminance
- Moroney
- PolaColor
- Song
- SprintScan

In a further attempt to be comprehensive and to accede to HP's broad discovery requests, Polaroid also agreed to search for these terms across its relevant electronic systems from April 1, 1987 to December 5, 2006. (See July 25, 2007 Higer Letter to Bernstein at 3–4.)

In short, HP demanded that Polaroid search a vast amount of data with very broad search terms pursuant to broad requests. Although incredibly burdensome — literally requiring hundreds of hours of many attorneys' time over weeks of late nights spent reviewing documents — Polaroid acceded to HP's overly broad discovery demands, diligently producing more than 7,000,000 pages of documents in a timely manner under the Scheduling Order.

HP's citation of a few pages of documents HP now suddenly claims are irrelevant — *that are actually responsive to HP's discovery demands* — does not change the reality that Polaroid has produced the documents HP specifically requested. For example, the "bachelorette" email (POL 6353068) you reference is responsive to at least HP RFP 276, and contains at least the search term "song". Similarly, the "spam" email (POL 4545134-149) you referenced is at least responsive to HP RFP 276, and contains at least the search term "HP". The "Carlin" email (POL 7025853) you reference is responsive to at least HP RFP 274, and contains at least the search term "song". Indeed, every document cited in your October 3 letter is responsive to at least HP RFP 274, 275, or 276.

HP's contention in its letter of yesterday — months after HP issued incredibly broad and voluminous discovery requests and after Polaroid spent hundreds and hundreds of hours of multiple attorneys' time reviewing documents for production — that Polaroid somehow

Bradley D. Coburn, Esq.
October 4, 2007
Page 6

"manufactured" its document production to burden HP is not in any way credible. HP's unsupportable argument is, however, consistent with HP's ongoing practice of unnecessarily increasing the costs of this litigation in violation of the Federal Rules of Civil Procedure.

HP's failure in its letter of yesterday to identify a single document that it believes it is missing highlights the reality that Polaroid's production was responsive to HP's requests and appropriate under the Federal Rules of Civil Procedure.

In contrast to Polaroid's responsive production — and despite being a significantly larger company than Polaroid — HP only produced a little more than 2 million pages of documents, many of which are irrelevant. *See, e.g.,* HPDE_0006164–0009368, HPDE_0024829–0026751, HPDE_0027827–0028570, HPDE_0028577–0028614, HPDE_0030288–0031454, HPDE_0031657–0033915, HPDE_0056740–0065494, HPDE_0090209–0090982, HPDE_0126431–0126501, HPDE_0126582–0127499.

In addition, HP has failed to produce obviously relevant documents, and we ask that you supplement your production immediately with at least the following categories of documents:

- Advertisements, manuals, trade publications, surveys, tests, studies, catalogs, advantages, agreements, communications, plans, press releases, presentations, and promotional materials related to HP products at issue, which at a minimum include those products and/or software listed in HP's First Supplemental Response to Polaroid's Interrogatory No. 15. *See, e.g.,* Polaroid RFPs 34, 35, 37, 74, 96, 99, 101, 119, 120, 126, 130, 131, 154, 188, 191, 192, 218, 264, 365-367, 386, 432, 498, 522, 523.

- Nathan Moroney related documents. *See, e.g.,* Polaroid RFPs 24, 159, 434, 435, 484-486, 518.

- Documents related to commercial sales of digital enhancement image technology. *See, e.g.,* Polaroid RFP 40.

- All license, settlement, and cross license agreements from 1997 to the present, including but not limited to documents referenced within those agreements, and HP's method for valuing or evaluating patent licensing agreements. *See, e.g.,* Polaroid RFPs 176-78, 193, 194, 197, 198, 199, 200, 201, 207, 510-512.

- Financial information and documents related to the HP products at issue, which at a minimum include those products and/or software listed in HP's First Supplemental Response to Polaroid's Interrogatory No. 15. *See, e.g.,* Polaroid RFPs 118, 202, 203, 286-288, 358-364, 501-509, 524, 525.

- Board meeting minutes and presentations. *See, e.g.,* Polaroid RFPs 126-29, 184-187.

Bradley D. Coburn, Esq.
October 4, 2007
Page 7


These categories of missing documents are not necessarily an exhaustive list. As any additional deficiencies in HP's production are identified, we will notify you. If HP contends that it has produced documents responsive to the above categories, please identify those documents by specific Bates number.

Very truly yours,

David W. Higer

DWH

cc:     William M. Boyd, Esq.
        Jack B. Blumenfeld, Esq.

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Courtney Holohan
To Call Writer Directly:
312 861-3027
cholohan@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: (312) 861-2200

October 18, 2007

VIA EMAIL

Bradley D. Coburn, Esq.
Fish & Richardson, P.C.
111 Congress Avenue, Suite 810
Austin, TX 78701

Re:   *Polaroid Corporation v. Hewlett Packard Company*
USDC-D. Del.-C.A. No. 06-738 (SLR)

Dear Mr. Coburn:

I write to follow up on the documents that were identified during Ms. Dogan's deposition, and which should have been produced by no later than August 31, 2007. It has been a week since Ms. Dogan's deposition, and we still have not received these documents. The documents identified during Ms. Dogan's deposition which must be immediately produced, include at least the categories of documents outlined below.

## Sales Information

- Unit, revenue, profit, cost, bill of sale, and related sales data (by SKU, brand, and model number) — including real data located on HP's OSRM database — for at least:

  ✓ the products listed in response to Interrogatory 15;

  ✓ The products listed by Ms. Dogan as including or potentially including adaptive lighting or digital flash — PhotoSmart Premier 6.0 and 6.5; Image Zone 4.0, 4.5, 5.0; PhotoSmart Essential 1.12 and earlier versions, 2.0, 2.01, and 2.5; Image Zone Plus; custom versions; and Image Zone Express (Q: "So couldn't you use those SKUs and go into the OSRM system and figure out the exact number of units rather than estimates based on product managers?" A: "Correct.");

  ✓ any other HP offerings (including software, hardware, drivers, and firmware) that include or included digital flash or adaptive lighting.

Chicago        Hong Kong        London        Munich        New York        San Francisco        Washington, D.C.

October 18, 2007
Page 2

We request this data for sales, promotional give-aways, and internal distributions, made to any entity, including for example, consumers, "non-consumers" (as testified by Ms. Dogan), resellers, trade shows, educational entities, partners (*e.g.* Logitech, Die Cuts, Cablevision, and any others), employees, and any other person or entity to whom HP delivers (or has delivered in the past) offerings which include adaptive lighting and/or digital flash. *See, e.g.,* Dogan Tr. at 196-97 ("I would expect that every unit sold for revenue would be captured somewhere within the company. It's possible that every unit of software distributed, if it wasn't distributed for revenue, might not be captured in documentation, but that's probably also unlikely. So somewhere on some documents in the company there's some information around the software being distributed."). *See also, e.g.,* Dogan Tr. at 311 ("I believe that some products at HP have bills of material, yes.").

- The other spreadsheets and related documents that Ms. Dogan testified are used to track product units throughout HP. *See, e.g.,* Dogan Tr. at 83-86 ("There could be many spreadsheets created throughout the company tracking the software or hardware units, but I can't comment on how many there are or how they're created. . . . I'm aware of documents that are created to estimate software units in the marketplace, and those documents could potentially contain software units that include adaptive lighting and digital flash. . . . it is likely that there are documents in HP that contain unit information by product. . . . There are [also] some spreadsheets that contain unit information -- unit sales information related to the stand-alone software. . . . I suspect that there's many systems that will contain unit sales information.").

- The HP documents that Ms. Dogan testified "maps which software is associated with which hardware products," and the "matrix that identifies the SKUs relative to the software that [HP] would have shipped."

- All documents supporting or contradicting 197, 197R, and 65796, including but not limited to, for example, previous versions of the documents, the 2005 analysis from the unnamed finance person, any documents related to Troy Sechrist's work, and the emails and spreadsheets that Ms. Dogan referenced that were used in the creation of these documents and some of which she testified were in her possession at HP (*e.g.* on her Xdrive, and in a folder in her outlook). These documents would also include the specific e-mail that Ms. Dogan referenced in which Troy Sechrist was requested to develop 197, and any emails from anyone else involved in the creation of these documents, including, for example, Kim Bitner, Nancy Whiting, Cam Calmon, Wade Mears, Bob Landis, and Karou Watanabe.

October 18, 2007
Page 3

- Documents that establish the total number of downloads over the web of HP offerings which include digital flash or adaptive lighting.

- Sales forecasts of HP offerings that include adaptive lighting and/or digital flash. Dogan Tr. at 193 ("So HP maintains forecasts of unit sales for our hardware products and the units that were forecast, because the units that were forecast are likely to contain the software that contains adaptive lighting and digital flash.").

- Documents in which HP communicates how it differentiates a "worldwide" sale versus a "U.S." sale.

- Documents which indicate when HP offerings that include adaptive lighting or digital flash were first offered for sale, sold, or otherwise distributed. *See, e.g.,* Dogan Tr. at 203 ("I believe that there is a document or a system somewhere within HP that would provide information about when a product was first shipped or sold.").

**Manufacturing Information**

- Documents which indicate where HP's adaptive lighting or digital flash offerings (including software, hardware, firmware, drivers, etc.) are made or manufactured. *See, e.g.* Dogan Tr. at 160 ("I'm sure somewhere within the company there are documents.").

**Market Research**

- Surveys, tests, consumer group analyses, customer focus groups, interviews, graphic studies, software testing, beta tests, secondary research, or other research, in any way related to Real Life Technologies, adaptive lighting, image enhancement, or digital flash. *See, e.g.,* Dogan Tr. at 256-76. Examples of such documents include, but are not limited to, the specific studies referenced in HP documents, such as:

  ✓ InfoTrend study referenced in Dogan Exhibit 18, page 4;

  ✓ NDP retail sales data referenced in Dogan Exhibit 18, page 5, as well as all other NDP retail sales data at HP;

  ✓ Adaptive lighting usability study referenced in Dogan Exhibit 19, as well as any others;

  ✓ The AP Usability Study, IZE Usability study, Boston Research Group studies, and IZE Beta Test study referenced in Dogan Exhibit 26 at slides 10 and 47.

October 18, 2007
Page 4

**<u>Pricing Information</u>**

- Price lists for any HP offerings that include adaptive lighting or digital flash. *See, e.g.,* Dogan Tr. at 265-66 ("I'm sure somewhere within HP we have a price list for the products we sell.").

- Market research data that Ms. Dogan and others use to price software that includes adaptive lighting or digital flash.

Because these documents should have been produced by August 31, 2007, we request that HP produce these documents immediately, and in no event later than Monday, October 22, 2007.

Very truly yours,

/Courtney/

Courtney Holohan

cc:    William M. Boyd, Esq.
       Jack M. Blumenfeld, Esq.

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Courtney Holohan
To Call Writer Directly:
312 861-3027
cholohan@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: (312) 861-2200

October 19, 2007

**VIA EMAIL**

Bradley D. Coburn, Esq.
Fish & Richardson, P.C.
111 Congress Avenue, Suite 810
Austin, TX 78701

Re:  *Polaroid Corporation v. Hewlett Packard Company*
USDC-D. Del.-C.A. No. 06-738 (SLR)

Dear Mr. Coburn:

I write in response to your letter of October 9, 2007 to David Higer, and to follow up on our letters of October 4, 2007 and October 7, 2007 regarding HP's deficient document production.

In appropriately completing its document production, Polaroid complied with the Federal Rules of Civil Procedure, and complied with HP's unreasonable insistence on broad search requests. Your unspecified, vague accusations that Polaroid did anything other than spend an incredible amount of time and money ensuring that its production complied with HP's demands, is nothing more than makeweight calculated to inappropriately increase the costs of this litigation. We fully explained the genesis of the few documents that you cite in our letter of October 4, 2007. In response — highlighting HP's continuing frivolous and inappropriate allegations — HP does not identify a single document that it believes it is missing.

In contrast, we have identified a number of very specific documents that we are missing from HP's production. *See, e.g.*, Letters of October 4, 7, 18 and 19. Rather than make *any* attempt to search for and produce the relevant documents that we have requested — and rather than cite to a single bates number in support of any argument that HP has actually produced the documents we believe we are missing — *HP actually demands that Polaroid re-raise its concerns regarding these previously identified missing documents*, once again unnecessarily and inappropriately increasing the costs of this action.

Pursuant to HP's inappropriate demand, we reiterate our specific requests for documents missing from HP's production on the following page.

Chicago        Hong Kong        London        Munich        New York        San Francisco        Washington, D.C.

October 19, 2007
Page 2

(i)          **TACE** source code.

(ii)         **Product manuals and guides, and specification and data sheets,** for HP's products listed in Interrogatory No. 15, and for any other HP offering that includes adaptive lighting or digital flash.

(iii)        **Product development documents** for HP's products listed in Interrogatory No. 15, and for any other HP offering that includes adaptive lighting or digital flash. Examples of the types of product development documents that we would expect to find in HP's production for these products are Program Meeting/Digital Imaging Team Meeting Notes, Test Design Documents, Consumer Messaging Documents, Documentation Data Sheets, User Experience Specifications, Software Planning Documents, Statement of Work Documents, Project Plans, Product Data Sheets, Design Documents (*e.g.*, IRS, SFS), Product Development Plans, Program Schedules, Test/Quality Plans, Prototype Builds, Tooling Budget and Schedule, Alpha and Beta Testing Documents, Assembly and Process Documents, Operational Plans, etc.

(iv)        **Market research** information for HP's products listed in Interrogatory No. 15, and for any other HP offering that includes adaptive lighting or digital flash, as specifically described in Polaroid's October 18, 2007 letter regarding E. Dogan's deposition.

(v)         Documents related to **sales** of the products at issue, including unit, price, profit, revenue, cost, and bills of material, as described in Polaroid's letter of October 18 regarding E. Dogan's deposition. We would also expect to find **internal financial reporting documents** for divisions that cover HP's products listed in Interrogatory No. 15, and for any other HP offering that includes adaptive lighting or digital flash. Examples of such internal financial reporting documents that we would expect to see, for example, are Imaging and Printing Group quarterly and annual financial reports, Personal Printing quarterly and annual financial reports, and Consumer Imaging & Printing quarterly and annual financial reports.

(vi)        **Convoy sales** documents, as described in Polaroid's letter of October 19.

(vii)       **All license, settlement, and cross license agreements** from 1997 to the present — as discussed during our meet and confer on September 13 and 14, and as we have requested in follow up correspondence (*see, e.g.*, October 7, 2007 letter) — including but not limited to HP's method for valuing or evaluating patent licensing agreements, documents cited within produced agreements, and documents relating to the communications and negotiations of these license agreements. As we have previously explained, the categories you have set forth (most recently in your letter dated October 11 and sent to us on October 12) do not capture all of the licenses at issue. Please produce the remaining agreements, and then confirm in writing that HP has produced every single document described in my October 7, 2007 letter.

October 19, 2007
Page 3

(viii)　　　　**Board meeting minutes and presentations.**

(ix)　　　　　**Moroney documents,** including for example, documents and communications regarding Moroney's work on 6,813,041, 6,822,762, 6,741,753, and *Local Color Correction;* deposition transcripts; and communications between Moroney and Polaroid.

Again, if HP contends that it has produced sufficient documents responsive to the specific requests Polaroid has outlined above, please confirm by identifying those documents by Bates number.　Otherwise, we again request that HP supplement its production with at least these documents by Tuesday, October 23, 2007.

Very truly yours,

/Courtney/

Courtney Holohan

cc:　　William M. Boyd, Esq.
　　　　Jack M. Blumenfeld, Esq.

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Courtney Holohan
To Call Writer Directly:
312 861-3027
cholohan@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: (312) 861-2200

October 22, 2007

<u>VIA EMAIL</u>

Bradley D. Coburn, Esq.
Fish & Richardson, P.C.
111 Congress Avenue, Suite 810
Austin, TX 78701

            Re:    *Polaroid Corporation v. Hewlett Packard Company*
                   USDC-D. Del.-C.A. No. 06-738 (SLR)

Dear Mr. Coburn:

I write in response to your letter of today regarding HP's deficient document production.

## I.    <u>HP's Refusal To Identify Products</u>

From the beginning of this case, including in our Complaint, we have identified the accused products specifically as those products with adaptive lighting and/or digital flash. Since filing, we have asked time and time again for HP to identify all of its offerings by product, model number, and brand, which include adaptive lighting and/or digital flash (for example, in document requests, interrogatories, 30(b)(6) topics, and in depositions). HP has steadfastly refused to produce this information, including even recharacterizing our interrogatory number 15 so as to avoid revealing all of its products and other offerings that include the infringing technology.

Your written claim today that HP does not understand or use the terms adaptive lighting and digital flash is incredible. These terms have been used by HP in its answer to Polaroid's complaint (governed by Rule 11), in numerous documents and public presentations, and in internet advertising, and were specifically defined by HP's 30(b)(6) witness, Ms. Dogan. That HP has been and is currently very aware of the accused products in this case is highlighted most recently by your own references in your letter of today of "the accused products".

As we discussed during our recent 30(b)(6) deposition — and as your 30(b)(6) witness specifically testified under oath she understood — "offerings" has its regular meaning. It means things that HP offered or offers to the market, or distributes or distributed to employees or on a promotional basis, such as software, hardware, firmware, and drivers. We have been using this term because HP has been attempting to redefine "products" as "hardware" and the accused

October 22, 2007
Page 2

feature in this case (adaptive lighting and digital flash) are and have been present in more than just HP's hardware.

Our request for unit, revenue, cost, bill of material, and profit information per product for each of HP's offerings which include adaptive lighting and digital flash is certainly not "new" as our specific and multiple document requests reveal. Ms. Dogan's deposition made clear that 197, 197R, and the "updated" version of 197R are completely haphazard, inaccurate, inconsistent, and simply generated for the purposes of litigation. As Ms. Dogan testified, these documents are not reliable, and certainly do not support any correct and real unit count of HP offerings that include adaptive lighting and digital flash.

You state that Ms. Dogan "has no actual knowledge of almost all of the things you attribute to her in your letter of October 18, 2007." Ms. Dogan was testifying under oath as both a personal witness and 30(b)(6) witness. Are you aware of specific testimony that was untruthful? We agree with your implicit admission that Ms. Dogan was not properly prepared, and could not answer a number of questions that were specifically set forth in our agreed upon 30(b)(6) topics. We will address these deficiencies if necessary after receiving the documents outlined below.

Your letter of today — attempting to put the burden on Polaroid of providing model numbers of products uniquely in HP's control — is yet another tactic calculated to avoid producing evidence to which we are unequivocally entitled. It also serves as yet another example of HP's ongoing pattern of unnecessarily increasing the costs of this litigation. As you know, the accused offerings in this lawsuit are those containing adaptive lighting and/or digital flash. We are entitled to discovery on each of these offerings. Accordingly, we again request that you immediately produce the information below.

**II.    Confirmation Of Documents HP Finally Has Agreed To Produce.**

Consistent with our specific discovery requests, I ask that HP confirm by tomorrow our understanding of what HP is finally agreeing to produce, pursuant to your letter of today, as outlined below.

(1)    HP business records (not documents contrived for the purposes of this litigation), for each of HP's offerings which include adaptive lighting and digital flash which establish unit, revenue, and profit information per product.

- Your limitation in your letter to "U.S" is unclear as your 30(b)(6) witness had no definition for this label. After you provide the specific definition you are using as described below under (4), we will evaluate whether or not this production is adequate.

October 22, 2007
Page 3

- The additional software units you describe in the second paragraph of your letter under (C) should fall under this production, as again, "offerings" is software, hardware, firmware, and/or drivers. We do not agree that this production has anything to do with, or is limited to, units disclosed on 197R as you suggest. As indicated by Ms. Dogan, the 197R "analysis" for the purposes of litigation was inaccurate, inconsistent, and unreliable.

(2)     The unit and revenue numbers for all paper and ink cartridges sold since January 1, 2002, as you suggest. Although we disagree with your contentions regarding convoyed products or the parties' agreement, as soon as we receive the information you have promised to provide, we will evaluate its sufficiency.

(3)     The Dogan back-up materials we have described.

(4)     A verified written response indicating where all of HP's offerings that include adaptive lighting and digital flash (the accused products) are manufactured, as well as a detailed explanation of how HP accounts for whether a unit is a worldwide unit or a U.S. unit.

- Your suggestion of a 30(b)(6) topic is not credible as we attempted to discover this information via a 30(b)(6) deposition, and Ms. Dogan was unable to answer any questions on Topic 4. If we are forced to do another 30(b)(6) deposition on this issue, it will be at HP's expense. We will assess whether we need more information after receiving this verification.

(5)     Market research information for HP's products listed in Interrogatory No. 15, and for any other HP offering that includes adaptive lighting or digital flash, and the survey and usability study information described and identified in Polaroid's October 18, 2007 letter regarding E. Dogan's deposition.

- Your relevancy objection is undermined by the reality that, in addition to being responsive to our document requests, Ms. Dogan further opened the door to this information with her testimony in response to HP's questions, which was completely inconsistent with her specific testimony in response to Polaroid's questions both before and after HP's counsel questioned her.

- Please identify the "previously produced other surveys" you state that HP has produced.

- In answer to your question, the accused products are HP offerings which include or included adaptive lighting and/or digital flash. HP's attempt to withhold a usability study on the accused feature at issue is wholly inappropriate. The study

October 22, 2007
Page 4

identified in the email I referenced, and any other related studies, must be produced immediately.

(6)    Price lists for HP offerings which include adaptive lighting or digital flash (the accused products). HP's comments — which indicate that HP has not even attempted to search for this information that was supposed to be produced by August 31, 2007 — are troubling in light of Polaroid's specific document requests. *See, e.g.,* Doc. Req. 4, 5. We expect this information immediately.

(7) Board meeting minutes and presentations that relate to Polaroid, the patent-in-suit, adaptive lighting, digital flash, or any accused product (again, defined as any HP offering that includes or included adaptive lighting or digital flash).

### III.    Documents Requested By Polaroid Which HP Has Refused To Produce.

We ask that you reconsider your baseless refusals to produce the information indicated below, which we have requested multiple times in document requests and correspondence.

(1)    **Cost information** for HP offerings which include adaptive lighting and/or digital flash. We obviously do need cost information for accurate damages calculations. We ask that you reconsider and let us know your response by tomorrow.

(2)    **License agreements.** HP seems to be playing games with licensing agreements. We accused scanners specifically in our Complaint, and we have requested scanner-related license agreements in our document requests and correspondence. We do not agree to your limitation of "the other agreed to criteria," for scanners or any other applicable license. We do not agree to your re-characterization of the parties' meet and confer discussion on what must be produced, as we have indicated numerous times. Thus, your confirmation that HP "has produced all licenses consistent with the parties' meet and confer" does not solve this issue, as we have repeatedly stated. Why does HP continue to refuse to confirm whether or not it has produced each of the licenses set forth in my October 7 letter? If HP has not produced all of these licenses, what are you excluding, and on what basis?

Polaroid's request for HP's method for valuing or evaluating patent licensing agreements is not a "new" request; we have sought this information since June. *See, e.g.,* Doc. Req. 176 ("All documents relating to HP's method for valuing or evaluating patent licensing agreements where HP is the licensee"). Polaroid's request on the license negotiations is also not a "new" request, but is specifically included in our document requests dated May 22, 2007. *See, e.g.,* Doc. Req. 18 ("All documents, including correspondence, related to any licenses of or to, efforts to obtain licenses to, or efforts to license intellectual property related to printers, scanners, digital cameras, or software."). Although these documents should have been produced by August 31,

October 22, 2007
Page 5

2007, HP's letter again makes clear that HP has not even bothered to search for these documents. They should be produced immediately, along with a description of what steps HP took to search for and collect documents responsive to Polaroid's requests.

(3)    **Download Units.** Again, we do not believe we have actual units of downloaded software.  What documents are you referencing?  If you are referencing 197, 197R, and the "update," Ms. Dogan specifically testified that these numbers are not reliable.  We are requesting the documents that HP uses to track specific download units.

(4)    **Moroney documents.** Your response indicates that HP has not even searched for communications between Moroney and Polaroid, so your statement that HP is "not aware of such communications" is not surprising.  Please confirm that you have searched for and produced all communications between Polaroid and any HP employee, including Moroney.   Are you intending to produce his work on Local Color Correction and his deposition transcripts?

### IV.    <u>Documents Requested By Polaroid And Not Addressed Or Not Committed To Production By HP.</u>

For the categories below, HP has either ignored our multiple requests, or has not committed to producing this information.  Please let us know by tomorrow whether or not you intend to produce the information described below.

(1)    **TACE** source code.

(2)    **Product manuals and guides, and specification and data sheets,** for HP's products listed in Interrogatory No. 15, and for any other HP offering that includes adaptive lighting or digital flash.

(3)    **Product development documents** for HP's products listed in Interrogatory No. 15, and for any other HP offering that includes adaptive lighting or digital flash.  Examples of the types of product development documents that we would expect to find in HP's production for these products are Program Meeting/Digital Imaging Team Meeting Notes, Test Design Documents, Consumer Messaging Documents, Documentation Data Sheets, User Experience Specifications, Software Planning Documents, Statement of Work Documents, Project Plans, Product Data Sheets, Design Documents (e.g., IRS, SFS), Product Development Plans, Program Schedules, Test/Quality Plans, Prototype Builds, Tooling Budget and Schedule, Alpha and Beta Testing Documents, Assembly and Process Documents, Operational Plans, etc.

October 22, 2007
Page 6

(4)    **Other documents identified by Ms. Dogan, and set forth in my October 18, 2007 letter.**  Please let us know whether you intend to produce all of the information in my October 18, 2007 letter, including for example, the sales forecasts and dates of first use documents described.

**V.    Additional Missing Documents Requested By Polaroid.**

Our review of HP's production has not revealed the additional documents below.  Please let us know whether you will agree to produce the documents described below.

(1)    LACE source code related to implementation in hardware.

(2)    SOSA source code related to implementation in software and firmware.

(3)    ACE source code.

\* \* \*

We have been requesting these documents since May and June; production was to have been completed by August 31, 2007; and it is now clear from HP's letter today that HP has not even bothered to search for large categories of responsive documents, although we have followed up multiple times.  Given these circumstances, a response by Tuesday, October 23, 2007 is certainly not unreasonable as you suggest.  Your statement that we are not prejudiced is wholly untrue in that we cannot even properly plan for depositions without these documents.

We ask that you confirm whether or not you agree to produce the documents set forth above by tomorrow.  We interpret your statement that an actual production of documents we have been requesting since this summer by tomorrow is unreasonable as a request for an extension.  We agree to an extension, and we would like a written commitment by tomorrow that we will have received all of the documents that you agree to produce by no later than November 1, 2007.

October 22, 2007
Page 7

Very truly yours,

/Courtney/

Courtney Holohan

cc:   William M. Boyd, Esq.
       Jack M. Blumenfeld, Esq.

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Courtney Holohan
To Call Writer Directly:
312 861-3027
cholohan@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: (312) 861-2200

November 1, 2007

<u>VIA EMAIL</u>

Bradley D. Coburn, Esq.
Fish & Richardson, P.C.
111 Congress Avenue, Suite 810
Austin, TX 78701

Re:    *Polaroid Corporation v. Hewlett Packard Company*
       USDC-D. Del.-C.A. No. 06-738 (SLR)

Dear Mr. Coburn:

I write in response to your letter of October 30, 2007 regarding HP's deficient document production.

Although document production was to have been completed two months ago, HP has admittedly not produced many responsive documents. Rather than agree to do so within a reasonable time frame, HP has vaguely referenced possibly producing some of the requested documents two months from now. Four months after the production deadline is certainly not reasonable. Please confirm by tomorrow that you will produce the documents requested in my October 22, 2007 letter by at least November 9, 2007. We continue to be severely prejudiced in depositions and in other discovery without HP's production.

HP's admission that it apparently has ignored the production of these documents because "Polaroid's requests related to damages issues, not liability" and "the requests come at a time when the parties should be focusing on *Markman* and technical issues, not damages" is incredible. This case has not been bifurcated for discovery or trial; all document production was to have been completed two months ago. HP's suggestion that it is planning to use its calculated and ongoing abuse of the discovery process as an excuse to delay a trial on the merits is outrageous.

## I.    HP's Refusal To Identify Products

The names and information of HP's products are solely in the possession of HP. Despite HP's failure to provide discovery on the specific products containing adaptive lighting and/or digital flash, Polaroid has made clear from the initiation of this litigation that the HP products that infringe the '381 patent are those containing adaptive lighting and digital flash technologies.

November 1, 2007
Page 2

## II. HP's Retinex Information

Polaroid has consistently sought relevant discovery on Retinex. Polaroid remains entitled to discovery on Retinex unless HP confirms that it will not rely on Retinex in any way during this litigation. Polaroid has not changed its position regarding Retinex.

HP has refused to stipulate that it will not introduce evidence about Retinex at trial. *See, e.g.* July 5, 2007 letter from Ms. Michelle Jordan to you; July 16, 2007 letter from Mr. David Higer to you; July 20, 2007 letter from Mr. Higer to you.

Your statement that "adaptive lighting in cameras is implemented by Retinex" is totally inconsistent with HP's First Supplemental Response to Polaroid's Interrogatory Number 15, in which HP stated that LACE 2002 is included in HP's R725, R727, R827, R837, R927, R937, and R967 cameras.[1]

## III. HP's Delay Regarding Damages Documents

The documents we have been forced to spend time and money following up on in multiple discovery letters to HP are not "new". Months ago, Polaroid served appropriate and timely document requests in accordance with the scheduling order. Polaroid has repeatedly sought the documents called out by our requests since the start of fact discovery.

For example, HP claims that Polaroid "never asked for paper and replacement cartridge unit and revenue information." This statement is incorrect. *See, e.g.,* Polaroid Doc. Req. 7 ("Documents sufficient to determine orders, costs, sales, shipments, and profits of Consumable Products and/or parts and accessories that you sell that may be used in conjunction with Digital Enhancement Products on a monthly and annual basis from each product's inception to date."). Paper and ink cartridges are consumed in the use of HP's Digital Enhancement Products. The parties agreed that HP would produce information regarding products typically sold with or for the accused products, regardless of whether they were "in the box."

In contrast to your letter, we have searched HP's production and do not find "sales unit, revenue, and technical information for all accused products," as we have previously and

---

[1] Your October 30 letter also misstates Polaroid's October 22 letter regarding Interrogatory No. 15, which addresses products that incorporate the referenced Retinex and LACE source code in firmware and/or software. As you are aware, HP inappropriately recharacterized this interrogatory by playing word games with terms such as firmware, software, drivers, and sell.

November 1, 2007
Page 3

repeatedly explained. Why do you continue to refuse to identify the Bates numbers on which you are relying for your statement that HP has produced all of this information?

Please confirm by tomorrow that you will produce this outstanding discovery by November 9, 2007.

**IV.    Eleanore Dogan Document Requests**

The documents identified by Ms. Dogan during her deposition should have been produced by August 31, 2007.

In contrast to your letter, HP's 30(b)(6) witness, Ms. Dogan, clearly understood the meaning of the terms "digital flash offerings" and "adaptive lighting offerings." Polaroid has used this terminology because of HP's gameplaying with terminology related to digital flash and adaptive lighting technology and the products using the same, which was obvious regarding HP 197 and HP's baseless confusion regarding the term "accused products".

Please confirm tomorrow that you will produce the documents Ms. Dogan identified and outlined in my previous letter by November 9, 2007.

**V.    Cost Information**

Polaroid requires cost information for its damages analysis. Among other things, cost information is necessary to assess whether HP is calculating its profits appropriately. Moreover, HP has already agreed to produce cost information in response to multiple requests from Polaroid. *See, e.g.,* HP's Resps. to Polaroid Doc. Reqs. 6, 202, 286, and 501. It is improper now — months after document production was to be completed — for HP to suddenly change its position and make the one-sided determination that Polaroid suddenly does not need cost information. Please confirm tomorrow that you will produce this information by November 9, 2007.

**VI.    Licenses**

We previously requested the status and contact information for Microsoft. Please provide this information immediately.

HP's sudden demand that Polaroid justify its request for license-related information is inappropriate, particularly as HP previously agreed to produce this information in June and July. *See, e.g.,* HP's Resps. to Polaroid Doc. Reqs. 18 and 176. HP served an identical request regarding methodology, two weeks before Polaroid served its request. *See, e.g.,* HP Doc. Req. 186 ("All documents relating to Polaroid's method for valuing or evaluating patent licensing

November 1, 2007
Page 4

agreements where Polaroid is the licensee.") Please produce these documents, along with information regarding the steps taken to search for and collect responsive documents.

## VII.    Board Minutes/Presentations

You state that HP confirmed that there is no mention of "accused products" in its board minutes or its board presentations. In light of HP's alleged previous confusion, please identify what products HP deems to be "accused products".

## VIII.    Moroney Documents

Polaroid has not mischaracterized the substance of the parties' previous communications. Please confirm that HP has searched for and produced all documents related to Moroney's work on Local Color Correction and Moroney's deposition transcripts.

## IX.    TACE Source Code

Polaroid's request for TACE source code is not new. Indeed, all variations of TACE source code (i.e., software, hardware, firmware, driver) are responsive to at least Polaroid Requests 13 and 289-293.

Please confirm that in addition to the TACE source code, Polaroid will also receive all Retinex, LACE, ACE, and SOSA source code including source code for software, firmware, hardware, and drivers (responsive to at least Polaroid Requests 13 and 289-293).

## X.    Bates Number Identification

Polaroid disagrees with your allegations regarding Polaroid's production. After HP has completed its production, please provide dates for when you would like to discuss a mutual exchange of bates numbers as appropriate.

## XI.    Confirmation of Documents HP Finally Has Agreed To Produce

HP has yet to confirm exactly what documents it is finally agreeing to produce and by what date. Please confirm tomorrow that you will produce the following documents by November 9, 2007:

    A.    HP business records for each of HP's offerings which include adaptive lighting and digital flash which establish unit, revenue, and profit information per product.

November 1, 2007
Page 5

    B.    A verified written response indicating where all of HP's offerings that include adaptive lighting and digital flash are manufactured, as well as a detailed explanation of how HP accounts for whether a unit is a worldwide or a U.S. unit.

    C.    Market research information for HP's products listed in Interrogatory No. 15, and for any other HP offering that includes adaptive lighting or digital flash, and the survey and usability study information described and identified in Polaroid's October 18, 2007 letter regarding Ms. Dogan's deposition.

    D.    Price lists for HP offerings which include adaptive lighting or digital flash.

## XII.  Documents Requested By Polaroid And Not Addressed Or Not Committed To Production By HP

Please indicate by November 2, 2007 whether HP will produce the categories listed below (and described in my October 27, 2007 letter and previous correspondence) by November 9, 2007.

    A.    Product manuals and guides, and specification and data sheets for all products containing adaptive lighting and/or digital flash. (*See, e.g.,* HP29338-29403; HP11774-11777)

    B.    Product development documents for all products containing adaptive lighting and/or digital flash. (*See, e.g.,* HPPOL31292-31297; HPPOL810155-810174; HPPOL788126-788134; HPPOL746042-746091).

    C.    Other documents identified by Ms. Dogan, and set forth in my October 18, 2007 letter.

    D.    SOSA source code related to implementation in software and firmware.

    E.    ACE source code.

***

HP has not complied with its discovery obligations under either the Federal Rules of Civil Procedures or this Court's schedule.

We again ask that you respond to the issues raised in this letter by November 2, 2007. We also expect a commitment that you will produce the documents that you agree to produce no later than November 9, 2007.

November 1, 2007
Page 6

Very truly yours,

/Courtney/

Courtney Holohan

cc:    William M. Boyd, Esq.
       Jack M. Blumenfeld, Esq.

# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

JACK B. BLUMENFELD
302 351 9291
302 425 3012 Fax
jblumenfeld@mnat.com

November 6, 2007

**By E-Filing**

The Honorable Sue L. Robinson
United States District Court
    for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Re:    *Polaroid Corporation v. Hewlett-Packard Company*
       C.A. No. 06-738 (SLR)

Dear Judge Robinson:

Polaroid would like to raise the following issues at the discovery conference scheduled for 5:00 p.m. today:

(1)    **Polaroid's request for declarations and to have portions of a deposition transcript stricken, necessitated by HP's conduct regarding Polaroid privileged documents.**

(2)    **HP's document production, including the specific categories listed below:**

(a)    A date certain by which HP will produce (1) unit, revenue, profit, price, and specification information for each of the accused products; (2) unit and revenue numbers for paper and ink cartridges used with the accused products; (3) a verified written response indicating where the accused products are manufactured, and how HP accounts for whether a unit is a worldwide unit, or a U.S. unit; (4) specific survey and marketing documents identified in HPPOL 162026-34 (NPD Retail Sales data), HPDE 115297-98 (Checkpoint customer research), and HPPOL 179229-87 (AP Usability Study; IZE Usability and Beta Test Studies; Boston Research Group Studies); and (5) sales forecasts for the accused products. HP agreed more than two weeks ago to produce most of these categories of documents.

(b)    Prompt production of the following documents, which HP has refused to produce:

(i)    Complete versions of the potentially infringing source code, or code that HP may argue is a non-infringing alternative (TACE, ACE, LACE, SOSA, Retinex).

Hon. Sue L. Robinson
November 6, 2007
Page 2

      (ii)    Product development documents for products implementing this code.

      (iii)    Product manuals, guides, and data sheets for the accused products.

          Respectfully,

          Jack B. Blumenfeld (#1014)

JBB/cbh
cc:    Clerk of Court (By Hand)
      William J. Marsden, Jr., Esq. (By Hand)
      Matthew C. Bernstein, Esq. (By E-Mail)
      Russell C. Levine, Esq. (By E-Mail)
1305815

# Exhibit 55

## <u>SOFTWARE REPLICATION</u>

1. Software distributed in North America is typically, but not always, replicated in the United States.

2. Software distributed in Latin America is typically replicated in Mexico or Brazil. On occasion the software may be replicated in the United States.

3. Software distributed in Asia is typically replicated in China and Singapore.

4. Software distributed in Europe, the Middle East, and/or Africa is typically replicated in Germany.

5. I, Kathryn Doyel, am employed in the Corporate, Securities and M&A Section of Corporate Legal Department of HP, and I am authorized to verify this document by my signature below on behalf of HP. This document was prepared with the assistance of employees and representatives of HP. The contents of this document are not all within my personal knowledge, and I am informed that there is no single employee of HP who has personal knowledge of all the matters set forth in this document. Subject to the limitations set forth above, I have read this document and upon information and belief know the contents thereof. I verify under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed on December 14, 2007, at Palo Alto, California.


KATHRYN DOYEL

# Exhibit 56

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POLAROID CORPORATION | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 06-738 (SLR) |
| | ) |
| HEWLETT-PACKARD COMPANY, | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## POLAROID'S NINTH NOTICE OF RULE 30(b)(6) DEPOSITION

In accordance with the provisions of Rules 26 and 30 of the Federal Rules of Civil Procedure, Plaintiff Polaroid Corporation ("Polaroid") hereby provides notice that it will take the deposition of Defendant Hewlett-Packard Company ("HP") by oral examination of witness(es) designated by HP to testify on its behalf as the person(s) most competent to testify concerning the matters listed on the attached list of Topics for Examination. Pursuant to Federal Rule of Civil Procedure 30(b)(6), the person(s) designated by HP should be prepared to testify as to such matters known or reasonably available to HP. The deposition will commence at 8:30 a.m. on January 29, 2008 either at HP, 3000 Hanover Street, Palo Alto, CA 94304, Fish & Richardson P.C., 12390 El Camino Real, San Diego, CA 92130, or at a location to be agreed upon by the parties.

HP is requested to provide Polaroid's counsel, one week prior to the agreed commencement of the instant deposition, a written designation of the names and positions of the officers, directors, managing agents or other persons who are most competent to testify

concerning the matters set forth in the attached list of Topics for Examination, and, for each person designated, the matters on which he or she will testify.

The deposition shall be taken upon oral examination before an official authorized by law to administer oaths and will continue from day to day until completed. Pursuant to Rule 30(b)(2), testimony of the witness(es) may be recorded by both stenographic means and sound-and-visual means, namely videotape recording.

Dated: December 21, 2007          Respectfully submitted,

POLAROID CORPORATION


/s/ Courtney Holohan
Jack B. Blumenfeld (#1014)
Julie Heaney (#3052)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, Delaware 19801
(302) 658-9200

Russell E. Levine, P.C.
C. Graham Gerst
G. Courtney Holohan
Michelle W. Skinner
David W. Higer
Maria A. Meginnes
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

*Attorneys for PLAINTIFF, POLAROID CORPORATION*

12.     The information contained in the three undated verifications sent to Polaroid on December 17, 2007, entitled "HARDWARE MANUFACTURE," "U.S. SALES," and "SOFTWARE REPLICATION," including but not limited to the meaning of the terms, the basis for the statements, and all sources, systems, documents, and people involved in creating the information contained in the verifications.

13.     The names and locations of each of the HP facilities that manufacture and/or distribute each of the products listed in answer to Interrogatory No. 15.

14.     HP's use of transfer pricing documentation (or "6662 documentation") relating to the products listed in Interrogatory No. 15, including any distribution analyses or profitability analyses, or related reports and charts.

15.     All of the reasons why computers are not included in answer to Interrogatory No. 15.

16.     All of the reasons why Image Zone Plus is not included in answer to Interrogatory No. 15.

17.     All of the reasons why each and every product listed in HP 217-246, HP 324-361, and HP 522-526 is not listed in answer to Interrogatory No. 15.

18.     The meaning of abbreviations for HP's product names (*e.g.* "OJ") and product sales (*e.g.* "gov't"), and every abbreviation for each of the products listed in answer to Interrogatory No. 15.

19.     The information included in the chart attached to HP's letter dated December 20, 2007 and sent to Polaroid via email on December 21, 2007 at 4:31 p.m., including but not limited to the meaning of the terms, the basis for the statements, the reasons for the differences between the information included in the chart and that included in answer to Interrogatory No.

# Exhibit 57

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Maria A. Meginnes
To Call Writer Directly:
312.861.3220
mmeginnes@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: 312.846.9196

January 21, 2008

**VIA EMAIL**

Bradley D. Coburn, Esq.
Fish & Richardson P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701

Re:     *Polaroid Corporation v. Hewlett-Packard Company*
USDC-D. Del. - C.A. No. 06-738 (SLR)

Dear Mr. Coburn:

I write in response to Hewlett-Packard Company's Responses and Objections to Polaroid Corporation's Ninth Notice of Rule 30(b)(6) Deposition (the "Response"), as served on Polaroid on January 16, 2008.

In the Response, HP refuses to provide a witness on topics 2 and 4-6 regarding (1) HP's patent licenses where it is the licensee; (2) HP's patent licenses where it is the licensor; (3) HP's licensing of patents related to technologies for enhancing digital images through contrast modification or color correction; and (4) HP's licensing of any patent related to, employed, or intended to be employed in the production of any HP camera, HP scanner, HP all-in-one, HP printer, or HP software. Contrary to HP's objections, these topics clearly relate to Polaroid's damages claims and are therefore relevant under Federal Rule of Civil Procedure 26(b). Moreover, these topics call for factual information that is neither a contention nor the proper subject of expert testimony. HP must produce a witness on these topics immediately.

HP also will not provide a witness on topics 10-13 and 15-18 regarding HP offerings, including offerings listed in HP's First Supplemental Response to Interrogatory No. 15 ("Interrogatory No. 15 Offerings").[1] As an initial matter, these topics do not constitute

---

[1]     HP has indicated that it will consider providing a witness on topic 14 "upon clarification from Polaroid." Additional information will be provided shortly, and Polaroid anticipates that HP will produce a witness on this relevant, appropriate topic.

Bradley Coburn
January 21, 2008
Page 2

contentions. HP itself identified the Interrogatory No. 15 Offerings prior to the date for responding to contention interrogatories. HP should provide a witness on all of these topics.

Polaroid is entitled to know what offerings contain the accused technology, including how HP determined the offerings it identified to Polaroid. HP's refusal over many months to provide this information is inexcusable. HP refuses to provide a witness for topics 10 and 15-17, yet Polaroid still has many questions based on its review of HP's own production. For instance, several offerings listed in HP 000217-246, HP 00324-361, and HP 00522-26 state that they contain LACE source code, but these products are not listed as Interrogatory No. 15 Offerings. As outlined in topic 17, Polaroid is entitled to explore why these products are missing. Topic 18 is necessary for Polaroid to understand and interpret HP's documents, including financial documents relating to the Interrogatory No. 15 Offerings.

Topics 11 and 12 relate to representations that HP has made to Polaroid but is now unwilling to support or explain. Regarding topic 13, products manufactured in the United States are infringing regardless of where they are sold. The sought-after information is therefore relevant under Rule 26(b).

Please confirm that HP will provide a witness on the above-referenced topics in the Response by Wednesday, January 23, 2008.

Very truly yours,

Maria A. Meginnes

Maria A. Meginnes

cc:    William M. Boyd, Esq.
       Jack B. Blumenfeld, Esq.

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

(312) 861-2000

www.kirkland.com

Maria A. Meginnes
To Call Writer Directly:
312.861.3220
mmeginnes@kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: 312.846.9196

January 29, 2008

**VIA EMAIL**

Bradley D. Coburn, Esq.
Fish & Richardson P.C.
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701

Re:  *Polaroid Corporation v. Hewlett-Packard Company*
     USDC-D. Del. - C.A. No. 06-738 (SLR)

Dear Mr. Coburn:

I write in response to your letter of January 23, 2008 regarding Hewlett-Packard Company's Responses and Objections to Polaroid Corporation's Eighth Notice of Rule 30(b)(6) Deposition (the "Eighth Response") and Hewlett Packard Company's Responses and Objections to Polaroid Corporation's Ninth Notice of Rule 30(b)(6) Deposition (the "Ninth Response").

## I.    HP's Eighth Response

### Topics 9 and 11

While Polaroid disagrees with HP's statements that Topics 9 and 11 are burdensome, Polaroid will accept HP's offer of written responses in lieu of deposition testimony. Polaroid obviously expects these written responses to include products identified in Hewlett Packard Company's First Supplemental Response to Polaroid's First Set of Interrogatories (No. 15) ("First Supplemental Int. 15 Response"), as well as products identified in Hewlett Packard Company's Second Supplemental Response to Polaroid's First Set of Interrogatories (No. 15) ("Second Supplemental Int. 15 Response"). As Polaroid's deposition notice was served on December 21, 2007, Polaroid expects HP to provide its written responses by this Friday, February 1, 2008, at the latest.

Bradley Coburn
January 29, 2008
Page 2

**II.     HP's Ninth Response**

<u>Topics 2, 4, and 6</u>

HP has agreed to produce a witness on these topics, subject to its objections. HP must provide a date and witness for this deposition immediately.

<u>Topic 5</u>

Polaroid disagrees that this is a contention topic as it calls for purely factual information. Polaroid expects HP to produce a witness on this topic.

<u>Topic 11</u>

Topic 11 does not mischaracterize HP's statements. As summarized in Ms. Courtney Holohan's letter dated January 16, 2008, Polaroid has continually asked HP to provide the units sold and given away that use or incorporate any version of LACE source code. This topic is directed to that very issue, as HP has refused to provide the sought-after information via document requests, interrogatories, or previous depositions. HP has also refused to sign the stipulation presented by Polaroid on numerous occasions.

If HP is unwilling to produce a witness on this topic, HP should sign the stipulation put forward by Polaroid, most recently on January 3, 2008. Otherwise, Polaroid will rely as appropriate on HP's November 19, 2007 statements, as explained in Ms. Holohan's January 16, 2008 letter.

<u>Topics 12-13</u>

HP's characterization of its verifications is inaccurate. These verifications were intended to address Polaroid's very real and relevant concerns regarding the location of the distribution, manufacture, and sale of the products accused in this case. Polaroid had immediate concerns upon receiving these verifications. As a result, Polaroid issued two deposition topics regarding these documents and the information underlying them to give HP the opportunity to explain their meaning. This approach does not preclude Polaroid from addressing insufficiencies in these verifications now.

HP's verifications are flawed for at least two reasons. First, the verifications are vague and ambiguous on many points. For example, the verification titled "Software Replication" states that "software distributed in North America is typically, but not always, replicated in the United States." Terms such as "typically" and "not always" provide no concrete information as to the nature and extent of U.S. replications. To the extent that software distributed in Latin America is replicated in the U.S., this software should be included in U.S. units.

Bradley Coburn
January 29, 2008
Page 3

Second, the verifications lack key information required by Polaroid. As an illustration, the "Software Replication" verification is silent as to the location where master copies of HP software are generated. Similarly, on the verification titled "U.S. Sales," the standard Imaging and Printing Group revenue recognition policy does not allow Polaroid to distinguish in which country a product is sold. It does not state the location of HP's distribution centers or identify which distribution centers supply products to which countries. The verification is silent as to how the country of sale can be determined from the revenue and unit data produced by HP.

Given the demonstrated deficiencies in the verifications, Polaroid is entitled to a witness on Topic 12 to understand these verifications and Topic 13 to obtain the information that underlies these verifications.

Topics 10, and 15-17

These topics are appropriate given HP's failure to properly identify products that contain the accused source code in this case. As an initial matter, documents produced by HP, such as HPPOL_0031330, suggest that other HP products may contain LACE source code. HP's Second Supplemental Int. 15 Response demonstrates that Polaroid was correct to seek deposition testimony on these issues. For instance, Topic 16 inquired about the absence of Image Zone Plus from the First Supplemental Int. 15 Response, and Image Zone Plus is now listed in HP's Second Supplemental Int. 15 Response. The deposition of Mr. Anand Srinivasan did not resolve Polaroid's legitimate questions on these issues. Thus, a witness on these topics is necessary.

Topic 18

Polaroid asks that HP provide the meaning of the following abbreviations for HP product names and product sales. HP has already agreed to provide such information if Polaroid will provide such a list. Given HP's delay in responding to Polaroid's deposition notice, Polaroid expects HP to provide a written response in lieu of testimony.

The following general abbreviations or codes require clarification:

SPAR, PIP, IPS, EM, OM, EW2P, DTA, DCS, DCL, SPS, IDP, CRIB, IDC, OS, ULE, and DPP.

The following abbreviations or codes in HP_00217-46, HP_00324-61, and HP_00522-26 require clarification:

Refurb, Retail, Mass, Canada, Club, Tgt Bndle, WM Bund, Sams Bu, Staples, English, Sears Bn, Can Club, CTO, Custom, Base, HalfPalShip, FullPalt, DisplayShell, Shipper, DJ, Can, OJ, Gov't, Can Mass, CC, STILETTO, Can SF, Clubs, BIJ, PS, P, FullPalShp, BLADE 1 PEN NA NET, Cust Pal, NAVAJO NA

Bradley Coburn
January 29, 2008
Page 4

— CUSTOM, QtrPalShip, FP DS, DOLPHIN CLASSIC, Prin, OJP, SherpaHi,
CTO, Shppr w/12, Shppr w/24, PhotoStud, PhotoStudCAN, and CA/US Ret.

Please respond to the issues identified above by the end of the day on Wednesday,
January 30, 2008.

Very truly yours,

*Maria A. Meginnes*

Maria A. Meginnes

cc:     William M. Boyd, Esq.
        Jack B. Blumenfeld, Esq.

# Exhibit 58

REDACTED