IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POLAROID CORPORATION,

    Plaintiff and Counterclaim Defendant,

      v.

HEWLETT-PACKARD COMPANY,

    Defendant and Counterclaim Plaintiff.

C.A. No. 06-738-SLR

**REDACTED**

## DEFENDANT HEWLETT-PACKARD'S MEMORANDUM IN OPPOSITION TO POLAROID'S MOTION TO PRECLUDE AND IN SUPPORT OF HEWLETT-PACKARD'S CROSS-MOTION TO PRECLUDE

**FISH & RICHARDSON P.C.**
William J. Marsden, Jr. (#2247)
Raymond N. Scott, Jr. (#4949)
919 N. Market Street, Suite 1100
Wilmington, DE 19801
Tel.: (302) 652-5070
Fax: (302) 652-0607
Emails: *marsden@fr.com; rscott@fr.com*

Robert S. Frank, Jr. *(pro hac vice)*
Daniel C. Winston *(pro hac vice)*
Carlos Perez-Albuerne *(pro hac vice)*
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel.: (617) 248-5000
Fax: (617) 248-4000
Emails: *rfrank@choate.com; cperez@choate.com; dwinston@choate.com*

John E. Giust *(pro hac vice)*
Matthew E. Bernstein *(pro hac vice)*
MINTZ, LEVIN, COHN, FERRIS,
    GLOVSKY AND POPEO, P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Tel.: (858) 314-1500
Fax: (858) 314-1501
Emails: *jgiust@mintz.com; mbernstein@mintz.com*

*Attorneys for Defendant and Counterclaim-Plaintiff
Hewlett-Packard Company*

Dated: July 10, 2008

4349524v1

## TABLE OF CONTENTS

Page(s)

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT ................................................................................................1

STATEMENT OF THE FACTS ...............................................................................................2

      A.    The Experts - Obviousness    2

      B.    The Experts - Marking    3

      C.    The Experts - Consumer Surveys    4

      D.    The Experts' Scope Of Expertise    5

      E.    The Fact Witnesses    5

ARGUMENT ...........................................................................................................................9

    I.    POLAROID'S MOTION TO PRECLUDE SHOULD BE DENIED.....................9

      A.    The Applicable Legal Standard.    9

      B.    HP Did Not Violate The Court's Scheduling Order.    11

          1.    The Expert Declaration. .................................................................11

          2.    The Fact Witnesses. .......................................................................13

      C.    In Any Event, There Was No Surprise, There Is No Prejudice, There Was Ample Opportunity To Cure The Prejudice, There Will Be No Trial Disruption, And There Was No Bad Faith.    15

    II.    IF POLAROID'S MOTION IS GRANTED, POLAROID SHOULD SIMILARLY BE PRECLUDED FROM RELYING ON CERTAIN AFFIDAVITS OR TESTIMONY........................................................................17

CONCLUSION.......................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Freeman v. Minnesota Mining & Mfg. Co.*,
  675 F. Supp. 877 (D. Del. 1987) (Wright, J.) ........................................................................10

*Greate Bay Hotel & Casino v. Tose*,
  34 F.3d 1227 (3d Cir. 1994) ........................................................................................... 9-10

*InLine Connection Corp. v. AOL Time Warner, Inc.*,
  2007 WL 61883 (D. Del., Jan. 8, 2007) (Thynge, M.J.) ........................................................10

*Meyers v. Pennypack Woods House Ownership Assn.*,
  559 F.2d 894 (3d Cir. 1977) ..............................................................................................9

*Nike, Inc. v. Wal-Mart Stores*,
  138 F.3d 1437 (Fed. Cir. 1998) .........................................................................................3

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc.*,
  2006 WL 2435083 (D. Del., Aug. 22, 2006) (Farnan, J.) .....................................................10

*Praxair, Inc. v. ATMI, Inc.*,
  231 F.R.D. 457 (D. Del. 2005) .........................................................................................10

*Praxair, Inc. v. ATMI, Inc.*,
  445 F. Supp. 2d 460 (D. Del. 2006) ..................................................................................10

*Quinn v. Consolidated Freightways Corp. of Delaware*,
  283 F.3d 572 (3d Cir. 2002) ............................................................................................10

*Williams v. Morton*,
  343 F.3d 212 (3d Cir. 2003) ............................................................................................10

## STATUTES

35 U.S.C. § 287 .............................................................................................................3-4

## RULES

Fed. R. Civ. P. 26 ....................................................................................................... Passim

## NATURE AND STAGE OF THE PROCEEDINGS

This memorandum is filed in opposition to Polaroid Corporation's Motion To Preclude Hewlett-Packard From Relying On Untimely Disclosed Opinions and Witnesses, and in support of defendant Hewlett-Packard's Cross-Motion To Preclude. (D.I. 247).

## SUMMARY OF ARGUMENT

Polaroid's Motion To Preclude should be denied. HP did not violate the Court's Amended Scheduling Order (a) when it identified trial witnesses who would rebut damage theories that were first stated by Polaroid after the close of fact discovery, or (b) when its expert filed a five-page affidavit, which was consistent with his reports and deposition testimony, in response to a Polaroid motion for summary judgment. In any event, Polaroid has not been prejudiced. It was free to depose the fact witnesses, and it had already deposed the expert witness. There is no suggestion that the identification of the fact witnesses (in June, 2008) will delay the trial of this case (scheduled for December, 2008), and Polaroid will have six months to prepare to cross-examine them.

Moreover, as detailed below, Polaroid has engaged, far more extensively than HP, in the type of conduct about which Polaroid now complains. It submitted four separate affidavits in opposition to HP's summary judgment and *Daubert* motions that went beyond, and/or were flatly inconsistent with, its expert's reports and deposition testimony. One of its experts has testified to opinions that do not appear in her expert report. One of its fact witnesses provided an affidavit in response to an HP motion for summary judgment that is inconsistent with Polaroid's Rule 26 disclosures. If Polaroid's Motion To Preclude were to be granted, HP's Cross-Motion To Preclude this testimony should also be allowed.

## STATEMENT OF THE FACTS

### A.     The Experts - Obviousness

Polaroid's expert regarding patent infringement and validity, Dr. Peggy Agouris, submitted two expert reports. Thereafter, she was deposed by HP. HP's patent invalidity expert, Dr. Rangaraj Rangayyan, submitted two expert reports. He was deposed by Polaroid.

After expert discovery was completed, HP filed a Motion For Summary Judgment Of Non-Infringement Or, In The Alternative, Patent Invalidity. (D.I. 136.) Polaroid filed an Opposition. (D.I. 193.) Polaroid's Opposition was supported by a five-page Declaration Of Dr. Peggy Agouris, (D.I. 193 (Ex. 3)). The Agouris Declaration responds to certain arguments made in HP's motion for summary judgment. It purports to "explain" certain statements made in the second of her expert reports and states opinions, which do not appear in her expert reports, regarding the disclosures of a particular prior art reference.

For its part, Polaroid filed a motion for summary judgment that the claims of the '381 patent were not obvious. (D.I. 148.) HP filed an Opposition. (D.I. 188.) The Opposition was supported by Dr. Rangayyan's five-page Declaration. (D.I. 190.) In his declaration, Dr. Rangayyan (1) identifies, and confirms under oath, the statements made in his expert report, and (2) further explains his opinion, previously stated in his expert report and at his deposition, that a person of ordinary skill in the relevant art would have been motivated to combine certain prior art references. Polaroid had a full opportunity during Dr. Rangayyan's ten-hour deposition to explore Dr. Rangayyan's opinions regarding the combinability of prior teachings; and it did explore those opinions. *See, e.g.*, Deposition of Dr. Rangaraj M. Rangayyan ("Rangayyan Dep."), filed herewith as Exhibit A to the Declaration of William J. Marsden, Jr. ("Marsden Decl."), pp. 201, 200-222, 226-227.

# REDACTED

Polaroid now moves for an order precluding Dr. Rangayyan from testifying at trial regarding the statements in his Declaration. Polaroid does not even acknowledge that it filed the same type of declaration by its counterpart expert, also in opposition to a motion for summary judgment, and also on the issue of obviousness.

## B.    The Experts - Marking

HP alleges that Polaroid offered for sale or sold specific commercial products that, if Polaroid's claim constructions were to be adopted, embodied one or more claims of Polaroid's '381 patent. Polaroid did not mark the relevant commercial products to indicate that they were covered by a claim of the '381 patent. HP states that, as a result, Polaroid is precluded from recovering damages with respect to the period prior to the commencement of this action. 35 U.S.C. § 287. Polaroid bears the burden of proof on this issue. *Nike, Inc. v. Wal-Mart Stores*, 138 F.3d 1437, 1446 (Fed. Cir. 1998).

Polaroid's expert, Dr. Peggy Agouris, issued two expert reports.

Expert Report of Dr. Peggy Agouris Regarding U.S. Patent No. 4,829,381 ("Agouris Report") (Marsden Decl., Ex. B), pp. 90, 94-96. She did not provide an opinion in either report relating to claim 7 of that patent. *Id.*[1] HP's expert Dr. Dan Schonfeld provided an expert report in which he states

---

[1] Dr. Agouris did state

# REDACTED

Schonfeld Report (Marsden Decl., Ex. D), pp. 44-83. Thus, Dr. Schonfeld addressed precisely the subject on which Dr. Agouris chose to remain silent in her report. As a result, at the conclusion of expert report phase, it was uncontested that (1) if Polaroid's claim constructions are adopted, the identified Polaroid products embodied claim 7, and (2) the products were not marked.

Notwithstanding the absence of any opinion regarding claim 7 in either of her two expert reports, Dr. Agouris proceeded to testify at her deposition to a new opinion. She now

Agouris Dep. (Marsden Decl., Ex. C), pp. 212-17, 236-38. Polaroid then filed a Motion For Summary Judgment Under 35 U.S.C. § 287 (D.I. 146) in which it relied upon Dr. Agouris's opinion regarding claim 7 -- precisely the opinion that was not stated in either of her expert reports.

### C.    The Experts - Consumer Surveys

Polaroid provided an expert report of Walter McCullough. (D.I. 126.) In his report, Mr. McCullough stated his qualifications, and described a survey that he conducted regarding the value allegedly placed by consumers on a particular feature in HP All-In-One (printer, fax, scanner, copier) devices. If it is used, the feature is implemented, in part, by HP's accused LACE algorithm. HP deposed Mr. McCullough. Thereafter, HP filed a *Daubert* motion seeking to exclude Mr. McCullough's testimony on the ground that his survey methodology was irretrievably flawed. (D.I. 164.)

In response, Polaroid filed the Declaration Of Walter McCullough. (D.I. 218 (Ex. 2)). In this post-discovery Declaration, Mr. McCullough (1) expands upon his alleged qualifications, (2) states opinions that attempt to justify various aspects of his survey methodology, and (3) makes assertions about what "every experienced survey researcher knows" (para. 11) and

-4-

# REDACTED

what "survey experts," as a class "take into account" (para. 14).  Polaroid then relied on this declaration in its Opposition to HP's *Daubert* motion. (D.I. 218, pp. 14-18.)

### D.    The Experts' Scope Of Expertise

Dr. Peggy Agouris testified at her deposition

The other expert, Joseph Wroblewski, did not provide an expert report. *Id.*, pp. 51-52.

Thereafter, HP filed a *Daubert* motion seeking an order precluding Dr. Agouris from testifying to matters that were beyond the scope of what Dr. Agouris had testified was her expertise. (D.I. 167.)  Polaroid opposed. (D.I. 219.)  In support of its Opposition, Polaroid filed another Declaration of Dr. Agouris in which she recanted much of the deposition testimony described above, asserted that she really had studied HP's source code, and minimized the role of the other expert, a Mr. Wroblewski. (D.I. 219 (Ex. 2)).  Polaroid also filed Mr. Wroblewski's Declaration in which,

### E.    The Fact Witnesses

Polaroid's damages expert, Allyn Strickland, submitted a 64-page expert report.  In his report, Dr. Strickland advanced concepts and made statements that Polaroid had not disclosed in its Rule 26 disclosures or Polaroid's answers to HP's damage-related interrogatories.  Polaroid Corporation's First Amended Initial Disclosures Pursuant to Rule 26(a)(1) (Marsden Decl., Ex. E), p. 7; Polaroid Corporation's First Supplemental Response to Hewlett-Packard Co.'s First Set of Interrogatories (Marsden Decl., Ex. F), pp. 80-86, 93-98.

Dr. Strickland set forth

4349524v1

# REDACTED

Polaroid had not made either assertion at any time during the fact discovery period. In order to respond, HP assigned two HP employees, who were familiar with the subject matters, to the task of determining whether, and to what extent, Dr. Strickland's factual contentions were correct. These employees were Paul Ruiz (regarding product distributed outside the United States) and Chris Hayes (regarding iPAQs). In both instances, Dr. Strickland's speculation proved to be largely erroneous. Messrs. Ruiz and Hayes provided the results of their respective investigations -- which increased the royalty base by a very small amount -- to HP's damages expert, Robert Wallace. Mr. Wallace then provided a detailed disclosure of those results in his expert report. Mr. Wallace was subject to cross-examination, and was examined, at his deposition regarding these subjects. Deposition of Robert H. Wallace (Marsden Decl., Ex. H), pp. 31-33, 37, 43-45, 138, 165-167.

To the best of HP's knowledge, Polaroid does not dispute the facts determined by Messrs. Hayes and Ruiz or the conclusions that they reached, but it has not stipulated to those facts or conclusions. As a result, in June, 2008, HP listed Messrs. Hayes and Ruiz as potential HP rebuttal witnesses. HP repeatedly informed Polaroid that both were available for deposition as permitted by the Amended Scheduling Order. Polaroid literally refused to take their depositions,

-6-

4349524v1

# REDACTED

ostensibly because it was "prohibited" from doing so under the Scheduling Order. Correspondence between Counsel, (Marsden Decl., Exs. K-P). Instead, Polaroid has moved to exclude their testimony -- testimony which would merely respond to theories stated for the first time in Polaroid's damages expert report.

The facts regarding HP employee Jim Ruder are similar. During the relevant period, Mr. Ruder was a Vice President and the General Manager of HP divisions that designed, manufactured, and sold HP printers, including photo printers. Mr. Ruder's testimony became necessary when Polaroid advanced damage theories in the report of its damages expert, Dr. Strickland, that Polaroid had not stated in its Rule 26 disclosures or otherwise during fact discovery. Marsden Decl., Exs. E (p. 7) and F (pp. 80-86, 93-98).

In support of his reasonable royalty theory, Dr. Strickland offered his view

# REDACTED

All of this was new in Dr. Strickland's expert report. None of it was disclosed by Polaroid during fact discovery. Indeed, Polaroid's answers to interrogatories, a boilerplate recital of *Georgia Pacific* factors - inserting the names of the parties at appropriate locations - expressly postpones the disclosure of Polaroid's damage theory until the time of its expert report. *See* Marsden Decl., Exs. E (p. 7) and F (pp. 80-86, 93-98).

Mr. Ruder's role at HP and his participation in a variety of events relating to this case was extensively disclosed to Polaroid in voluminous documents produced from his, and others, files at HP. Marsden Decl., Ex. I (identifying documents produced from Mr. Ruder's files, prepared or received by Mr. Ruder or which make reference to Mr. Ruder). Polaroid inquired about Mr. Ruder's role in the course of oral discovery. Deposition of Charles Moore ("Moore Dep.") (Marsden Decl., Ex. J), pp. 122-123.

Because Polaroid did not articulate the damage theory that it now advances in its Rule 26 disclosures, Mr. Ruder was not identified in HP's Rule 26 disclosures. However, because Mr. Ruder is the HP employee best able to provide factual testimony that rebuts Polaroid's damages expert's                    HP identified Mr. Ruder as a rebuttal witness at trial on the dates specified in the Court's Amended Scheduling Order. Polaroid had not previously taken Mr. Ruder's deposition. Therefore, HP informed Polaroid on three separate occasions that Mr. Ruder was subject to, and would be made available for, a deposition in accordance with the Amended Scheduling Order. Polaroid declined to take this deposition as well. Marsden Decl., Exs. K-P.

-8-

Trial in this case is not scheduled to begin until December 8, 2008, six months after Messrs. Hayes, Ruiz and Ruder were identified as potential witnesses. Pretrial Statements are not due to be filed until October.

## ARGUMENT

### I.    POLAROID'S MOTION TO PRECLUDE SHOULD BE DENIED.

#### A.    The Applicable Legal Standard.

In the Third Circuit, *if* a witness is not identified at a time established by Court Order, the Court considers four factors when determining whether that witness should be precluded from testifying at trial. The factors are (1) the prejudice or surprise in fact to the opposing party, (2) the ability of the opposing party to cure the prejudice, (3) the extent of the disruption of the orderly and efficient trial of the case, and (4) the bad faith or willfulness of the non-compliance with a court order. *Greate Bay Hotel & Casino v. Tose*, 34 F.3d 1227, 1236 (3d Cir. 1994); *Meyers v. Pennypack Woods House Ownership Assn.*, 559 F.2d 894, 904-05 (3d Cir. 1977). The exclusion of evidence is "an extreme sanction," "not normally imposed absent a showing of willful deception or 'flagrant disregard' of a court order by a proponent of the evidence." *Meyers*, 559 F.2d at 905 (internal citations omitted).

In *Meyers*, plaintiffs identified two witnesses less than three weeks prior to trial. The new witnesses had not been disclosed in plaintiff's pretrial memorandum. Discovery was closed. The District Court excluded the testimony of the witnesses. *Id.* at 903. However, the Third Circuit reversed. It noted the fact that the defendant had been informed of the proposed witnesses "almost three weeks before trial" and that the defendant "made no effort to depose" those witnesses. The Court said that the defendant "had some obligation to take steps to minimize its alleged prejudice and surprise." It held that the trial court's exclusion of the testimony of the previously-undisclosed witnesses was an abuse of discretion. *Id.* at 905; *see*

-9-

*also Quinn v. Consolidated Freightways Corp. of Delaware*, 283 F.3d 572, 577-78 (3d Cir. 2002) (reversing judgment because of the exclusion of testimony disclosed immediately prior to trial where the defendant was not actually surprised and would not have been prejudiced).

In *Greate Bay*, the Court of Appeals affirmed a District Court decision to allow the testimony of witnesses who were not identified pursuant to the Court's pretrial order. *Greate Bay*, 34 F.3d at 1236-37. The Court noted that the District Court "took steps to permit an effective cross-examination" of the new witnesses by requiring that those witnesses be made available for deposition. *Id.* at 1237.

This Court has precluded testimony in accordance with an expert report that relied on previously-undisclosed prior art references, where there was no justification for the late disclosure, the alleged need for the report should have been evident months before the opinions stated in that report were disclosed, and curative discovery would disrupt the trial process. *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 464 (D. Del. 2005). It has excluded fact witness testimony where the witness was not identified until six weeks before trial and the opposing party did not have a reasonable opportunity to depose that witness. *Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d 460, 471 (D. Del. 2006). By contrast, courts in this district and circuit have allowed previously-undisclosed witnesses to testify where there was an adequate opportunity to depose the witness prior to trial (*Williams v. Morton*, 343 F.3d 212, 222-23 (3d Cir. 2003); *InLine Connection Corp. v. AOL Time Warner, Inc.*, 2007 WL 61883, at *5-6 (D. Del., Jan. 8, 2007) (Thynge, M.J.); *Freeman v. Minnesota Mining & Mfg. Co.*, 675 F. Supp. 877, 888-89 (D. Del. 1987) (Wright, J.)), and where a supplemental expert report was consistent with opinions in a prior report (*Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc.*, 2006 WL 2435083, at *1-2 (D. Del., Aug. 22, 2006) (Farnan, J.)).

4349524v1

**B.**    **HP Did Not Violate The Court's Scheduling Order.**

**1.**    **The Expert Declaration.**

Polaroid's motion proceeds on the assumption that the filing of an affidavit by an expert witness in opposition to a motion filed after the deadline for the submission of expert reports is a violation of the Court's Amended Scheduling Order.  It is not, as demonstrated by Polaroid's own conduct.

HP's expert, Rangaraj Rangayyan, submitted a short (five-page) affidavit in support of HP's Opposition to Polaroid's Motion For Summary Judgment That Claims 1-3 of U.S. Patent No. 4,829,381 Are Not Obvious.  (D.I. 190).  The affidavit was consistent with Dr. Rangayyan's prior expert reports and his deposition testimony.  It explained, and gave specific examples of, the reasons why a person of ordinary skill in the relevant art would have been motivated to combine certain prior art references.[2]  At his deposition, Dr. Rangayyan was asked about the motivation to combine references.  He testified:

---

[2] For example, in his first report, Dr. Rangayyan said:

> In my digital image processing course taught to university students from 1983 to 1987, a typical student would learn and understand these digital image processing techniques.  That is, the state of the art in digital image processing prior to the time of filing of the application for the '381 patent made it well-known: to sharpen an image or enhance the contrast of the image; to detect edges as part of contrast enhancement; to apply various mathematical transformations to determine an average of a selected group of pixels, including the pixel being processed; choose a gamma transfer function based on the average value of a neighborhood of pixels adjacent to the pixel being processed; use a ratio in a transformation function; and transform the pixel being processed based on the gamma value produced by the gamma transfer function.

-11-

REDACTED

Marsden Decl., Ex. A, pp. 226-227.  His affidavit contains virtually the same statement:

---

D.I. 190 (Ex. A, ¶ 121).  In his second report, Dr. Rangayyan said:

> It is my opinion that combining any one of the "means for selecting and transforming" of the Gonzalez algorithm, Wang or Okada with the image processing systems and methods described by Richard is no more than arranging elements already well-known in the image processing field.  Furthermore, the elements would continue to serve the same purpose and perform the same function in the proposed combination as they did in the Richard reference and each of the Gonzalez algorithm, Wang or Okada references.

D.I. 190 (Ex. C, ¶ 117).  In his declaration, Dr. Rangayyan said:

4349524v1

REDACTED

Rangayyan Decl. (D.I. 190, ¶ 10).

The Amended Scheduling Order does not preclude the submission of expert affidavits after the deadline for expert reports -- particularly where, as here, the affidavit is brief, consistent with previously-stated opinions and merely tailored to a specific pending motion.

Polaroid apparently interprets the Scheduling Order the same way. In response to HP's Motion For Summary Judgment Of Non-Infringement, Or, In the Alternative, Patent Invalidity, Polaroid filed a declaration by its expert, Dr. Agouris, also on the subject of obviousness, that purportedly explained and elaborated upon (but actually went well beyond) the opinions stated in her report. D.I. 193 (Ex. 3). In response to HP's Motion To Preclude Testimony Of Dr. Peggy Agouris, Dr. Agouris filed a further affidavit in which she specifically contradicted statements that she made during her deposition (*see* pp. 17-18, *infra*) regarding the limits of her expertise and the degree of her reliance on another expert for the opinions stated in her expert report. And, in opposition to HP's Motion To Preclude The Report And Testimony Of Polaroid's Survey Expert Walter McCullough, Polaroid filed a Declaration of Mr. McCullough purporting to explain and justify his survey methodology. (D.I. 218 (Ex. 2)).

### 2.     The Fact Witnesses.

The identification of Messrs. Hayes, Ruder, and Ruiz as trial witnesses was not a violation of the Scheduling Order. Each of Messrs. Hayes, Ruder, and Ruiz is a rebuttal witness whose testimony became necessary because Polaroid first disclosed the specifics of its damage theory after the close of fact discovery in the report of its damages expert. Section 3(f) of the Court's Amended Scheduling Order (D.I. 51) has two relevant parts. It states that within one month after the close of expert discovery, each party is to serve a list of each fact witness, *who*

-13-

*has previously been disclosed during discovery,* that it intends to call as a trial witness. The Order provides, separately, that one month thereafter, each party shall serve a list of rebuttal fact witnesses that it intends to call at trial. The rebuttal witness part of the Order is not limited to previously-disclosed witnesses. It anticipates that the need for rebuttal testimony may not have been apparent at an earlier stage of the case. In any event, the Order expressly permits each party to depose all persons identified as a trial witness if those persons have not previously been deposed.

In substance, Polaroid argues that unless HP had the prescience to anticipate the specifics of Polaroid's unstated damage theories, HP should be precluded from offering the testimony of the persons best able to rebut those theories. The Scheduling Order contemplates the opposite. Messrs. Hayes and Ruiz, for example, are identified as trial witnesses solely to rebut a specific speculation that was articulated, for the first time, in Polaroid's damages expert's report. Mr. Ruder will respond to the broader theories first stated in Polaroid's damages expert's report. It was not a violation of the Scheduling Order to identify them as rebuttal witnesses at trial.

In any event, all three witnesses "were disclosed during discovery." The Scheduling Order characterizes discovery as the process of document production, interrogatory exchanges, and depositions. Mr. Ruder's identity, role at HP, and relationship to the issues in this case is disclosed in hundreds of documents produced by HP. *See* Marsden Decl., Ex. I. Messrs. Hayes and Ruiz are identified as the source of specific information that is set forth in the expert report of HP's damages expert. Polaroid does not state that it was surprised by their identification as rebuttal witnesses.

# REDACTED

In sum, Polaroid's motion assumes, but does not even attempt to establish, that HP violated the Amended Scheduling Order.   Because there was no such violation, Polaroid's motion fails at the outset.  It should be denied.

**C.     In Any Event, There Was No Surprise, There Is No Prejudice, There Was Ample Opportunity To Cure The Prejudice, There Will Be No Trial Disruption, And There Was No Bad Faith.**

Assuming that there were a violation of the Court's Scheduling Order, each of the factors identified by the Third Circuit points in favor of allowing the relevant testimony.

The testimony is important to HP's defense.  Messrs. Hayes' and Ruiz's testimony will defeat Polaroid's belated suggestion that HP concealed facts during discovery and will put an end to Polaroid's suggestion

There is no prejudice.   The fact witnesses (Messrs. Hayes, Ruder, and Ruiz) were identified in May, and again in June, 2008, six months in advance of trial.  The Scheduling Order states that Polaroid could take the depositions of each of these witnesses in July, 2008, five months in advance of trial, because they had not previously been deposed.  If there were any doubt as to Polaroid's entitlement to these depositions, it was removed by HP's repeated offers to schedule the relevant depositions at times convenient to Polaroid.  Polaroid declined to proceed with these depositions and thereby declined to take the most rudimentary step to avoid any theoretical prejudice.

Moreover, there is no plausible ground for believing that if Polaroid had conducted depositions in July 2008, as contemplated by the Amended Scheduling Order, the December 2008 trial of this case would be delayed.  *Compare* Polaroid's Memorandum in Support Of Its

-15-

Motion to Preclude ("Polaroid Mem."), p. 6. Nor will Polaroid's trial preparation be disrupted. Polaroid will have half a year to prepare to cross-examine these witnesses. The consideration of summary judgment motions will not be disrupted. Messrs. Hayes, Ruder, and Ruiz have not offered, and will not offer, testimony that is relevant to those motions.

Polaroid cannot assert that it was "surprised" to find that, when Polaroid finally stated the specifics of its damage theory, HP would respond. For the same reason, there was no bad faith. A party is entitled to provide a factual response to detailed theories first articulated in the opposing party's expert reports.

Similarly, Dr. Rangayyan's short affidavit addressed a subject that is also addressed in his expert reports and his deposition. There was a full opportunity to explore that subject at Dr. Rangayyan's ten-hour deposition. Polaroid availed itself of that opportunity. It elicited deposition responses by Dr. Rangayyan that are virtually identical to the statements later made by Dr. Rangayyan in his affidavit. Polaroid will have six months to prepare to cross-examine Dr. Rangayyan at trial. There is no conceivable surprise. There is no possibility of prejudice. And, there is no suggestion of bad faith.

Polaroid's motion is an exercise in litigation gamesmanship. Polaroid states that it is "prejudiced," but it does not say how it is prejudiced. Polaroid Mem., p. 6. Polaroid had ample opportunity to depose the three fact witnesses. *Polaroid* decided to forego depositions of Messrs. Hayes, Ruder, and Ruiz. There would be no "additional cost" to Polaroid. *Compare* Polaroid Mem., p. 6. If HP had identified the same witnesses earlier, Polaroid would have had exactly the same choices: it could elect to take, or to forego, their depositions. Polaroid has already taken Dr. Rangayyan's deposition on precisely the subject that is addressed in his affidavit.

Any prejudice to Polaroid is self-inflicted. Having opted *not* to take the depositions of Messrs. Hayes, Ruder, and Ruiz., Polaroid cannot now assert that those depositions, if they had been conducted, might have uncovered some unidentified fact that Polaroid might have been able to use in an expert report, or might have necessitated some unidentified follow-up discovery. *Compare* Polaroid Mem., p. 6. Finally, Polaroid's assertion, in a single sentence, that HP has acted in bad faith (Polaroid Mem., p. 6) is unsupported by any statement of reasons. Polaroid's Motion To Preclude should be denied.

## II.    IF POLAROID'S MOTION IS GRANTED, POLAROID SHOULD SIMILARLY BE PRECLUDED FROM RELYING ON CERTAIN AFFIDAVITS OR TESTIMONY.

As the facts stated above establish, Polaroid has engaged in precisely the same conduct as the actions about which it complains:

1.    In response to HP's Motion For Summary Judgment of Non-Infringement Or, In The Alternative, Patent Invalidity, Polaroid filed a Declaration Of Dr. Peggy Agouris Regarding Okada Reference. The Okada patent was the principal prior art reference cited by the PTO during the prosecution of the '381 patent. In this Declaration, Dr. Agouris responded to statements made in HP's summary judgment motion papers by (1) "explaining" opinions expressed in her expert report, and (2) expanding her description of the disclosures of the Okada patent beyond anything stated in her expert reports. Dr. Agouris's Declaration was filed after the close of expert discovery, on the same day as the Rangayyan Declaration that is the subject of Polaroid's Motion To Preclude, and for the same purpose (opposition to a motion for summary judgment). It is of equal length with

# REDACTED

the Rangayyan Declaration. However, unlike the Rangayyan Declaration, it goes well beyond Dr. Agouris's expert report or deposition testimony.

2.      In order to avoid answering certain questions at her deposition, Dr. Agouris testified that

The other expert had not provided an expert report. Marsden Decl., Ex. C, pp. 51-52, 54, 57-59, 172. HP then filed a Motion To Preclude Certain Testimony Of Polaroid's Expert Dr. Peggy Agouris. This motion seeks an order preventing Dr. Agouris from testifying about matters that she admitted were not the subject of her expertise. In an effort to avoid a preclusion order, Polaroid filed a Declaration Of Dr. Peggy Agouris in which, long after the close of expert discovery, Dr. Agouris recanted. D.I. 219 (Ex. 2). She stated that she really was a software expert, that she could read, and did study, HP's accused LACE source code. These statements were flatly inconsistent with her deposition testimony.[3]

3.      In response to the same *Daubert* motion, Polaroid also filed a Declaration Of Mr. Joseph P. Wroblewski, a person that Polaroid had not previously

---

[3] For example, in her deposition,

Yet, later in her affidavit, she states, "[m]y training and experience reading and writing source code programming enabled me to ascertain the accuracy of Mr. Wroblewski's work," and "I myself am qualified to perform a substantial portion of the translation function which was done by Mr. Wroblewski." D.I. 219 (Ex. 2, p. 3); *also compare* D.I. 219 (Ex. 2, pp. 3-5) *with* Marsden Decl., Ex. C, pp. 51-52, 54, 57-59, 172.

4349524v1

# REDACTED

identified as a fact witness, and who had not submitted an expert report. Mr. Wroblewski described



*Compare* Declaration of Mr. Joseph P. Wroblewski In Support Of Polaroid's Response to HP's Motion to Preclude Certain Testimony of Polaroid's Expert Dr. Peggy Agouris, D.I. 219 (Ex. 4), ¶¶ 3-9, *with* Agouris Dep. (Marsden Decl., Ex. C), pp. 51-53 and 57-59.

4.  In her expert reports, Dr. Agouris addressed the question whether certain Polaroid products embodied claims 1-6 of the '381 patent, as Polaroid construes those claims. She chose not to express an opinion regarding claim 7. At her deposition, she stated a new opinion.

Polaroid then relied on that testimony when it filed its motion for summary judgment addressed to the marking issue. D.I. 146.

5.  HP filed a Motion To Preclude The Report And Testimony Of Polaroid's Survey Expert Walter McCullough. D.I. 164. In response, and long after the close of expert discovery, Polaroid filed a Declaration Of Walter McCullough in which Mr. McCullough proceeded to explain, and state justifications for, his survey methodology. In addition, Mr. McCullough makes assertions about what is "known" to "survey experts" and what "survey experts" take into account. D.I. 218 (Ex. 2, ¶ 14).

6.     HP filed a Motion For Summary Judgment On Grounds Of Estoppel And, In The Alternative, Laches.  D.I. 139.  In response, Polaroid filed an extensive Declaration Of Thomas L. Beaudoin.  D.I. 195 (Ex. 3).  Polaroid then relied heavily on the Beaudoin Declaration in its Opposition To HP's Laches Motion.  *See, e.g.*, D.I. 194, pp. 3-5, 11-13, and 28-29.  Thereafter, Polaroid identified Mr. Beaudoin as a trial witness.  However, in its Rule 26 Initial Disclosures, Polaroid did not identify Mr. Beaudoin as a person likely to have discoverable information regarding the issues of laches or equitable estoppel.  Marsden Decl., Ex. E.  As a result, HP did not depose Mr. Beaudoin prior to the filing of summary judgment motions and could not fully respond to the statements made in Mr. Beaudoin's Declaration in its Reply Memorandum in support of laches/estoppel summary judgment motion.

Thus, Polaroid has engaged -- far more extensively -- in the type of conduct about which Polaroid now complains.  If, and at least to the extent that, Polaroid is prejudiced, HP is prejudiced.  If Polaroid cannot cure its "prejudice" by taking a deposition, then neither can HP.  If the submission of an affidavit that explains or gives examples in support of previously-stated opinions in response to a motion for summary judgment or a *Daubert* motion somehow evidences bad faith, then Polaroid's outright reversal of position and new statements of opinion are far clearer evidence of bad faith than any conduct of HP about which Polaroid now complains.  If six months to prepare to cross-examine these witnesses is inadequate for Polaroid, then it is similarly insufficient for HP.

-20-

Therefore, if the Court is persuaded that it should grant Polaroid's Motion To Preclude, it should also grant HP's Cross-Motion To Preclude, filed herewith.    Dr. Agouris's two declarations (D.I. 193 (Ex. 3) and 219 (Ex. 2)),  Dr. Agouris's testimony regarding the question whether Polaroid products embody claim 7 of the '381 patent, Mr. McCollough's Declaration (D.I. 218 (Ex. 2)), Mr. Wroblewski's Declaration (D.I. 219 (Ex. 4)), and Mr. Beaudoin's Declaration (D.I. 195 (Ex. 3)) should be stricken, the pending summary judgment and *Daubert* motions should be decided without references to those declarations, and Polaroid's witnesses should be precluded from testifying at trial with respect to the corresponding subject matter.

-21-

## CONCLUSION

For the reasons stated above, Polaroid's Motion To Preclude should be denied, and, if it is not denied, HP's Cross-Motion To Preclude should be granted.


Dated:  July 10, 2008              **FISH & RICHARDSON P.C.**


By:    /s/ William J. Marsden, Jr.
       William J. Marsden, Jr. (#2247)
       Raymond N. Scott, Jr. (#4949)
       919 N. Market Street, Suite 1100
       Wilmington, DE 19801
       Tel.:  (302) 652-5070
       Fax:  (302) 652-0607
       Email: *marsden@fr.com; rscott@fr.com*

       Robert S. Frank, Jr. *(pro hac vice)*
       Carlos Perez-Albuerne *(pro hac vice)*
       Daniel C. Winston *(pro hac vice)*
       CHOATE, HALL & STEWART LLP
       Two International Place
       Boston, MA 02110
       Tel.:  (617) 248-5000
       Fax:  (617) 248-4000
       Emails: *rfrank@choate.com; cperez@choate.com;*
              *dwinston@choate.com*

       John E. Giust *(pro hac vice)*
       Matthew E. Bernstein *(pro hac vice)*
       MINTZ, LEVIN, COHN, FERRIS,
          GLOVSKY AND POPEO, P.C.
       3580 Carmel Mountain Road, Suite 300
       San Diego, CA 92130
       Tel.:  (858) 314-1500
       Fax:  (858) 314-1501
       Emails: *jgiust@mintz.com; mbernstein@mintz.com*

       *Attorneys for Defendant and Counterclaim-Plaintiff*
       *Hewlett-Packard Company*

4349524v1

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2008, I electronically filed with the Clerk of Court the foregoing document using CM/ECF which will send electronic notification of such filing(s) to the following counsel:

| | |
|---|---|
| ***Via Email*** | Attorneys for Plaintiff and Counterclaim-Defendant Polaroid Corporation |

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
1201 North Market Street
Wilmington, DE 19899-1347
Phone: 302-658-9200
Fax: 302-658-3989
Emails: *jblumenfeld@mnat.com; jheaney@mnat.com*

| | |
|---|---|
| ***Via Email*** | Attorneys for Plaintiff and Counterclaim-Defendant Polaroid Corporation |

Russell E. Levine, P.C.
Michelle W. Skinner/David W. Higer
Maria A. Meginnes/Courtney Holohan/C. Beasley
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
Phone: 312-861-2000
Fax: 312-861-2200
Emails: *rlevine@kirkland.com; ggerst@kirkland.com; mskinner@kirkland.com; dhiger@kirkland.com; mmeginnes@kirkland.com; mmeginnes@kirkland.com; cbeasley@kirkland.com*

***Courtesy Copy Via Federal Express***

Michelle W. Skinner
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
Phone: 312-861-2000
Fax: 312-861-2200

*/s/ William J. Marsden, Jr.*
William J. Marsden, Jr.

4349524v1